UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Plaintiff
TONY R. SELLMON

Plaintiff
CURTIS EASON

Plaintiff
JAMES GAMBRELL

Plaintiff
CARLTON R. MARTIN

Plaintiff
DARIUS C. SMITH

Plaintiff
BENSON F. WEST-EL

Plaintiff
CHARLES A. PHILLIPS

V.

Edward F. Reilly, Jr., Chairman of
the U.S. Parole Commission,

Cranston J. Mitchell, Commissioner of
the U.S. Parole Commission,

Deborah A. Spagnoli, Commissioner of the
U.S. Parole Commission,

Patricia K. Cushwa, Commissioner of the
U.S. Parole Commission, and

Isaac Fulwood, Jr. Commissioner of
the U.S. Parole Commission

    United States Parole Commission 5550
    Friendship Blvd., Suite 420 Chevy Chase,
    MD 20815-7286

Defendants.

## COMPLAINT in INTERVENTION

1.    Plaintiff seeks to vindicate rights protected by the Ex

Post Facto Clause of Article 1, Section 9 of the United States

Constitution, the Fifth and Fourteenth Amendments to the United States

1

Constitution, and federal law.  This Court has jurisdiction over
plaintiff's claims pursuant to 28 U.S.C., Sections 1331 and 1343 (a)(3),
(a)(4),(b)(1), and 42 U.S.C. 1983,

2.   The Court has authority to grant declaratory relief
pursuant to 28 U.S.C. Sections 2201 and 2202.

3. This Court has jurisdiction to declare the rights of
the parties and to grant all further relief found necessary and
proper.

VENUE

4.   Venue is appropriate in this Court pursuant to 28
U.S.C., Section 1391 (b).

PARTIES

5.   Plaintiff Charles A. Phillips, is confined at USP Lewisburg,
pursuant to a sentence imposed in January 1978, or thereabouts, by the
Superior Court of the District of Columbia.

6.   Defendant Edward F. Reilly, Jr. is Current
Chairman of the Commission.

7.   Defendant Patricia K. Cushwa is a current Commissioner of the
Commission.

8.   Defendant Isaac Fulwood, Jr. is a current Commissioner of the
Commission.

9.   Defendant Cranston J. Mitchell is a current Commissioner of
the Commission.

10.   Defendant Deborah A. Spagnoli is a current Commissioner
of the Commission.

11.   Defendants, as the Chairman and/or Commissioners of
the Commission, were responsible for reviewing and acting upon
plaintiff's requests for parole in accordance with the United States
Constitution and federal law and regulations.

2

**INTRODUCTION**

12. On 1-18-78 and 10-25-78, plaintiff Charles A. Phillips, , was sentenced to an aggregate term of imprisonment, 35 years 6 months to Life, for the offenses of Murder II, Murder II, CPWOL, Illegal Entry, Bail Reform Act, and Assault with a Deadly Weapon.

13. At the time plaintiff Charles A. Phillips was convicted of these crimes and either pled guilty or was found guilty of these offenses, authority for parole decisions for D.C. Code violators was vested in the District of Columbia Parole Board (the "Parole Board").

14. Nineteen years after plaintiff Charles A. Phillips' conviction, Congress enacted the National Capital Revitalization and Self-Government Improvement Act of 1997 (the "Revitalization Act"), Pub. L. No. 105-33, Section 11231, 111 Stat. 712 (1997).

15. The Revitalization Act abolished the Parole Board, see Pub. L. No. 105-33 Section 11231 (b), and directed the defendants as the Chairman and Commissioners of the Commission, to conduct parole hearings for District of Columbia prisoners "pursuant to the parole laws and regulations of the District of Columbia," id. Section 11231 (c).

16. On August 5, 1998, the Defendants assumed the responsibility for making parole-release decisions for all eligible District of Colombia Code felons, pursuant to the Revitalization Act.

17. In 2000, despite the requirements of the Revitalization Act that the Defendants apply the parole statutes, regulations, and guidelines and practices of the Parole Board, the Defendants published new parole rules, regulations, and guidelines that they deemed applicable to any D.C. inmate receiving an Initial Parole Hearing after August 5, 1998 (the "2000 Guidelines"). See 28 C.F.R. Section 2.80

(a)(5).

18.   For inmates who had an initial parole hearing prior to
August 5, 1998, the Defendants chose to apply the Parole Board
Guidelines.  See 28 C.F.R. Section 2.80 (a)(4).  For all other
inmates, some variation of the Defendants' 2000 Guideline applies.
See id. Section 2.80 (a)(1) and (5).

19.   The Commission determined under the statutes, regulations,
guidelines, rules, policies, practices and customs of the Parole Board,
that plaintiff became eligible for parole on November 18, 2002.  Using
the Commissions' 2000 Guidelines, the Defendants conducted plaintiff's
initial parole hearing in November 2002.

20.   Under the Parole Board's parole regulations, policies, and
practices, plaintiff had served the minimum sentence, which represents
the period that an inmate needed to serve to satisfy the inmate's
"accountability for the offense" itself.

21.   The Defendants 2000 Guidelines, on the other hand, do not
treat an inmates' "minimum sentence" as satisfying, offense
accountability.  Instead, the Defendants automatically add to parole
eligibility a period of months that an inmate presumptively
must serve before being considered suited for parole.

22.   Furthermore, in explaining the basis for denying
plaintiff's request for parole, the Defendants or their predecessors or
designees have relied upon bases that are inconsistent with the Parole
Board's regulations, guidelines, policies, and practices.

23.   As set forth below, when the Defendants applied the
Commission's 2000 Guidelines to deny plaintiff's request for parole on
the ground that they do not believe plaintiff has served enough time

to address offense accountability, they significantly increased risk that plaintiff would serve a longer period of incarceration than he would have had they applied the Parole Board's regulations, guidelines, policies, and practices, under which plaintiff satisfied the offense accountability after serving 302 months, in addition to the 36 months served as a set-off to the top of an arbitrarily established guideline range of 334 months.   Defendants exacerbated the problem by giving plaintiff another set-off beyond the 334 months established under the Defendant's rules.   As a result, the Defendants acted in violation of the Ex Post Facto Clause of Article 1, Section 9, the Fifth and Fourteenth Amendments of the United States Constitution and federal law.

**Regulatory Framework For Parole Decisions For D.C. Code Inmates at the Time of Plaintiff's Conviction and Sentencing**

24.   At the time that Plaintiff committed the crimes for which he is currently incarcerated, and at the time he served the majority (eighteen years), the Parole Board administered their parole hearings and proceedings for D.C. Code violators in the custody of the District of Columbia.

25.   Where D.C. Code offenders were in the custody of the United States Government, the Commission administered their parole hearings, but in such circumstances, the Commission was required to apply the Parole Board's regulations, guidelines, policies, and practices which were found by this Court to have the force and effect of law.

26.   Under the Parole Board's statutes, guidelines, rules, policies, practices, and customs, the "minimum sentence" for a crime, i.e., the period that an inmate must serve before he or she is

eligible for parole, satisfied the inmate's accountability for the offenses of conviction.

27.  In conducting parole hearings and making parole determinations, the Parole Board applied mandatory guidelines, many of which were codified as municipal regulations, that carefully prescribed the method and criteria that the Parole Board used to render decisions on parole requests. As its guide for determining whether an incarcerated individual would be paroled or re-paroled, the Board used the criteria set forth in the guidelines.

28.  At the time plaintiff committed the crimes for which he is currently incarcerated and at the time the plaintiff was sentenced, the Parole Board made parole decisions for D.C. Code offenders using guidelines it adopted in July 1972 under Title 9 and published as "Special Edition" D.C. Rules and Regulations.

29.  In 1987 the Parole Board made parole decisions using mandatory guidelines it adopted in 1985 and published in the District of Columbia Municipal Regulations in 1987 (the "1987 Guidelines"). Further, in 1991, to ensure consistent and equitable application of the 1987 Guidelines and other parole regulations, the Parole Board adopted a Policy Guideline defining terms used in the 1987 Guidelines (the "1991 Guideline"). The 1991 Policy Guideline applied to all requests for parole heard by the Parole Board.

30.  The 1987 Guidelines required the Parole Board to calculate a Salient Factor Score ("SFS") for a prisoner. Based on a parole applicants SFS, the Parole Board then calculated a "total point score," using pre and post incarceration factors, on which it based its decision to grant or deny parole. In "unusual circumstances," when mitigating and/or countervailing factors

6

applied, the Parole Board could depart from action indicated by an
inmate's total point score.

31.  In the case of an initial parole hearing, the 1987
Guidelines state that:

> After determining an adult parole candidate's
> SFS score and after applying the pre and post
> incarceration factors to arrive at a total
> point score pursuant to Section 204 and Appendix
> 2-1, the Board shall take one (1) of the
> following actions:
>
> (a) IF POINTS=0:  Parole shall be granted at
>                   initial hearing with low
>                   level
>                   of supervision required;
>
> (b) IF POINTS=1:  Parole shall be granted at
>                   initial hearing with high
>                   level
>                   of supervision required;
>
> (c)  IF POINTS=2: Parole shall be granted at
>                   initial hearing with highest
>                   level of supervision required;
>                   or
>
> (d) IF POINTS=3-5:Parole shall be denied at
>                   initial hearing and rehearing
>                   scheduled.

32.  In the case of a parole rehearing, the 1987
Guidelines state that:

> In determining whether, to release on parole an
> adult or a youth offender appearing before the
> Board at a parole rehearing, the Board shall
> take the total point score from the initial
> hearing and adjust that score according to the
> institutional record of the candidate since the
> last rehearing pursuant to Appendix 2-2.  The
> Board shall take one (1) of the following
> actions:
>
> (a) IF POINTS=0-3: Parole shall be granted
>                    at this rehearing with
>                    highest level of super
>                    vision required; or

(b) IF POINTS=4-5: Parole shall be denied and
a rehearing date scheduled.

33.   The Parole Board is directed by the 1987 Guidelines to grant parole to an adult offender at a parole rehearing if the final adjusted score is less than four, except in "unusual circumstances."

34.   The manner in which the "institutional record of the candidate" is used to adjust the total point score from the initial hearing, as required by 28 D.C.M.R. Section 204.21, is also subject to precise guidelines adopted by the Parole Board.  The adjustment is done via "point grid" in Appendices 2-1 and 2-2 of Title 28 of the District of Columbia Municipal Regulations.  Appendix 2-1 is used to calculate an inmate's SFS and total point at the initial parole hearing, and Appendix 2-2 is used to calculate an inmate's SFS and total point score at a parole rehearing.

35.   Pursuant to Appendices 2-1 and 2-2 of the Parole Board Guidelines, in parole hearings, one point can be added to an inmates total score for "negative institutional behavior."  In his thirty 30) years of imprisonment, however, plaintiff only received nine (9) Disciplinary Reports, all of a minor nature, and has not received a Report in over Twenty (20) years.  Note; Under 28 DCMR a Disciplinary Report cannot be used adversely against an inmate when that Report is beyond three (3) years old.

36.   Pursuant to Appendices 2-1 and 2-2, in parole hearings, one point can be subtracted from an inmate's total point score for "program Achievement" and two (2) points subtracted for " superior program achievement" (referred to in the 1991 Policy Guideline as "Superior Program or work assignment achievement").  Superior program achievement means program achievement that is beyond the level expected

8

that the prisoner might achieve ordinarily.  The Commission in its
discretion may, grant more than a two (2) point deduction in the most
clearly exceptional cases.

     37.  Section VI (A)(2)(b) of the 1991 Policy Guideline
define "sustained program or work assignment achievement" for
purposes of Appendix 2-1 as:

> In Initial Parole Consideration cases, the
> following accomplishments shall ordinarily be
> considered as sustained program or work assignment
> achievement during the period of incarceration.
>
> (1)  Successful completion of one or two
> educational programs or vocational programs, or
> program levels, each of which enabled the
> offender to develop an academic or job-related
> skill, or enabled the offender to progress to a
> higher level of difficulty or skill in the
> program area.

     38.  Section VI(A)(2)(b) of the 1991 Policy Guideline defines
"sustained program or work assignment" for the purposes of
Appendix 2-2: "In Parole Reconsideration cases, the accomplishments set
forth in Section VI-A-2(a) of this policy shall ordinarily be considered
as sustained program or work assignment achievement where completion
occurred since the preceding consideration for release on the sentence."

     39.  The "negative institutional behavior" and "program
achievement factors correspond to two findings required by
Appendices 2-1 and 2-2:  "Has this offender committed serious
infractions (adjudication under Department of Corrections due process
procedures)?" and "Has this offender demonstrated sustained achievement
in the area of prison programs, industries or work assignments during
this period of incarceration?"

     40.  As noted above, the Parole Board may depart from the
results dictated by Sections 204.19 and 204.21 only in "unusual

circumstances," and when particular procedures are followed: Any parole release decision falling outside the numerically determined guideline should be explained by reference to specific aggravating or mitigating factors as stated in Appendices 2-1 and 2-2. Section 204.22 of the District of Columbia Municipal Regulations provide that:

> The Board may, "in unusual circumstances, waive SFS and pre and post incarceration factors [which comprise the total point score] set forth in this chapter to grant or deny parole to a candidate. In that case, the Board shall specify in writing those factors, which it used to depart from the strict application of the provisions of this chapter.

41. In the 1991 Policy Guideline, the Parole Board further defined the scope of its authority to deny parole for unusual circumstances when a point score indicates that parole should be granted. Section VI (C) of the 1991 Policy Guideline, titled "Factors Countervailing A Recommendation To Grant Parole," lists and defines the following to constitute "unusual circumstances" countervailing a grant of parole:

> a. Repeated failure under parole supervision;
>
> b. Ongoing criminal behavior;
>
> c. Lengthy history of criminally related alcohol abuse;
>
> d. History of repetitive sophisticated criminal behavior;
>
> e. Unusually extensive or serious prior record;
>
> f. Instant offense involved unusual cruelty to victims, which applied where the offense involved physical, mental, or emotional abuse beyond the degree needed to sustain a conviction on the instant offense or especially vulnerable victims such as children or elderly persons; and,

g.   Repeated or extremely serious negative institutional behavior.

## The Parole Regulations Used At Plaintiff's Parole Hearing and Parole Rehearing

42.   As noted above, the Revitalization Act abolished the Parole Board and directed the Commission to conduct parole hearings for District of Columbia offenders according to the parole laws, customs and regulations of the District of Columbia.

43.   After the Commission assumed responsibility for parole hearings for D.C. Code offenders, the Commission adopted the 2000 Guidelines and determined that these guidelines would apply to any D.C. Code offender that had not received an initial parole hearing as of August 5, 1998.

44.   Unlike the Parole Board Guidelines, practices, policies, and customs, the Commission's 2000 Guidelines and parole eligibility criteria do not consider the completion of a prisoner's "minimum sentence" as satisfying accountability.  Instead, the Commission and its designees have repeatedly denied D.C. inmate's requests for parole, including those of plaintiff, on the ground that they believe plaintiff has not served enough time for his offenses .

45.   To account for the nature and circumstances of parole applicant's offenses, and the history and characteristics of the prisoners, the 2000 Guidelines contain certain instructions for the rating of certain offenses.  Chapter 1 through 12, Section 2.20 of the Commission's Rules and Procedures comprise the Commission's Offense Severity Index.

46.   Like the 1987 Guideline, the 2000 Guidelines require the Commission to determine a Salient Factor Score ("SFS") for each parole applicant, which is based upon factors such as prior convic-

11

tions/adjudications, prior commitments of more than 30 days, age at current offense/prior commitments, recent commitment free period, probation/parole/confinement/escape status at the time of the current offense, and the age of the offender.  The Commission Guidelines also state that "the Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond." Under the Commission Guidelines, the SFS becomes part of a Base Point Score ("EPS") which is comprised of three categories in which point are assigned according to the following factors:

> Category I – Risk of Recidivism (Based on the Salient Factor Score)
>
> Category II- Current or prior violence
>
> Category III Death of a victim or high level of violence

(Although the Parole Board guidelines also require the formulation of an SFS for parole applicants, the Parole Board used the SFS only to determine the risk of recidivism on the part of the parole applicant. The Parole Board did not use the SFS as the basis for an increase in the period of imprisonment the inmate had to serve to demonstrate parole suitability.)

47.  The Commission's method of parole eligibility determination is to apply the BPS (the combined points assigned from Category I – III) to the appropriate category of offense behavior, then to add the corresponding number of months to a parole applicants minimum term/sentence (the number of months an inmate must serve before becoming eligible for parole), based on the offense severity index.

The months added to the parole applicant's minimum sentence based on the BPS are considered the "Base Guideline Range" and are considered by the Commission and its designees as the additional time of imprisonment the inmate must serve above the months required for parole eligibility to be qualified for parole.

48.    Pursuant to Section 2.80 (e)(1) of the Commission's Guidelines, the Commission "shall assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs, industries, or work assignments while under confinement for the current offense. "Under this structure, the Commission has the sole discretion of determining whether the parole applicant's work and program achievements are to be considered "ordinary" or "superior". Per the Commission's Guidelines, "if superior program achievement is found, the award for superior program achievement shall be one third of the number of months during which the prisoner demonstrated superior program achievement." The Parole Board Guidelines, however, use an objective standard to reward "Sustained Program Achievement or Work Assignment Achievement" and an award is granted for what the Commission might consider "ordinary" achievement .

49.    The "Total Guideline Range" (the ultimate determination of time to be served to establish presumptive suitability for parole pursuant to the Commission's guideline structure) is reached by adding: the minimum of the base point guideline range, the number of months required by the prisoner's parole eligibility date, and the minimum of the guideline range for disciplinary infractions, if applicable. Then subtract the award for superior program achievement, if applicable.

50.    Pursuant to section 2.80 (a)(4) of the Commission's Guidelines regarding B.C. Code offenders, the Commission's Guidelines apply to all prisoners who are given initial parole hearings on or after August 5, 1998.  For prisoners whose initial hearings were held prior to August 5, 1998, the Commission shall render its decisions by reference the guidelines applied by the D.C. Board of Parole."  Thus, regardless of the guidelines, rules, practices and customs in effect when an offender committed his or her crime and was sentenced, the offender's fitness for parole may hinge arbitrarily upon the date of his or her initial parole hearing.

**B.        Plaintiff's Parole Hearings and Defendant's
            Use of the 2000 Guidelines**

51.    When plaintiff became eligible for parole in April 2003, and had his initial parole hearing November 2002, Defendants or their predecessors assigned a hearing examiner, Charles Lyons, to conduct plaintiff's initial parole hearing.

52.    Despite the fact that plaintiff had been convicted and sentenced at the time the Parole Board applied it's Title 9 Parole Regulations (DCRR Title 9, July 24, 1972 and February 15, 1985 at 32 OCR 940 and 32 DCR 1511), and during the time the Parole Board changed to the mandatory 1987 Guidelines, Defendants and their predecessors instructed Hearing Examiner Lyons to use the Defendant's 2000 Guidelines in evaluating plaintiff's request for parole.

53.    Under the 2000 Guidelines, plaintiff's Salient Factor Score at his initial hearing and at his rehearing was nine (9) and his Base Point Score was five (5).  Plaintiff's SFS was based on his having no prior convictions, no prior commitments of 30 days, his age at

the time of the offense, and the fact that plaintiff was not on parole
at the time of the offense.  Plaintiff's SFS placed him in the "Very
Good" risk category.  Plaintiff's Base Point Score was based upon the
violence of the offense and the death of the victims.  Plaintiff's Base
Point Score under the Federal 2000 Guidelines increased the time of
incarceration plaintiff was expected to serve from the minimum term
("accountability for the crimes under the 1987 Guidelines"), to an
additional 18-24 months, indicating that plaintiff should serve between
304 (his minimum term) and 334 months (the additional months added by
the 2000 Guidelines).

54.  At his initial hearing, despite the fact that the
examiner awarded plaintiff 48 months for Superior Programming (an
actual ward of 16 months), the Defendant's instructed Mr. Lyons under
it's 2000 Guidelines to add an additional 18 months to the Guideline
Range for disciplinary infractions (all Minor), that were more that 15
years old, and were barred from adverse use after 3 years under the
1987 Guidelines, rules, practices, regulations and customs.
Consequently, plaintiff was denied parole at the initial hearing, and a
3-year rehearing date was set.  The Notice of Action issued to
plaintiff by the Defendants indicated that the decision was not
appealable.

55.  In October 2005, Defendants conducted plaintiff's
rehearing pursuant to the provisions of the 2000 Guidelines.

56.  Although plaintiff continued to program (Newport
Business Institute) and work assignment (UNICOR), Defendants did
not give plaintiff credit for either the programming or the work
assignment performance.

57.   Furthermore, despite the fact that plaintiff served the arbitrary 334 (range of months), and Defendant's Guidelines indicated that Plaintiff should be paroled, Defendant's ignored it's own guidelines and denied plaintiff's request for parole, and set a rehearing date of October 2008, in spite of the recommendation of the hearing examiner for a Presumptive Parole Date.

58.   Defendant's alleged basis for denying plaintiff's request of parole at this October 2005 rehearing, are not recognizable under the 1987 Guidelines, and undermine the fundamental parole scheme of the Parole Board guidelines.

59.   In reaching each of their determinations  regarding plaintiff's request for parole, the Defendants and their designees have relied upon the belief that plaintiff has not served sufficient time to satisfy accountability for the offenses he committed, based in part on the erroneous premise that plaintiff knowingly killed a law enforcement official.   Thus, because the Defendants and their designees have felt plaintiff needed to serve a longer period of incarceration to satisfy accountability for the offenses he committed, they have ignored the objective factors of its own 2000 Guideline which indicated plaintiff should be paroled, they have completely disregarded core factors of the 1987 Guidelines that set accountability for the crime at the minimum term or parole eligible.

60. Despite the fact that plaintiff was eligible for parole in November 2002 and had an exemplary prison record, plaintiff will have served 72 additional months, for a crime the court intended for plaintiff to serve 26 years, instead of the 32 years designated by the defendants.

and indirect have resulted in the significant risk of prolonging plaintiff's incarceration, and therefore constitutes an Ex Post Facto violation of the United States Constitution.

Count 1:   The Defendants Violated the Ex Post Facto Clause of the United States Constitution

66.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 66 as if fully set forth herein.

67.   The retroactive application of a new law, resulting in a significant risk of prolonging an inmate's sentence, than what would have resulted under the guidelines in effect when the inmate was convicted, constitutes a violation of the Ex Post Facto Clause of the United States Constitution.

68.   Prisoners are entitled to know the range of punishments available at the time of sentencing, and during the adjudication of their cases.  The Ex Post Facto Clause assures that individuals are given fair warning of what actions will be punished and the degree to which they will be punished.

69.   Pursuant to the provisions of the 1987 Guidelines, which governed parole decisions during the majority of plaintiff's incarceration, and which constrained parole decisions to a formula that guided official discretion, plaintiff's point score of "0" indicated that plaintiff should have been granted parole at his initial and parole rehearing, subject to a low level of supervision.

70.   Furthermore, per Section IV (C)(7) of the Parole Board's 1991 policy guidelines, none of the "unusual circumstances" identified by the Parole Board as a basis for departing from the guidelines indicated a course of action other than the granting of plaintiff's parole request.

18

71.   In addition, Section 204.8 of Title 28 D.C.M.R. state in
relevant part, "an aggregate term of imprisonment, whether concurrent
or consecutive is treated as a single commitment", one of the premises
for 204.8 is to ensure that after an offender served the aggregate
term, accountability for the entire crime was met, and could be
adjudicated on the basis of a single commitment.

72.   Under the 2000 Guidelines, Defendants their predecessors,
and/or their designees denied plaintiff's requests for parole and - ',g
significantly increased the risk that his incarceration would be prolonged
and he would serve longer that he would have had the Board of Parole's
Guidelines been applied by:  1) immediately increasing the period the
Parole Board considered as satisfying his offense accountability, i.e.,
plaintiff's parole eligibility date, by 18-24 months, 2)  failing to give
plaintiff credit for his program and work achievement between his initial
and parole rehearing, and 3)de-aggregation of plaintiff's aggregate term
for the purpose of double punishing plaintiff for factors already taken
into account by Parole Board rules, regulations, practices and customs.
These factors and < : actions by the Defendants significantly increased the
risk that plaintiff would be incarcerated longer, and were in violation of
the Ex Post Facto Clause of the United States Constitution.

73.   Furthermore, by ignoring the Parole Board's policy and
practice of considering plaintiff's parole eligibility date, November
2002, as satisfying plaintiff's accountability for his offense, the
Defendants have necessarily significantly increased the
risk that plaintiff will be incarcerated longer than^ he would have

been had the Parole Board's regulations and practices been applied.

Count II:   Violation of Plaintiff's Fifth Amendment and
            Fourteenth Amendment Due Process Rights

                 The Commission' ^Denial of Plaintiff's Program
                 Achievement and Work Achievement Violated His

                          Due Process Rights.

        74.   Plaintiff repeats and re-alleges the allegations set forth
in paragraphs 1 through 73 as if fully set forth herein.

        75.   Plaintiff has a constitutionally protected interest in
receiving credit for his program and work achievement as provided for
under the 1987 Guidelines, the 1991 Policy Guideline, and the Commission's
own 2000 Guidelines.  The Defendants did not credit plaintiff for such
achievement for the period between plaintiff's initial and parole
rehearing, November 2002 and October 2005, respectively.

        76.   As a result, Defendants denied plaintiff his consti-
tution rights to a fair review process.

                          Relief Requested

        Wherefore, Plaintiff Charles A. Phillips respectfully
requests that this Court:

        1.   require the Defendants to apply the Parole Board's guide-
lines, practices, and procedures, including, but not limited to the 1987
Guidelines and the 1991 Policy Guidelines to plaintiff Charles A.
Phillips;

        2.   deem that plaintiff's service of his sentence to his
parole eligibility date satisfies the offense accountability for
parole consideration purposes;

        3.   order the Defendants to reconsider the decision rendered on
Plaintiff's applications for parole based on the existing record

in a manner consistent with the D.C. Parole Board's 1987 Guidelines, 1991 Policy Guideline, and policies, federal regulations, the Constitution, and all other requirements of law;

       4.  award plaintiff the expense of litigation; and

       5.  grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Charles A. Phillips, pro se
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

21

in a manner consistent with the D.C. Parole Board's 1987 Guidelines, 1991 Policy Guideline, and policies, federal regulations, the Constitution, and all other requirements of law;

      4.   award plaintiff the expense of litigation; and

      5.   grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Charles A. Phillips, pro se
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

21