# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TONY R. SELLMON, et al.,**            ) | |
|                             ) | |
|         **Plaintiffs,**         ) | |
|                             ) | |
|     **v.**                          ) | **Civil Action No. 06-1650(ESH)** |
|                             ) | |
| **EDWARD F. REILLY, Jr.,**           ) | |
| **Chairman of the United**             ) | |
| **States Parole Commission,**         ) | |
| **et al.,**                           ) | |
|                             ) | |
|         **Defendants.**       ) | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADING AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(h) Edward F. Reilly, Jr., Chairman, United States Parole Commission ("USPC"), Cranston J. Mitchell, Deborah Spagnoli, Patricia Cushwa and Isaac Fulwood, Jr., Commissioners, USPC, in their official capacities (collectively "Defendants") hereby submit this Statement of Material Facts in support of Defendants' Motion for Judgment on the Pleadings and in opposition to Plaintiffs' Motion for Summary Judgment.

Because the salient material facts regarding Plaintiffs' claims uniquely involve each individual Plaintiff's criminal background and parole history, Defendants separately present the material facts for each individual Plaintiff.

Each Plaintiff is unique and presents an individual criminal background, and the USPC therefore considered each individually for parole. To the extent that they can be categorized together in a group, Plaintiffs are violent D.C. Code offenders convicted of multiple crimes such as murder, assault, manslaughter, and rape, who have been denied parole by the USPC.

Several of the Plaintiffs committed their crimes before the 1987 guidelines were enacted as regulations by the Board. Others committed their crimes after the adoption of 1987 guidelines, but prior to the adoption of the informal policy guidelines, and several Plaintiffs committed their crimes after the D.C. Board had enacted the 1987 guidelines and adopted the informal policy guidelines. In addition to the differences in their criminal backgrounds, Plaintiffs' cases present different parole considerations. The USPC considered two of the Plaintiffs under the Board's 1987 guidelines and six of the Plaintiffs under the 2000 guidelines. In all Plaintiffs' cases, the USPC assessed each Plaintiffs' case individually and exercised its exercised its discretion based upon the unique factors presented in each Plaintiffs' case. Accordingly, because several of the Plaintiffs present categories of cases that can be grouped together, Defendants present the material facts for Plaintiffs in Categories.

Defendants assume that the Court will take judicial notice of the statutes, regulations, and policies of the applicable parole authority. Defendants have therefore referenced those authorities in their memorandum of law and have attached documentation relating to such to their memorandum of law, as a courtesy to the Court.

### General Material Statement of Facts

1. Plaintiffs are various violent D.C. Code offenders convicted of crimes such as murder, assault, manslaughter, and rape, in violation of the D.C. Code committed starting in 1968.

2. The USPC has conducted numerous parole hearings in Plaintiffs' cases after they became eligible for parole, sometimes considering the D.C. Board of Paroles 1987 guidelines ("1987 guidelines") and sometimes considering the USPC's guidelines for D.C. Code offenders, in their various incarnations.

2

3.   In all cases in which the USPC considered Plaintiffs for parole, it found them to be eligible at their minimum terms, as required by the D.C. parole statute, D.C. Code § 24-404.

4.   In all cases in which the USPC considered Plaintiffs for parole, it exercised  its discretion to determine Plaintiffs' suitability for parole under the D.C. Code parole statute, D.C. Code § 24-404.

### Plaintiffs Gambrell and Eason

5.   Plaintiffs Gambrell and Eason were both considered by the USPC under the 1987 guidelines of the D.C. Board of Parole.

Plaintiff Gambrell

6.   Plaintiff Gambrell is currently serving an aggregate life prison sentence for his convictions for rape and assault with a deadly weapon in Superior Court Case No. F-1956-68 and second degree murder while armed in Superior Court Case No. F-1989-89.  *Ex.* A-1, sentence computation.

7.   Plaintiff Gambrell committed the 1968 offenses with another co-conspirator by robbing two victims, raping a female victim, and stealing one of the victims' car.  *Ex.* A-2, presentence report at 2.  For this conduct, Plaintiff Gambrell received a 18-year D.C. Code sentence.  *Ex.* A-1.

8.   Plaintiff Gambrell was released on parole from that sentence on June 20, 1973.  *Ex.* A-3, parole certificate.

9.   While on parole, Plaintiff Gambrell committed bank robbery in the Eastern District of Michigan, and he was convicted of that offense and received a 35-year sentence.  *Ex.* A-4, Bureau of Prisons letter.

3

10.  In response to Gambrell's bank robbery offense, the D.C. Board of Parole issued a violator warrant for his arrest.  *Ex*. A-5, Board order.

11.  The violation warrant was subsequently executed, and Plaintiff Gambrell received a parole revocation hearing before the U.S. Board of Parole.  *Ex*. A-6. hearing summary.  Plaintiff Gambrell was then incarcerated at the U.S. Penitentiary in Lewisburg, Pennsylvania, and he came under the U.S. Board of Parole's jurisdiction.

12.  Following this hearing, the Board revoked Gambrell's D.C. parole.  *Ex*. A-7.

13.  Plaintiff Gambrell was then returned to D.C. custody.  He was released on parole by the D.C. Board on June 6, 1985, with a sentence expiration date of December 22, 2002.  *Ex*. A-8, parole certificate.

14.  On May 18, 1989, the D.C. Board revoked Gambrell's parole because he had failed to respond to supervision and had outstanding criminal charges against him.  *Ex*. A-9, D.C. Board order and hearing summary.

15.  Gambrell was subsequently convicted of second degree murder after he pleaded guilty.  He committed that offense on February 13, 1989 by shooting an armored express company employee with a .22 caliber automatic pistol twice.  *Ex*. A-10, presentence report.

16.  On January 3, 1991, the Honorable then-Superior Court judge Henry Kennedy imposed a life prison sentence.  *Ex*. A-11.  His outstanding sentences were then aggregated into a single life prison sentence.

17.  In early 1998, Gambrell was considered for parole from his aggregate life prison sentence by the D.C. Board, which denied him parole and continued him to a reconsideration hearing in 1999.  *Ex*. A-12.

18. On December 14, 1999, Gambrell appeared before a USPC hearing examiner for his rehearing. *Ex*. A-13, USPC Hearing Summary. At this hearing, the USPC applied the 1987 guidelines.

19. Following the 1999 hearing, the USPC denied Gambrell parole and continued him to rehearing in August 2003, a decision above his parole and rehearing guidelines. *Ex*. A-14, USPC Notice of Action.

20. Gambrell received his five-year reconsideration on July 1, 2003. *Ex*. A-15, USPC hearing summary. At this hearing, the USPC continued to apply the 187 guidelines to his case. *Id.* The presiding hearing examiner determined that, even though the guidelines suggested parole be granted and that he receive a rehearing after 12 months, a continued departure was warranted based upon the risk he posed, as reflected by his extensive and violent criminal conduct committed under supervision. *Id.* at 2.

21. The USPC agreed with the hearing examiner's assessment, denied Gambrell parole, and continued him to a rehearing in July 2006. *Ex*. A-16.

22. The USPC heard Plaintiff Gambrell for his most recent hearing on July 24, 2007. *Ex*. A-17. USPC hearing summary.

23. Following the 2007 hearing, the USPC continued Gambrell to be a more serious risk than indicated by the 1987 guidelines. *Ex*. A-18, USPC Notice of Action. The USPC denied him parole and ordered that he receive a rehearing in July 2007, after the service of an addition 60 months. *Id.* The USPC's officially stated reasons for its reason above the guidelines were that Gambrell continued to pose a risk to the public safety because of his propensity to commit violent crimes while under supervision and the escalating nature of his criminal conduct. *Id.*

5

Plaintiff Eason

24.  Plaintiff Eason is also serving a life prison sentence for his conviction for second degree murder in Superior Court Case No. F-14566-87.  *Ex.* B-1, sentence computation and Exhibit B-2, judgment and commitment order.

25.  Eason committed his offense in May 1987 by stealing a watch from a victim and then intentionally shooting the victim as the victim lay on the ground.  *Ex.* B-3, presentence report.

26.  Eason pleaded guilty to second degree murder, and on November 9, 1988, the Honorable then-Superior court Judge Gladys Kessler imposed the life sentence.  *Ex.* B-2.

27. Eason became eligible for parole release from his life sentence on September 8, 1998.  *Ex.* B-1 at 2.

28.  On February 20, 1998, Eason appeared before the D.C. Board of Parole for his initial parole hearing.  *Ex.* B-4, Board hearing summary.

29.  Following the 1998 hearing, the Board denied Eason parole and continued him to a rehearing by March 18, 1999.  *Ex.* B-5.  This was a decision within the 1987 guidelines.

30.  On March 30, 1999, Eason appeared before the USPC for his reconsideration hearing.  *Ex.* B-6, USPC Hearing Summary.  At this hearing, the USPC continued to apply the 1987 guidelines.  Although the 1987 guidelines suggested that parole be granted, the presiding hearing examiner found Eason to be a more serious parole risk than indicated by the parole because of his lengthy offense history of violent and assaultive offenses reflected in his presentence report, Exhibit B-3.  *Ex.* A-6 at 3.

31.  On April 23, 1999, the USPC denied Eason parole, a decision above the 1987 guidelines.  *Ex.* B-7, USPC Notice of Action.  In support of its above-the-guidelines decision, the

USPC provided the following reasons:

> You are a more serious risk than indicated by your total point score in that your prior history reflects convictions for assault and battery in 1983; robbery in 1985; robbery with a deadly weapon and assault with intent to murder in 1987. Moreover, while on probation from the 1987 conviction, you committed the instant offense involving murder while armed, receiving a life sentence.

*Id.* The USPC continued Eason to a rehearing in March 2004. *Id.*

32. At Eason's rehearing on March 2, 2004, the presiding hearing examiner considered Eason's case for parole, and that examiner recommended that petitioner be paroled effective June 3, 2004. *Ex.* B-8, USPC Hearing Summary. Upon administrative review, another hearing examiner disagreed with that recommendation, finding that the premeditated nature of Eason's offense was serious. *Id.* at 3.

33. The USPC adopted the second examiner's recommendation, finding that, because Eason's offense was planned and carried out as an act of revenge, Eason needed a longer period of incarceration. *Ex.* B-9, USPC Notice of Action. The USPC scheduled Plaintiff Eason for a rehearing in March 2007. *Id.*

34. Plaintiff Eason received his most recent hearing before the USPC on March 13, 2007. *Ex.* B-10. The USPC continued to apply the 1987 guidelines of the D.C. Board of Parole to Eason's case. At the conclusion of this hearing, the presiding hearing examiner again recommended parole. *Id.* at 3. However, upon administrative review, the executive reviewer found that the facts of Eason's case extraordinary in that Eason committed a premeditated murder as an act of revenge. *Id.* at 3-4. That reviewer recommended a denial of parole and a rehearing after the service of an additional 12 months. *Id.*

35.  On March 23, 2007, the USPC denied parole and continued Eason to a 12-month reconsideration hearing.  *Ex*. B-11, USPC Notice of Action.

**Plaintiffs Phillips and West-El**

36.  Plaintiffs Phillips and West-El both committed their crimes prior to the official publication of the 1987 guidelines, and the USPC heard them utilizing the 2000 guidelines.

Plaintiff Phillips

37.  Plaintiff Phillips is currently serving an aggregate life prison sentence for his convictions for assault with a deadly weapon and second degree murder in Superior Court Case No. 44975-77 and second degree murder while armed, carrying a pistol without a license and unlawful entry in Superior Court Case No. 113774-77.  *Ex*. C-1, sentence computation and Exhibits C-2 and C-3, judgment and commitment orders.

38.  Phillips committed one of the murders on May 28, 1977 by killing an acquaintance of his ex-girlfriend with a butcher knife.  *Ex*. C-4, presentence report.  He committed the other murder by shooting a police officer inside his ex-girlfriend's apartment.  *Ex*. C-5, presentence report.

39.  For his criminal conduct, Phillips received two consecutive life sentences, with a minimum term of 30 years, 66 months..  *Exs*. C-2 and C-3.

40.  Phillips became eligible for parole (with good time credits) on February 8, 2003.  *Ex*. C-1 at 3.

41.  Phillips applied for parole on July 15, 2002.  *Ex*. C-6, parole application.

42.  Phillips received his initial parole hearing with a USPC hearing examiner on November 19, 2002.  *Ex*. C-7, hearing summary.  At this hearing, the presiding hearing examiner

8

noted that Phillips had had nine disciplinary reports and had programmed well during a portion of his incarceration. *Id.* at 1-2. The examiner applied the 2000 guidelines to Phillips case, granted him an award for program achievement, and determined that his total guideline range was 306-342 months to be served before a presumptive release. *Id.* at 2. The presiding hearing examiner recommended a rehearing after the service of 36 months, a decision within Phillips' guidelines. *Id.* at 3.

43. The USPC's Executive Hearing Examiner administratively reviewed Phillips' case. *Ex*. C-7 at 3. This examiner agreed with a parole denial and the recommendation continuing Phillips to a three-year reconsideration hearing but disagreed with the examiner's assessment of Phillips' parole guidelines. *Id.*

44. On December 13, 2002, the USPC denied Phillips parole and continued him to a three-year reconsideration hearing. *Ex*. C-8, notice of action. The USPC found Phillips' guidelines to be 304-334 months and determined that he had been in custody for a total of 300 months as of the hearing. *Id.* Because the USPC's decision was a decision above the 2000 guidelines, the USPC provided the following reasons:

> After a consideration of all factors and information presented, a decision above the Total Guideline Range is warranted because you are a more serious risk than indicated by your Base Point Score of 5. On May 28, 1977, you stabbed an individual to death after luring him to your ex-girlfriend's apartment. You the [sic] seriously assaulted her by stabbing her in the left side and cutting her on the wrist. After being arrested on the offense and released from custody, you broke into your ex-girlfriend's apartment on December 22, 1977, confronted her and her companion and shot her companion to death after an altercation. You Base Point Score of 5 reflects 2 point assessed in Category II for violence and 3 point in Category II for death of a victim. However, the addition of these points capture only the murder which occurred on May 28, 1977; stabbing your ex-girlfriend on May 28, 1977, breaking and entering her apartment on December 22, 1977 and murdering her companion on the same date are not reflected in the Base Point Score. The Commission at your next hearing will consider the risk you pose to the community

9

based on your homicidal acts not captured in the Base Point Score.

*Id.* As in the previous Plaintiffs' cases, in exceeding the guidelines, the USPC thus expressed its desire to protect the public safety in making this above-the-guidelines decision.

45. Phillips received his rehearing on October 27, 2005 at the U.S. Penitentiary where he is incarcerated. *Ex*. C-9, hearing summary. At this consideration, the presiding hearing examiner did not find any institutional misconduct or superior program achievement. *Id.* at 1-2. The presiding hearing examiner did not modify Phillips' guidelines, but the examiner recommended a presumptive after the service of 370 months, still a decision above the 2000 guidelines. *Id.* On review, the Executive Reviewer disagreed with a parole grant at this consideration. *Id.* According to the Executive Reviewer, Phillips still remained a more serious risk than indicated by the 2000 guidelines because his assaultive and murder conduct was not adequately captured in the guidelines. *Id.*

46. On November 18, 2005, the USPC adopted the Executive Reviewer's recommendation, denied Phillips parole, and continued him to another three-year reconsideration hearing. *Ex*. C-10, notice of action. The USPC provided substantially similar reasons for its departure at this consideration as before. *Id.*

Plaintiff West-El

47. Plaintiff West-El is incarcerated for attempted robbery while armed, first degree murder while armed, armed robbery, attempted robbery, and carrying a pistol without a license. *Ex*. D-1, sentence computation and Exhibit D-2, judgment and commitment order. He has a life sentence with a minimum term of 20 years. *Ex*. D-1.

10

48. West-El committed his offenses during a robbery on January 5, 1990. *Ex*. D-3, presentence report. West-El and several other individuals approached a pick-up truck that was stopped at a street light and announced that "it was a hold-up." *Id.* at 3. There were two female victims and one male victim in the truck. *Id.* The two female victims were harassed and molested by the group. *Id.* at 4. When the male victim attempted to stop this unlawful activity, West-El shot him. *Id.* West-El admitted shooting the victim and pleaded guilty to his offense of conviction. *Id.*; Exhibit D-2. West-El received an aggregate life prison sentence for this conviction. *Ex*. D-1 at 2.

49. West-El became eligible for parole on the aggregate sentence on January 5, 2003. *Ex*. D-1 at 2.

50. West-El received his initial parole hearing before a USPC hearing examiner on April 29, 2002. *Ex*. D-4, hearing summary. At this hearing, West-El disputed the factual background of his offense. He claimed that the incident was a drug deal that "went bad," but he admitted that he was individual who shot the victim. *Id.* at 1. The examiner discussed West-El's institutional adjustment with him. The examiner noted that West-El had several institutional misconduct reports including an assault on a correctional officer and threatening an officer in an incident where he stated in a loud and boisterous voice, "f*** that sh**, c**k a**, mother f***er ... I', going to kick your mother f***er a**." *Id.* at 2. The examiner recommended a denial of parole and a continuance to a five-year rehearing in April 2007, a decision within West-El's 287-315 month guideline range. *Id.* at 3.

51. Upon administrative review of West-El's case, another examiner agreed with the parole denial, but pursuant to the USPC's regulations, recommended a rehearing after four years.

11

*Ex*. D-5, addendum.

52. On May 29, 2002, the USPC denied West-El parole and continued West-El to a rehearing after 48 months. *Ex*. D-6, Notice of Action.

53. West-El received his rehearing on March 22, 2006. *Ex*. D-7, hearing summary. At this hearing, the presiding hearing examiner corrected West-El's guidelines to reflect the mandatory minimum nature of West-El's offense (as communicated to the USPC from the federal Bureau of Prisons), and the examiner recommended a reduction of 16 months from those guidelines for program achievement. *Id.* at 3.

54. On April 12, 2006, the USPC determined that West-El's guidelines were 284-312 months to be served, and noted as of the rehearing, West-El had only been in custody for 278 months. *Ex*. D-8, notice of action. The USPC denied West-El parole and ordered that he be paroled after the service of 312 months, a decision at the top of his new guideline range. *Id.*

55. Through this litigation, an ambiguity in the Commission's decision was brought to light. *Ex*. D-9, USPC legal memorandum. The USPC resolved this ambiguity by clarifying that it did indeed order West-El parole after the service of 312 month, which, including West-El's jail credit, is currently scheduled for January 5, 2009. *Ex*. D-10, USPC Order. The USPC is currently preparing an official notice of action to officially inform West-El of this action.

**Plaintiffs Sellmon and Martin**

56. Plaintiffs Sellmon and Martin committed their crimes after the D.C. Board of Parole published the 1987 guidelines but before the Board adopted the informal 1991 policy guidelines. The USPC considered them with the 2000 guidelines.

Plaintiff Sellmon

57.  Plaintiff Sellmon is serving a life prison sentence imposed in Superior Court Case No. F-3347-91 for his convictions for second degree murder while armed and possession of a firearm during a crime of violence.  *Ex*. E-1, sentence computation and Exhibit E-2, judgment and commitment order.

58.  Sellmon committed his crime of conviction by beating a prostitute about the head with a handgun.  *Ex*. E-3, presentence report.  Sellmon pleaded not guilty to the offense but was convicted.  He received an aggregate life prison sentence, with a minimum term of 15 years, for the offenses.  *Ex*. E-2.

59.  Plaintiff Sellmon became eligible for parole from that aggregate sentence on May 13, 2003.  *Ex*. E-1 at 2.

60.  Sellmon received his initial hearing with the USPC hearing officer on August 7, 2002.  *Ex*. E-4, hearing summary.  After applying the 2000 guidelines to Sellmon's case, the presiding hearing examiner determined that Sellmon's guideline range was 111-117 months to be served and recommended that Sellmon be paroled after the service of 136 months, a recommendation above the guidelines.  *Id.* at 2.  Upon administrative review, another hearing examiner disagreed with the guidelines computation and the recommendation to parole Sellmon. *Ex*. E-5, hearing summary addendum.  That examiner determined Sellmon's guideline range to be 154-160 months and recommended a three-year reconsideration hearing.  *Id.*

61.  The USPC adopted the second examiner's recommendation, denied parole, and ordered a three-year set off.  *Ex*. E-6, Notice of Action.  Because this was a decision above the 154-160 month guideline range, the USPC provided reasons for its decision.  *Id.*

13

62. Plaintiff Sellmon subsequently filed a petition for writ of habeas corpus in the Western District of Virginia, and following resolution of the matter, the USPC ordered a new initial parole hearing to reconsider Sellmon program achievement. *Ex*. E-7, USPC memorandum and Exhibit E-8, Notice of Action.

63. Sellmon received his new initial hearing on June 22, 2004. *Ex*. E-9, hearing summary. At the conclusion of this new initial hearing, the presiding hearing examiner recomputed Sellmon's guidelines as 104-110 months to be served and recommended a parole decision above the 2000 guidelines. *Id.* at 3. The administrative review at this consideration agreed with the new guidelines computation of 104-110 months to be served, but disagreed with the parole recommendation. *Id.* at 4. The USPC's Executive Hearing Examiner agreed with administrative reviewer's recommendation, and the case was forwarded to the USPC for an official Commissioner vote. *Id.* at 5.

64. On July 24, 2004, the USPC denied Sellmon parole and continued him to another three-year reconsideration to occur in August 2005. *Ex*. E-10, notice of action. Although the USPC considered Sellmon's request for program achievement, and in fact granted him an award of superior program achievement, the USPC determined that the brutality of Sellmon's crime warranted a departure from the guidelines. The USPC subsequently gave its reasons for the departure: "[A] decision above the Current Total Guideline Range is warranted because you brutally beat the female victim with a gun causing massive head trauma. The victim died as result of the injuries you inflicted. While you have programmed well, you continue to claim that you were the victim of a robbery or an attempted robbery is not supported by the evidence." *Ex*. E-10, corrected notice of action.

65. The USPC heard Plaintiff Sellmon for his three-year reconsideration hearing on August 5, 2005. *Ex.* E-12, hearing summary. The presiding examiner at this consideration found no change in Sellmon's guidelines and found no program achievement warranting a reduction in the guidelines, and the examiner recommended not granting Sellmon parole. *Id.* at 3.

66. On August 11, 2005, the USPC denied Sellmon parole and continued him to another three-year reconsideration hearing. *Ex.* E-13, notice of action. Because the USPC's determination was an above-the-guidelines decision, it provided the following reasons for its decision: "[A] decision above your new total guideline range is warranted because the murder that you committed while armed was extremely brutal, as evidenced by the massive trauma you inflicted on the victim." *Id.* He is scheduled for a reconsideration hearing in August 2008. *Id.*

Plaintiff Martin

67. Plaintiff Martin is in custody serving an aggregate sentence for several offenses committed in 1990. *Ex.* F-1, sentence computation and Exhibits F-2 and F-3, judgment and commitment orders.

68. Martin committed an intentional murder on April 20, 1990 by shooting a victim multiple times in the head. *Ex.* F-4, presentence report at 3-4. In the Fall of 1990, Martin committed numerous other crimes, including assault with intent to commit rape and possession of cocaine with intent to distribute. *Id.* at 4-5.

69. Martin was ultimately convicted of possession with intent to distribute cocaine and possession of a firearm in Superior Court Case No. F-13712-90 and manslaughter while armed in Superior Court Case No. F-4670-90. *Exs.* F-2 and F-3. He is currently serving an aggregate life sentence, with a 15-year minimum term for these convictions. *Ex.* F-1 at 3.

70.  Martin became eligible for parole on June 14, 2003.  *Ex*. F-1 at 3.

71.  Prior to Martin's parole eligibility date, Martin executed a parole application form, requesting parole consideration with the USPC.  *Ex*. F-5. Parole Application.

72.  Martin received his initial parole hearing before a USPC hearing examiner on January 21, 2003.  *Ex*. F-6, hearing summary.  At this hearing, the USPC applied the 2000 guidelines to Martin's case.  The presiding hearing examiner determined Martin's salient factor score and base point score under the guidelines, assessed the applicable guideline range for those computations, and determined a base guideline range.  *Id*. at 2.  The examiner awarded Martin 10 months of program achievement for completing a GED and other vocational programs and added 0-2 months to his total guideline range for an institutional infraction.  *Id.*  The examiner recommended finding a total guideline range of 182-202 months to be served and recommended a denial of parole and continuance to a three-year reconsideration hearing.  *Id.* at 2-3.

73.  On February 13, 2003, the USPC adopted the hearing examiner's recommendation and continued Martin to a three-year reconsideration hearing.  *Ex*. F-7, notice of action.  This was a decision within Martin's guidelines.

74.  On March 22, 2006, Martin appeared before another USPC hearing examiner for his three-year reconsideration hearing.  *Ex*. F-8, hearing summary.  This examiner assessed Plaintiff Martin's institutional adjustment and program achievement.  The examiner found that Martin had been active in programs since his last hearing with the USPC.  *Id.* at 2.  The examiner recommended granting Martin 13 months of program achievement for his accomplishments, and the examiner recommended a presumptive parole date after 189 months, a decision within Martin's new 179-199 month guideline range.  *Id.* at 3.

16

75.  Upon executive review, another examiner disagreed with presiding examiner's recommendation.  *Ex.* F-8 at 3-4.  The other examiner found Martin's homicide offense to be much more severe than indicated by his offense of conviction, and the examiner found that Martin had not untruthful in explaining his involvement in the offense to the USPC.  *Id.*  The examiner was also particularly troubled that, in a separate offense, Martin had received a conviction for possession of another weapon.  *Id.* at 4.  The examiner found that Martin was a serious parole risk, a more serious risk than the guidelines expressed he was.  *Id.*  Accordingly, the examiner recommended a denial of parole and a continuance to another three-year reconsideration hearing.  *Id.*

76.  The USPC ultimately denied Martin parole again and continued him to a three-year reconsideration hearing to occur in March 2009, adopting the executive reviewer's recommendation.  *Ex.* F-9, notice of action.  In making this decision, the USPC found that Martin's new guideline range was 179-199 months and found that a decision above the guidelines was warranted, stating:

> After consideration of all factors and information presented, a decision above the new total guideline range is warranted because you are a more serious risk than indicated by the guidelines.  You were involved in a shooting that resulted in the death of the victim. Although you stated that death was not the intended result, that is unlikely since the victim was shot multiple times in the head.  In addition, while involved in a drug offense, you were in possession of a firearm.  The guidelines do not take into consideration you possession of a second weapon.  Your propensity to possess and use weapons makes you a serious threat to the community.

*Id.*

77.  In making a decision in Martin's case, the USPC thus expressed its desire to protect the public from the threat Martin poses to the community.

17

**Plaintiffs Swinton and Darius Smith**

78.  Plaintiffs Swinton and Smith committed their crimes after official publication of the 1987 guidelines and informal 1991 policy guidelines, and the USPC considered them with the use of the 2000 guidelines.

Plaintiff Swinton

79.  Plaintiff Swinton is currently serving a life prison sentence for his conviction for armed robbery and attempted kidnapping in Superior Court Case No. F-9125-97.  *Ex*. G-1, sentence computation and Exhibit G-2, judgment and commitment order.

80.  Swinton committed his offense on September 19, 1996 by kidnapping a female victim and her children with the use of a gun, ordering the female victim to drive to several ATMs over a multiple hour period to withdraw cash, and taking the money.  *Ex*. G-3, presentence report.

81.  Swinton pleaded guilty to the offenses, and on May 8, 1998, the Superior Court imposed a life sentence with a minimum term of 10 years.  *Ex*. G-2.

82.  Swinton became eligible for parole from the aggregate sentence on July 22, 2004. *Ex*. G-1 at 2.

83.  Plaintiff Swinton appeared for his initial parole hearing before a USPC hearing examiner on December 3, 2003.  *Ex*. G-4, hearing summary.  At this hearing, the presiding hearing examiner applied the 2000 guidelines to Swinton's case.  The examiner found that Swinton had committed several disciplinary infractions, requiring 12-16 months to be added to his guidelines, but the examiner also found that Swinton deserved an 8-month award for program achievement.  *Id*. at 3.

18

84.  One of the disciplinary infractions committed by Swinton involved the possession of a sharpened instrument in a toothpaste tube.  *Ex*. G-5, incident report.

85.  The examiner presiding at Swinton initial hearing recommended a continuance to a three-year reconsideration hearing.  *Ex*. G-4 at 3.  On administrative review, the Executive Hearing examiner disagreed, noting that the USPC should obtain additional information about Swinton's offense behavior before making a decision in his case.  *Id.* at 4.

86.  The USPC ultimately deferred a final decision in Swinton's case pending receipt of additional information.  *Ex*. G-6, USPC order and Exhibit G-7, USPC Notice of Action.

87.  The USPC subsequently received some of the information requested and made a parole decision on-the-record.  *Ex*. G-8, USPC memorandum and Exhibit G-9, Notice of Action.

88.  The USPC found that Swinton's guidelines were 102-112 months to be served before release, and the USPC denied him parole and continued him to a three-year reconsideration in December 2006, a decision within those guidelines.  *Ex*. G-9.

89.  Swinton received his rehearing on October 23, 2006, where the presiding hearing examiner added 0-2 months to his guideline range, subtracted 4 months for program achievement, and recommended that he be paroled after 110 month, a recommendation within his Swinton's new guidelines.  *Ex*. G-10, hearing summary.  The USPC's executive reviewer disagreed with the presiding hearing examiner's assessment of Swinton's institutional conduct, however.  That reviewer found that Swinton had not had excellent prison conduct, as Swinton had possessed the sharpened instrument that he tried to conceal in a tube of toothpaste.  *Id.* at 3-4. The reviewer recommended a decision above the guidelines, based upon the risk Swinton posed, as reflected in his offense of conviction (which involved three victims, including

19

children), the overall nature of the offense, and his institutional misconduct, including Swinton's propensity to carry weapons illegally.  *Id.* at 4.

90.  The USPC agreed with the reviewer, and denied Swinton parole.  *Ex.* G-11  The USPC found Swinton to be a more serious parole risk than indicated by the guidelines, as reflected by the nature of his offense, his propensity to carry illegal weapons, and his prior record of weapon possession.  *Id.*  The USPC continued Swinton to a reconsideration hearing after the service of three additional years.  *Id.*

Plaintiff Smith

91.  Plaintiff Smith is currently serving a life prison sentence imposed in Superior Court Case No. F-12101-92 for his convictions for second degree murder while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license.  *Ex.* H-1, sentence computation and Exhibit H-2, judgment and commitment order.

92.  Smith committed his offense, along with a codefendant, by shooting a victim in a car. *Ex.* G-3, hearing summary.  Although Smith contested the charges at trial, he was found guilty, and the Superior Court imposed an aggregate fifteen year to life prison sentence for the convictions.  *Ex.* H-2.

93.  Smith became eligible for parole on February 26, 2005.  *Ex.* H-1 at 2.

94.  On June 22, 2004, Smith appeared before a USPC hearing examiner for his initial parole hearing.  *Ex.* H-3.  At this hearing, the examiner applied the 2000 guidelines to Smith's case.  The examiner found that Smith had three institutional misconduct reports, including one for assaulting an inmate with a homemade knife and two for possession of a weapon.  *Id.* at 2. Smith admitted all of these violations.  *Id.*

20

95.  The examiner assessed Smith programming in the institution and found that he had programmed well.  *Ex.* H-3 at 2-3.  The examiner then computed Smith's 2000 guidelines, finding that Smith should have 88-124 months added to his guideline range for his assaultive and violent conduct in prison, and the examiner recommended a deduction of 12 months for Smith's programming.  *Id.*  The examiner recommended that Smith receive a three-year set off in June 2009, a recommendation within Smith's total guideline range of 234-276 months.  *Id.*

96.  On July 24, 2004, the USPC agreed with the examiner's recommendation, denied Smith parole and ordered a reconsideration hearing in June 2009.  *Ex.* H-4, Notice of Action.

Dated: February 20, 2008                    Respectfully Submitted,


                                            _/s/_____
                                            JEFFREY A. TAYLOR, D.C. BAR # 498610
                                            United States Attorney


                                            _/s/_____
                                            RUDOLPH CONTRERAS, D.C. BAR #434122
                                            Assistant United States Attorney


                                            _/s/_____
                                            KENNETH ADEBONOJO
                                            Assistant United States Attorney
                                            555 Fourth Street, N.W.
                                            Washington, D.C.  20530
                                            (202) 514-7157
                                            kenneth.adebonojo@justice.com