# GAMBRELL

# EXHIBIT   A1

```
5H    PAR5C  540*23 *               SENTENCE MONITORING                    06-11-2007
   PAGE 001        *                COMPUTATION DATA          *     *      10:45:42
                                    AS OF 06-11-2007
```

REGNO..: 29898-117 NAME: GAMBRELL, JAMES O

```
FBI NO...........: 607593F              DATE OF BIRTH:  ███ 1949
ARS1.............: LEW/A-DES
UNIT.............: UNT 2-CODE           QUARTERS.....: E01-107L
DETAINERS........: NO                   NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

-------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F 1956-68
JUDGE..........................: GASCH
DATE SENTENCED/PROBATION IMPOSED: 03-29-1972
DATE WARRANT ISSUED.............: 06-07-1988
DATE WARRANT EXECUTED...........: 02-15-1989
DATE COMMITTED.................: 07-22-2002
HOW COMMITTED..................: RETURN OF PAROLE VIOLATOR
PROBATION IMPOSED..............: NO
SPECIAL PAROLE TERM............:
```

RESTITUTION...: PROPERTY: NO  SERVICES: NO        AMOUNT: $00.00

-------------------CURRENT OBLIGATION NO: 010 ----------------------
```
OFFENSE CODE....: 641
OFF/CHG: 22-2801 RAPE 5 - 18 YEARS; 22-103 ASSAULT WITH DEADLY WEAPON
         3-10 YEARS
```

```
SENTENCE PROCEDURE.............: DC CODE ADULT
SENTENCE IMPOSED/TIME TO SERVE.:  18 YEARS
NEW SENTENCE IMPOSED...........: 1446 DAYS
BASIS FOR CHANGE...............: PAROLE VIOLATOR WARRANT EXEC
DATE OF OFFENSE................: 10-25-1968
```

-------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F 1989-89
5H    JUDGE.....................: KENNEDY
DATE SENTENCED/PROBATION IMPOSED: 01-03-1991
DATE WARRANT ISSUED............: N/A
```

G0002       MORE PAGES TO FOLLOW . . .


GOVERNMENT EXHIBIT A

```
5H     PAR5C  540*23 *                    SENTENCE MONITORING
PAGE 002          *                       COMPUTATION DATA              *      06-11-2007
                                          AS OF 06-11-2007         *          10:45:42
```

REGNO..: 29898-117 NAME: GAMBRELL, JAMES O


DATE WARRANT EXECUTED............: N/A
DATE COMMITTED...................: 07-22-2002
HOW COMMITTED....................: DC SUPERIOR COURT COMT
PROBATION IMPOSED................: NO
SPECIAL PAROLE TERM..............:


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  621
OFF/CHG: 33:3202  MURDER II WHILE ARMED

 SENTENCE PROCEDURE.............: DC GTCA ADULT SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 MINIMUM TERM...................:         12 YEARS
 DC MANDATORY MINIMUM TERM......:          5 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CS
 DATE OF OFFENSE................: 02-13-1989

------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 10-11-2002 AT LEW AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 020 010


G0002        MORE PAGES TO FOLLOW . . .

```
5H    PAR5C  540*23 *           SENTENCE MONITORING              *   06-11-2007
PAGE 003 OF 003 *              COMPUTATION DATA          *      10:45:42
                                AS OF 06-11-2007
```

REGNO..: 29898-117 NAME: GAMBRELL, JAMES O

```
DATE COMPUTATION BEGAN..........: 02-15-1989
AGGREGATED SENTENCE PROCEDURE...: DC CODE OLD LAW / GTCA AGGREGATE
CONTROLLING SENTENCE............: DC OLD LAW
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
AGGREGATED MINIMUM TERM.........:     12 YEARS
COMBINED MANDATORY MINIMUM......:      5 YEARS
EARLIEST DATE OF OFFENSE........: 10-25-1968

TOTAL JAIL CREDIT TIME..........: 0
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 0
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 11-26-1999
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE

NEXT PAROLE HEARING DATE........: 07-00-2007
TYPE OF HEARING.................: DC CODE OFFENDER REHEARING

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE

REMARKS.......: PAROLE ELIGIBILITY DATE COMPUTED ON DATE SENTENCE IMPOSED ON
                CONSECUTIVE LIFE SENTENCE.  USPC V NOBLE, 711 A2D 85 REQUIRES
                FORFEITURE OF STREET TIME CREDIT UPON REVOCATION OF PAROLE.
```

S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

# GAMBRELL

# EXHIBIT   A2

PROBATION FORM 2
FEB 65

UNITED STATES DISTRICT COURT

PRESENTENCE REPORT          P. O. #23679

NAME   GAMBRILL, James O.                    DATE   8-15-69

ADDRESS   108 Madison Street, N.W.          DOCKET NO. CC#1956-68
          Washington, D. C.                 Violation Title 22 D.C. Code Sections
                                            OFFENSE 2801 (Rape), 2901 (Robbery),
                                                    2204 (Unauthorized Use of Vehicle)
LEGAL RESIDENCE   Same As Above                     and 502 (Assault With a Dangerous
                                                            Weapon)

AGE  20      DATE OF BIRTH -48       /-/-/-/-/

SEX  Male        RACE  Negro

CITIZENSHIP  United States                  /-/-/-/

EDUCATION                                   VERDICT  Found guilty by jury on June
          1 Semester of College                     23, 1969 before Judge Oliver
                                                    Gasch.

MARITAL STATUS  Single                      CUSTODY  In Jail from date of arrest,
                                                     10/3/68 until 11/27/68, when
                                                     released on bond. Remanded to
DEPENDENTS   None                           ASST. U.S. ATTY jail following trial 6/23/69.

                                                    Daniel Harris
SOC. SEC. NO.   
                                            DEFENSE COUNSEL
                                                    Carl Taylor & Richard Ruge
FBI NO.   607-593-F
                                            PENALTY:

DETAINERS OR CHARGES PENDING:  None         Please refer to attachment.


CODEFENDANTS (Disposition)   None

     Jerry L. Hunter - Awaiting Sentencing

DISPOSITION     5010 (e)

DATE   8.29.69

SENTENCING JUDGE   Gasch

FPI-NJ-1-17-67-7SR-681

GOVERNMENT EXHIBIT B

ATTACHMENT - PENALTY

GAMBRILL, James O.                                    P. O. #23679

PENALTY:

Count I  - Rape.  Imprisonment for not more than 30 years.

Count II - Robbery.  Imprisonment for not less than two years or more than
           fifteen years

Count III - Assault With Deadly Weapon.  Imprisonment for not more than
            ten years.

Count IV  - Robbery.  Imprisonment for not less than two years or more
            than fifteen years.

Count V   - Assault With Deadly Weapon.  Imprisonment for not more than
            ten years.

Count VI  - Unauthorized Use of Vehicle.  Fine of not more than $1,000.00
            or imprisonment for not more than five years, or both.

# GAMBRELL

# EXHIBIT   A3

*For the Board*

PB-18
(B-48)

ADULT PAROLE CERTIFICATE

MR. FELL

**Board of Parole**
**District of Columbia**
**Certificate of Parole**

*KNOW ALL MEN BY THESE PRESENTS:*

It having been made to appear to the Board of Parole that _____ James D. Campbell

_____, D.C.D.C. No. _161194._ an inmate in the _____

Farms CTC _____, is eligible to be paroled, and that there is a reasonable probability that said inmate will remain at liberty without violating the laws and, it being the opinion of the Board of Parole that the release of this inmate is not incompatible with the welfare of society, it has therefore, been ORDERED by the Board of Parole that the said inmate be RELEASED ON PAROLE from said Barry Farms CTC, 2650 Firth Sterling Avenue, S.E. _____ on

_____ June 20 _____, 19 _73_, and be permitted to go to _____ Washington _____ and that said inmate remain within the limits of the _____ District _____ of _____ Columbia _____ until

_____ May 3 _____, 19 _82_, or until other action may be taken by the Board of Parole.

*BE IT ALSO KNOWN* that this ORDER OF PAROLE is granted upon condition that the said inmate has agreed to observe and perform all and singular the rules and covenants shown on reverse side of this certificate, all of which are hereby made and agreed to be conditions precedent to said inmate's release.

Given under the hands and seal of the Board of Parole this _____ 15th

day of _____ January _____; nineteen hundred sixty-_____ 73 _____

Special condition: Continue in Federal
City College Program or other comparable program
of higher education

BOARD OF PAROLE

_____ (Chairman)

_____ (Member)

_____ (Member)

(SEAL)
BOARD OF PAROLE:

The above named inmate was released on the _20_th day of _June_ _____

F-4118

GOVERNMENT EXHIBIT C

## STATEMENT OF THE CONDITIONS UNDER WHICH THIS PAROLE IS GRANTED

This Certificate of Parole shall not become operative until the following conditions are agreed to by the inmate:

1. That I will report immediately upon my release to the Washington Office of the Department of Corrections for my final instructions.

2. That I will not go outside the parole limits fixed in the Certificate of Parole without first obtaining the approval of my Parole Officer.

3. That I will not consume alcoholic beverages to excess; That I will totally abstain from the use of alcoholic beverages (Strike one of the foregoing clauses); and that, furthermore, I will not visit places where alcoholic beverages are sold, dispensed, or used unlawfully.

4. That I will not purchase, possess, use, or administer marihuana or narcotic or other habit-forming or dangerous drugs, unless their use is prescribed or advised by a physician; and that I will not visit places where such drugs are illegally sold, dispensed, used or given away.

5. That I will not, during the term of my supervision, associate for unlawful or negative reasons with any person or persons having a criminal record or a bad reputation.

6. That I will secure the written permission of my Parole Officer before purchasing or operating a motor vehicle.

7. That I will not own, possess, use, sell, or have under my control any deadly weapon or firearms.

8. That I will in all respects conduct myself honorably, make diligent efforts to find and maintain legitimate employment, and support myself and my family to the best of my ability during the period of my supervision.

9. That I will not change my place of residence or employment without first obtaining the approval of my Parole Officer; that I will keep my Parole Officer informed at all times as to where I reside and work; and that in the event I should lose my employment or have to change my place of residence, I will immediately notify my Parole Officer.

10. That I will promptly and truthfully answer all inquiries directed to me by the Board of Parole and those responsible for my supervision, and cooperate to the best of my ability with such persons; and that I will carry out the instructions of my Parole Officer and will report as he directs.

11. That I will not marry without consulting and obtaining the permission of my Parole Officer; nor will I live in a marital relationship with any person to whom I am not legally married.

12. That I will not enter into any agreement to act as an "informer" or special agent for any law enforcement agency.

13. That I will live and remain at liberty without violating the law, and report immediately to my Parole Officer any arrest or serious difficulty in which I may become involved.

14. That I recognize I am subject, during my release and supervision, to a specified plan and that failure to observe or carry out such plan in any essential particular may, in the discretion of the Board of Parole, be sufficient cause to return me to the institution.

I have read or had read to me the conditions of parole; and I do solemnly promise and agree to abide by the foregoing conditions and hereby acknowledge that my failure to comply with any one of them may be considered a violation of my parole for which I am subject to be returned as a parole violator.

DATE: _____20 JUNE 1993_____  SIGNATURE: _James P. Trimble 161/94_

WITNESS: _____  REGISTER NUMBER: _____

P-411B

# GAMBRELL

# EXHIBIT   A4

# UNITED STATES DEPARTMENT OF JUSTICE
## BUREAU OF PRISONS
### UNITED STATES PENITENTIARY
TERRE HAUTE, INDIANA 47808

August 22, 1975

Richard S. Collins
Parole Specialist
Board of Parole
Room 503, 614 H Street N.W.
Washington, D. C. 20001

                              RE:  GAMBRELL, James O.
                              Our  Reg. No. 29898-117 (g)
                              Your DCDC 161194

Dear Mr. Collins:

This is in response to your letter of July 23, 1975, whereby you requested
classification material and an up to date progress report on Mr. Gambrell
who is presently confined at this institution.

Mr. Gambrell was committed to this institution on June 21, 1975, to serve
a thirty-five year term for Armed Bank Robbery and Kidnapping. He becomes
eligible for parole on August 25, 1986, and his current mandatory release
date is June 23, 1998, less any adjustment for extra good days. There has
been a delay in Mr. Gambrell being classified and programmed at this
institution since his record file lacks significant information.

However, it has been ascertained that Mr. Gambrell entered a plea of guilty
to one count of Bank Robbery involving an Assault with a Deadly Weapon and
Kidnapping during the course of a Bank Robbery. This offense involved Mr.
Gambrell and six codefendants holding a bank manager and his family hostage
while they took approximately $30,000 from the manager's bank. For additional
information regarding details of the offense, we suggest that you contact
the Chief Probation Officer at Washington, D. C. for a copy of the pre-
sentence report regarding this case.

We are unable to provide you with a formal progress report at this time,
since Mr. Gambrell has just recently been classified for programming at this
institution. However, the attached staff evaluation will indicate that he
has expressed an interest in participating in our independent study program
for the purpose of continuing his education on a college level. In addition,


GOVERNMENT
EXHIBIT
D

Richard S. Collins
August 22, 1975
Page Two

he has expressed an interest in vocational training as a dental technician.
We plan to refer Mr. Gambrell to the United States Penitentiary at Lewisburg,
Pennsylvania, for programming in their VT dental technician course which is
not available at this institution.

We trust this information will be helpful and if we can be of further assist-
ance, please advise us.

Sincerely,

T. P. Lockett
Chief Classification and Parole

# GAMBRELL

# EXHIBIT    A5

PB-3

GOVERNMENT OF THE DISTRICT OF COLUMBIA
**BOARD OF PAROLE**
WASHINGTON, D.C. 20001



# Order

Name _____Gambrill, James D._____

DCDC Number _____161198_____

Institution [or status and PO] ___Par/Rell___

The case of the above-named has come to the attention of the Board of Parole on the basis of:

☐ abeyance case
☐ advance in [re] hearing date
☐ advance in release date
☐ application [or eligibility] for parole
☐ arrest
☐ change in plan
☐ CTC violation
☐ death
☐ deferment in release date
☐ discharge from supervision
☐ information _____
☐ initial hearing
☐ mandatory release violation
☐ parole violation
☐ personal appearance
☐ 5010e study
☐ OTHER: _____

☐ preliminary interview
☐ preparole investigation
☐ progress report dated _____
☐ recommendation of Examiner
☐ reconsideration of warrant
☐ reduction in minimum sentence
☐ request for marriage
☐ request for warrant
☐ review of psychiatric report
☐ review hearing
☐ revocation hearing
☐ Shaw Residence violation
☐ transfer of jurisdiction
☐ unconditional discharge & conviction set aside
☐ Work Release violation

REMARKS: _____

ANALYST'S RECOMMENDATION _____

_____

The Board in its offices in Washington, D.C. has carefully examined all the information and evidence at its disposal in relation to the above-named, and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

_____

Condition or remarks: ___Issue Warrant to___

___be Executed___

_____

Date _Nov. 11/1974_    District of Columbia Board of Parole:

___Carol B. Perlmayer___
CHAIRMAN
___W. Wilson Terrell___

GOVERNMENT
EXHIBIT
5

2381

# GAMBRELL

# EXHIBIT   A6

# UNITED STATES BOARD OF PAROLE
## HEARING SUMMARY

Name: _____ CANTRELL _____ Reg No. _____

Member (or Examiner): _____

Type of Hearing: _____

[illegible body text]

GOVERNMENT
EXHIBIT

James Osborn GAMBRELL   29898-1⁻⁷     (2)

III.  REVIEW OF CHARGES AND FINDING OF FACT: (continued)
adult term.  As mentioned, he does not become eligible for parole
on this until 8/26/86.

Bases on the subject's admissions in four of the above five mentioned
charges, plus the conviction just mentioned, the panel makes a
finding of fact that Gambrell did violate his District of Columbia
parole as specified in Charges 1, 2 , 3, 4 and 5 above.  Inaidentally,
Gambrell states that he does have his conviction and sentence in
Michigan on appeal.  As a result, he was willing to offer very little
information regarding that offense behavior today.  When pressed
somewhat by the panel, he did remark, however, that his principle
motivation was "money".  He admitted, however, that there could have
been other ways to obtain the illeged badly needed money.

IV.  INFORMATION ON SUBJECT'S STANDING AS A GOOD PAROLE RISK/COMMUNITY
     RESOURSES:     Unfortunately, we have little in the way of
information with regard to the subject's adjustment while on parole
in the District of Columbia.  According to him, he lived entire
time with his mother and supported himself by selling clothes.  He
now submits as his release plan and also states that he would attend
school part time.  He denies using drugs at all in his life.

V.  EVALUATIVE REVIEW:  This 26 year old individual committed original
offenses of extreme seriousness in that they involved multiple
agressive charges, including rape, robbery, assault and weapons.  He
had been on parole only about 4 months when he was arrested in
Rockville, Maryland in October 1973 1973 on charges of carrying a
consealed weapon.  Apparently, these charges were still pending when
approximately one year later, he was involved in the far away(from
D C) State of Virginia, in an extremely serious offense inchich an
entire family was taken hostage.  Incidentally, the Rockvill, Maryland
weapons charge does appear to have been dismissed subsequently.
As a result of his behavior while on parole, he has been convicted on
multiple and extremely serious charges and is serving a 35 year term.
Note is made that with the execution of the instant warrant, both
term are running concurrently. However gambrell states that he does
have the new conviction and sentence on appeal.  None the less he
did admit 4 out of the 5  violations of parole during today's hearing.
It is the definate feeling of this panel that Gambrell should serve
a considerable length of time, even were he to get the new charges
dismissed, in view of his admissions today.  Therefore, the maximum
set off at this time definately appears appropriate.

VI.  TENTATIVE DECISION: #1- Revoke parole.
#2- Continue with Institutional Review Hearing in December 1978.

VII.  REASONS FOR CONTINUANCE:

Violation charge #1- Violation of Condition  #2 of D C Board of Parole
Rules.

James Osborn GAMBRELL   29898-117        (3)

BASIS:  Your admission to the panel.

VIOLATION CHARGE #2- Violation of D C Board of Parole Condition #7.

BASIS:  You denied this charge to the panel but it is clear from the record that you did fail to keep your parole officer in  D C advised as to where your resided and worked.

VIOLATION CHARGE #3- Violation of condition #9 of the D C Board of Parole rules.

BASIS:  Your admission to the panel.

Violation Charge #4-  Violation of condition # 10 of the D C Rules of  parole.

BASIS:  Your admission to the panel.

VIOLATION CHARGE #5-  Violation of Rule #9 of the D C Board of Parole rules.

BASIS:  Your admission to the panel.

VIII.  REASONS FOR CONTINUANCE:  #1- Your release at this time would depreciate the seriousness of your parole violations and promote disrespect for the paroling process.

#2-  There does not appear to be a reasonable probility at this time that you would life at liberty without violating the law because of the fact that you violated parole on this occasion by being involved in a ner serious offense in the State of Michigan and by being convicted on new charges of armed robbery and kidnapping.

#3-  You can benefit form additional institutional treatmnt, especially counseling, to enhance your capacity to lead a lawabiding life.

I hereby certify the foregoing to be a true and correct transcript of a summary dictated at the time, place and on the occasion indicated.

RECEIVED

DEC 12 1975

UNITED STATES BOARD OF PAROLE

# GAMBRELL

# EXHIBIT    A7

Parole Form H-7(a)
(Rev. June 1974)



:TED STATES DEPARTMENT OF J' TICE
United States Board of Parole
Washington, D.C. 20537

### Notice of Action

Name _____ **James Osborn GAMBRELL**

Register Number **29898-117** Institutio **Lewisburg.**

In the case of the above-named, the Board has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release was ordered:

**REVOKE PAROLE. REASON: There does not appear to be reasonable probability at this time that you would life at liberty without violating the law because of the fact that you violated parole on this occasion**

Conditions or remarks: **by being involved in a very serious offense in the State of Michigan and by being convicted on new charges of armed robbery and kidnapping. You can**

Reasons for denial, continuance or revocation: (Use separate sheet if necessary)

**benefit from additional institutional treatment, especially counseling to enhance your capacity to lead a law abiding life.**

Appeals procedure: You have a right to appeal a decision as shown below. Forms for that purpose may be obtained from your caseworker, and must be filed with the Chief, Classification and Parole, (or his equivalent) within thirty days of the date this Notice was sent.

A. Decision of a Hearing Examiner Panel. Appeal may be made to the Regional Director.

B. Decision of the National Appellate Board referred to it for reconsideration. Appeal may be made to the Regional Director.

C. Decision of the Regional Director. Appeal may be made to the National Appellate Board.

D. Decision of Regional Directors in cases where they assumed original jurisdiction. Appeal may be made to the National Appellate Board.

**December 22, 1975**
(Date Notice sent)

**Northeast**
(Region - Specify)

**gds**
(Docket Clerk)

National Appellate Board _____
(Check)

**CENTRAL OFFICE FILE COPY**

GOVERNMENT EXHIBIT 6

# GAMBRELL

# EXHIBIT   A8

PB-18
(Revised 10/81)

## BOARD OF PAROLE
## DISTRICT OF COLUMBIA
## CERTIFICATE OF PAROLE

JUL 1985
RECEIVED

### ADULT

The DISTRICT OF COLUMBIA BOARD OF PAROLE, having been advised that
~~Gambrell, James~~ _____ D.C.D.C. __161-194__ is eligible to be
PAROLED, and it being the opinion of the BOARD OF PAROLE that the above-named will
remain at liberty without violating the law and that the release of the individual to supervision
is not incompatible with the welfare of society, it is ORDERED by the BOARD that the above-
named be PAROLED on __July 16_____, 1985, and that said person remain under
supervision within the limits of the __Wash. Metro Area_____ (including the District of
Columbia; Prince Georges and Montgomery Counties of Maryland; Arlington and Fairfax
Counties of Virginia, including the cities of Alexandria, Fairfax and Falls Church, Virginia)
until __December 22_____, EY2009unless or until other action is taken by the District
of Columbia BOARD OF PAROLE.

This action is subject to the above-named individual's signing an agreement to abide
by and comply with all of the conditions of parole as shown on the reverse side of this
CERTIFICATE.

Given under the hands and seal of the BOARD this _____6th_____ day
of _____June_____, 19_85

The above-named was released on
the _16th_ day of _July___, 1985.

_W. L. Stokes_
_Joe_ Administrator

_V. Albin Tewell_

_John L. G___

GOVERNMENT
EXHIBIT
F

# GAMBRELL

# EXHIBIT    A9

PB-3
REV. 8 - 81
8-4880



GOVERNMENT OF THE DISTRICT OF COLUMBIA
BOARD OF PAROLE
WASHINGTON, D.C. 20001

# Order

Name _____ Gambrell, James _____

DCDC Number _____ 161-194 _____

Institution (or status and PO) _____ Occoquan _____

CODE _____ 15J _____

The case of the above named person has come to the attention of the Board of Parole with reference to:

- ☐ Early parole hearing
- ☐ Initial parole hearing
- ☐ Parole rehearing / IRH
- ☐ Preliminary revocation hearing
- ☒ Revocation hearing

- ☐ Warrant request
- ☐ Detainer review
- ☐ Personal appearance
- ☐ Work release violation
- ☐ Information

☐ Other: _____

REMARKS: _____

_____

RECOMMENDATION OF ANALYST / EXAMINER _____

_____

The Board of Parole has examined the relevant information in this case and hereby orders the following action:

Revoke parole (Conditions 7 and 10). Reconsider

December 25, 1989.

_____

_____

Date _____ May 1, 1989 _____ District of Columbia Board of Parole:

_Chairman_

Reason for the above action (where applicable): _____

Duplicate NA ext 10/12/90

(N / A date _5-18-89_ by _J.R._ )


GOVERNMENT
EXHIBIT
1

rape/64/ at #243

# Board of Parole
# District of Columbia
#### POST-RELEASE DETERMINATION RECORD

NAME: *Gambrell, James*     Adult ☑  Youth ☐   DOB _49_

DCDC# *161194*   PDID# *204851*   Reg. No. _____   Inst: *MOD*

ASSIGNED PAROLE OFFICER: *J Davis*   Unit # *3*

HEARING INFORMATION:  Date: *3/9/89*   Location: *Prog. Bldg*

Hearing Official(s): *Herbert*   Supv Rep: _____

Witness(es) Present: _____

ATTORNEY REPRESENTATION:  No ☐   Yes ☐  Name: _____

PRE-HEARING BOARD ACTION:

ORDER TO APPEAR:  ☐     ‖  WARRANT:  Arrest ☑   Detainer ☐

Issued: _____   ‖  Issued: *6-7-88*   Executed: *2-15-89*

Served: _____   ‖  Notice Served: *2-27-89*

OFFENSE(S) ON WHICH PAROLE WAS GRANTED AND MAY BE REVOKED:

| Offense | Case # & Court | Sentence | Date Imposed |
|---|---|---|---|
| *Bank/Rob./Kidnap.* | *4-83225* | *35 yrs.* | *6/13/75* |
| *Rape/Robb. 19:W.V. ADW 1956-68* | | *over 5,059 days* | *8/25/75* |

Aggregate Sentence: *35 yrs.*   from Face Sheet dated _____

STATUS OF SENTENCE ON WHICH PAROLE MAY BE REVOKED IF:

NOT revoked:  Max Supv. Date: *6/25/2009* FTD: *12/22/2009* F/S dated *12/1/88*

*NO*  REVOKED:  MRD: _____   Max Supv. Date: _____   FTD: _____
*PV, face sheet*
*available*   Time Remaining : _____   F/S dated _____

PREVIOUS BOARD ACTION ON SENTENCE ON WHICH PAROLE MAY BE REVOKED:

Date Last Released on Parole: *7/15/85*   # of Times Paroled: _____

NEW CRIMINAL INVOLVEMENT:  Arrest ☐   Pending Charge(s) ☐   New Sentence ☐

Offense/Case#/Other: _____

PREPARED BY:  Parole Analyst *Queen* *Carol F. Crowder* Date *3/9/89*

-1-

NAME: _Campbell James_ DCDC# _161-194_ HRG. DATE: _3/9/89_

200 FINDINGS OF FACT, EVIDENCE, AND CONCLUSIONS

201 Alleged Parole Violation: _Failed to respond to_
_messages left on 11/4/87 + 12/3/87_
_+ failed to respond to a letter mailed 4/19/88_

in violation of Condition # _10_

| 202<br>Findings of Fact | 203<br>Evidence Relied Upon<br>(Type and substance) |
|---|---|
| | _Subject Admits_ |

204 Conclusion

204.1    Violation Sustained        ☑

204.2    Allegation Not Sustained   ☐

204.3    No Finding                 ☐

-3-        [#___ of ___ alleged violations]

NAME: _Gambrell, James_    DCDC# _161194_    HRG. DATE: _3/9/89_

## 204  Summary of Conclusion(s)

Condition #

204.1    No. of Technical violations sustained:  # 7 #10  (2)    _____

204.2    No. of Criminal violations sustained:    _____    _____

204.3    No. of allegations NOT sustained:    _____    _____

204.4    No. of allegations with NO FINDING    _____    _____

TOTAL NUMBER OF ALLEGATIONS =  2    

## 205  Other Relevant Factors

205.1    Mitigating Factors (Specify) _____

_____

_____

_____

_____

205.2    Aggravating Factors (Specify) _New Charge : Homicide :_
_[Greater S.E. Hospital - Robbery : murder]_

_____

_____

## 206  Alternatives Considered

206.1    Revocation is mandatory (violation involves PCP)    ☐

206.2    Revocation is the appropriate action    ☑

206.3    Revocation is not the appropriate action    ☐

INFORMATION FOR THE RECORD: _____

_____

_____

_____

NAME: *Gambrell James*     DCDC# *161/194*     HRG. DATE: *3/9/89*

301     MAINTAIN/REINSTATE TO PAROLE SUPERVISION     ☐

**********************************************************************

302.1     REVOKE PAROLE & GRANT PAROLE RELEASE TO PLAN     ☐

302.2     REVOKE PAROLE & GRANT PAROLE RELEASE THRU WORK RELEASE
ON OR AFTER _____     ☐

302.3     REVOKE PAROLE & GRANT PAROLE TO DETAINER (specify jurisdiction):     ☐
_____

302.4     REVOKE PAROLE & GRANT PAROLE TO CONSECUTIVE SENTENCE     ☐

302.5     REVOKE PAROLE & GRANT PAROLE TO CONSECUTIVE ADULT SENTENCE     ☐
(Administrative grant for youth offender ONLY)

**********************************************************************

A.     Check appropriate special conditions, if applicable:

☐ Narcotics surveillance     ☐ Alcohol abstention

☐ Employment restrictions (specify):_____

☐ Residence restrictions (specify):_____

☐ Substance abuse treatment:     __Inpatient     __Outpatient

☐ Counseling (specify type):_____

☐ Mental health treatment:     __ Inpatient     __ Outpatient

☐ Other (specify):_____

_____
_____

B.     Remarks:_____
_____
_____

INFORMATION FOR THE RECORD:_____
_____
_____
_____

-6-     [Go to page 9]

NAME: _Gambrell, James_     DCDC# _161194_     HRG. DATE: _3-9-89_

**300   POST-RELEASE DETERMINATION**

301   **Maintain/Reinstate to Parole Supervision**
      (Provide details on page 6)                                              ☐

302   **Revoke Parole & Grant Parole \***
      (Provide details on page 6)                                              ☐

303   **Revoke Parole and Reincarcerate \***
      (Provide details on page 7)                                              ☑

304   **Continue Case**
      (Provide details on page 8)                                             ☐

305   **Issue Arrest Warrant for Failure to Appear for a**
      **Revocation Hearing as Ordered**     (Go to page 9)                     ☐

306   **Other** (Specify): _____              ☐

      _____


**\*IF DETERMINED AT REVOCATION HEARING WITHOUT PRIOR DETENTION,**
      **ISSUE AND EXECUTE ARREST WARRANT**                                    ☐


INFORMATION FOR THE RECORD: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

-5-

NAME: _Gambrell, James_    DCDC# _161194_    HRG. DATE: _3/9/89_

304.1  CONTINUE CASE FOR ATTORNEY  ☐

304.2  CONTINUE CASE FOR ASSIGNED PAROLE OFFICER  ☐

304.3  CONTINUE CASE FOR RECEIPT OF ADDITIONAL INFORMATION  ☐

     Specify: _____

304.4  CONTINUE CASE FOR OTHER REASON  ☐

     Specify: _____

*******************************************************************************

A.  Reschedule this case by: _____.

B.  Continued Case Detention Analysis

    1)  Detention IS NOT recommended pending continuation of case.  ☐

    2)  Detention IS recommended pending continuation of this case based on consideration of the following. IF DETERMINED AT A REVOCATION HEARING WITHOUT PRIOR DETENTION, ISSUE AN AN ARREST WARRANT.

       a)  There is potential of harm to the public or to the parolee/releasee if parolee/releasee is allowed to remain in or return to the community.  ☐

       b)  The parolee/releasee is likely to fail to appear for continuation of the case.  ☐

       c)  The parolee/releasee has demonstrated instability while under supervision.  ☐

       d)  Community resources are unavailable which contribute to the stabilization of the parolee/releasee, such as residence or employment.  ☐

C.  Remarks: _____

_____

_____

_____

INFORMATION FOR THE RECORD: _____

_____

_____

_____

_____

_____

-8-    [Go to page 9]

NAME: _Gambrell, Jane_    DCDC# _161194_    HRG. DATE: _3/9/89_

303    REVOKE PAROLE AND REINCARCERATE    ☑

*************************************************************************

A.    **Future Action**

    1)  Do not reconsider for parole on this sentence    ☐

    2)  Reconsider for parole by: _12-25-89_    ☑
       (Length of Set-Off = _9 mos_ )

B.    Programs/behavior/other factors to be reviewed upon reconsideration for parole:

_____

_____

_____

_____

_____

_____

C.    Remarks: _____

_____

_____

_____

INFORMATION FOR THE RECORD: _____

_____

_____

_____

_____

_____

_____

_____

-7-    [Go to page 9]

NAME: _Gambrell, James_    DCDC# _161194_    OP. DKT/
HRG. DATE: _3/9/89_

## BOARD MEMBERS' WORK SHEET FOR PART 500

**BOARD MEMBER #1**    Initials: _____    Date: _____

Accept the Hearing Official's recommendation    ☐

Other Disposition: _____

_____

_____

Reason: _____

_____

_____

**BOARD MEMBER #2**    Initials: _____    Date: _Apr 26, 1989_

Accept the Hearing Official's recommendation    ☑

Other Disposition: _____

_____

Reason: _____

_____

_____

**BOARD MEMBER #3**    Initials: _C__    Date: _5-1-89_

Accept the Hearing Official's recommendation    ☑

Other Disposition: _____

_____

Reason: _____

_____

_____

-9a-

NAME _Hambell, James_    DCDC# _161194_    OFC. DKT/ HRG. DATE _3/9/87_    OFC. DKT/ HRG. TYPE _Reva._

**400**   RECOMMENDATION OF HEARING OFFICIAL / ANALYST

**401**   _Revoke parole (#9 #10). Reconsider in 9mos. — 12-25-89._

**402**   Signature of Board Member        Date

_Karen Jones Herbert_        _04-25-89_

**403**   Signature of Hearing Examiner / Analyst        Date

**500**   DISPOSITION OF RECOMMENDATION BY THE BOARD

**501**   Accept the recommendation        ☐

**502**   Substitute the recommendation with the following disposition:        ☐

**503**   Board Members        Date

☐        Gladys W. Mack        _____

☐        Howard R. Croft        _____

☐        Enrique Rivera-Torres        _____

☐        Willie R. Hasson        _____

☐        Karen Jones Herbert        _____

-9-

REV. 8-81
8-4880

PE 18934

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**BOARD OF PAROLE**
WASHINGTON, D.C. 20001

# Order

Name _Gambrell, James_

DCDC Number _161 – 194 A_

CODE _30B_     Institution (or status and PO) _Davis_

The case of the above named person has come to the attention of the Board of Parole with reference to:

☐ Early parole hearing
☐ Initial parole hearing
☐ Parole rehearing / IRH
☐ Preliminary revocation hearing
☐ Revocation hearing

☒ Warrant request _Loss of Contact_
☐ Detainer review
☐ Personal appearance
☐ Work release violation
☐ Information

☐ Other: _____

REMARKS: _Subject has not contacted PO since 9/25/87_
_Subject has failed to respond to written_
_messages to report immediately. Whereabouts_
RECOMMENDATION OF ANALYST / EXAMINER _unknown_
_Issue warrant to be executed (#7,10)_

The Board of Parole has examined the relevant information in this case and hereby orders the following action:

_Issue Warrant To Be Executed_
_#7,10_

Date _6/7/88_ ——————— District of Columbia Board of Parole:

_____  Chairman

Reason for the above action (where applicable): _____

————————————— (N/A date _6/7/88_ by _____ )

NAME _Hamblell, James_____ DCDC# _16//94_ INSTITUTION _MOD_

HEARING DATE_____ HEARING TYPE_____

**600  ACTION OF THE BOARD**

601  Disposition: _Revoke parole (#7/0). Reconsider_
_December 25, 1989._____

_____

Date of Disposition: _5-1-89_

602  Remarks (including basis for revocation, if applicable):_____

_____

_____

_____

_____

_____

603  **Type(s) of Violation(s), if applicable:**

☐ Criminal Only    ☑ Technical Only    ☐ Criminal & Technical

604  **Coding Information**

Disposition Code:_ 15 5 _    Board Member Codes:_ KN, WN, NC _

Recorded and coded by:_____    Date:_ 5/4/89 _

Typed by:_____    Date:_____

-10-

NAME: _Gambrell, James_  DCDC# _161194_  HRG. DATE: _3/9/89_

**200  FINDINGS OF FACT, EVIDENCE, AND CONCLUSIONS**

**201  Alleged Parole Violation:** _Employment + residence_
_status are unknown_

in violation of Condition # _7_

| 202<br>Findings of Fact | 203<br>Evidence Relied Upon<br>(Type and substance) |
|---|---|
| | _Subject Admits_ |

**204  Conclusion**

204.1     Violation Sustained  ☑

204.2     Allegation Not Sustained  ☐

204.3     No Finding  ☐

-3-      [# ___ of ___ alleged violations]

# GAMBRELL

# EXHIBIT   A10

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION – ADULT BRANCH

## PRESENTENCE REPORT

PDID No.: 204-851
Docket No.: F-1989-89J

Re: James O. Gambrell

Date Referred: 10-30-90

To: The Honorable Henry H. Kennedy, Jr.

Date Due: 12-31-90

From: Probation Officer Christopher R. Binder

Sentencing Date: 1-3-91

---

Defendant Information:

True Name: James Osbon Gambrell

Address: 906 59th Avenue,
Fairmont Heights, MD

Aliases: "Ozz"

Tel. #: 301-292-4766

Age/Birthdate: 48    Sex: Male

Birthplace: Washington, D.C.

Time in D.C. Area: Lifetime

Citizenship: U.S.
Alien No.: N/A

Marital Status: Single        Dependents: 2

Education: HS Graduate

Social Security No.:

Permit No.: (DC) 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

DCDC No.: 161-194

FBI No.: 607-593-F

---

Offense, Code and Penalty: Murder II While Armed, 33-3202, Imprisonment up to
life

Plea: Guilty        Judgment: Guilty

Bond Status: No bond

Detainers or Pending Charges: Parole revocation pending

Co-defendants:
Regina Nicholson        (Dkt No.): Unknown        (Status): Pending Sentencing
Frederick Miller        (Dkt No.): Unknown        (Status): Pending Sentencing

AUSA: William Jackson

Telephone: 202-514-7553

Defense Counsel: Ann Gallagher

Telephone: 607 593 F

"In accordance with the U.S. Parole Commission and Reorganization Act, Public Law
94-233, dated March 15, 1976 this report is disclosable to inmates in federal
institutions for purposes of parole consideration."

Disposition and Date:


GOVERNMENT EXHIBIT

GAMBRELL JAMES O 20808 417

2

CONTACTS:

11-30-90   Metropolitan Police Department Criminal Records request.

Federal Bureau of Investigation Criminal Records request.

12-19-90   C & P Office, Occoquan Facility.

12-20-90   C & P Office, Occoquan Facility.

12-21-90   Defendant, Occoquan Facility.

Records Office, Occoquan Facility.

12-24-90   Defendant's girlfriend, attempt to contact.

Assistant United States Attorney, attempt to contact.

OFFICIAL VERSION:

The Affidavit in Support of an Arrest Warrant states that on February 13, 1989, at 12:55 in the afternoon, the victim, an employee of Federal Armored Express Company, was attempting to leave the hospital at Greater Southeast Community Hospital in Southeast D.C. The victim had the cashier's office receipts consisting of cash and checks. The victim was approached by a suspect, a struggle ensued, and the victim started yelling for help, stating "I'm being robbed".

During the struggle, the victim was shot twice with a .22 caliber automatic pistol. The victim had his service revolver taken. The suspect fled out the front door where he was joined by another suspect and both suspects were seen running from the scene.

The victim was declared dead a short time later.

Two days later, on February 15, 1989, Mr. Gambrell was arrested and charged with Unauthorized Use of a Motor Vehicle and Carrying a Pistol Without a License, the pistol being a .22 caliber automatic. The pistol was examined and the results were positive that the bullets and casings recovered from the homicide were fired from the gun recovered from the automobile where the defendant was seated.

That evening, a witness identified the defendant from a group of photos as the person that had come out of the hospital with the decedent's weapon in his hand.

3

**DEFENDANT'S VERSION:**

Mr. Gambrell states that he was arrested in the District of Columbia, in February, 1989, about two o'clock in the morning, in the area of 17th Street, Northeast and Gayle.

The defendant stated, "I was a passenger in a car...Perry was driving...they said the car was stolen...they found the gun under the back seat...they said the gun was used in the Robbery/Homicide."

The defendant stated that the Robbery/Homicide occurred at 12 noon at Greater Southeast Community Hospital. The defendant acknowledged that he was involved in it. Mr. Gambrell stated, "We just accosted the guard in the hospital and tried to take the money...me and the guard struggled. The guy I was with shot him. I'd rather not say his name...it wasn't the co-defendant."

The defendant stated that he had been watching the hospital for some time and that he knew that the Armored Truck was carrying money from the hospital. ("I had seen the truck come and go. I'd been staying in the area for two weeks.")

The defendant stated that he and the co-defendants had planned the Robbery. ("We talked about it and we did it...I don't really know whose idea it was.")

**PRIOR CRIMINAL RECORD:**

**Adult.**

**Washington, D.C.**

The complete criminal record is not contained in the Criminal Information Center. The defendant has been incarcerated for an extended period of time on several serious felony charges. The request for the Federal Bureau of Investigation report has not been answered as of this time.

| | | | |
|---|---|---|---|
| 10-25-68 | Rape | 5-18 years | DCSC/MPD |
| | ADW/Gun F-1956-68 | 3-10 years | " |

**Detroit, MI/Eastern District Michigan, U.S. District Court**

| | | | |
|---|---|---|---|
| 1975 | Bank Robbery and Related Charges | 35 years (6-13-75) | DCDC |

4

PRIOR CRIMINAL RECORD:     (Continued)

Washington, D.C.

| | | | |
|---|---|---|---|
| 2-13-89 | Murder II While Armed<br>F-1989-89J | INSTANT OFFENSE | |
| 2-15-89 | Unauthorized Use<br>of a Vehicle/Carrying<br>a Dangerous Weapon<br>F-1863-89 | No disposition | DCSC |

PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:

The Institutional Record indicates that the defendant was
sentenced on two prior charges.  The defendant was first sentenced to
18 years in 1968 on a charge of Rape, Kidnapping and related charges,
docket number F-1956-68.  The defendant was sentenced to 18 years.  The
Institutional Record indicates that the Rape charge occurred in
October, 1968.  The defendant and co-defendant robbed a man and a woman
in Rock Creek Park.  Both the defendant and the co-defendant raped the
woman.  The defendant was arrested two days later driving a stolen
automobile and found to have the man's credit cards in his pocket.

The Institutional Record indicates that the defendant was next
arrested in October, 1973 on a charge of Carrying a Dangerous Weapon
when he was found to have had a .38 caliber revolver in his possession.
This offense occurred in Rockville, Maryland.

Apparently the defendant was incarcerated from 1968 until 1973.

The defendant states he was released in 1974 from a federal
institution.  He was arrested again in 1975 on a charge of Bank Robbery
and related charges, which occurred in Detroit, Michigan.  Apparently
the defendant went to the home of a bank president, abducted the
president and his family, took them to a bank and robbed the bank.  The
defendant stated that they got about $60,000 cash in that robbery, and
that they spent it over the course of the next several months on
hotels, on clothes, etcetera, before they were arrested.

Mr. Gambrell spent almost all of the 16 years between 1968 and
1984 incarcerated at federal institutions.  The defendant then
requested a transfer to the District of Columbia facilities to be
closer to his family, and, shortly after coming to the District of
Columbia, was released on parole in 1985.  It appears that the
defendant was under the supervision of a parole officer, Mr. John
Davis.  Mr. Davis reported that Mr. Gambrell quit reporting in
September, 1987 and a parole warrant was issued in June, 1988.

6

SOCIAL HISTORY:   (Continued)

of 61.  The defendant's father, ~~████████~~ . died in 1987 of
what may have been colon cancer.

The defendant states his parents were not married. He states he is
an only child.

The defendant states he was raised by his mother, who was a
beautician.

Mr. Gambrell states he has no other family in the District of
Columbia area.

### Education/Training

The defendant states that he went to private schools in junior
high school and in high school.  The defendant states that his mother
sent him to St. Joseph's Academy, in Claymont, Delaware, for about
three years, in junior high school.  The defendant then went to Cushing
Academy, in Newbury, Massachusetts, for three years, from the ninth to
the 12th grade.   The defendant states he left that school because of
"homesick.  Racial problems."

The defendant states that he then returned to the District of
Columbia and was involved in trouble almost immediately.  He states he
was in Coolidge High School when there was big gang fight and he was
linked to some violence that the gang was involved in.  The defendant
was locked up at the National Training School, after, he states,
"somebody had broke into a bank."

The defendant states he completed high school in the National
Training School and then went to North Carolina A&T College for a year
studying sociology.  He states that he got thrown out of college
because he shot a guy during an argument. ("A guy I was in an argument
with...I used a 22.")

### Military

The defendant has no military service.

5

PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:    (Continued)


Mr. Gambrell acknowledged his involvement in the prior charges for which he was convicted. The defendant stated that he and his co-defendant, in 1974, robbed a man and woman in a parking lot in Rock Creek Park at about 10 o'clock in the evening. He denied that they raped the woman. The defendant refused to discuss the charge in any depth, stating, "I never like said I committed the charge. I've said all along I wasn't there...I was stopped three days after the crime was committed...they found some credit cards that was taken in the Rape and Robbery."


The defendant did admit his involvement in the 1974 Kidnapping and Armed Robbery in Michigan. The defendant stated that he and his co-defendants went to the bank president's house, and took "him and his family" from the house to the bank, and got $60,000 cash. They were out on the run for two months before they were arrested.


The defendant did acknowledge that he was involved in other crimes in the community prior to  his arrest on the Instant Offense. The defendant stated that he done a couple of Armed Bank Robberies while he was in the community, but did not elaborate on those charges, and I didn't ask him about them.


EMPLOYMENT HISTORY:


The defendant stated that he worked from  1985 to 1988 doing concrete and paving work for a company called Bertual Holland Concrete Company. The defendant states that he was partners with the man that owned the company, whose name he did not give me. The defendant stated that his partner is now locked up in Maryland on a charge of Armored Truck Robbery not related to the charge the defendant is locked up on.


The defendant did not state how he supported himself after 1988. He has been locked up since February, 1989, after his arrest in the Instant Offense.


SOCIAL HISTORY:



Family History


Mr. James O. Gambrell is 42 years of age.  He was born in the District of Columbia and was raised in the Northwest section by his parents.  His mother, ▆▆▆▆▆▆▆ died in 1984 of cancer at the age

7

SOCIAL HISTORY:   (Continued)

## Marital Status and Living Arrangements

The defendant is single.  He has never married.

The defendant states he has one child, a son, Adolphus Gambrell. The child is 15 months of age.  The child's mother, Regina Nicholson, is a co-defendant in the Instant Offense.  The defendant states that the child is supported by Ms. Nicholson, who is a cashier at Zayres Department Store.

It is my  understanding that Ms. Nicholson is also scheduled to return for sentencing on the Instant Offense.

## Health

The defendant is in good health.  He denies any problems.

The defendant states he is in good emotional health, has never had psychiatric treatment or testing in the community.

Mr. Gambrell is in no treatment program now. He is on no medications.

## Substance Use/Abuse

The defendant acknowledges use of marijuana, cocaine, and alcohol. The defendant states he used heroin about three times.  He denied use of PCP and amphetamines.

Mr. Gambrell states that he began marijuana use in 1968 and that he used marijuana irregularly during the time that he was in the community, having last used the drug in 1989 at a party.

The defendant began cocaine use in 1973, and Mr. Gambrell states he used cocaine until the day of his arrest, in February, 1989.  The defendant states that he was using "a fifty" once a week, snorting the drug.  Mr. Gambrell stated, "If I got a drug problem, it would be cocaine."

The defendant acknowledged using alcohol "off and on".  He denied that alcohol was a problem.

8

**SOCIAL HISTORY:  (Continued)**

The defendant was involved in no alcohol or drug treatment program in the community.

**EVALUATION AND DIAGNOSIS:**

Mr. James Gambrell is before the Court for sentencing on a charge of Murder II While Armed, docket number F-1989-89J.

The Instant Offense occurred in a community hospital in the far Southeast section of the District of Columbia. The defendant admits that he was in the hospital at the time, that he and a friend were robbing the security guard of money, and the defendant states that his friend shot and killed the security guard. (However, I would note that the police report states that there was only one person in the hospital when the man was robbed and killed.)

The defendant acknowledges a long term history of criminal court involvement in very serious charges. Mr. Gambrell came from what should have been a very stable family situation in the community. He is an only child. His mother worked and sent him to the best schools that she could afford. The defendant appeared to make a fairly good adjustment until he was about 15 or 16 years of age, when Mr. Gambrell just turned completely around and began being involved in very serious criminal charges. Mr. Gambrell came home from Cardinal Cushing High School in Massachusetts and entered Coolidge High School. He states he got in with a crowd of young men who were involved in criminal activity, and he became directly involved in it. The defendant apparently was accused of breaking into a bank when he was about 16 or 17 years of age, and was committed to the National Training School for almost 18 months. The defendant finished high school in the National Training School, went to college, became involved in an altercation with another student in college, and the defendant shot the other student. He was then dismissed from college, came back to the District of Columbia, was convicted of Robbing and Raping a man and a woman in Rock Creek Park, and was committed to a federal institution. The defendant spent about six years in a federal institution, from 1968 to 1974, was released, apparently on parole (his institutional time is still pending on some of these charges), became involved with several other people in a scheme to rob a bank by kidnapping the bank president and his family and taking them to the bank, was again arrested several months after his involvement in that charge, and again sentenced in federal court to 35 years. The defendant spent most of the time from 1975 to 1985 in jail. In 1984, in order to be closer to his family and probably to get out of the federal system, the defendant requested a

9

**EVALUATION AND DIAGNOSIS:    (Continued)**

transfer to the District of Columbia institutions, which was granted. The defendant was then released a short time later (it appears that most of the Parole Board was very favorable to Mr. Gambrell's release because he was doing so well in prison, although one counselor described Mr. Gambrell as a very dangerous criminal and opposed very strongly his release). The defendant was released on parole. Mr. Gambrell states that he began using cocaine, and apparently his parole functioning was not being very closely monitored, because he states he used a large amount of cocaine almost up until the day of his arrest.

The defendant states that while he was in the community from 1985 to the date of his arrest in February, 1989, he was working for a friend of his who was doing concrete work. The defendant also states that he was involved in several Armed Robberies for which he was not apprehended or charged. The defendant's friend was apparently also arrested on a charge of Armed Robbery of an Armored Vehicle, and Mr. Gambrell states that he is incarcerated in Maryland, although he would not tell me his name.

It would seem to be very clear that the defendant's counselor at the Lorton Reformatory who described Mr. Gambrell as a career and very dangerous criminal was correct in his assessment of the defendant.

Mr. Gambrell expresses no remorse for his involvement in the Instant Offense. He seems to have accepted his incarceration with a certain amount of equanimity and appears to just biding his time until he can be released once again on parole.

The defendant expressed no remorse for the fact that a man was killed during the commission of his offense. In fact, the defendant seemed to be denying any responsibility for that action at all, even though he admits that he was there for the purpose of robbing the man. I would note that the defendant was described as the man who came out the hospital with the guard's gun on his person.

**TREATMENT PLAN:**

Incarceration for the protection of the community.

10

**RECOMMENDATION:**

Incarceration is respectfully recommended.

**INTENSIVE PROBATION SUPERVISION ELIGIBILITY:**

The defendant is <u>not</u> eligible for assessment by the Intensive Probation Supervision Program.

Respectfully submitted,

Christopher R. Binder
Probation Officer
879-1835

Approved by: _Robert Blunt actng SPO_
Supervisory Probation Officer
879-1929

CB/cba

# GAMBRELL

# EXHIBIT   A11

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

*P S I Attached*

United States of America
~~District of Columbia~~

*161/94*

vs.

*James O. Gambrell*

Case No. *F.1999.99*
PDID No. *2104.851*

## JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☐ Guilty to the Charge(s) of _____

*3 Murder II While Armed*

and having been found guilty by ☐ Jury ☐ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to _____

*12 years to Life Consecutive*

☐ MANDATORY MINIMUM term of _____ applies to the sentence imposed.

☑ MANDATORY MINIMUM term does not apply.

☑ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803(b) of the D.C. Code [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

☐ Observe the general conditions of probation listed on the back of this order.

☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

☐ Treatment for ☐ alcohol problems including dependency or abuse as follows: _____

☐ Restitution of $ _____ in monthly installments of $ _____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____

☐ _____

Costs in the aggregate amount of $ _____ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official and that the copy shall serve as the commitment order for the defendant.

*1/3/91*
Date

_____
Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

*1/3/91*
Date

_____
Deputy Clerk

GOVERNMENT
EXHIBIT
6

# GAMBRELL

# EXHIBIT   A12




# The Board of Parole
## *of the*
## District of Columbia

## NOTICE OF BOARD ORDER

In reference to:

Order # 1 of 1

**DCDC** 161-194

**DOB** ████████949

**DOCKET** H9806-0020

**NAME** JAMES GAMBRILL

**SSN**          **LOCATION** COMPLEX

**CONSIDERATION TYPE** H:INITIAL

The District of Columbia Board of Parole issues the following **ORDER:**

DENY PAROLE; RECONSIDER FOR PAROLE BY 08/20/1999

Implementation of this Order shall include the following:
Special Instructions for Reconsideration

PROGRAM PARTICIPATION
PSYCHOLOGICAL EVALUATION
WORK TRAINING PROGRAM

Remarks:

06/30/1998
———————
Date

Chairman
on behalf of the Board of Parole

[ Parole Supervision

A TRUE COPY
TEST          Seal

Director, Michael Green
Parole Determination
D.C. Board of Parole

GOVERNMENT
EXHIBIT

# GAMBRELL

# EXHIBIT   A13

# D.C. REHEARING HEARING SUMMARY

## Offense of Conviction - Murder II While Armed

| | | |
|---|---|---|
| **Name** | :GAMBRILL, James | **Short Term Date:**Life |
| **D.C. No** | :00161-194 | **Full Term Date :** |
| **Date Dictated:**12-14-1999 | | **Fines/Restitution/Court Assessment:**None |
| **Institution** | :Sussex II State Prison | **Date of Birth:**8-22-1948 |
| | | **Reviewer** :Thomas C. Kowalski |

## I.    PREVIOUS PAROLE BOARD ACTION:

Please see the prehearing summary completed on 12-9-1999. Very briefly, the prehearing summary will describe a juvenile history that commences in 1965 and continues on with a series of very serious and assaultive crimes until they culminate in the offense on 2-13-1989 when a Armored Express Company employee was shot to death leaving the Southeast Community Hospital in a robbery attempt.

At his initial hearing in June of 1998, the DC Parole Board denied release and basically continued his case for 1 year. The grid point score was 1 and at that time, indicated that parole be considered. The DC Parole Board overrode the point score by indicating the subject's failure under community supervision, his ongoing and repetitive criminal history, his prior record of violence and unusual cruelty to the victim.

## II.    INSTITUTIONAL ADJUSTMENT AND RELEASE PLANS:

The subject has maintained a clear conduct record and has been involved in a considerable number of favorable programming efforts. He has received Associates degrees in Dental Technology, Management Technology and an Associates degree in Liberal Arts. He has received computer training while in the federal system and has also completed a substance program.

He arrived at the Sussex facility in January of 1999 and has worked in the commercial arts area as an instructor's aid throughout his period of time at this facility. He has generated a considerable amount of support from the community and the file would reflect that the public defender has submitted numerous letters from community individuals and programs supporting the subject for release at this time.

## III.    MISCONDUCT DETAILS:  (rescission consideration):

The subject has a clear conduct report.



GAMBRILL.161

Page 1 of 3

**GRID SCORE:** 1

Based upon the subject's achievement in the programming area, he would probably earn an additional one point off of his total grid score which would now provide him with a 0 (zero).

The salient factor score as computed by the DC Parole Board in June of 1998 would reflect the following.

**Salient Factor Score:**

A = 1
B = 1
C = 1
D = 0
E = 2
F = 1

Total = 6

## IV.   CODEFENDANTS:

Regina Nicholson - The subject states that he she made a deal with the government and never did serve any time for this offense. Ms. Nicholson was apparently the subject's girlfriend at the time of the original robbery and according to the subject, was the individual who actually suggested the crime.

Frederick Miller - According to the subject this man was acquitted.

## V.   RISK: Is this offender a more serious risk ?  If so, describe.

Based upon the juvenile and adult history as well as the current offense specifics, the subject would surely represent a more serious risk.

## VI.   EVALUATION:

The subject has now served 107 months on this murder conviction since the sentencing date of 1-3-1991.

The grid point score in this case would clearly indicate that parole be recommended, however, a close review of the crime itself as well as the subject's history would suggest that he represents a clear threat to the community and should not be released at this time.

The examiner will recommend that parole be denied and that he be reconsidered for a parole in August of 2003. This amounts to a 4-year set off and is clearly a departure from the guidelines.

The subject is a more serious risk based upon his juvenile history which involves arrests and

GAMBRILL.161

convictions for robbery and assault with a dangerous weapon as well as a commitment to the National Training School for assault with a deadly weapon. As an adult, the subject served for rape and armed robbery and when paroled from this offense was committed to serve an additional 35-year sentence for bank robbery and kidnapping. When on parole for this offense, he was involved in the current murder offense.

## VII.  RECOMMENDATION:

Deny parole.  Continue for a rehearing in August 2003.

## VIII. REASONS:

CLW
December 19, 199

# GAMBRELL

# EXHIBIT   A14

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action**

---

Name: GAMBRELL, James

DCDC Number: 161-194

Register Number: 29898-117

Institution: Sussex II

In the case of the above-named, the following parole action was ordered:

Deny parole.  Continue for a rehearing in August, 2003.

**REASONS:**

Your previous score under the District of Columbia parole guidelines was 1.  With adjustments reflecting your institutional record since your last hearing, your current score is 0.  You continue to be scored under the 1987 guidelines of the D.C. Board of Parole.  Those guidelines indicate that parole should be granted at this time.  After review of all factors and information presented, a departure from the guidelines at this consideration is warranted for the following reasons.  You are a more serious risk than indicated by your point score in that you have a juvenile history which involves arrests and convictions for robbery and assault with a dangerous weapon as well as a commitment to the National Training School for assault with a deadly weapon.  As an adult, you served for rape and armed robbery and when paroled from this offense you were committed to serve an additional 35-year sentence for bank robbery and kidnapping.  When on parole for this offense, you were involved in the current murder offense.

**THE ABOVE DECISION IS NOT APPEALABLE**

Copies of this Notice are sent to your institution and to your Supervision Officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

Date: **January 18, 2000**

Clerk: ad

GOVERNMENT
EXHIBIT

GAMBRELL 208

# GAMBRELL

# EXHIBIT   A15

(RHO-S)

<SUMCODE-DCRERESA_SUM>

## D.C. REHEARING/RESCISSION HEARING SUMMARY
### ADULT AND YOUTH
### (INITIAL HEARING PRIOR TO 8/5/98)

**Offense of Conviction - Murder II While Armed**

| | | | |
|---|---|---|---|
| **Name** | :GAMBRILL, James | **Institution** | :Lewisburg USP |
| **D.C. No** | :29898-117 | **Short Term Date:** Life | |
| **Date of Birth** | :███████9 | **Full Term Date:** Life | |
| **Date Dictated** | :7/1/03 | **Fines/Restitution/Court Assessment:** No | |
| | | **Detainer** | :None |
| | | **Reviewer** | :Kathleen A. Pinner |

## I.    PREVIOUS PAROLE BOARD ACTION:

Please see PHA dated 5/30/2003.

## II.    INSTITUTIONAL ADJUSTMENT AND RELEASE PLANS:

Since his last hearing, subject has received outstanding work reports in Food Service. He has been there since July of 2002. He is enrolled in the CODE Program and has completed the first portion of the 12 month program. He also indicated that while he was at Sussex II, he took Graphic Art Design and was Certified in it over a period of 2 years. He is Certified in Photo Shop Screening and Pasting.

He stated that since his incarceration, he has been in contact with youth groups in the DC metropolitan area by writing letters to the youth in the community advising them of what he had done and how to avoid his lifestyle. He has also been involved with Bruce Kline, here at Lewisburg, who is an elder with Jehovah's Witnesses. He completed a Bible Study Course in June of 2004. His release plans are to reside with his wife in MD.

## REPRESENTATIVE:

Subject was represented today by his wife,                    , of Silver Spring, MD. S█████ that she is very active in Jehovah's Witnesses and attends 5 meetings a week and that subject has been working with their congregation through the mail. She indicated that subject is trying to make a transition to be ready for the community. She indicated that subject has been in contact with various community groups, including the Alliance of Concerned Men, who forwarded a letter to the Parole Commission on 5/21/03. Also, a letter was forwarded on

GAMBRILL.298

Page 1 of 5

GOVERNMENT EXHIBIT 7

(RHO-S)

6/13/03, the Chairman from the Anacostia Mens' Employment Group, which will assist subject in seeking employment. She stated that subject has been actively involved with the youth in the community through his letters, trying to ensure that they do not take the same path that he did. She also indicated that they have a 14 year old son that needs his father's guidance.

indicated that subject has turned his life around from the second year he was locked up and has done all that he can while he is incarcerated to better himself.

## III.   MISCONDUCT DETAILS:

Not applicable.

## IV.   GRID SCORE:

Subject had a grid score of 0 and it remains 0, as minus 1 is not an option, even though he does receive minus 1 for programming.

## V.   CODEFENDANTS:

No known information available to the examiner.

## VI.   RISK:

Yes - will be described in Evaluation Section.

## VII.   EVALUATION:

The examiner is recommending that subject be denied parole and continued for a hearing in July, 2006. This is outside of the normal Rehearing guideline range of 12 months, which is applicable in this case and is also a departure from the parolable guidelines. The reasons are as follows: You are a more serious risk then indicated by your grid score of zero. You have prior convictions for assaultive behaviors including a 1968 conviction for Rape, Kidnapping, Assault With a Deadly Weapon (Gun). You also have a 1975 conviction which involved Bank Robbery and related charges including Kidnapping and while you were on parole from an Armed Bank Robbery and Kidnapping sentence, you became involved in the instant Murder II conviction While Armed. Not withstanding your programming, the Commission believes that the violence you have exhibited throughout the course of your adult life warrants continued custody in order to protect the community.

## VIII.   RECOMMENDATION:

Deny parole. Continue for a Rehearing in July, 2006.

## IX.   REASONS:

GAMBRILL.298

Page 2 of 5

(RHO-S)

You are a more serious risk then indicated by your grid score of zero. You have prior convictions for assaultive behaviors including a 1968 conviction for Rape, Kidnapping, Assault With a Deadly Weapon (Gun). You also have a 1975 conviction for which involved Bank Robbery and related charges including Kidnapping and while you were on parole from an Armed Bank Robbery and Kidnapping sentence, you became involved in the instant Murder II conviction While Armed. Not withstanding your programming, the Commission believes that the violence you have exhibited throughout the course of your adult life warrants continued custody in order to protect the community.

SDS
July 11, 2003

GAMBRILL.298

Page 3 of 5

GAMBRILL, James O.            - 2 -            P. O. #23679

I        OFFICIAL VERSION OF OFFENSE:

          Following the conclusion of a jury trial on June 23, 1969,
the defendant, James O. Gambrill, and codefendant Jerry L. Hunter, were
both found guilty on a six count indictment in which they were charged
in two counts with Robbery, two counts with Assault With a Deadly Weapon,
one count with Rape, and with one count of Unauthroized Use of a Vehicle.
Judge Oliver Gasch presided at the trial and ordered a presentence in-
vestigation on both men.

          Inasmuch as Your Honor is familiar with the details of this
case, we will only present the highlights here.

          According to the police report, the complainants Claire
Oosterhof (21) and Phillip M. Murawski were parked in the latter's auto-
mobile in Rock Creek Park on October 1, 1968, when two men approached
them. At gunpoint, the twosome ordered both complainants out of the
car. They tied Mr. Murawski up, took his wallet and he was struck in the
head with the butt of a gun held in the hand of one of the assailants.
Following this, both proceeded to force Miss Oosterhof to submit to inter-
course. However, it appears only one, the shorter of the two, was able
to penetrate. Following this ordeal, and after taking Miss Oosterhof's
wristwatch and tying her up also, the assailants fled in Mr. Murawski's
1966 Chevrolet.

          The defendants were first connected with this offense follow-
ing their arrest within two days later, when they were charged with
operating a stolen automobile, other than the one mentioned above. Inside
the car, the police found credit cards which were taken from Mr. Murawski
on the night of the instant offense. Hunter and the defendant reportedly
told police the car belonged to Hunter's brother and that they had "just
borrowed" it, not being aware of its contents. Further investigation
lead to the discovery of Mr. Murawski's car near the home of codefendant
Hunter. The vehicle was dusted for fingerprints which, revealed at
least one being identified as belonging to Hunter. It seems both com-
plainants had difficulty in identifying the defendants when they were
reviewed in police line-ups.

II        DEFENDANT'S VERSION OF OFFENSE:

          Gambrill said he did not testify at his trail on the advise
of counsel.

          He further stated he was completely innocent, had no knowledge
of this crime other than from what he has learned from police and tes-
timony given at his trial, and he said he intends to seek an appeal of
his conviction.

          According to him, he and Hunter were on their way to the
North Carolina Agricultural and Technical State University in Greensboro,
North Carolina, when police arrested them during the early morning hours

GAMBRILL, James O.          - 3 -                O. #23679

II        DEFENDANT'S VERSION OF OFFENSE:(Continued)

of October 3, 1968. He said police, at that time, made no mention as
to the instant offense and seemed to be only concerned about the car in
which they were riding. He said he did not know the vehicle (a Valiant)
was stolen and understood it belonged to Hunter's brother, McKenley
Hunter. He further denied his being aware of Mr. Murawski's credit
cards which police found hidden in the car.

It is interesting to note at this point that Gambrill's
statement differs from that given by codefendant Hunter. Your Honor
will note that Hunter told the probation officer that Gambrill found
Mr. Murawski's wallet, containing the credit cards, sometime prior to
their arrest, and that he (Gambrill) put them in the car.

The defendant seemed quite perturbed because, he says the
police had very little evidence against him, especially, since, accord-
ing to him, Miss Oosterhof was unable to identify him when he appeared
at police line-up. However, Miss Oosterhof did identify him during his
trial.

III       PRIOR RECORD:

          Juvenile:

7/31/65                           Robbery & Assault With
                                  a Deadly Weapon (gun)

On July 31, 1965, defendant was arrested and charged with
Robbery & Assault With a Deadly Weapon (gun). Details show that, during
the early morning hours of said date, Gambrill, in the company of three
others robbed a man at gunpoint of $38.00. It is said they also beat
the man about the face and head with a gun.

On November 3, 1965, subject was again brought to the attention
of the juvenile authorities on charges of being disorderly, loud and
boisterous, and for fighting.

Shortly thereafter, police arrested him again. This time
he was charged with breaking into a storage room of an apartment building.

While all the above mentioned charges were being considered
by the Juvenile Court, Gambrill was arrested on March 14, 1966 and
charged with Assault With a Deadly Weapon (knife). It is said that
Gambrill, along with several others, beat and stabbed a seventeen year
old youth.

Acting on said complaints, the Juvenile Court committed the
subject to the National Training School for Boys until his 21 st. birth-
day. The date was March 17, 1966. Gambrill remained institutionalized
until his parole on August 8, 1967. He was on parole status at the time
of the instant crime, with his full expiration extending to August 21, 1969.

GAMBRILL, James O.                    - 4 -              ( ?. O. #23679

III       PRIOR RECORD (Continued):

          Adult:

                As mentioned previously, it appears Gambrill was arrested for
Unauthorized Use of a Motor Vehicle and Housebreaking on October 3, 1968.
He tells us these charges were subsequently dismissed. As far as we
can determine, this seems to be correct.

                There is also some question as to possible pending charges
in Greensboro, North Carolina concerning defendant shooting another
youth sometime during the latter part of 1967 or the early part of 1968.
We only recently learned of this instance from a source other than the
defendant. We are awaiting a report from the U. S. Probation Officer
in that area regarding the details and when same is received, we will
forward the information to the Court. According to Gambrill's mother,
defendant accidentally shot and wounded a friend while showing the
friend the gun.

IV        FAMILY HISTORY:

                James Osborn Gambrill was born on August 22, 1948 in the
District of Columbia. He was the only child born to ▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ The parents married in 1946 but lived together
for only a short period of time, separating not long after the defendant
was born. The marriage remained in this status until 1953 when subject's
mother was granted a divorce.

                Following the separation, subject's mother placed him in the
home of his maternal grandmother in North Carolina where he stayed until
1953 when his grandmother died. He then returned to his mother, who
at that time was living in the District of Columbia. He attended school
here for approximately the next three years, at which time he was sent
to a boarding school which began a succession of similar arrangements
made for him by his mother. His mother felt, it is said, that she had
no other recourse, but to send him to boarding schools, because her
work as a beautician would have prevented her from providing him with
adequate supervision. Social Agency records indicate he was not too
happy being away from home and, up until his last boarding school ex-
perience in 1965, he attempted to run away on several occassions.
Consensus seem to be that he felt rejected by his mother, feeling she
had abandoned him.

                During a mid-semester break between 1964 and 1965, Gambrill,
instead of returning to a boarding school in Massachusetts, went to
live with his father here in this city. His mother had no knowledge
of this until several months later, when in June, 1965, she was informed
by a local hospital that her son had been admitted there for stabs and
wounds he received in a gang fight. Since then and, up to the present
time, defendant has been in continual trouble with the law.

GAMBRILL, James O.                  - 5 -                    P. O. #23679

IV        FAMILY HISTORY (Continued):

          In 1962, defendant's mother married ████████████ an
accountant, age 48. This seems to be a stable relationship with Mr.
Jones showing a degree of interest toward the defendant. Nevertheless,
it seems the subject has rejected his step-father feeling he is somewhat
of an intruder.

          Mrs. Jones, in commenting about the instant offense, said she
could not bring herself to believe her son committed such a violent,
serious offense. When his past trouble with the law was called to her
attention, she attempted to exonerate him by saying police had a habit
of blaming him for things she was sure he did not do. She said he always
made good marks in school, presented no behavior problem to her knowledge
and quite defensively denied reports her son felt uncomfortable away from
her in boarding schools. She did admit, however, that since his return to
the District of Columbia in 1965, he has displayed signs of misbehavior
and a poor attitude. She feels his father is primarily responsible for
this because of the lack of supervision he has provided defendant. She
also blames his association with an aggressive crowd and seems to get a
great deal of satisfaction in fighting. A report from the National
Training School shows that one time, he was associated with the "Decator
Street Gang" which was notorious for causing trouble.

          We were unable to interview the elder Gambrill inasmuch as
his present whereabouts are unknown. Information is that he still
resides in the District of Columbia, has never been in difficulty with
the law and operates a fleet of taxicabs.


V         MARITAL HISTORY:

          Defendant tells us he is not married or fathered any children.


VI        HOME & NEIGHBORHOOD:

          Although Gambrill claims he has lived primarily with his
mother and step-father since he returned from college in January, 1968,
his mother told us otherwise. According to her he stayed with her only
a short time and was asked to leave because she returned home on ocassion
from vacation to find her home in a total mess and being occupied by a
group of unruly friends of the defendant. He has since resided with a
████████████ she says, who lives some place on 14th. Street (exact address
unknown). He returned to her home at 108 Madison Street, N. W. follow-
ing his release on bond and remained with her and her husband until he
was remanded to jail.

          The parental home is a two-story brick dwelling with base-
ment being purchased by the Jones'. It is reportedly in a good state
of repair and has been occupied by the Jones family for the past eight
years.

GAMBRILL, James O.                    - 6 -                    P. O. #23679

VII     EDUCATION:

Defendant's early elementary school years were spent in the District of Columbia. From the fourth grade on he attended several boarding schools in Pennsylvania, Delaware and Massachusetts. The last such school was the Cardinal Cushing Academy, Massachusetts from where he spent most of his high school years up until the time he withdrew after completing the eleventh grade. It is not exactly clear why he discontinued his education, at this juncture. His mother commented that he may have been having difficulty with the faculty, although, Gambrill denies this. We are still awaiting verification from this school.

Just prior to his commitment to the National Training School for Boys, Gambrill was enrolled in the S.T.A.Y. Educational program. Reports show that his attendance was irregular and it was felt that he participated in this endeavor primarily becuase of "coercion" by his parents and the Juvenile Courts caseworker.

From March 17, 1966, until his parole on August 8, 1967, subject was confined at the National Training School for Boys. His general adjustment was considered satisfactory with his becoming actively involved in both the academic and vocational instruction offered there. He received his general education development certificate and completed a course of study in barbering while there.

He was admitted to the North Carolina Agricultural and Technical State University in September, 1967. The registar reports he remained in attendance until January 30, 1968, at which time he was "permanently suspended" because of his shooting another student. During his semester attendance he earned a 2.33 grade point average on the 4.00 scale. Defendant told us he was "temporarily suspended for the involvement in the black student union movement". He made no mention whatsoever of the shooting incident. He said he was in the process of trying to be reinstated by the university at the time he was arrested.

VIII     RELIGION:

Defendant was baptized in the Catholic Faith, received Religious Instructions during his early childhood and, says he attends Mass "frequently". At one time he says he was a member of the Catholic Youth Organization.

X     HEALTH:

He considers himself to be in good health, only having had the usual childhood diseases, without incident. He denies the use of narcotics at any time and says he drinks only on ocassion. He appears to be functioning in the average range of intelligence, has good recall and verbalizes well.

GAMBRILL, James O. (          - 7 -          ( P. O. #23679

XI          EMPLOYMENT:

      Gambrill provided us with the names of two employers of significance.

      Following his suspension from college, he worked as a construction laborer from June until September, 1968 for the Kettler Bros. Construction Co.  It seems he was idle from January 30, 1968 (the date of his suspension) and until he went to work for Said Construction Co.

      There is also a three month lapse between his next and final job which he said was from December, 1968 until the commencement of his trial.  He told us he was a salesman, earning approximately $150 per week working for the Christopher Men's Haberdashery located at 3213 Georgia Avenue, N. W.  A recent visit to this address revealed an empty building. Apparently this concern recently went out of business inasmuch as there is a listing for it in the telephone directory.

XII          MILITARY SERVICE:

      None.

XIII          FINANCIAL OBLIGATIONS:

      Gambrill's only obligation, has been remuneration to his step-father and mother for room and board.  According to his mother, he offered her no financial assistance in this respect and complained that "all he wanted to do was show off his flashy clothes".  She did not seem to be certain as to whether or not her son was gainfully employed at the time he stayed with her.

XIV          EVALUATIVE SUMMARY:

      James O. Gambrill, a single, twenty year old youth, was found guilty in a six count indictment charging him and a codefendant with Rape, Robbery, Unauthorized Use of a Vehicle, and Assault With a Dangerous Weapon.  The offense occurred in October, 1968.  The victims were a young woman and her male companion who were parked in Rock Creek Park.  The woman was raped at gunpoint while her boyfriend watched helplessly nearby while tied up.  After robbing the complainants and making sure they were both bound, the assailants fled in the boyfriend's automobile.  The defendant categorically denies being a participant in this crime or having any knowledge of its occurrence prior to his being told by police.

      Defendant, an only child, is a product of a broken home with his parents dissolving their marriage soon after his birth.  Most of his formative years were spent in various boarding schools, which seemingly, had a negative affect upon his emotional development.  There are strong indications he felt, during his years away from home, that he was being rejected by his mother and, that he took a backseat so to speak, to her employment career and second husband.  His social adjustment was

GAMBRILL, James O.              - 8 -              P. O. #23679

XIV      EVALUATIVE SUMMARY (Continued):

apparently satisfactory up until the age of fifteen or sixteen when
he began  to manifest an aberrant behavior which eventually was brought
to the attention of the legal authorities.  At that time he became
associated with a hostile gang known for their violence and disregard
for the law.  This lead to a series of arrests for Gambrill during an
eight month period which culminated in his being committed to the
National Training School for Boys in March, 1966.  These were serious
complaints filed against him, such as Robbery (holdup), Assault With
a Dangerous Weapon (gun), Assault With a Knife, and Housebreaking.
He was on parole from the National Training School for Boys at the time
he committed the instant offense.

          Gambrill impresses us as an aggressive and hostile youth who
apparently seems to derive a sense of satisfaction from participating
in acts of violence.  He has had above average opportunities to prepare
the way for him to secure a respectable position in society but, as
evidenced by the nature and extent of his prior offenses, he obviously
elected to add to the social problems of the community.  This is un-
fortunate inasmuch as he seems to have potential to do something con-
structive with his life, as reflected by his scholastic achievements.
However, even this has now been jeopardized by his attitude and behavior.

XV       RECOMMENDATION:

          Probation is not recommended.  The serious nature of this
offense, coupled with the violent nature of his previous arrests, seems
to clearly indicate that he is in need of intensive therapy within the
controlled and structured environment found only in an institution.
His return to the community at this time would be, we feel, a dangerous
risk.  There would be a probability, based on his past pattern of
violence, that, it would be only a matter of time before some innocent
citizen would, perhaps, be fatally injured as a result of Gambrill's
actions.

          By virtue of his age, he is eligible for the Youth Corrections
Act.  We are recommending that the case be disposed of in this manner,
however, we believe Section 5010 (c) would be more applicable in this
case than the (b) Section of the Act.  This would provide institutional
officials with a greater degree of latitude in terms of the length of
time in which they felt it necessary to achieve rehabilitation.

GAMBRILL, James O.    - 9 -    P. O. #23679

XV    RECOMMENDATION: (Continued)

We are in receipt of a transcript from the Cardinal Cushing Academy, West Newbury, Massachusetts. Information contained therein indicates subject attended there from September, 1962 until March 3, 1965. It appears that his grades flucuated from below average to average and he acquired 62 of the 100 credits he needed to graduate. The transcript carried the notation "Student requested by headmaster to withdraw from the Academy". There was no elaboration on this.

Respectfully submitted,

George W. Howard
Chief U. S. Probation Officer

By: James A. Lowery
U. S. Probation Officer

JAL:am

ADDENDUM:

Information from the U. S. Probation Office for the Middle District of North Carolina indicates that there, apparently, was no formal charge placed against Gambrill concerning the "accidental" shooting by him of a school friend.

# GAMBRELL

# EXHIBIT    A16

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

Name: GAMBRELL, James
Register Number: 29898-117
DCDC No.: 161-194

Institution: Lewisburg USP

Date: July 29, 2003

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue for a rehearing in July 2006.

REASONS:

Your Grid Score at your last hearing was 0 points. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole.

Under the guidelines for D.C. Code offenders, your current Total Point Score includes -1 point for ordinary program achievement since your last hearing.

With adjustments reflecting your institutional record since your last hearing, your current Grid Score is 0. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines indicate that parole should be granted at this time. After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are a more serious risk than indicated by your grid score in that you have prior convictions for assaultive behaviors including a 1968 conviction for Rape, Kidnapping and Assault With a Deadly Weapon (gun). You also have a 1975 conviction for which involved Bank Robbery and related charges including Kidnapping and while you were on parole from an Armed Bank Robbery and Kidnapping sentence you became involved in the instant Murder II While Armed conviction. Not withstanding your programming, the Commission believes that the violence you have exhibited throughout the course of your adult life warrants continued custody in order to protect the community.

After consideration of all factors and information presented, a departure above the rehearing guidelines at this consideration is warranted for the same reasons provided above for denying parole.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:  Sharon Barnes-Durbin, SCSA
     CSS Data Management Group
     D.C. Court Services & Offender Supervision Agency
     300 Indiana Avenue, N.W., Suite 2149
     Washington, D.C. 20001

GOVERNMENT
EXHIBIT
P

GAMBRELL 29898-117
Queued: 07-29-2003 14:43:58 BOP-Lewisburg USP

-1-

Clerk: MDD

# GAMBRELL

# EXHIBIT    A17

# HEARING SUMMARY

me: **Gambrell, James**

Reg No:  **29898-117**

## Hearing Parameters

Hearing Format ............................: **In Person**
Hearing Type ..............................: **Rehearing (Initial Hearing Before 8/5/98)**
Hearing Date ..............................: July 24, 2007
Examiner.....................................: Joseph M. Pacholski
Institution ....................................: Lewisburg USP

## Sentence Parameters

Sentence Type..............................: **DC Parole Eligible**
MR/Statutory Release ..................: Life
Full Term Date ..............................: Life
Months in Custody........................: 222 as of 815/2007
Fines/Restitution/Assessment ......: None
Detainer.......................................: None

**Additional text regarding the above parameters:** None

## Prior Action & Institutional Factors

**Prior Action:** See Pre-review completed by Paul Howard dated June 26, 2007. Also Pre-review completed by Joseph M. Pacholski dated July 17, 2006.

**Codefendants:** See Hearing Summary dated July 25, 2006 from Paul Howard identifies Regina Nicholson (disposition unknown), Frederick Miller (acquitted).

**Representative & Representative's Statement:** Doug Contri, Challenge Coordinator at USP Lewisburg.

The subject was also represented by Jason Wallech Attorney, at 1825 I Street, NW, Washington, DC 20006.

**Prisoner's Statement:** The subject stated that he has completed the Challenge Program which was requested of him by the US Parole Commission. The subject has maintained clear conduct and has continued to work while being incarcerated. The subject stated that he has done everything that the Commission has asked and has tried to the best of his ability to improve himself.

**Discipline:** None.

**Gambrell, James, Reg. No. 29898-117**

Page 1 of 4



**Program Achievement:** The subject completed the Challenge Program in March of 2007. The subject also had his Representative Doug Contri, Psychology Coordinator for the Challenge Program speak on his behalf and explained that the subject is in the Mentoring Program now and has done very well though the program. The subject has been a stabilized force within the program and has identified that he has completed the program on the higher end of the scale showing that he leadership qualities.

**Release Plans:** The subject plans to release to the Temple Hills area and live with his in-laws. Upon release the subject has two job offers one with Cease Fire the other with Legion of Concerned Men.

## Guideline Parameters, Evaluation & Recommendation

Prior Grid Score: ................0
Discipline: ...........................+
Program Achievement: ........-
Current Grid Score:..............0

The subject was unable to receive any points due to the fact that he has matched out.

**Evaluation:** This examiner notes that the subject has been in custody for 222 months as of 8/15/2007. The subject has completed the Challenge Program which is the new and improved CODE Program and has demonstrated clear conduct during that time period. The subject is remorseful for his instant offense and has said that he has demonstrated that feeling through his corrective action and programming. This examiner believes giving the subject a parole date at this juncture is appropriate and would not lessen the severity of his offense. It would hold him accountable for his actions and the subject has done everything possible in order for him to succeed. This examiner is recommending a parole date after 228 months which is 6 months from today's date is for an adequate release plan and housing issues can be resolved. The subject wants to move out of the district and move to Maryland so those issues also have to be taken into consideration.

This examiner has not recommended a Reentry and Sanction Program for this individual due to the fact that the subject has already established a release plan which includes a job and a stable residence according to the testimony provided at today's hearing. This examiner would note that the subject was represented by Jason Wallech and that Attorney highlighted the subject's achievements. It should be noted that the subject has had various issues in his past however it does appear that a Mental Health Aftercare Condition is appropriate in this case and that the recommendation stands to only have the Drug Aftercare Condition to follow.

**Recommendation:** Parole effective 2/15/2008, after the service of 228 months.

**Conditions:** Drug Aftercare.

**Statutory Interim Hearing:** None.

**Guideline Use:** A departure from the guidelines at this consideration is not warranted.

**Additional Text:** None.

[Signature]

**Gambrell, James, Reg. No. 29898-117**

Page 2 of 4

JMP/PAH
August 2, 2007

**Executive Reviewer's Comments:** Kostbar 8/2/07

The Examiner has recommended a parole of this DC life, murder case based upon his institutional accomplishments and the fact that he will have served 228 months, 19 years, as of 2/15/08. I disagree.

Our subject, in 1989, robbed an Employee of an Armored Truck service who was in possession of cash. He struggled with the employee and shot him twice, killing him.

While the subject's DC Grid Score is 0 and suggests a parole in this case, I disagree. This is an exceptional case in which the gravity of the offense is sufficient to warrant an upward departure from the Grid Score. In addition, the subject's prior record consists of serious and repetitive criminal acts, which were used in the past by the Commission to continue supervision above his guidelines. I believe that these are still valid in this case.

19 years is simply not enough time for an individual to serve for a crime of this nature and I believe that release at this time, or any time in the near future, would depreciate the seriousness of the offense behavior and promote disrespect for the law. Consequently, I am recommending a Decision Above the 12 month Rehearing Range AND Above the Grid Score "guideline" of 0. The recommendation is 60 months for a rehearing.

This will put him around 24 ½ years of custody at the time of his next hearing.

Recommendation:

Deny Parole and continue for a reconsideration hearing in 7/2012 after the service of 60 months from your hearing date of 7/24/07.

The guidelines for the time to a rehearing indicated that your next hearing should be scheduled at 12 months. You have a total point score of 0 under the guidelines for D.C. Code Offenders. The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines is found to be warranted for the following reasons:

You are a more serious risk than indicated by your grid score in that you have a prior record of convictions for assaultive behaviors including a 1968 conviction for Rape, Kidnapping and Assault with a Deadly Weapon (gun). You also have a 1975 conviction involving Bank Robbery and related charges including Kidnapping. While you were on parole from an Armed Robbery and Kidnapping sentence, you became involved in the current offense, Murder II While Armed. In and of itself, your case is of exceptional gravity and warrants and upward departure from your Grid Score. Notwithstanding your continued good programming, the Commission continues to believe that the violence you have exhibited through the course of your adult life in the community, warrants continued supervision Incarceration in order to protect the community.

Gambrell, James, Reg. No. 29898-117                    **Page 3 of 4**

# GAMBRELL

# EXHIBIT   A18

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | | | |
|---|---|---|---|
| Name: GAMBRELL, James | | Institution: | Lewisburg USP |
| Register Number: 29898-117 | | | |
| DCDC No: 161-194 | | Date: | August 10, 2007 |

As a result of the hearing conducted on July 24, 2007, the following action was ordered:

Deny parole. Continue for a rehearing in July 2012, after the service of 60 months from your last hearing date of July 24, 2007.

**REASONS:**

Your Grid Score at your last hearing was 0 points. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole.

With adjustments reflecting your institutional record since your last hearing, your current Grid Score is 0. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole. Those guidelines indicate that parole should be granted at this time. After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are a more serious risk than indicated by your grid score in that you are a more serious risk than indicated by your grid score in that you have a prior record of convictions for assaultive behaviors including a 1968 conviction for Rape, Kidnapping and Assault with a Deadly Weapon (gun). You also have a 1975 conviction involving Bank Robbery and related charges including Kidnapping. While you were on parole from an Armed Robbery and Kidnapping sentence, you became involved in the current offense, Murder II While Armed. In and of itself, your case is of exceptional gravity and warrants and upward departure from your Grid Score. Notwithstanding your continued good programming, the Commission continues to believe that the violence you have exhibited through the course of your adult life in the community warrants continued incarceration in order to protect the community.

After consideration of all factors and information presented, a departure above the rehearing guidelines at this consideration is warranted for the same reasons provided above for denying parole.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2070
       Washington, D.C. 20001

