# PHILLIPS

# EXHIBIT   C1

```
5H     PAR2B  540*23 *           SENTENCE MONITORING          10-205
 PAGE 001           *         .. MPUTATION DATA        *      12:46  J
                         AS OF 10-11-2005
```

REGNO..: 02952-000 NAME: PHILLIPS, CHARLES A

```
FBI NO...........: 160905L11          DATE OF BIRTH:     -1951
ARS1.............: LEW/A-DES
UNIT.............: UNIT 1                QUARTERS.....: F03-303U
DETAINERS........: NO                   NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:   LIFE

------------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: 44975-77GH
JUDGE...........................: MOULTRIE
DATE SENTENCED/PROBATION IMPOSED: 01-18-1978
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 06-20-2002
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

--------------------------CURRENT OBLIGATION NO: 010 --------------------------
```
OFFENSE CODE....:   621
OFF/CHG: ASSAULT WITH DEADLY WEAPON - 22 DCC 502; MURDER IN THE SECOND
         DEGREE - 22 DCC 2403

 SENTENCE PROCEDURE.............: DC CODE ADULT
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 MINIMUM TERM...................:      15 YEARS     40 MONTHS
 DATE OF OFFENSE................: 05-28-1977
```

 REMARKS.......: COUNT H - 15 YEARS TO LIFE; COUNT G - 40 MONTHS TO 10 YEARS CS

--------------------------CURRENT JUDGMENT/WARRANT NO: 020 --------------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
5H     DOCKET NUMBER...................: 113774-77CEF
JUDGE...........................: HESS
DATE SENTENCED/PROBATION IMPOSED: 10-25-1978
```

G0002       MORE PAGES TO FOLLOW . . .


GOVERNMENT
EXHIBIT

```
5H     PAR2B  540*23 *              SENTENCE MONITORING         *    10-11-2005
PAGE 002        *                   COMPUTATION DATA         *    12:46:27
                                    AS OF 10-11-2005
```

REGNO..: 02952-000 NAME: PHILLIPS, CHARLES A


```
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 06-20-2002
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:
```


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  621
OFF/CHG: MURDER II WHILE ARMED - 22 DCC 2403; CARRYING A PISTOL WITHOUT
         A LICENSE - 22 DCC 3204; UNLAWFUL ENTRY - 22 DCC 3102

```
 SENTENCE PROCEDURE.............: DC CODE ADULT
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 MINIMUM TERM...................:       15 YEARS      26 MONTHS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CS
 DATE OF OFFENSE................: 12-22-1977
```

```
 REMARKS........: COUNT C - 15 YEARS TO LIFE; COUNT E - 1 YEAR CS; COUNT F -
                  6 MONTHS CS; UNDER TITLE 23-1328 - 20 MONTHS TO 5 YEARS CS.
                  THIS SENTENCE TO RUN CONSECUTIVE TO ANY SENTENCE NOW BEING
                  SERVED.
```

------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 01-13-2003 AT LEW AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 020 010




G0002        MORE PAGES TO FOLLOW . . .

```
5H    PAR2B  540*23 *           SENTENCE MONITORING        *      10-11-2005
PAGE 003 OF 003 *               COMPUTATION DATA       *     12:46:27
                                AS OF 10-11-2005

REGNO..: 02952-000 NAME: PHILLIPS, CHARLES A


DATE COMPUTATION BEGAN..........: 01-18-1978
AGGREGATED SENTENCE PROCEDURE...: DC CODE ADULT AGGREGATE
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
AGGREGATED MINIMUM TERM.........:    30 YEARS      66 MONTHS
EARLIEST DATE OF OFFENSE........: 05-28-1977

JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                     05-29-1977    05-29-1977
                                     12-22-1977    01-17-1978
TOTAL JAIL CREDIT TIME..........: 28
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 0
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 02-08-2003
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE

NEXT PAROLE HEARING DATE........: 11-00-2005
TYPE OF HEARING.................: DC CODE OFFENDER REHEARING

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE

REMARKS.......: 3143 DAYS DC IGT APPLIED TO PE DATE BASED UPON PORTION OF
                MINIMUM TERM WHICH OVERLAPS INTO GTCA PERIOD.  641 DAYS DC EGT
                ALSO APPLIED TO PE DATE.
```

```
S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

# PHILLIPS

# EXHIBIT   C2

# Superior Court of the District of Columbia

### CRIMINAL DIVISION

## JUDGMENT AND COMMITMENT ORDER

United States of America

Case Number _____

PDID Number _____

* * * * * *

WHEREAS the above-named defendant having entered a plea of

☐ Not Guilty        ☑ Guilty

to the charge(s) of _____

and having been found guilty by

☐ Jury        ☐ the Court

and a pre-sentence investigation and report having been

☑ prepared and considered        ☐ not requested

IT IS HEREBY ADJUDGED that the defendant has been convicted of and is guilty of the offense(s) charged.

The defendant having been given an opportunity to make a statement in his own behalf, and the government having had the opportunity to reply thereto, it is hereby

ORDERED that the defendant be committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of

_____

_____

_____

IT IS FURTHER ORDERED that the Clerk or his Deputy deliver a true copy of this or States Marshal and that the copy shall serve as the commitment of the defendant.

_____        _____
Date                                Judge

GOVERNMENT
EXHIBIT
B

# PHILLIPS

# EXHIBIT   C3

Superior Court of the District of Columbia

**CRIMINAL DIVISION**

## JUDGMENT AND COMMITMENT ORDER

United States of America

Case Number _113774-77CEF_

vs

PDID Number _170-430_

CHARLES A PHILLIPS

* * * * * *

WHEREAS the above-named defendant having entered a plea of

☑ Not Guilty _0101_            ☐ Guilty

to the charge(s) of  (C) _MURDER II w/A_   (E) _CPWL_   (E) _U/F 2690_

and having been found guilty by

☐ Jury            ☐ the Court

and a pre-sentence investigation and report having been

☑ prepared and considered            ☐ not requested

IT IS HEREBY ADJUDGED that the defendant has been convicted of and is guilty of the offense(s) charged.

The defendant having been given an opportunity to make a statement in his own behalf, and the government having had the opportunity to reply thereto, it is hereby

ORDERED that the defendant be committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of

(C) _15yrs to life consecutive_            (E) _1yr consecutive_

(E) _6 mos consecutive_

_Under Tit 23-1328 — 21 mos to 5 years consecutive_

_This sentence to run consecutive to any sentence (now being served)_

IT IS FURTHER ORDERED that the Clerk or his Deputy deliver a true copy of this order to the United States Marshal and that the copy shall serve as the commitment of the defendant.

_October 25, 1978_
Date                                                        Judge

GOVERNMENT EXHIBIT

A TRUE COPY OF THIS ORDER DELIVERED TO THE U.S. MARSHAL OR HIS DEPUTY:

# PHILLIPS

# EXHIBIT    C4



ADULT PROBATION

## PRESENTENCE REPORT

| | | | |
|---|---|---|---|
| JUDGE: | The Honorable<br>M. Carl Guthrie | DATE REFERRED: | December 6, 1977 |
| | | DUE DATE: | January 10, 1978 |
| PROBATION OFFICER: | David Winter<br>727-1770 | SENTENCING DATE: | January 18, 1978 |
| COURT NAME: | Charles A. Phillips | ADDRESS: | 1617 F Street, N.W.,<br>Washington, D.C. |
| True Name: | Charles Alexander Phillips | | |
| Aliases: | "Grasshopper" | TELEPHONE: | 398-7709 |
| DOCKET NO.: | 44975-77 | AGE, DATE AND BIRTHPLACE: | -51<br>Washington, D.C. |
| OFFENSE, CODE AND PENALTY: | | CITIZENSHIP: U.S.A. | SEX: |
| | See Page AA | TIME IN D.C. AREA: | Lifetime |
| | | EDUCATION: | High School Graduate |
| PLEA: Guilty | JUDGMENT: Guilty | MARITAL STATUS AND DEPENDENTS:<br>Single; No Dependents | |
| BOND STATUS: | No Bond – Personal<br>Recognizance revoked on<br>December 22, 1977 | SOCIAL SECURITY NO.: | |
| CO-DEFENDANTS: | None | PERMIT NO : | None |
| | | MPDC NO.: | 270-430 |
| DETAINERS OR PENDING CHARGES: | | DCDC NO.: | Unknown |
| | Murder II – Pending<br>Grand Jury action | FBI NO : | 160-905-LLL |
| A.U.S.A.: | Mr. Linsky | DEFENSE COUNSEL: | Joel Duboff<br>872-0158 |

DISPOSITION AND DATE:

GOVERNMENT EXHIBIT D

Form AP-2(Sept. 77

-1A-                          PHILLIPS, Charles A.

OFFENSE, CODE AND PENALTY:

Murder II
22-2403
Twenty Years to Life

Assault With a Deadly Weapon (Knife)
22-502
Ten Years

CENTRAL FILE

-2-                    PHILLIPS, Charles A.

## OFFICIAL VERSION:

On May 28, 1977, the defendant, Charles Phillips, went to Carolyn Radford's apartment between 8:30 and 9:00 p.m. He and Radford immediately got into an argument. This argument continued for two hours, during which the defendant got a butcher knife from Radford's kitchen, and told her that he was going to kill her, her friend Napoleon Wilcox, and himself. The defendant held the knife on Radford and ordered her to call Wilcox to have him come over. She then spoke with Mr. Wilcox, asking him to come to her apartment to take her to the hospital. Mr. Wilcox agreed to come. Sometime before 11:00 p.m., Wilcox knocked on Radford's door and identified himself. Mr. Phillips ordered Radford into the bedroom at the back of the apartment. Ms. Radford then heard the defendant open the door and mumble something. She heard Wilcox say, "Man what is wrong with you?" She then heard a thump and a bump.

Ms. Radford then saw the defendant, Phillips, come into her bedroom still holding the butcher knife. The defendant said, "Napoleon is dead," and then calmly walked over to Radford and stabbed her in the left side and then cut her on the left wrist. She screamed, "I've been stabbed." The defendant stopped attacking her, and with a look of wonder said, "You've been stabbed?" He then ran outside to call an ambulance. Mr. Phillips then returned to the apartment, waited for the ambulance, and then left the apartment. Mr. Wilcox's body was transported to D.C. General Hospital and pronounced dead at 12:15 a.m. on May 29, 1977. Ms. Radford was admitted to D.C. General Hospital in good condition. The defendant surrendered himself at the Seventh District on May 29, 1977. He was warned of his rights and stated that he did not wish to make any statement until he talked with an attorney.

## DEFENDANT'S VERSION:

Mr. Phillips stated that he went to see his girlfriend at her apartment, where he used to live. They argued for about two hours, and he stated that the argument "got heated." She had found some phone numbers of other women that he had, and that was the reason for their argument. Ms. Radford tried to call these phone numbers, so Mr. Phillips got a knife from the kitchen and cut the phone wire. Ms. Radford then broke out in hives, and called a friend, Napoleon Wilcox, to come and take her to the hospital. When there was a knock at the door, Mr. Phillips answered the door. He stated that Wilcox "tried to force his way in. We struggled. I stabbed him and he died." Mr. Phillips described the struggle as the following:



-3-                    PHILLIPS, Charles A.

DEFENDANT'S VERSION:  (cont'd)

"We were in a close embrace. We were trying to sway each other. It took
about two or three minutes. I broke away and grabbed a knife from the
phone stand. I stabbed him in the back and neck, maybe six times."
When questioned as to why Mr. Phillips did this, he stated, "I just kind
of lost control of my temper." Mr. Phillips then went back into the bedroom
and when Ms. Radford grabbed him, he "struck her with the knife in the
wrist and stabbed her with the knife." Mr. Phillips then stated that he
"got my head together" and called the police. Mr. Phillips further stated,
"I knew he was dead." Mr. Phillips then went back to the apartment, waited
until the ambulance came, and then left the apartment. He wandered around
all night and turned himself in the next morning.

VERIFIED PRIOR RECORD:

Washington, D.C.

Adult:

| | | |
|---|---|---|
| 4-13-72 | Disorderly Conduct | EF $10 |
| 7-31-72 | Disorderly Conduct | EF $10 |
| 3-26-73 | Disorderly Conduct | No Papered |
| | UNA | No Papered |
| 7-16-73 | Rape | **Dismissed** on 8-2-73 |
| 5-29-77 | Murder II | INSTANT OFFENSE |
| | ADW (Knife) | INSTANT OFFENSE |
| 12-22-77 | Murder II | Pending Grand Jury action |

EMPLOYMENT:

May 3, 1977 to July 8, 1977
Columbia Maintenance
325 1st Street,
Alexandria, Virginia
Position: Heavy Equipment Operator
Salary: $4.57 per hour
Verified

_4_                          PHILLIPS, Charles A.

EMPLOYMENT: (cont'd)

January 30, 1975 to December 29, 1976
Potomac Temporaries
1629 K Street, N.W.
Position:  Heavy Equipment Operator
Salary:  $3.15 per hour
Verified

April 15, 1976 to June 16, 1976
International Security Corporation
3217 Wilson Boulevard
Arlington, Virginia
Position:  Security Guard
Salary:  $3.00 per hour
Verified – Fired for unreported absences

1974 to 1975
Arlington National Cemetary
Department of Army
Arlington, Virginia
Position:  Landscaper
Salary:  $4.75 per hour

1972 to 1973
Department of Commerce
14th and Constitution Avenue
Position:  General Maintenance
Salary:  Unknown

    Mr. Phillips indicated that at the time of this presentence
interview, he was employed at Potomac Temporaries.  He states that he
had been working there on and off since 1974.  However, their records show
that he only worked until December, 1976.  They show that he has not worked
at all in the year of 1977.  According to available records, Mr. Phillips'
only employment in 1977 was for two months with Columbia Maintenance.

SOCIAL HISTORY:

    Mr. Phillips was born in Washington, D.C. and was raised by his mother,
          .   Mr. Phillips' father,            divorced his
mother when Mr. Phillips was very young.  Mr. Phillips' mother then went
back to her maiden name.  Mr. Phillips has three brothers, and no sisters.
Mr. Phillips' mother described him as a "good son who gave me no trouble."
She stated that he is the type who "wouldn't hurt anyone.  Charles would
never deliberately hurt anybody unless they were trying to hurt him."

CENTRAL FILE

-5-                           PHILLIPS, Charles A.

SOCIAL HISTORY:  (cont'd)

Mr. Phillips graduated from Eastern High School in 1969.  He then entered the Marines in June, 1969.  In March, 1971 he received an Undesirable Discharge.  He attributed this to "adjustment problems, family deaths and conflict."  Mr. Phillips was AWOL for several days in 1971, and was sentenced to forty five days in the military jail.

When Mr. Phillips returned to Washington, D.C., he attended the Washington Drafting School.  He completed the courses in drafting in 1971.

Mr. Phillip lived with the complainant, Carolyn Radford, for several years at the apartment where the instant offense took place.  Mr. Phillips has not lived there in several months.  Hee has never been married, and has no children.  Since the instant offense, in May, Mr. Phillips has been living with his mother in a two bedroom apartment.  Mr. Phillips gave no indication of any alcohol or drug abuse.

EVALUATIVE SUMMARY:

Mr. Phillips is before the Court for sentencing for his first major criminal conviction.  He was rearrested during the presentence period and charged with Murder II.  This case is currently before the Grand Jury.  As a result of this, Your Honor revoked Mr. Phillips' personal recognizance. He is currently held without bond.

Significant to this case is the relationship between the defendant and the complainant, Ms. Radford.  They had been living together in that particular apartment prior to this incident.  Ms. Radford claims that Mr. Phillips moved out in 1976.  Mr. Phillips stated that it was much more recently.  At the time of the instant offense, Mr. Phillips indicated that Ms. Radford was still his girlfriend.  Ms. Radford informed me that in fact Mr. Phillips was an unwanted boyfriend, someone whom she could not get rid of.  Also significant to this case is the realtionship between Ms. Radford and the decedent, Mr. Wilcox.  Ms. Radford indicates that he was a friend, although she indicated that Mr. Phillips was jealous of Mr. Wilcox.  Mr. Phillips described the decedent as an individual whom he told to stay away from Ms. Radford.

Mr. Phillips stated that he was sorry that the incident took place. He stated, "I regret it.  I can't feel right about it.  I would have walked out on the whole situation if it happened again."  However, it must be stressed that Mr. Phillips did not appear remorseful in any way.  He stated his "regret" in a very calm manner.  It should also be noted, that Mr. Phillips

CENTRAL FILE

-6-                           PHILLIPS, Charles A.

EVALUATIVE SUMMARY: (cont'd)

was not sincere in his belief that he would walk out on the situation if
it occurred again. Mr. Phillips' pending Murder case is an alleged inci-
dent which took place at the same apartment that Ms. Radford lives in.
Ms. Radford was a witness to this alleged offense, in which an off-duty
police officer was killed. This officer saw Mr. Phillips following day
in the lock-up in Building A. Mr. Phillips at that time was totally
without remorse, being concerned only with whether or not he would be
released prior to the Christmas holidays. When this officer saw Mr.
Phillips at the jail subsequent to the second incident, he again showed
no remorse, simply stating, "I'm not worried about the second case."

Again, it is significant as to the relationship between the defendant
and the complainant, Ms. Radford. At the time of our initial interview,
Mr. Phillips stated that he had no relationship with Ms. Radford at the
time. After the second incident, in which Mr. Phillips violated the
conditions of his release by going to Ms. Radford's apartment, Mr. Phillips
told me that Ms. Radford was still his girlfriend. Although he did not
go into detail about the second offense, Mr. Phillips did state that he
went there and found another man with "my girl." This is mentioned only
in the significance of Mr. Phillips' distorted view of the relationship.
Ms. Radford informed this officer that in fact she had no relationship
with Mr. Phillips at this point. She had seen him only one time after
the first incident, before the second incident. At that time, she refused
to speak to him and left the area.

The instant offense is a serious, brutal incident. Mr. Phillips
forced Ms. Radford to call the deceased by holding a knife to her. Once
there, the deceased was killed within seconds after his arrival. Prior to
his arrival, Mr. Phillips told Ms. Radford that he was going to kill Mr.
Wilcox, Ms. Radford, and himself. After Mr. Phillips killed Mr. Wilcox,
he then calmly walked into the bedroom and stabbed Ms. Radford. It appears
that Mr. Phillips is guilty of much more than losing his temper, in that he
killed one person and almost killed another. Ms. Radford was probably
quite lucky in escaping with minor injuries as she did. Although this officer
does not want to go into the second incident, the pending Murder II case,
it is significant that Mr. Phillips returned to the scene of the first murder,
and allegedly committed another murder in the presence of Ms. Radford.
Regardless of his guilt or innocence in the murder, certainly Mr. Phillips
is guilty of using poor judgment in going to the scene, which was prohibited
by the conditions of his release.


CENTRAL FILE

-7-                                    PHILLIPS, Charles R.

EVALUATIVE SUMMARY: (cont'd)

It appears that Mr. Phillips is an individual who is prone to violence. Apparently, this has not surfaced until recently. Ms. Radford described him as an argumentative person, and they often exchanged blows, although she states that she never hit him unless he initiated the contact. Also quite significant is the fact that Mr. Phillips appears to be almost totally without remorse concerning the instant offense. At no time did he ever express any kind of sincere feelings about the deceased individual. Mr. Phillips was also dishonest concerning his employment background, and this would fit in with the description that Mr. Radford gave, "He tries to look good." Mr. Phillips exaggerated his employment background, and did not honestly relate the circumstances which he left certain jobs. This is indictive of a lack of sincerity and honesty on his part. This is mentioned in that it is significant in rehabilitative efforts as to the sincerety of the individual.

Mr. Phillips is a serious threat to the community. He has been a brutal and dangerous person for the past several months, and his behavior can not continue. There is perhaps a psychological problem which has created these difficulties, yet is does not appear that there is any psychosis or serious psychiatric difficulties at this time. However, this possibility should be explored at whatever institution Mr. Phillips is sent to.

CENTRAL FILE

-8-                    PHILLIPS, Charles J.

RECOMMENDATION:

    Probation is not recommended.

                    Respectfully submitted,

                    _____
                    David Winter
                    Probation Officer
                    727-1778

Approved by: _____
                    Supervisory Probation Officer

DW/mvd

CENTRAL FILE

# PHILLIPS

# EXHIBIT    C5



SUPE̶̶̶̶ COURT OF TH̶ DISTRICT O̶ ̶UMBIA
## ADULT PROBATION

### PRESENTENCE REPORT

| | | | |
|---|---|---|---|
| **JUDGE:** | The Honorable<br>John R. Hess | **DATE REFERRED:** | September 21, 1978 |
| | | **DUE DATE:** | October 13, 1978 |
| **PROBATION OFFICER:** | Frances Washington | **SENTENCING DATE:** | October 20, 1978 |
| **COURT NAME:** | Charles A. Phillips | **ADDRESS:** | 1617 F Street, N.E., #2<br>Washington, D.C. |
| **True Name:** | Charles Alexander Phillips | | |
| **Aliases:** | Grasshopper | **TELEPHONE:** | 398-7709 |

| | | | |
|---|---|---|---|
| **DOCKET NO.:** | 113774-77 | **AGE, DATE AND BIRTHPLACE:** | 1951<br>Washington, D.C. |
| **OFFENSE, CODE AND PENALTY:** | See page 1A | **CITIZENSHIP:** U.S. | **SEX:** Male |
| | | **TIME IN D.C. AREA:** | Life |
| | | **EDUCATION:** | High School Graduate |
| **PLEA:** Not Guilty | **JUDGMENT:** Guilty | **MARITAL STATUS AND DEPENDENTS:** | Single; None |
| **BOND STATUS:** Committed w/o Bond<br>Pending Sentencing | | **SOCIAL SECURITY NO.:** | |
| **CO-DEFENDANTS:** None | | **PERMIT NO.:** | None |
| | | **MPDC NO.:** | 270-430 |
| **DETAINERS OR PENDING CHARGES:**<br>Serving 15 to Life – MII<br>14 months to 10 years – ADW | | **DCDC NO.:** | 189-828 |
| | | **FBI NO.:** | 160-905-L11 |

*MII  15-yrs-Life*
*CPwol  1 yr*
*CII*

**DEFENSE COUNSEL:**  Fred Timberlake

**DISPOSITION AND DATE.**

CENTRAL



Form AP-31/Sept. 72

-1A-                    PHILLIPS, Charles A.

OFFENSE, CODE AND PENALTY:

Murder II While Armed
22-2403
Life or not less  than  20 years

Carrying a Pistol w/o a License - Felony
22-3204
10 years

Unlawful Entry - Felony
22-3102
$100 - 6 months or both

-2-                         PHILLIPS, Charles A.

## OFFICIAL VERSION:

At about 12:39 a.m., Thursday, December 22, 1977, Detective Michael Riley, a 30 year old, black male, while inside apartment #3 of 3417 Minnesota Ave., S.E. and during an altercation with the above defendant, was fatally shot with a gun held in the hands of the defendant.

Detective Riley was transported to D.C. General Hospital in the Medical Examiners Ambulance and pronounced dead at 3:10 a.m. by Dr. Ivor Purchas of the staff.

The defendant, Charles Alexander Phillips, was arrested at 23rd and Southern Avenue, S.E. by 7th District Officers.

## DEFENDANT'S VERSION:

Mr. Phillips advised that in view of the fact that Your Honor presided at the trial, he felt that there was no need for him to relay his version of the offense to this officer. For the record, this officer is incorporating the suspect statement that Mr. Phillips made upon being arrested.

Q.   Mr. Charles Phillips will you please tell me in your own words what lead to the shooting on the morning of Decmeber 22, 1977 inside of 3417 Minnesote Avenue in Southeast Washington, D.C.?

A.   It was about 12:00 a.m. and I came over to Carolyn's house to pick up my 204 and my high school equivalent diploma and some pay stubs. I knocked on the front door and I got no answer. So I went around back.

I knocked on the back door and I still didn't get no answer. So when I got no answer I forced the back door open. Then after I got inside I went into the bedroom. After I got into the bedroom I saw them both nude in the bed.

I told him to get his clothes on and get out. At first he was very cooperative and he started putting on his clothes. Then when he went over to the dresser in order to get his shirt, after he got his shirt his pistol was under the shirt. His whole attitude changed. He started telling me that I don't have to do anything and that's when he started coming towards me with the pistol in his hand. He had a case on the pistol also.

So at that point when he was walking towards me when he got close on me I got really peronoid and so not knowing what he was doing to do, that's when I grabbed the pistol. We wrestled for I guess about 2 minutes. Then the pistol went off.

Then after the pistol went off I panicked and ran out the back door and through Fort DuPont Park.

CENTRAL FILE

-3-                                        PHILLIPS, Charles A.

## DEFENDANT'S VERSION:

I went to a pay telephone on Mass. Ave. and Alabama Southeast, I called a friend of mine Greg Price and I told him that I needed a ride that I was in a little trouble but I didn't specify what the trouble was.

Greg asked my whereabouts and I told him that I would meet him down by D.C. General Hospital. So I walked over to D.C. General Hospital and waited for Greg.

Greg met me at the hospital and I asked him to take me to my brother's house at 3030 30. Street Southeast. So we were preceeding to go there and we were stopped on Southern Avenue by the police and that's all.

Q. How did you get into the apartment?
A. I pushed in the screen and I was on to the back porch and then I forced the door open which leads from the back porch into the kitchen.

Q. What did you do with the gun after the shooting?
A. I put it in my pocket.

Q. Where is the gun now?
A. The policemen have it.

Q. Where did the policeman get the gun from?
A. Under the front passenger's seat of the car.

Q. The man that you shot did you know that he was a police officer?
A. No. There is no way that I could have known.

Q. When you were inside of the apartment did the man that you shot identify himself to you as a police officer?
A. No, he did not. The only thing that he said was I didn't know that she had a boy friend.

Q. How long were you inside of the apartment before the shooting?
A. I guess it was about 4 minutes at the most.

Q. How long were you in the apartment after the shooting?
A. Well, when the shooting happened I left.

Q. Where was Carolyn when you shot the man?
A. I think that she was in the kitchen on the telephone?

Q. What did the man do after you shot him?
A. He fell in between the bedroom door way and the dining room.

Q. Did the man say anything to you after you shot him?
A. No.

CENTRAL FILE

-4-                                    PHILLIPS, Charles A.

<u>DEFENDANT'S VERSION:</u> (continued)


Q.  When did you shave off your beard?
A.  About 3 days ago.

Q.  Did Greg know about you shooting the police officer?
A.  No, he didn't know anything about it.

Q.  When did you first find out that it was a police officer that had shot?
A.  When I was arrested by the police.

Q.  Mr. Phillips  is there anything that we have not covered in this state-
    ment that you would like to add?
A.  No.

Q.  Mr. Phillips can you read and write and how far did you go in school?
A.  Yes I can read and write and I went to the 12th grade.


<u>PRIOR CRIMINAL RECORD:</u>

See Attached Pre-sentence Report
<u>PRIOR CRIMINAL RECORD - ADDENDUM:</u>


| 5-29-77 | Murder II | 15 years to life |
| | ADW - Knife | 14 months to 10 years |
| 12-22-77 | Murder II While Armed | Instant Offense |
| | Unlawful Entry - Felony | " " |
| | Carrying Pistol w/o | " " |
| | License - Felony | |


<u>SOCIAL HISTORY:</u>
<u>See attached pre-sentence report</u>


<u>EVALUATIVE SUMMARY:</u>
<u>See attached Pre-sentence Report</u>

<u>EVALUATIVE SUMMARY:</u>

        A native of the District of Columbia, Charles Alexander Phillips, is
before the Courts, for sentencing after being found guilty of Murder II
While Armed, Unlawful Entry - Felony and Carrying a Pistol Without a License -
Felony.  Mr. Phillips advised that he has all intentions of appealing his
conviction in these offense because he was only protecting himself against
    Detective Riley's attacks.

        The defendant's arrest record dates back to 1972 when he was arrested
and charged with Disorderly Conduct.  He was arrested a total of four times
before he was convicted of any offenses.  Those offenses were Murder II
and Assault with a Dangerous Weapon.  On January 18, 1978, he was sentneced
to serve fifteen years to life for the Murder II and fourteen months to ten

-5-                                    PHILLIPS, Charles A.

## EVALUATIVE SUMMARY:

years for the Assault with a Dangerous Weapon.  Both sentences are to run consecutively.

In interviewing Mr. Phillips, he was advised that this officer was simply doing an update of the pre-sentence report prepared in January of this year. Mr. Phillips expressed his distain for the pre-sentence report prepared by P.O. Winter, indicating that he made prejudicial comments and came to conclusions on his psychological state that only a qualified doctor could ascertain.  Nevertheless, he was advised that the extent of this officer's involvement would be to contact both Ms. Radford and the family of Officer Riley. Although this officer was unable to contact Officer Riley's family before dictating this case, contact was made with Ms. Carolyn Radford.

Ms. Radford visited with this officer and no less than five seconds after saying "Hello" she asked if she was being paid for the interview.  This officer found Ms. Radford to be so much in control of her emotions that she appears to be rather cold and calcutating.  She indicated that although she feels badly about two men having been killed because of her, she is a very strong person and feels the need to keep going and make a decent life for herself.  Ms. Radford advised that she had lived off and on with the defendant for close to three years and their relationship suffered many ups and downs.  She indicated that they fought constantly and that the defendant was a very jealous individual. She had attempted to rid herself of him on a number of occasions before the first murder occurred, but was unable to do so.  She characterized the defendant as being a very quiet person who was "sneaky and coniving" and never verbally expressed his innermost thoughts.

Contrary to the information presented in P.O. Winter's report, Mr. Phillips advised that he was a user of illegal narcotics from 1965 until 1971.  He indicated that he used heroin almost daily during 1969 and 1971, while he was in the service.  While in the service, he served in a number of Caribbean countries where drugs were easily obtained.  He informed that during this time period, he used "every drug" on the black market but never received any treatment for his addiciton.  In 1971, he was able to detoxify without assistance and informs that he has not used illegal narcotics since that time.

Since being incarcerated, Mr. Phillips has become actively involved with the Suni Moslims. He indicated that he was sporadically involved with the Suni sect in Philadelphia, Pennsylvania but did not find their docterine to his liking.  He further informed that his involvement with the Moslims, since his incarceration, has put him at peace with himself and now he realizes that he can only blame himself for his prior and present criminal involvement.

It is this officer's personal opinion that Mr. Phillips is not a threat to society "in general".  He is a threat to Ms. Carolyn Radford and any male who is in anyway involved with her, be he  a friend or lover.  The defendant has caused the death of two men who's only faults were being attracted to Ms. Radford.  Both Ms. Radford and her male friends have a right to live peacefully without the fear of loosing their lives.  The defendant's actions cannot be tolerated and it is felt that the maximum sentence allowable by law is appropriate in view of the nature of this and the previous offense.

-6-                         PHILLIPS, Charles A.

RECOMMENDATION:

    Probation is not recommended.

                    Respectfully submitted,

                    Frances Washington
                    Probation Officer
                    727-1594

Approved by: _____
            (Supervisory  Probation Officer)

FW:rb

# PHILLIPS

# EXHIBIT    C6



**U.S. Department of Justice**
United States Parole Commission

Notice of Hearing-Parole Application
Representative and Disclosure Request

Name: ~~Phillips, Charles~~                                              Date 7/18/02

Register No: ~~02293-000~~ _____ Institution ~~USP Lewisburg~~

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

### INITIAL HEARING

1. NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for **NOVEMBER 2002** _____
to _____, 19____.

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

_____         I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days
(Initials)          advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2. APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled:

~~Charles J. Phillips~~                                    7/15/02
            (Signature)                                              (Date)

3. WAIVER OF PAROLE/PAROLE HEARING:

_____ A. I wish to waive parole consideration at this time.
(Initials)

_____ B. I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary
(Initials)      Committee infractions since my last hearing.

_____ C. I wish to waive the parole effective date or presumptive parole date previously determined by the Commission. (NOTE:
(Initials)      *A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists in your case.*)

_____ D. I wish to waive mandatory parole.
(Initials)

NOTE:    1) If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

2) Revocation hearings cannot be waived. Hearings under 28 CFR 2.28 (b-f) and rescission hearings can only be waived by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

4. REPRESENTATIVE: At your hearing you may have a representative of your choice (*e.g. family member, friend, staff member, or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager.
Name of Representative: ~~Laplcia Ashford~~

IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING W[A]

GOVERNMENT EXHIBIT

_____ I do not wish a representative at my hearing.
(Initials)

PAROLE FORM I-24
OCT. 85

# PHILLIPS

# EXHIBIT   C7

(INI-S-B)

<SUMCODE-DCINIADN_SUM>

## D.C. ADULT INITIAL HEARING SUMMARY
(INITIAL HEARINGS AFTER 1/2/01 AND CASES ELIGIBLE FOR
(RETROACTIVE CONVERSION TO PRESUMPTIVE DATE PROCEDURES)

**Offense of Conviction - Murder 2nd Degree, Carrying a Pistol Without a License, Unlawful Entry, Assault with a Dangerous Weapon and Murder 2nd Degree**

Name            :PHILLIPS, Charles
Reg. No         :02952-000, DC No. 189+828
Hearing Date :11-19-2002
Institution       :Lewisburg USP
Hearing Examiner :Charles J. Lyons

---------------------------------------------------------------

**Prisoner's Statement:** Subject stated he understood the salient factor score, base point score, and the presumptive format. Initially, subject took issue with the fact that he felt he had his initial hearing under the 1987 guidelines. However, the examiner informed him that he came before the DC Parole Board for a reduction in his minimum sentence. Subject subsequently understood that was not an initial hearing.

The subject did not dispute any of the numbers in terms of time in custody or salient factor scores. It should be noted that subject's parole eligibility was advanced to 02-08-2003 in lieu of 11-11-2004 due to earning educational good time credits.

In regard to the instant offense, subject expressed remorse for his involvement in the instant offense and stated that he was approximately 25 years old at the time he committed the two murders as well as the stabbing of his female friend. Subject stated that he was completely out of control and had used drugs such as PCP during that time. Subject did express what the examiner viewed as some degree of credible remorse in regard to the instant offenses. Subject appeared to accept full responsibility for the murder of two people and the stabbing of one female.

---------------------------------------------------------------

**Institutional Factors**
---------------------------------------------------------------

**Discipline:** Subject received a total of nine disciplinary reports while in the Department of Corrections as noted on the pre-review. Subject admitted to all nine disciplinary reports dating back to 1979 through 1987. Most were Class II or III disciplinary infractions where guidelines call for 0-2 months with the exception of 09-16-87 infraction for lack of cooperation in which he refused to provide a urine sample which calls for 0-8 months to be added on to the guidelines. Subject did not remember the 03-05-79 disciplinary report nor did he remember the 01-10-87 disciplinary report. However, he stated that he probably committed those violations.

His total aggregated guideline range for his administrative violations are 0-24 months, 8 non-drug related infractions and one drug-related infraction.

GOVERNMENT EXHIBIT 6

PHILLIPS.295

(INI-S-B)

**Program Achievement:** Subject has done well in this area in that on 10-15-86 he earned his GED, completed the Computer Trade in 1987, Graphic Arts in 1987, Drug Abuse in 1988, Street Law in 1988, received his Bachelor of Science degree from the University of Wisconsin in 1992, Bachelor of Arts in Urban Studies from the University of the District of Columbia in 1995, and he also completed the Advanced Street Law course in 1995. It should be noted that subject came into the institution without a high school diploma and earned his GED in 1986 and then continued to progress in the educational area as already noted. The examiner would recommend that he be given 24 months superior program achievement for the aforementioned accomplishments.

**Release Plans:** If parole is granted, subject stated that he would reside in the State of New York.

**Representative and Representative's Statement:** Subject had a Mr. Ashford who was the principal of the Lorton academic program at Occoquan facility from 1990-1997. Mr. Ashford came as a representative and Mr. Phillips stated that Mr. Ashford is a father figure to him. Mr. Ashford stated that he has seen tremendous growth in Mr. Phillips over the years and stated that Mr. Phillips worked for him as the lead clerk of the school from 1992 through his retirement in 1997. Overall, Mr. Ashford stated that once the subject is released to the community, he would accept Mr. Phillips into his home and family in the State of New York.

------------------------------------------------------------------

**Guideline Parameters**
------------------------------------------------------------------

**SFS:** 9

**Base Point Score:** 5

| | Base Guideline Range |
|---|---|
| 302 | Months Required to Serve to PE Date |
| 0-24 | Disciplinary Guideline Range |
| 8 | Superior Program Achievement Award |
| 306-342 | Total Guideline Range |

**Modifications to Prehearing:** The examiner notes that subject's parole eligibility date changed to 02-08-2003 due to educational good time and therefore months at eligibility was changed to 302 months.

------------------------------------------------------------------

**Overall Evaluation and Recommendation**
------------------------------------------------------------------

**Evaluation:** Subject appears to accept full responsibility for the cold, callous nature of the instant offenses in which he murdered two people and stabbed one woman. Both murders involved the same female companion. The examiner does not want to minimize subject's involvement in the instant offense, however, subject has had an excellent institutional adjustment over the years and has had no disciplinary reports since 1987. The examiner will recommend a 3-year reconsideration hearing in this case.



(INI-S-B)

**Recommendation:** Continue for a reconsideration hearing 11-19-2005 after the service of 36 months from the hearing date of 11-19-2002.

**Conditions:** ^

**Reason for Departure from Guidelines:** ^

**Addendum:**

^

ALG
November 25, 2002

**December 4, 2002**
**Addendum by EHE Pinner:** At the time of the PHA, the reviewer did not have the details of S's second offense of conviction. The first offense (Docket #F44905-77, which resulted in a conviction for Murder end degree and Assault With a Dangerous Weapon, occurred on 05-28-77 when S. forced his ex-girlfriend to lure her current boyfriend over to her house buy telling him that she was ill and needed a ride to the hospital. When he arrived, S. stabbed him to death and then went into the bedroom, stabbed his ex-girlfriend in her left side and cut her on her left wrist. S. was arrested for this offense on 05-29-77and released the same day.

The second murder committed by S. occurred on 12-27-77 after he broke into his ex-girlfriend's apartment and confronted her and her companion in her bedroom. The victim, a police detective (S. stated in the PSI that he was unaware that the individual was a police officer), was shot by S. and died.

The hearing examiner recommended in this case a total of 24 months SPA, which would indicate that S. had 72 months of Superior Program Achievement. The examiner cites the fact that S. earned his GED while incarcerated. The PSI for the second murder conviction indicates that S. stayed in school until the 12th grade and had earned his high school equivalency diploma. S. has earned two Bachelor's Degrees while incarcerated and this examiner would recommend an SPA award of 16 months, based on 1/3 of the time generally necessary to complete a bachelor degree.

S's Base Point Score of 5 results in a Base Guideline Range of 18-24 months. As noted by the hearing examiner, the number of months to parole eligibility is 302 months. The disciplinary guidelines are 0-24 months and the SPA award is 16 months. The Total Guideline Range is: 304-334 months. S. has been in custody a total of 300 months as of 12-7-02.

I concur with the recommendation for a rehearing in 36 months. At that time, S. will have been in custody 335 months. This is a decision above the guidelines and I recommend the following reasons:

(INI-S-B)

REASONS:  You are a more serious risk than indicated by your Base Point Score of 5.  On 05-28-77, you stabbed an individual to death after luring him to your ex-girlfriend's apartment.  You then seriously assaulted her by stabbing her in the left side and cutting her on the wrist.  After being arrested on this offense and released from custody, you broke into your ex-girlfriend's apartment on 12-22-77, confronted her and her companion, and shot her companion to death after an altercation.  Your Base Point Score of 5 reflects 2 points assessed in Category II for violence and 3 points in Category III for death of a victim.  However, the addition of these points captures only the murder which occurred on 05-28-77;  the stabbing of your ex-girlfriend on 05-28-77, breaking and entering her apartment on 12-22-77 and murdering her companion on the same date are not reflected in the Base Point Score.  The Commission at your next hearing will consider the risk you pose to the community based on your homicidal acts not captured in the Base Point Score.

PHILLIPS.295

Page 4 of 3

# PHILLIPS

# EXHIBIT    C8



U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: PHILLIPS, Charles | Institution: Lewisburg USP |
| Register Number: 02952-000 | |
| DCDC No: 189-828 | Date:    December 13, 2002 |

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue to a Three-Year Reconsideration Hearing in November 2005, after the service of 36 months from your hearing date of November 19, 2002.

**REASONS:**

Your Total Guideline Range is 304-334 month(s). See the attached sheet for the components that make up your Total Guideline Range. These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 300 months as of December 27, 2002.

After consideration of all factors and information presented, a decision above the Total Guideline Range is warranted because you are a more serious risk than indicated by your Base Point Score of 5. On May 28, 1977, you stabbed an individual to death after luring him to your ex-girlfriend's apartment. You seriously assaulted her by stabbing her in the left side and cutting her on the wrist. After being arrested on this offense and released from custody, you broke into your ex-girlfriend's apartment on December 22, 1977, confronted her and her companion and shot her companion to death after an altercation. Your Base Point Score of 5 reflects 2 point assessed in Category III for violence and 3 points in Category III for death of a victim. However, the addition of these points capture only the murder which occurred on May 28, 1977; stabbing of your ex-girlfriend on May 28, 1977, breaking and entering her apartment on December 22, 1977 and murdering her companion on the same date are not reflected in the Base Point Score. The Commission at your next hearing will consider the risk you pose to the community based on your homicidal acts not captured in the Base Point Score.

**THE ABOVE DECISION IS NOT APPEALABLE.**

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2149
       Washington, D.C. 20001





# SALIENT FACTOR SCORE (SFS-98)

**Your Pts    Salient Factor Score (SFS-98) Item Explanations**

3       **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

2       **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

2       **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

1       **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

1       **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

0       **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from items A-E above is 9 or less) = 1; Otherwise = 0

9       **Salient Factor Score (SFS-98)** (sum of points for A-F above)

## BASE POINT SCORE

**Your Pts    Base Point Score Category Explanations**

0       **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

2       **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

3       **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

5       **Base Point Score** (sum I-III above)

---



## DISCIPLINARY GUIDELINES

You have 8 non-drug related infraction(s) [0-2 months each], which requires 0-16 months to be added to your base point score guideline range.

You have 1 drug related infraction(s) [0-8 months each], which requires 0-8 months to be added to your base point score guideline range.

You have an aggregate disciplinary guideline range of 0-24 months, which is to be added to your base point score guideline range.

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 16 month(s) from your Total Guideline Range for superior program achievement. This was granted because you have completed the Computer Trade Program, Graphic Arts Program, Drug Abuse Program, Street Law Program, and the Advanced Street Law Program. Also, you received a Bachelor of Science Degree from the University of Wisconsin, Bachelor of Arts in Urban Studies from the University of the District of Columbia, and earned your GED.

### TOTAL GUIDELINE RANGE

| | | |
|---|---|---|
| 18 — 24 | Base Point Score Guideline Range |
| 302 - 302 | Months Required to Serve to Parole Eligibility Date |
| 0 — 24 | Disciplinary Guideline Range |
| less 16 — 16 | Superior Program Achievement Award (if applicable) |
| 304 - 334 | Total Guideline Range |

| Base Point Score Guideline Range | | Points For SFS Items | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0-1 | 2 | 3+ |
| 3 or less | 0 months | 26 & Up | 3 | 2 | 1 |
| 4 | 12-18 months | | | | |
| 5 | 18-24 months | 22-25 | 2 | 1 | 0 |
| 6 | 36-48 months | | | | |
| 7 | 54-72 months | 20-21 | 1 | 0 | 0 |
| 8 | 72-96 months | | | | |
| 9 | 110-140 months | 0-19 | 0 | 0 | 0 |
| 10 | 136-172 months | | | | |

---

# PHILLIPS

# EXHIBIT   C9



# HEARING SUMMARY

**Name: Phillips, Charles**                    Reg No: **02952-000**

## Hearing Parameters

Hearing Format ..............................: **In Person**
Hearing Type ................................: **Reconsideration**
Hearing Date ................................: 10/27/05
Examiner ......................................: Joseph M. Pacholski
Institution ......................................: Lewisburg USP

## Sentence Parameters

Sentence Type...............................: **DC Parole Eligible**
MR/Statutory Release ..................: Life
Full Term Date..............................: Life
Months in Custody.......................: 334 as of 12/27/05
Fines/Restitution/Assessment ......: None
Detainer.........................................: None noted

**Additional text regarding the above parameters:** None

---

## Prior Action & Institutional Factors

**Prior Action:** See Pre-review completed by Phyllis Baker dated 10/19/05.

**Codefendants:** None noted.

**Representative & Representative's Statement:** None.

**Prisoner's Statement:** The subject took ownership for what he completed as to his offense. He stated that he was in love with one of his victims and that they were living together. The subject stated that he believed that victim was cheating on him. The subject stated that he was under the influence of PCP at the time of the offense and that he committed two murders and stabbed the woman that he allegedly loved. The subject stated that he is attempted to reconcile with himself his behavior however there is nothing to say. He can say that he is sorry and he is but only through his actions is he able to show that he is a changed person. The subject states that he has been in for over 300 months and has demonstrated that with no violent behavior within the institution and believes that this with his educational background indicates that he can act as a law-abiding citizen with no violent tendencies.

**Discipline:** None.

**Program Achievement:** The subject since the last parole hearing only completed one course and that was New Court Business Curriculum and he will receive a certificate at the end of the month.

Phillips, Charles, Reg. No. 02952-000                    Page 1 of 3

GOVERNMENT EXHIBIT

The subject currently works in UNICOR and is an outstanding worker. The subject works 12-hour days.

**Release Plans:** The subject plans to release to his friend in Washington, DC. This friend is an old family friend who he believes will be a good community tie. All of his family has yet moved on or passed away since his incarceration.

The subject indicates that he will be able to receive a management curriculum from the Marriott Hotels if he is released.

<u>**Guideline Parameters, Evaluation & Recommendation**</u>

**Salient Factor Score:**  9
**Base Point Score:**       5

Base Point Score Guideline Range: ...............................18-24
Months to Parole Eligibility Date: ..............................302-302
Disciplinary Guidelines BEFORE Last Hearing: .............0-24
Converted Guideline Range:...............................................-
Superior Program Achievement BEFORE Last Hearing:16-16
Converted Guideline Range:...............................................-
Guidelines in Effect: ...................................................304-334
Disciplinary Guideline SINCE Last Hearing:....................0-0
Superior Program Achievement SINCE Last Hearing: ......0-0
Total Guideline Range: ................................................304-334

**Evaluation:** This examiner would note that the subject has been incarcerated for 334 months as of 12/27/05. This examiner would note that the subject since the last hearing has not demonstrated any violent behavior and has continued to program and work as a part of his therapy. The subject indicated that work has been his way of dealing with his incarceration and to better himself as a person. The subject stated that he has taken a number of courses in the past regarding his therapy for what he has done and that in fact has worked in he is taking as many courses as he possibly can. This examiner believes that the subject should be given a presumptive parole date after the service of 370 months, which will hold him accountable for the two deaths of his victims and the stabbing of the women that he cared for which he has apologized for all of the crimes that he has committed. The subject at no time tried to diminish the seriousness of the offense and in fact added that he has tried to better himself as a person through his actions and work. This examiner believes that the subject is just a hard worker and the subject basically has no prior convictions and that is the reason for his SFS being 9. It is understood at the last hearing in the NOA that the subject was viewed as a more serious risk. This examiner believes the subject is a more serious risk however believes should be given an opportunity for parole and a decision above the guidelines is warranted by 3 years.

**Recommendation:** Continue to a presumptive parole on 12/25/08 after the service of 370 months.

**Conditions:** Drug Aftercare.

**Statutory Interim Hearing:** None.

**Phillips, Charles, Reg. No. 02952-000**                    **Page 2 of 3**



**Guideline Use:** A decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that you are a more serious risk than indicated by the guideline range in that your offense involved the killing of two victims and the stabbing of a third victim. On 5/28/77 you stabbed an individual to death after luring him into your ex-girlfriend's apartment. You seriously assaulted her by stabbing her in the left side and cutting on her wrist. After being arrested on this offense and released from custody you broke into the ex-girlfriend's apartment on 12/22/77 confronted her and her companion and shot her companion to death after an altercation. Your Base Point Score of 5 reflects 2 points assessed in Category II for violence and 3 points in Category III for death of a victim. However, the addition of these points capture only the murder which occurred on 5/28/77 the stabbing of your girlfriend on 5/28/77, Breaking and Entering into her apartment on 12/22/77 and murdering of her companion on the same date are not reflected in the Base Point Score.

**Additional Text:** None.

[Signature]

JMP/PAH
November 1, 2005

**Executive Reviewer's Comments:** Denton 11/15/05

I disagree with setting a release date at this hearing and recommend a reconsideration hearing in 36 months. The examiner is recommending a release date after the service of approximately 31 years. This offense involved two murders and a stabbing. The two murders were the result of subject killing his ex-girlfriend's current boyfriend. In the first murder, he stabbed the victim to death after he had his ex-girlfriend lure the victim to her apartment with a request for the victim to take her to the hospital because she was ill. After he killed the victim, he then stabbed his ex-girlfriend in the side and cut her on the wrist. He was arrested and was released from custody the same day. While out on bond, approximately 7 months later, he broke into the same ex-girlfriend's apartment, confronted her and her companion while they were in the bedroom and shot the companion. The companion died as a result of his wound. It should be noted that the companion/victim was a police officer. Phillips denied knowing the victim was a police officers. The guidelines only take into consideration one murder. As a result, the second murder and assault are not considered in the computation of the guidelines. Phillips guidelines are 304-334 months. At the time of the hearing, he had served 335 months. The difference between the top of the range and the recommendation for a release date made by the examiner is 36 months. Thirty-six months is not sufficient sanction for a second murder and aggravated assault.

agree w/ Denton    use same reasons
Provided by HG Pribolski

[Signature]

**Phillips, Charles, Reg. No. 02952-000**                **Page 3 of 3**

# PHILLIPS

# EXHIBIT   C10

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: PHILLIPS, Charles | Institution: Lewisburg USP |
| Register Number: 02952-000 | |
| DCDC No: 189-828 | Date:    November 18, 2005 |

As a result of the hearing conducted on October 27, 2005 the following action was ordered:

Deny parole. Continue to a Three-Year Rehearing in October 2008.

**REASONS**:

You have been in confinement as a result of your current offense behavior for a total of 334 months as of October 27, 2005. Your prior total guideline range is 304-334 months.

Your new total guideline range is 304-334 months.

After consideration of all factors and information presented, a decision above the new total guideline range is warranted because you are a more serious risk than indicated by the guidelines in that you are a more serious risk than indicated by the guideline range in that your offense involved the killing of two victims and the stabbing of a third victim. On 5/28/77 you stabbed an individual to death after luring him into your ex-girlfriend's apartment. You seriously assaulted her by stabbing her in the left side and cutting on her wrist. After being arrested on this offense and released from custody you broke into the ex-girlfriend's apartment on 12/22/77 confronted her and her companion and shot her companion to death after an altercation. Your Base Point Score of 5 reflects 2 points assessed in Category II for violence and 3 points in Category III for death of a victim. However, the addition of these points capture only the murder which occurred on 5/28/77, the stabbing of your girlfriend on 5/28/77, Breaking and Entering into her apartment on 12/22/77 and murdering of her companion on the same date are not reflected in the Base Point Score.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    CSS Data Management Group
D.C. Court Services & Offender Supervision Agency
300 Indiana Avenue, N.W., Suite 2070
Washington, D.C. 20001

GOVERNMENT
EXHIBIT
1