# WEST-EL

# EXHIBIT    D1



```
5H    PAR3D  540*23 *              SENTENCE MONITORING           * 02-21-2006
   PAGE 001         *             COMPUTATION DATA         *     15:10:14
                                  AS OF 02-21-2006


   REGNO..: 06319-007 NAME: WEST, BENSON


   FBI NO..........: 69924VB5          DATE OF BIRTH:      -1965
   ARS1............: LEE/A-DES
   UNIT............: F                  QUARTERS.....: F01-127L
   DETAINERS.......: NO                 NOTIFICATIONS: NO


   THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
   THE INMATE IS PROJECTED FOR RELEASE:  LIFE

   ----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

   COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
   DOCKET NUMBER...................: F-090-83C,D,E,F,G
   JUDGE...........................: REVERCOMB
   DATE SENTENCED/PROBATION IMPOSED: 02-13-1984
   DATE WARRANT ISSUED.............: N/A
   DATE WARRANT EXECUTED...........: N/A
   DATE COMMITTED..................: 10-02-2001
   HOW COMMITTED...................: DC SUPERIOR COURT COMT
   PROBATION IMPOSED...............: NO
   SPECIAL PAROLE TERM.............:


   RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

   ----------------------CURRENT OBLIGATION NO: 010 ----------------------
   OFFENSE CODE....:  621
   OFF/CHG: 22-2902,3202: ATTEMPTED ROBBERY WHILE ARMED. (C)
            22-2401,3202: 1ST DEGREE MURDER WHILE ARMED. (D)
            22-3202: ARMED ROBBERY. (E)
            22-2902: ATTEMPTED ROBBERY. (F)
            22-3204: CARRYING A PISTOL WITHOUT A LICENSE. (G)

   SENTENCE PROCEDURE..............: DC CODE ADULT
   SENTENCE IMPOSED/TIME TO SERVE.: LIFE
   MINIMUM TERM....................:    20 YEARS
   DC MANDATORY MINIMUM TERM......:    20 YEARS
   DATE OF OFFENSE.................: 01-05-1983


   G0002      MORE PAGES TO FOLLOW . . .
```


GOVERNMENT EXHIBIT 4



```
5H     PAR3D  540*23 *          SENTENCE MONITORING              *    02-21-2006
PAGE 002 OF 002 *              COMPUTATION DATA            *       15:10:14
                               AS OF 02-21-2006


REGNO..: 06319-007 NAME: WEST, BENSON



----------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 08-10-2005 AT LEE AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 02-13-1984
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 01-05-1983

JAIL CREDIT.....................:     FROM DATE      THRU DATE
                                      01-06-1983     02-12-1984

TOTAL JAIL CREDIT TIME..........: 403
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 0
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 01-05-2003
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE

NEXT PAROLE HEARING DATE........: 04-00-2006
TYPE OF HEARING.................: OTHER

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE

REMARKS.......: PAROLE ELIGIBILITY CANNOT OCCUR PRIOR TO 01-05-2003 DUE TO
                20 YEAR MANDATORY MINIMUM.




S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

# WEST-EL

# EXHIBIT    D2

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

*In Jail*
*Amended*

Case No. F-070-83

PDID No. 357-688

vs.

*[name handwritten]*

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant, having entered a plea of ☐ Not Guilty ☒ Guilty to the Charge(s) of _____
_____ Robbery (while Armed) _____ D First Degree Murder (while _____
_____ Armed Robbery F Atten. Id. Robbery, G Carrying A Pistol _____
and having been found guilty by ☒ Jury ☐ Court, it is hereby ORDERED that the defendant has been con-
victed of and is guilty of the offense(s) charged, and is hereby SENTENCED to _____
_____
_____
_____
_____
_____

☒ ORDERED that the defendant is committed to the custody of the Attorney General for imprisonment for
the period imposed above.

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division,
and it is further ORDERED that while on probation the defendant observe the following marked conditions
of probation:

☐ Observe the general conditions of probation listed on the back of this order.

☐ Obtain a job as soon as possible or continue your present employment.

☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with
written notice from your Probation Officer.

☐ Treatment for ☐ Alcohol problems ☐ drug dependency or abuse as follows:

☐ Restitution of $ _____ in monthly installments of $ _____ beginning
_____ (see reverse side for payment instructions). The Court
will distribute monies to _____

Costs in the aggregate amount of $ _____ have been assessed under the Victims of Violent Crime
Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the
copy shall serve as the commitment/order for the defendant.

_____
Date

_____
Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

_____
Date

_____
Deputy Clerk

Original — Court
Blue — Jail
Green — Defendant
Canary — Social Services

Pink — Mayor's Office
Goldenrod — U.S. Attorney/Corporation Counsel
Goldenrod — Defense Attorney

GOVERNMENT
EXHIBIT
B

# WEST-EL

# EXHIBIT    D3

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION - ADULT BRANCH

PRESENTENCE REPORT

PDID No.:   357-988
Docket No.: F-090-83C,D,E,F&G

Re: Benson West

Date Referred:   9-20-83

To: The Honorable George H. Revercomb

Date Due:        11-8-83

From: Prob. Officer Stanley G. Scott

Sentencing Date: 11-10-83

---

Defendant Information:
   True Name: Benson Foster West, Jr.

   Aliases: Benny Smallwood

Address: 3910 Wheeler Road, S.E.#3
          Washington, D.C.
Tel. #:  754-2110

Age/ Birthdate:         65)   Sex: Male

Birthplace:  Washington, D.C.

Time in D.C. Area: Life

Citizenship: US
Alien No.:   N/A

Marital Status: Single    Dependents: None

Education:   7th Grade

Social Security No.:

Permit No.:  None Indicated

DCDC No.:        206-769

FBI No.:     No Report Provided

Offense, Code and Penalty: See Page Two

Plea: Not Guilty   Judgment: Guilty (Jury)

Bond Status: Committed w/o Bond

Detainers or Pending Charges: None Indicated

Co-defendants:
   Edward A. Jackson          (Dkt No.): F-206-83     (Status): Sent. 11-10-83
   Michael A. Britt           (Dkt No.): F-205-83     (Status): Sent. 11-10-83

AUSA: Barry Tapp                     Telephone: 273-8061

Defense Counsel: Richard Greenlee        Telephone: 628-1200

"In accordance with the U.S. Parole Commission and Reorganization Act, Public Law
94-233, dated March 15, 1976 this report is disclosable to inmates in federal
institutions for purposes of parole consideration."

===================================================================

Disposition and Date:

Offense, Code and Penalty:

    Attempted Armed Robbery: 2902, 3202, Up To Life

    1st Degree Murder While Armed (Felony): 22-2401, 3202, Up To Life

    Armed Robbery: 22-3202, Up To Life

    Attempted Armed Robbery: 22-2902, 3202 Up To Life

    Carrying A Pistol Without A License (Felony): 22-3204, 10 Years

**CONTACTS:**

| | |
|---|---|
| 9-23-83 | Attempted contact with AUSA Barry Tapp - No answer |
| 10-27-83 | Effort to obtain information on co-defendant through computer - computers down. |
| 10-31-83 | Attempted contact with AUSA Barry Tapp. |
| 11-1-83 | Contacted AUSA Barry Tapp - Discussed overview of this case |
| | Attempted contact with defendant's grandmother, Lillian Smallwood. |
| 11-2-83 | Interviewed defendant at D.C. Detention Center. |
| | Contacted defendant's grandmother, Lillian Smallwood. Discussed family background and social information. |
| 11-3-83 | Reviewed juvenile social file, juvenile criminal history. |
| | Contacted Dr. William Levine to discuss defendant's mental health status. |
| | Contacted Barry Tapp - Discussed co-defendants in this case. |
| | Attempted contact with Carriage Hill Nusring Home to verify most recent employment. (Attempted contact on 11/7/83) |

**OFFICIAL VERSION:**

The following Official Version is taken from the MPD (#163) official report: "On January 5, 1982 at about 0200 hours, in the 900 block of Varney Street, S.E., Washington, D.C. a pickup truck bearing VA51-058, being driven by a Clayton Brown of 1204 Commonwealth Avenue, Alexandria, Virginia with two passengers aboard, stopped on the street, and were approached by five black males. The person on the passenger side of the truck was pulled from the truck and it was announced that it as a holdup. The second subject was pulled from the truck, and at this time the driver, Mr. Brown objected, alighted from the vehicle and was shot once. The subjects fled the area, and the truck was driven to Wheeler Road, S.E., where a passing scout car was flagged down. The victim was driven to Greater Southeast Community Hospital where he was pronounced death at 2:26 a.m. by Dr. Emeruwa.

An autopsy was performed on January 5, 1983 and the case was ruled a homicide by shooting. On the same date, a statement was taken from a subject and it was learned that a Benny Smallwood was involved. On January 6, 1983, the respondent Benny Smallwood (also known as Benson West) was requested at Homicide in the company of his grandparents. During the interview, Benny Smallwood admitted to the offense and gave a written statement on his own free will.

4

OFFICIAL VERSION: (continued)

The defendant stated that he was at the location and committed the offense.

AUSA Tapp related that the complainants indicated their version as follows: "The defendant s first saw the white kids but did not see the decedent. West then apparently went around the truck to search the decedent. One of the defendants was reportedly feeling on or molesting the female complainant during this incident. The decedent told one of the defendants to leave the female complainant alone. One of the defendants said "If you don't shut up I will shot you or something to that effect." AUSA Tapp relates, further, that the decedent apparently made a move toward defendant West and the defendant shot the decedent and killed him. Mr. Tapp relates, further, that the decedent, Clayton Brown, was apparently trying to save the two other complainants when he expired. Defendant West was read the MPD Official Version, AUSA Tapp reported version of this offense and the Grand Jury Indictments by this officer before he related his version.

Known Injuries or Damages: The MPD (#163) Report relates that a Clayton Brown was fatally wounded by being shot with a pistol. Please see the MPD (#163) for more specific information.

DEFENDANT'S VERSION:

"Me and          , and              was out on Varney Street, selling marijuana...the truck pulled up... went over the truck to sell marijuana. The people in the truck bought the marijuana but tried to keep a extra bag without paying for it. So Ed called me and Michael over the truck. He said that if they tried to leave with the marijuana to bust a window or something...I was on the other side of the truck. I asked Clayton Brown to pay for the reefer or give it back. He gave me his wallet to show me he had nothing in it...I threw it back in the truck. I go back around on the other side of the truck - the passenger side and Michael Scott and Lisa Layton were arguing (apparently with the co-defendants) and Clayton Brown got out of the truck and started to argue with Jackson...I said leave him alone; he asked me what I was going to do I said I would bust him out. He said "Thats what you're gonna have to do" and came towards me with his hand in his pocket with a glove on...I had a pistol...I was scared...I shot him...I didn't mean to shoot him."

PRIOR CRIMINAL RECORD:

Washington, D.C. - Juvenile

**PRIOR CRIMINAL RECORD:** (continued)

Please be advised this office repeatedly asked the defendant and grandmother if he ever had been involved in any type of contact with the Court by being arrested or convicted as a juvenile or an adult. Both said that he had not. However, juvenile record indicate the above charge and disposition.

Washington, D.C. - Adult

| 1-5-83 | Homicide; Murder I While Armed; Attempted Armed Robbery; Felony Murder; Armed Robbery; Carrying A Pistol w/o A License, Attempted Armed Robbery | No Papered; Closed; INSTANT OFFENSE; INSTANT OFFENSE; INSTANT OFFENSE; INSTANT OFFENSE; INSTANT OFFENSE | DCSC |

FBI records officials report no record found for this defendant.

**CURRENT PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:**

Court records show indication that the defendant is presently on probation. There is no indication of the defendant being on probation as an adult or juvenile. Defendant West was cooperative during this investigation.

**EMPLOYMENT HISTORY:**

January, 1982 to July 1982
Carriage Hill Nursing Home
Arlington, Virginia
Position:Dietician
Salary: Minimum Wage
Reason for Leaving: Transportation and personal problems
Verification: Juvenile records; verification through employer pending (920-5700).

Comments: Defendant West reported that he was unemployed at time that he was arrested and charged with this offense. He reports that he also worked in the Mayor's Summer Jobs for Youths Program, in 1981 (at a neighborhood community center - specific name unknown). Defendant West reports that he had no other employment history.

SOCIAL HISTORY:

A.    Family History:

Defendant West reports that he was born through the marital relationship of
            and            He says his mother and father separated
early during his childhood; that he was raised primarily by his grandmother and
grandfather with the assistance of his mother. He says that his father was not in the
home at any time and was not involved in the parenting process. Defendant West says
that he was treated very well, by his grandparents, during his childhood and early
adult life; and that there were no family problems that would be contributive factors
to his involvement in these Instant Offenses. He says that he was raised with four
sisters and one brother, who apparently reside with his grandmother and grandfather.

This information is verified by the defendant's grandmother,
        Mrs.         says that the defendant has never been a problem to the
family; has been a very obedient child, and has been very good in the home. Mrs.
Smallwood says that she does not believe that her grandson committed these offenses.
However, she admits that the defendant was smoking some type of narcotic. She
relates, further, that defendant West always was involved in trying to counsel and
guide his siblings. She says she has never seen any type behavior as was exhibited in
these offenses. She says that the defendant was raised in a wholesome family
environment where discipline and traditional values: working hard for a living and
being honest, were stressed.            appeared extremely distressed over the
defendant's involved in these Instant Offenses. She says that she has had numerous
conversations with the defendant since he has been detained pending sentencing in this
case, and that she feels Mr. West is very remorseful for any act which he may have
committed. When asked if there were other family members known to the Court,
declined to comment and the defendant reported "none."

B.    Education/Training:

Defendant West reports that he last attended the D.C. Public School System at
Hart Jr. High School until he withdrew after apparently completing the seventh grade.
He says that he withdrew because he didn't have "nice" clothes and other material
things that other children had, and because he had fallen behind in his school work
and could not" catchup ". The defendant and his grandmother report that he attended
Armstrong Adult Education Center, in 1981, studying for his GED. There is no
indication as to whether the defendant finished his studies. The defendant's
grandmother verifies the defendant's public school education.

C.    Military:

Defendant West says that he has not served in the military service.  This information is verified through his grandmother, who relates that the defendant was not old enough to register for the selective service when he was allegedly involved in these offenses.

D.    Marital Status and Living Arrangements:

Mr. West reports that he is single; has had no past or present marriages or similar live-in arrangements; and has no children.  He reports that he was residing with          and          his grandmother and father, at the time that he was arrested and charged with these offenses.  The defendant and his grandmother relate there were no problems in the living arrangement; and the defendant was extremely close with his grandparents, mother, and siblings.  The defendant's grandmother relates that she and other family members realize the seriousness of these offenses, but they remain concerned about the defendant's welfare.

E.    Financial Status:

Defendant West is unemployed and has no financial problems or expenditures.

F.    Health:

G.    Substance Use/Abuse:

Defendant West admits to using marijuana and PCP, frequently since 1980. He says that he has been using marijuana since 1980, and PCP since 1981. This officer was unable to determine whether the defendant's use of narcotics had a definite affect on his criminal lifestyle. This officer was unable to test defendant West due to his being detained pending sentencing. There is no indication that the defendant made efforts to obtain any type of treatment while released in the community.


EVALUATION AND DIAGNOSIS:


Benson West is before the Court for sentencing following his being found guilty, by jury trial, of Attempted Armed Robbery (2 Counts), Felony Murder, Armed Robbery, and Carrying A Pistol Without A License Offenses. Although records show that this case went to trial, the MPD (#163) report indicates that the defendant admitted his involvement in this offense when initially questioned by police authorities. Also, the defendant admitted shooting the decedent during the presentence report investigation interview.

Metropolitan Police and Court arrest records reviewed by this officer show that these Instant Offenses are the defendant's first offenses as an adult. Juvenile criminal records indicate that the defendant was arrested and charged with Simple Assault as a juvenile. However, records show that the simple assault charges were no papered. Court records show no indication that the defendant has been no probation as an adult or a juvenile. FBI officials report that they have found no record for this defendant.

Defendant West was reportedly living with his grandmother, grandfather and family in southeast Washington, D.C. at the time that he was arrested and charged with this offense. Although his mother and father separated during his early childhood, and his father was not in the home and not involved in the parenting process for most of his formative years, the defendant and his grandmother report that he was raised in a wholesome and intact family by his grandparents, with the assistance of his mother. Even though the defendant was raised in humble surroundings, it appears that the defendant's grandmother and grandfather made great efforts to give the defendant the best parenting and guidance possible. Employment and educational background verification shows that the defendant is limited in educational background and lacking in viable employment skills. Although it appears that the defendant has made some effort to support himself through employment, his employment history is brief. This

9

EVALUATION AND DIAGNOSIS:(continued)

could be due to his lack of employment skills and youth. The evaluating psychologist at the D.C. Detention Center reports that the defendant may have been suffering from drug induced psychosis when arrested and charged for these offenses. However, there is no history of emotional or mental health problems found in records reviewed by this officer. Although the defendant's behavior and involvement in these offenses could have been affected by: peer associations, being raised in a humble environment; and possibly by drug induced emotional problems; it appears to this officer that the defendant had a rational intent in his involvement in this offense: to apparently rob these individuals, and then shooting the decedent when he may have resisted.

Although defendant West was cooperative during this investigation; and may have periodically made efforts to support himself through employment and pursued educational opportunities, the seriousnesses of these offenses and the circumstances under which they were committed, as well as the defendant's admitted using and selling of narcotics, show that the defendant is not amenable for probation. Defendant West is eligible for sentencing under the Federal Youth Corrections Act 5010 Statues. An FYCA(E) Study would probably provide additional indepth information to assist Your Honor in the sentencing process. However, due to the defendant's involvement in these most serious and violent offenses, it is the opinion of this officer that the defendant does not deserve sentencing under these statues.

TREATMENT PLAN:  Recommended Probation Supervision Level: Maximum

1.      The defendant should be evaluated for narcotic dependency problems; and appropriate treatment be given.

3.      The defendant should be encouraged to enroll in and complete educational training programs leading to viable employment skill and increased academic ability.

RECOMMENDATION:

It is recommended that probation be denied.

Respectfully submitted,

Stanley G. Scott
Probation Officer
727-1059

APPROVED BY:_____
Supervisory Probation Officer

SGS:ct

# WEST-EL

# EXHIBIT   D4

(INI-S-B)

< SUMCODE-DCINIADN_SUM >

## D.C. ADULT INITIAL HEARING SUMMARY
(INITIAL HEARINGS AFTER 1/2/01 AND CASES ELIGIBLE FOR
(RETROACTIVE CONVERSION TO PRESUMPTIVE DATE PROCEDURES)

**Offense of Conviction - Attempted Robbery While Armed, First Degree Murder While Armed, Armed Robbery, Attempted Robbery, Carrying a Pistol without a License**

Name                :WEST, Benson
Reg. No            :06319-007
Hearing Date      :4/29/2002
Institution          :Terre Haute USP
Hearing Examiner :Adrienne R. Poteat

**Prisoner's Statement:**

According to the subject, the offense of conviction never involved a robbery. He states that it was a drug transaction that went bad resulting in the taking of a man's life. The subject admits that he was the trigger person who allegedly shot and killed the victim.

The subject, along with two codefendants (Edward Jackson and Michael Britt) were all involved in the sale of narcotics. At the time of the offense, a truck pulled up in which the occupants requested to purchase narcotics. Subsequently, a verbal altercation transpired resulting in the shooting.

According to the official version of the offense, it states that the subject and the codefendants stopped and picked up truck with three passengers announcing a hold-up. Two passengers were pulled from the truck and the subject and codefendants began to harass them. The driver of the truck objected to the harassment and as a consequences he was shot. The victim was driven to the hospital where he was pronounced dead. The subject denies this version of the offense, further stated that at no time did they stop the passengers. He claims that the truck stopped on its own in which the passengers again requested to purchase narcotics.

Finally, the codefendants were sentenced to a term of 20 to life. When questioned as to why they would be the same sentence structure, the subject states that they were adults with prior criminal records.

The subject was 17 years of age at the time of the offense with no prior convictions.

**Institutional Factors**

**Discipline:**

The subject received the following disciplinary reports while housed in the DC Department of

GOVERNMENT
EXHIBIT
D

(INI-S-B)

Corrections:

1. 7/31/84, the subject was cited for Possession of Contraband, Lack of Cooperation and Falsifying Physical Evidence. According to the report, the subject was ordered to expose his mouth for a visual search following visiting at which time he refused and swallowed an undetermined amount of US currency. The subject was found guilty and received 14 days in which 7 days were suspended for 30 days.

Rescission behavior 0-2 months.

2. 3/20/86, the subject was cited for being Out of Place, Being Absent at Count which resulted in a Class III Offense. The subject failed to report to his Squad for a new count and as a result was found guilty and received 5 days punitive segregation suspended for 60 days.

Rescission behavior of 0-2 months is being applied in that the subject has more Class III/Class II offenses.

3. 5/6/86, the subject was cited for Abuse of Privileges and Lack of Cooperation. According to the report, while staff was conducting the official check up of the dormitory, it was noted that the subject either failed to turn down the volume of his radio or use ear plugs as required. After repeated warnings it was necessary to submit a disciplinary report. The subject was found guilty and received a reprimand in warning.

Rescission guidelines of 0-2 months is being applied in that this is a Class II/Class III offense.

4. 5/16/89, the subject was cited for Assault. The officers were chasing individuals in which the subject was wanted and needed to be apprehended. As the officer grabbed the subject, he hit the officer twice in the ribs. The Board recommended that he be transferred to a maximum security facility and he was found guilty of assault. The subject claims that this infraction was dismissed and that he never went to maximum security and was never convicted in the State of Virginia. It was explained to this individual that in spite of the fact that Virginia may have failed to prosecute for an assault, this does not have anything to do with the institution imposing disciplinary sanctions for the behavior.

Rescission guidelines Category III assault on a correctional officer, 12-16 months in which no serious injuries were sustained.

5. 4/3/92, the subject was cited for Threatening Conduct, Disrespect, Willful Disobedience of a General Order, Class II/Class III infraction. According to the report, the subject was standing several feet from an officer and stated in a loud and boisterous tone "fuck that shit, cock ass, mother fucker. I want my mail now or I'm going to kick your mother fucker ass". The subject was found guilty and received punitive segregation in which credit of 3 days was imposed. He was subsequently released to the general population after service of this time.

(INI-S-B)

Rescission behavior 0-2 months.

6.  7/12/84, the subject was cited for Threatening Conduct, Lack of Cooperation, Out of Place, Disrespect, Class II/Class III infraction.  According to the report, the officer, while standing near the front door challenged the inmate who was attempting to enter the chow line.  During this time the subject stated "Don't say no damn more to me".  The subject was found guilty and received 7 days segregation suspended for 60 days.

Rescission guidelines 0-2 months.

11/23/83, the subject was cited for Major Contraband in which officers found a toothbrush melted with a sharp edge which appeared to be a razor blade.  The toothbrush with the sharp object was confiscated and turned over to authorities.  The subject received 7 days punitive segregation and loss of all privileges.

Rescission behavior Category III for possession of a dangerous weapon, 12-16 months.

In total, the subject's rescission behavior is 24-40 months.

**Program Achievement:**

The subject has several program completions to his credit.  He has been involved in the Industrial Program at the Central Facility DC Department of Corrections in which he was involved in the Metal Fabrication and Industrial Maintenance.  Sentences arrive with the facility, is in the Refrigeration Squad.  He has completed 24 weeks of the Drug Program and is enrolled in the GED classes.  He has signed up for Counseling Programs but is not involved in any Therapeutic Programs at this time.  Furthermore, he has been involved in religious services and self-help groups.

**Release Plans:**

The subject wants to obtain his own place of residence upon release.  Employment plans were not provided and will be determined at the appropriate time.

**Representative and Representative's Statement:**    N/A.

---

**Guideline Parameters**

**SFS:**  7

**Base Point Score:**        6

36-48 Base Guideline Range

WEST.631                                                      Page 3 of

(INI-S-B)

24-40 Months Required to Serve to PE Date
0-0       Disciplinary Guideline Range
0-0       Superior Program Achievement Award
287-315      Total Guideline Range

## Modifications to Prehearing:

The only modification would be the misconduct in which the Pre-review did not note any disciplinary infractions.

## Overall Evaluation and Recommendation

### Evaluation:

As indicated earlier, this represents the subject's first period of confinement. At the age of 17, the subject engaged in the sale of narcotics. He claims that he earned approximately $200 per day. Nevertheless, the instant offense involved a drug transaction that went bad resulting in him killing one of the victims.

As of this date, the subject has been in custody for 231 months. A denial of parole and a continuation for 60 months would not result in the subject serving at the top of the guideline range.

### Recommendation:

Deny parole. Continue for a Rehearing in April 2007, after the service of 60 additional months.

PAH
May 15, 2002

# WEST-EL

# EXHIBIT    D5

## ADDENDUM

| Name | : West, Benson | Institution | : Terre Haute FPC |
|------|----------------|-------------|-------------------|
| Reg No | : 06319-007 | Hearing Date | : 5/22/2002 |
| | | Reviewer | : Tom Kowalski |

In rendering the recommendation at the Initial hearing of this subject, the examiner denied parole and continued the case for a rehearing after 60 months.

Pursuant to the rules (2.75 (a)(IV), the maximum recommendation that can be taken at the hearing in the case where a death has occurred would be a date that does not exceed the minimum of the applicable guideline range. The examiner's recommendation of 4/2007 would be after 291 months which is within the 287 to 315 guideline range.

I recommend a four year continuance.

RECOMMENDATION: Deny parole and continue to a reconsideration hearing in 4/2006 after the service of 48 months from the hearing date of 4/29/2002.

TCK
May 22, 2002





# WEST-EL

# EXHIBIT    D6

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: WEST, Benson | Institution: Terre Haute FPC |
| Register Number: 06319-007 | |
| DCDC No: 206-796 | Date: May 29, 2002 |

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue to a Reconsideration Hearing in April 2006, after the service of 48 months from your hearing date of April 29, 2002.

**REASONS:**

Your Total Guideline Range is 287-315 month(s). See the attached sheet for the components that make up your Total Guideline Range. These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 233 months as of May 21, 2002.

After consideration of all factors and information presented, a decision outside the Total Guideline Range at this consideration is not found warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:   Sharon Barnes-Durbin, SCSA
      CSS Data Management Group
      D.C. Court Services & Offender Supervision Agency
      300 Indiana Avenue, N.W., Suite 2149
      Washington, D.C. 20001

WEST 06319-007          -1-          Clerk: VAH

# SALIENT FACTOR SCORE (SFS-98)

**Your Pts    Salient Factor Score (SFS-98) Item Explanations**

**3**       **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

**2**       **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

**0**       **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

**1**       **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

**1**       **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement, or escape status violator this time = 1; Otherwise = 0

**0**       **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

**7**       **Salient Factor Score (SFS-98)** (sum of points for A-F above)

## BASE POINT SCORE

**Your Pts    Base Point Score Category Explanations**

**1**       **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

**2**       **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

**3**       **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

**6**       **Base Point Score** (sum I-III above)



## DISCIPLINARY GUIDELINES

You have 4 non-drug related infraction(s) [0-2 months each], which requires 0-8 months to be added to your base point score guideline range.

You have behavior that constitutes new criminal conduct in a prison facility, which is rated as Category Three severity because it involved Possession of Contraband (Dangerous Weapon). This requires 12-16 months to be added to your base point score guideline range.

You have behavior that constitutes new criminal conduct in a prison facility, which is rated as Category Three severity because it involved Assault on Staff (no serious injuries). This requires 12-16 months to be added to your base point score guideline range.

You have an aggregate disciplinary guideline range of 24-40 months, which is to be added to your base point score guideline range.

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

**Not Applicable**

## TOTAL GUIDELINE RANGE

|              |         |                                                    |
|-------------:|---------|----------------------------------------------------|
| 36 — 48      |         | Base Point Score Guideline Range                   |
| 227 - 227    |         | Months Required to Serve to Parole Eligibility Date|
| 24 — 40      |         | Disciplinary Guideline Range (if applicable)       |
| less  0 — 0  |         | Superior Program Achievement Award (if applicable) |
| 287 - 315    |         | Total Guideline Range                              |

| Base Point Score Guideline Range | | Points For SFS Item C | | | |
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0-3 | 4 | 5+ |
| 3 or less | 0 months | 26 & Up | 3 | 2 | 1 |
| 4 | 12-18 months | | | | |
| 5 | 18-24 months | 22-25 | 2 | 1 | 0 |
| 6 | 36-48 months | | | | |
| 7 | 54-72 months | 20-21 | 1 | 0 | 0 |
| 8 | 72-96 months | | | | |
| 9 | 110-140 months | 0-19 | 0 | 0 | 0 |
| 10 | 136-172 months | | | | |

# WEST-EL

# EXHIBIT   D7

# HEARING SUMMARY

**Name: West, Benson**                                    **Reg No: 06319-007**

## Hearing Parameters

Hearing Format ..............................: **In Person**
Hearing Type ................................: **Reconsideration**
Hearing Date ................................: March 22, 2006
Examiner.....................................: Rob Haworth
Institution .....................................: Lee County USP

## Sentence Parameters

Sentence Type...............................: **DC Parole Eligible**
MR/Statutory Release .................: None
Full Term Date .............................: Life
Months in Custody.......................: 278 as of 3/5/2006
Fines/Restitution/Assessment ......: None
Detainer.......................................: None

**Additional text regarding the above parameters:** None

## Prior Action & Institutional Factors

**Prior Action:** There is no current Prehearing Assessment in this case.

The subject is serving 20 years to life for Attempted Robbery while Armed, First Degree Murder while Armed, Armed Robbery, Attempted Robbery and Carrying a Pistol without a License. His crimes occurred when he was 17 years old. On 1/5/82, the subject and his codefendants attempted to rob several individuals. The robbery did not go well and subject shot and killed one of the victims.

The subject had his Initial Hearing 4/29/2002. He was sent a NOA dated 5/29/2002 that denied parole and set a Rehearing in April of 2006, 48 months after the Initial Hearing.

The guidelines at the Initial Hearing were set at 287-315. However, it was noted that the minimum term now shows on the sentence computation sheet to be 240 months. It will be necessary to correct the guidelines from the last hearing. The minimum term was recorded as 227 months at the Initial Hearing.

**Codefendants:** Edward Jackson and Michael Britt are listed as codefendants. Jackson's Case No. is listed as F-206-83 and Britt's Case No. is F-205-83. There's no information in the Presentence Report that gives any details of their sentence. This examiner does not have the copy of the Prehearing Assessment from the Initial Hearing. The Summary of the Hearing held on 4/29/2002 does not describe the sentence or parole decision of any codefendant. It will be necessary to check this during Administrative Review. This is one of those type

GOVERNMENT EXHIBIT

cases where everyone appears to be equally culpable and it is important that the Commission not create a situation of codefendant disparity.

**Representative & Representative's Statement:** The subject was represented by Attorney Jason Wallach at 2101 L Street, NW, Washington, DC 20037. Mr. Wallach stated that he is familiar with the recent court decision from January, 2006 that has an affect on the Parole Commission's application of guidelines. The Case is Fletcher v. United States and the court's ruling stated that there is an *expo facto* violation when the Parole Commission applies new guidelines that will likely increase an individual's period of incarceration. Mr. Wallach acknowledged that the Fletcher Case dealt with a parole violator who had federal parole guidelines apply to his case. However, Mr. Wallach believes that there are serious implications for other guideline issues. He does not believe the US Parole Commission should apply the current US Parole guidelines to a DC Case. He believes that the Fletcher decision will ultimately require the Commission to apply the guidelines used by the DC Board. If this were done the subject would have had a Point Score of 1 at his Initial Hearing and a score of 0 at his Rehearing. That would have allowed him to be paroled at either hearing and, based on that, Attorney Wallach stated that it is clear that it is detrimental to this subject to apply the current US Parole DC guidelines to this case.

Attorney Wallach also stated that under DC Parole and sentencing law the minimum term is intended to satisfy accountability for the offense. He believes that using a Base Point Score that includes factors considered by the judge at the time of sentencing that it is tantamount to double counting. He does not believe that the base guidelines should be added to a case like the one of this subject. He contends subject should have been released at his minimum term. The least that should occur is parole at this time.

Attorney Wallach emphasized subject's excellent prison conduct and program accomplishments. He recommended parole at this time. He also pointed out that subject did not receive any Superior Program Achievement at the last consideration even though he had accomplished significant program completions while serving in the DC Department of Corrections.

**Prisoner's Statement:** The subject expressed remorse for his mistakes in the past, particularly the current crimes. He was 17 years old at the time and was a first offender. He made a terrible mistake that affected the rest of his life and affected the lives of many others.

The subject is hopeful that his prison conduct record will be used as an indicator that he is not the same person he was when this crime was committed over 23 years ago. He wants to rejoin his family and start his life over.

**Discipline:** None.

**Program Achievement:** This prisoner has completed some significant programs since the last hearing. His most important accomplishment was completing his GED on 12/16/02. The subject completed the sixth grade on the street and this has been quite accomplishment for him.

Additionally, the Progress Report dated 1/23/2006 shows that subject completed Keyboarding 7/11/03, Photography 9/22/04, Commercial Driver's License 9/28/04, Stocks, Bonds and Trade Analysis 1/14/05, Character Building 6/19/05, Basic Horns 7/7/05, Victim Impact 9/22/05, Parenting with Dignity 11/21/05, Basic Horns 12/8/05 and Basic Computer Knowledge 12/30/05.
This good mix of Educational/Vocational and Self-Help Program completions makes this subject worthy of consideration for Superior Program Achievement. He received a 48 month setoff which would qualify him for



16 months of Superior Program Achievement. It is recommended that he receive that award. This examiner noted that the subject was not given any Superior Program Achievement at his Initial Hearing.

**Superior Program Achievement Award Recommendation:** This recommendation includes a 16 month credit for Superior Program Achievement; specifically, you completed your GED, Keyboarding, Photography, Commercial Driver's License, Stocks, Bonds and Trade Analysis, Character Building, Basic Horns, Victim Impact, Parenting with Dignity, Basic Horns and Basic Computer Knowledge. Additionally, you have consistently received good work reports, you have kept clear conduct and you have set a good example of the constructive use of prison time.

**Release Plans:** The subject plans to live at the home of an aunt in Washington, DC. He received Vocational Training at the Lorton Facility in Welding, Plumbing, Electrical and Refrigeration. He will not have any difficulty finding employment.

## Guideline Parameters, Evaluation & Recommendation

**Salient Factor Score:**
**Base Point Score:**

Guidelines in Effect: ............................... 300-328 (Corrected)
Disciplinary Guideline SINCE Last Hearing:.....................0-0
Superior Program Achievement SINCE Last Hearing: ..16-16
Total Guideline Range: ...............................................284-312

**Evaluation:** It is necessary to correct the guidelines from the last hearing. The parole eligibility date must of required 227 months at that time. It now shows that it requires 240 months for an increase of 13 months. Case Manager Osteen stated that during the hearing that it is probably because the BOP discovered that the 20 years was a mandatory minimum. The total guidelines from the last hearing increased to 300-328. Obviously, the subject was very disappointed in this and Attorney Wallach objected believing the Commission should leave the old guidelines intact.

During the hearing Case Manager Osteen stated that this subject is a leader in the Unit. He also added that subject "leads in the right way". He is very influential with younger inmates and is a great assistance to staff.

This subject was a 17 year old first offender when this crime occurred. It was a very serious crime and punishment and accountability are an important factor in any case. This prisoner has currently served 278 months and his guidelines are 284-312. This examiner is recommending parole at the middle of the guidelines after service of 298 months. That is after service of approximately 25 years. That seems to appropriately fit this case.

**Recommendation:** Continue to a presumptive parole on 11/5/2007 after the service of 298 months.

**Conditions:** Special Drug Aftercare.

**Statutory Interim Hearing:** None.

**West, Benson, Reg. No. 06319-007**                    **Page 3 of 4**



**Guideline Use:** A departure from the guidelines at this consideration is not warranted.

**Additional Text:** There are no documents in the Parole Packet or the Bureau of Prisons File that shows there has been any contact on behalf of the victims.

[Signature]


JRH/PAH
March 26, 2006


**Executive Reviewer's Comments:** Denton  4/4/06

After reviewing the file, it appears that the parole eligibility date has not changed from the initial hearing.  The discrepancy occurred when the examiner who completed the prehearing for the initial hearing did not include the jail credit.  When I added those day to the program, it correctly showed the months to eligibility as 240.

# WEST-EL

# EXHIBIT    D8




U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: WEST, Benson | Institution :Lee County USP |
| Register Number: 06319-007 | |
| DCDC No: 206-796 | Date        :April 12, 2006 |

As a result of the hearing conducted on March 22, 2006 the following action was ordered:

Continue to a presumptive parole on January 5, 2009 after service of 312 months. This presumptive parole date is conditioned upon your maintaining good institutional conduct and the development of a suitable release plan. The Commission will conduct a pre-release record review up to 9 months prior to the presumptive parole date to ascertain that these conditions have been fulfilled. In order to complete this review, the Case Manager should submit an updated Progress Report to the Commission 10 months prior to the presumptive parole date. If there have been Disciplinary Reports since the Commission's last review, they should be attached to the Progress Report for the Commission's consideration. If the Commission has requested that a current psychological or psychiatric report be prepared for this review, it also should be attached.

In addition, you shall be subject to the Special Drug Aftercare Condition that requires that you participate as instructed by your Supervision Officer in a program (inpatient or outpatient) approved by the D.C. Court Services and Offender Supervision Agency for the treatment of narcotic addiction or drug dependency. That program may include testing and examination to determine if you have reverted to the use of drugs. You shall also abstain from the use of alcohol and all other intoxicants during and after the course of treatment.

**REASONS:**

Your Current Total Guideline Range is 284-312 month(s). See the attached sheet for the components that make up your Current Total Guideline Range. These components are your Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 278 months as of March 5, 2006.

After consideration of all factors and information presented, a decision outside the Current Total Guideline Range at this consideration is not found warranted.


THE ABOVE DECISION IS NOT APPEALABLE.


Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.



cc:    CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2070
       Washington, D.C. 20001





## DISCIPLINARY GUIDELINES

**Not Applicable**

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 16 month(s) from your Total Guideline Range for superior program achievement. This was granted because you specifically completed your GED, Keyboarding, Photography, Commercial Driver's License, Stocks, Bonds and Trade Analysis, Character Building, Basic Horns, Victim Impact, Parenting with Dignity, Basic Horns and Basic Computer Knowledge. Additionally, you have consistently received good work reports, you have kept clear conduct and you have set a good example of the constructive finding employment.

### CURRENT TOTAL GUIDELINE RANGE

|  |  |
|---|---|
| **6** | Base Point Score |
| **36—48** | Base Point Score Guideline Range |
| **240-240** | Months Required to Serve to Parole Eligibility Date (CORRECTED) |
| **24—40** | Disciplinary Guideline Range (before last hearing) |
| **less 0—0** | Superior Program Achievement Award (before last hearing) |
| **300-328** | Previous Guideline Range Conversion |
| **0—0** | Disciplinary Guideline Range |
| **less 16—16** | Superior Program Achievement Award (if applicable) |
| **284-312** | Current Total Guideline Range |

| Base Point Score Guideline Range | |
|---|---|
| **Score** | **Guideline Range** |
| 3 or less | 0 months |
| 4 | 12-18 months |
| 5 | 18-24 months |
| 6 | 36-48 months |
| 7 | 54-72 months |
| 8 | 72-96 months |
| 9 | 110-140 months |
| 10 | 156-172 months |

# WEST-EL

# EXHIBIT    D9

# Memorandum



| Subject | Date |
|---|---|
| Benson West<br>Reg. No. No. 06319-007 | November 9, 2007 |

| To | From |
|---|---|
| Cranston J. Mitchell<br>Vice Chairman<br>U.S. Parole Commission | Douglas W. Thiessen<br>Assistant General Counsel<br>U.S. Parole Commission |
| Patricia K. Cushwa<br>Commissioner<br>U.S. Parole Commission | |

## Summary

This memorandum discusses the April 2006 decision in the above-referenced inmate's case and requests clarification of the Commission's decision.

## Facts

Benson West is a 42-year old D.C. Code offender currently serving an aggregate life prison sentence for attempted robbery while armed, first degree murder while armed, armed robbery, attempted robbery, and carrying a pistol without a license. On January 5, 2003, he became eligible for parole. Prior to his parole eligibility date, the Commission afforded him a hearing, where the Commission applied the guidelines for D.C. Code offenders. The Commission denied him parole and continued him to a three-year reconsideration hearing. This was a decision within West's guidelines.

On March 22, 2006, West appeared before a Commission hearing examiner for his reconsideration hearing. The presiding hearing examiner recommended granting West an award for superior program achievement, recomputed his guidelines (a result of a change in West's parole eligibility date), and recommended that he be granted a presumptive parole after the service of 298 months. This was a recommendation within West's new 284-312 month guideline range and would have resulted in a release on approximately November 5, 2007. The executive reviewer agreed with this recommendation, forming a hearing examiner panel.

Commissioner Cushwa disagreed with the panel's recommendation and made the following vote: "Continue to a presumptive parole March 5, 2008 to bring within re-calculated guidelines. Drug aftercare. Serve 312 months." Vice Chairman Mitchell agreed with this vote. A notice of action was issued with the following language: "Continue to a presumptive parole on January 5, 2009 after the

GOVERNMENT EXHIBIT 7

service of 312 months." The notice also included language regarding the special drug aftercare condition.

On November, 8, 2007, during a deposition in <u>Sellmon. v. Reilly et al.</u>, Civ. Act. No. 1:06-cv-01650, the above discrepancy between the notice of action and the signed Commission order was brought to light. Mr. West's counsel inquired about this discrepancy, and Commission counsel assured him that the Commission would provide a clarification.

Issue and Recommendation

The central issue is whether the two Commissioners who voted on Mr. West's case intended to order Mr. West released on March 5, 2008 or after the service of 312 months.

In its decision-making, the Commission's ordinary practice is to start with determining a number of months suggested by the guidelines, ordering a number of months to be served (whether within or outside the guidelines), and then computing a presumptive parole date. <u>See generally</u> 28 C.F.R. § 2.80(l). <u>See also</u> Rules and Procedures Manual, Appendix 1, ¶ I.B.

Mr. West began serving his sentence on January 6, 1983. As of the date of Mr. West's hearing on March 5, 2006, Mr. West had thus been in custody for a total of 278 months (23 years, 2 months). If it was the Commission's intent for Mr. West to be granted a presumptive parole on March 5, 2008, the corresponding month number would have been 302 months, 24 months after his hearing. However, if it was the Commission's intent for Mr. West to serve 312 months before a presumptive parole, the actual date of that parole would have been January 5, 2009, as reflected in the Commission's notice of action (resulting in 26 total years in custody). Either of these decisions would be within West's 284-312 month guideline range.

I have attached proposed orders with both of the above scenarios. Please vote according to your original intent.

Please note: if it was both voting Commissioner's intent to order 312 months, this would be a decision more than 6 months above the panel recommendation, so three Commissioner votes would be required. <u>See</u> 28 C.F.R. § 2.74(c). If this is the case, the second Commissioner voting should forward the case to another Commissioner for voting. However, for a 302-month, March 5, 2008 decision, only two votes would be necessary. If both Commissioners are not in agreement, the case should be circulated until the requisite number of Commissioner votes is obtained to form a decision.

Please feel free to contact me at the office at 301-492-5959, ext. 238 or on my cell at 301-351-0997 with any questions.

I request that this file be returned to me to ensure proper notice of action preparation after all necessary Commissioner votes are obtained.

PLEASE note! I did not intend to add the date -- left it open for computation. However -- 312 months was my intent. Thanks Amy.    AKC

# WEST-EL

# EXHIBIT   D10

*needs 3 Sig no duris.*



**U.S. Department of Justice**
**U.S. Parole Commission**

## ORDER

Name _West , Benson_

Register Number _06 319 - 007_          Institution _Lee County_

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

_Continue to a presumptive parole on January 5, 2009 after the service of 312 months. You shall be subject to special drug aftercare upon your release._

_[signatures] 11/4/07_
_11-14-07_
_11/15/07_

Date_____

Date_____

(Date Notice sent)                    (Region-specify)

National Appeals Board _____
                                    (check)

National Commissioners _____

GOVERNMENT
EXHIBIT
J

Full Commission _____

PAROLE FORM H-6
APR. 83



**U.S. Department of Justice**
**U.S. Parole Commission**

# ORDER

Name __West , Benson__

Register Number __06 319 - 007__    Institution __Lee County__

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

Continue to a presumptive parole on March 5, 2008 after the service of 302 months. You shall be subject to special drug aftercare upon your release.

Date_____

Date_____

_____          _____
        (Date Notice sent)                  (Region-specify)

National Appeals Board _____
                                          (check)

National Commissioners _____
                                          (check)

Full Commission _____
                                          (check)