# SELLMON

# EXHIBIT   E1



```
5H     PAR8Q  540*23 *              SENTENCE MONITORING              *    09-22-2005
PAGE 001              *              COMPUTATION DATA              *    11:43:41
                                     AS OF 09-22-2005


REGNO..: 11630-007 NAME: SELLMON, TONY R


FBI NO..........: 814463MA2          DATE OF BIRTH:      1965
ARS1............: LEE/A-DES
UNIT............: J                   QUARTERS.....: J01-101LH
DETAINERS.......: NO                  NOTIFICATIONS: NO


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

-----------------------CURRENT JUDGMENT/WARRANT NO: 010 -------------------------

COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F3347-91B,C
JUDGE...........................: MORRISON III
DATE SENTENCED/PROBATION IMPOSED: 02-26-1992
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 06-25-2002
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:

                FELONY ASSESS  MISDMNR ASSESS  FINES           COSTS
NON-COMMITTED.: $00.00         $00.00          $00.00          $500.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  622
OFF/CHG: DC 22-3202(A)(1); DC22-2403 SECOND DEGREE MURDER W/ARMED
         DC 22-3204(B)  POSSESSION OF FIREARM DURING CRIME OF VIOLENCE
         OR DANGEROUS OFFENSE.

   SENTENCE PROCEDURE.............: DC GTCA ADULT SENTENCE
   SENTENCE IMPOSED/TIME TO SERVE.: LIFE
   MINIMUM TERM...................:       15 YEARS
   DC MANDATORY MINIMUM TERM......:        5 YEARS
   DATE OF OFFENSE................: 03-23-1991




5H
G0002      MORE PAGES TO FOLLOW . . .
```



GOVERNMENT
EXHIBIT
4



```
5H     PAR8Q  540*23 *          SENTENCE MONITORING         *    09-22-2005
PAGE 002 OF 002 *               COMPUTATION DATA            *    11:43:41
                                AS OF 09-22-2005


REGNO..: 11630-007 NAME: SELLMON, TONY R


---------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 05-17-2004 AT LEE AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 02-26-1992
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 03-23-1991

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     03-23-1991     03-26-1991
                                     01-13-1992     02-25-1992

TOTAL JAIL CREDIT TIME..........: 48
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 0
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 05-13-2003
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE

NEXT PAROLE HEARING DATE........: 08-00-2008
TYPE OF HEARING.................: DC CODE OFFENDER REHEARING

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE

REMARKS.......: ANY CHANGE TO GOOD TIME, THE PE DATE MUST BE ADJUSTED.
                PAROLE ELIGIBILITY DATE CANNOT OCCUR PRIOR TO 01-08-1997.




S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

# SELLMON

# EXHIBIT    E2

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

United States of America
District of Columbia

Case No. _F3347-91_
PDID No. _438-509_

vs.

_Tony B. Sellman_

1-13-92

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☒ Not Guilty ☐ Guilty to the Charge(s) of _____
_B) Second Degree Murder while armed_
_C) Possession of Firearm during the Commission of a Crime of Violence_
and having been found guilty by ☒ Jury ☐ Court, it is hereby ORDERED that the defendant has been

convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to _____
_(Count B) Not less than Fifteen (15) years, no more than_
_life_
_(Count C) Not less than Five (5) years, no more than Fifteen_
_years, Both Counts to run Concurrent_

☒ MANDATORY MINIMUM term of _5 to 15 yrs._ applies to the sentence imposed.
☐ MANDATORY MINIMUM term does not apply

☒ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for
   the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and super-
   vision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code
   [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division,
   and it is further ORDERED that while on probation the defendant observe the following marked conditions
   of probation:

   ☐ Observe the general conditions of probation listed on the back of this order.

   ☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with
      written notice from your Probation Officer.

   ☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows: _____

☐ Restitution of $_____ in monthly installments for $_____ beginning _____
   (see reverse side for payment instructions) The Court
   will distribute monies to _____

☐ _____

Costs in the aggregate amount of $_500.00_ have been assessed under the Victims of Violent Crime
Compensation Act of 1981, and ☐ have ☒ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the
copy shall serve as the commitment/order for the defendant.

_Feb 6th 1992_

GOVERNMENT EXHIBIT

# SELLMON

# EXHIBIT   E3

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION - ADULT BRANCH

**PRESENTENCE REPORT**

PDID No.: 438-509
Docket No.: F-3347-91B,C

**Re:** Tony R. Sellmon    Date Referred: 1-17-92

**To:** The Honorable Truman A. Morrison, III Date Due: 2-24-92

**From:** Probation Officer George Hughson    Sentencing Date: 2-26-92

---

Defendant Information:
True Name: Tony Rendora Sellmon          Address: 741 St. Micheal's Dr.
                                         Mitchellville, MD  20716

                                         Tel. #: 301-390-4459
          Aliases:  None

Age/Birthdate:        ~65  Sex: Male    Birthplace: Washington, D.C.

Time in D.C. Area: Lifetime             Citizenship: U.S.
                                        Alien No.: N/A

Marital Status: Married  Dependents: 1    Education: High Grad
                                                     +2 yr. col

Social Security No.:                    Permit No.: MD455734

DCDC No.: 250-180                       FBI No.: 814 463 MA2

---

Offense, Code and Penalty: Murder II While Armed; 22-3202(a)(1);
22-2403; twenty years to life.  Possession of Firearm During Crime of
Violence; 22-3204(b); mandatory minimum of five to fifteen years.

Plea: Not Guilty    Judgment: Guilty    Bond Status: Held
                                        Without Bond
Detainers or Pending Charges: None

Co-defendants:
None              (Dkt No.):           (Status):

AUSA: Virginia Veltorp                 Telephone: 202-514-7468

Defense Counsel: Michael Dowd          Telephone: 202-737-5708

"In accordance with the U.S. Parole Commission and Reorganiz[...]
Public Law 94-233, dated March 15, 1976 this report is disc[...]
inmates in federal institutions for purposes of parole consi[...]

GOVERNMENT
EXHIBIT
C

2

**CONTACTS:**

1-7-92    Defendant interviewed at Occoquan Facility, Lorton, Virginia.

1-20-92    Victim Impact Statement requested from relative of decedent.

2-10-92    Victim Impact Statement received and attached.

2-13-92    Telephone conversation with Virginia Veltrop, AUSA.

Telephone conversation with Virginia Veltrop, AUSA.

2-13-92    Telephone conversation with Tracy Sellmon, defendant's wife.

Telephone conversation with Warren B. Giggetts, Shift Manager, Giant Food Inc.

Telephone conversation with Harris Chambers, General Manager, Giant Food Inc.

2-18-92    Telephone conversation George Sellmon, Sr., defendant's father

Telephone conversation with PO Burthey, MD Probation and Parole

**OFFICIAL VERSION:**

On March 23, 1991, at about 3:30 a.m., the decedent, Lydia Evette Watson, was found in the second floor front bedroom, lying on the bed. The decedent was in an unconscious state suffering from massive head trauma and obviously dead. The decedent was transported by the DC Medical Examiner's ambulance to the DC General Hospital and pronounced dead by Dr. Sargent at 6 a.m. The decedent was then transported to the DC Medical Examiner's Office.

Interviews of witnesses revealed that an individual came to the house with the decedent and went into the bedroom with her. The individual left his red 1986 BMW bearing license number XXJ-006 parked in front of the scene located at 720 49th Place, N.E., Washington, D.C. The witnesses related that while the individual was still in the room with the decedent, a commotion was heard inside of the second floor bedroom. The witnesses attempted to gain entry into same. The witnesses related that the individual exited the bedroom via the second floor bedroom window armed with a handgun. The individual attempted to reenter the house at which time he was overpowered by the witnesses and the handgun taken from him. The individual fled the scene. A short period of time later the defendant was located in the 5100 block of Nannie Helen Burroughs Avenue, N.E. The defendant was identified as Tony Renarda Sellmon. A listing from the aforementioned vehicle revealed that it was listed to the defendant.

3

**OFFICIAL VERSION:** continued

Investigation revealed property in the bedroom (scene) that belonged to the defendant. An inspection of the weapon recovered revealed large amounts of blood on same. The defendant was brought back to the scene. The defendant was shown to a witness who related that the defendant looked like the aforementioned perpetrator. The officer who had first contact with the defendant related that as he approached the defendant he said to the officer, "that he had just left the house and she was still pumping blood and that she was my trick." The defendant was placed under arrest and transported to the Homicide Office. The defendant was advised of his rights at the Homicide Office. He related that he had been on the scene and had observed a female with blood coming from her head but did not know how it happened. He admitted to having a weapon which he described as a chrome 357 revolver with brown grips.

**DEFENDANT'S VERSION:**

"Upon leaving my job at Giant Food Inc., at 6300 Sheriff Road, Landover, Maryland, I was previously out with fellow employees and we all came back to get our cars and depart. Everyone went their separate ways at which point I proceeded to go up to Eastern Avenue the long way home. At Eastern and Nannie Helen Burroughs Avenue, N.E., I made a right turn and proceeded across the District line. At which time I saw the alleged victim, Ms. Lydia Watson. I didn't know her, and it was raining real hard. I stopped to see if she needed a ride at which time she propositioned me for sex and I said okay or yes. She then told me she lived right around the corner which happened to be 720 49th Place. She did not enter the car and walked around on foot to her house. That's where I met her at. At which time she got in and we negotiated the amount for oral sex, the amount $5 at which time she agreed. And she stated she was going inside the house to dry off because she was wet. I agreed and I was going to finish my beer I was drinking and follow. She had been in the house five or ten minutes by the time I knocked on the door. Two male suspects answered which was a shock to me as she told me she lived alone or by herself. Upon entering the house I had my 357 Police Ruger revolver with a two and three quarter inch barrel. I came in and they pointed to the upstairs where I proceeded. I checked one door as there was no light and it was locked and I checked another door and it was unlocked and I entered. At which point I observed the victim lying face down on the bed with her arms extended from each side of the victim and she was bleeding as I detected and accidentally touched the sheets to awaken the victim. After further examination I determined that she had been beaten violently at which time I panicked and wiped the blood off my hand on my shirt at which point I grabbed my 357 to exit the window, but it was painted shut. So I went back out the way I came in, down the steps. At the bottom is where I encountered someone hitting me over the back of my neck and as I told the detectives at Homicide. After gaining consciousness after maybe ten minutes or less I discovered my 357, my jacket, and about $600 in

4

**DEFENDANT'S VERSION:  continued**

cash in my left pocket missing. The money was for the rent for the house where I was living.  Upon getting up, I saw something silver pointing at me at which time I ran out the house and ran down the alley to a Chinese carryout on Division Avenue and Nannie Helen Burroughs Avenue to notify police or the attendant at the restaurant who said they didn't want anything to do with it.  They then pointed me to the pay phone where I made the call to 911.  At that point the police arrived and took me back around to the house at 720 49th Place where Sixth District Police and detectives bought me in front of the said witness in the front yard for an onspot lineup at which time they removed me to Homicide and they placed me under arrest for the murder of Ms. Lydia Watson.  After the said witness did not identify me at the scene according to Detective Green's police notes."

**PRIOR CRIMINAL RECORD:**

Prince Georges County, MD

| | | | |
|---|---|---|---|
| 12-20-90 | Carrying a<br>Handgun<br>CA91-1036X | No finding — 10-21-91<br>unsupervised probation;<br>to pay fine plus cost<br>until 11-29-91. | MD, P&P |

Washington, D.C.

| | | | |
|---|---|---|---|
| 3-23-91 | Murder II<br>While Armed<br>F-03347-91A | Closed at SCGJ 4-5-91 | DCSC |
| | Murder II<br>While Armed<br>Count B | Instant Offense 2-26-92 | DCSC |
| | Poss. of<br>Firearm<br>During<br>Violent<br>and Dangerous<br>Offense<br>Count C | Instant Offense 2-26-92 | DCSC |

**PAROLE/PROBATION/PRE-DISPOSITION ADJUSTMENT:**

Mr. Sellmon reports that he has been arrested twice.  Once for a "neighborhood fight in Upper Marlboro, Maryland and this offense was thrown out.  The other offense involved a search of my vehicle and they found a gun and this charge was also thrown out."  The defendant advises that he has never been convicted of a criminal offense and therefore he has never been on probation or parole supervision.

5

**PAROLE/PROBATION/PRE-DISPOSITION ADJUSTMENT:  continued**

Mr. Sellmon advises that he has never had any contact whatsoever with the juvenile authorities in any jurisdiction.

Mr. Sellmon was interviewed on January 7, 1992 at the Occoquan Facility, located in Lorton, Virginia.  The defendant was alert, appropriately responsive, and very controlled and attentive in providing information and answering questions.  The defendant was cooperative and completely denied any responsibility whatsoever for committing the Instant Offense.

**EMPLOYMENT HISTORY:**

From: November 11, 1987 to January 13, 1992
Name of Employer: Giant Food Inc.
Address: 6300 Sheriff Road, Landover, MD
Telephone Number: 301-341-3194
Position/Salary:  Produce Selector/$35,000 per year (full time)
Reason for Leaving: Incarceration
Verification: Mr. Warren Giggetts, Shift Manager, and Mr. Harris Chambers, General Manager advised that the defendant was an average employee during his period of tenure with the company.

From: 1986 to 1987
Name of Employer: GSA
Address: 7th & D Street, S.W., Wash., D.C.
Telephone Number: 202-708-5341
Position/Salary: Armed Guard/$17,000 per year
Reason for Leaving: Job advancement with Giant Food Inc.
Verification: Ms. Bennett Connley, Personnel Specialist relates that they do not have any record of the defendant being an employee as they only keep records for three years.

**SOCIAL HISTORY:**

**Sources of Verification:**  Tracy Michelle Sellmon, (defendant's wife) and George Sellmon Sr., (defendant's father)

Family History:

Tony Sellmon was raised in the Landover, Maryland area by his father,                       and mother,          ,  The defendant's father is about 66 years of age and is retired from the U.S. Post Office.  He currently resides at         Maryland (            .  The defendant's mother died on 12-11-83, from respiratory failure and cancer.  The defendant is the youngest of five brothers and one sister.  They are      age 45 who lives in Chicago and his occupation is unknown;        age 43, also lives in the Chicago and his occupation is unknown;          age 39, lives in New York City and is employed as a

6

registered nurse;                        , age 34 is incarcerated in the
Baltimore jail for Armed Robbery;            , age 33, lives
in Indiana and is employed in a liquor store; and
         age about 28, lives next door to the defendant's father
and is employed at Pepco.  Mr. Sellmon reports a normal childhood
upbringing and that he was well provided for in terms of the
necessities.  The defendant reports no unusual occurrences during his
maturational process.

     The defendant's wife,                        , verified the above
information and added that she has known the defendant since the tenth
grade in high school or for the past ten years.  During this time and
since their marriage in June of 1991, she reports that the defendant
has not been physically abusive to her or really exhibited any violent
behavior.  However, she related that frequently the defendant and his
one natural brother often get in arguments that culminate in fist
fights.  Apparently, the defendant's natural brother,    , had
consistently been the favorite sibling and this may have resulted in
some animosity on the part of the defendant.  On the other hand, the
defendant's father reported that the defendant presented no problems
at home and would respond to counseling if his grades in school
declined.   Mr. Sellmon, Sr., further advised that the defendant
exhibited no discernible patterns of anger or short temper as he was
growing up in the family setting.

     In regard to the Instant Offense, the defendant's wife related
that the defendant has given her several different stories as to his
actual involvement and commission of the murder.   Likewise, the
defendant's father stated that the defendant does not admit to killing
the decedent and that his stories are not consistent. The defendant's
wife also recalls that the defendant has always had at least two
handguns since his high school years.  The defendant had wanted to
become a police officer and he felt that the District of Columbia was
entirely too dangerous to be without some reliable form of protection.


     Education:

     Mr. Sellmon is a graduate of Largo Senior High School in 1983.
His grades were about a 3.0 average and he liked physics, biology, and
English the best.  He was on the football team for three years, track
team for three years, and participated in ROTC for four years at the
rank of Captain.  He relate that he can read and write very well and
currently he is reading law.
     Mr. Sellmon attended Prince Georges Community County for two
years during 1983 and 1985.  His grades were about a C average and he
quit due to money problems as his mother had just passed away.


     Military:

     The defendant has never served in any branch of the U.S. Military
Services and he registered for the draft in 1984.

7

**SOCIAL HISTORY:** continued

### Marital Status and Living Arrangements:

Mr. Sellmon married Tracy Michelle Prout, age 24, on June 14, 1991. He and his wife currently have a five month old daughter, Ryan Sellmon. They recently purchased their house in November of 1991. This is a two bedroom house in the Lake Arbor area of Maryland. There is no gunfire in this neighborhood. Prior to this the defendant has basically lived in the Landover area of Maryland.

### Financial Status:

Mr. Sellmon owns a 1984 BMW 318 I and a 1986 BMW 325 I along with his residence.

### Health:

Mr. Sellmon is in good health and has never been hospitalized. He has had no diseases other than gonorrhea. He has no scars marks or tatoos. He is six feet tall and weighs 193 pounds. Mr. Sellmon reports that he has had no mental health problems. Mr. Sellmon currently is on no medication.

### Substance Use/Abuse:

Mr. Sellmon reports that he has never used any form of illegal drugs. He claims to drink beer at a moderate rate or perhaps a six pack a week and consumes no tobacco products.

**EVALUATION AND DIAGNOSIS:**

Tony Rendora Sellmon, age 26, appears before Your Honor for sentencing upon his convictions of Murder II While Armed and Possession of a Firearm During a Crime of Violence.

Mr. Sellmon completely denies his culpability in the Instant Offense and his responsibility for murdering, in his terms "the alleged victim." As an example of his denial of guilt, the defendant claims that as he was leaving the scene he was struck in the back of the neck or head and robbed of his gun, money, and jacket. But, according to the AUSA, the video recorded examination of the defendant, at that time, showed no evidence whatsoever of a blemish or injury to his neck or head.

It is recognized that the defendant, as others, and for good reason, do not feel safe in the District of Columbia. He therefore has always had at least two guns in his possession since his high school days. On the face of it, this logic is a reality of life here but it is a tragic reality that the defendant used a weapon ostensibly

8

**EVALUATION AND DIAGNOSIS:  continued**

to protect himself in such a way as to beat another human being to
death while in a state  of uncontrolled rage.  During the interview
format, he impresses one as an intelligent, articulate, thoughtful,
calculating young man, and at the same time completely unemotional or
detatched regarding his brutal killing of the female victim.

Due to the grievousness of the Instant Offense and the epidemic
nature of murder here in the District of Columbia, it is recommended
that the defendant receive a significant period of time in prison.


**TREATMENT PLAN:**

9

**RECOMMENDATION:**

Incarceration

**INTENSIVE PROBATION SUPERVISION ELIGIBILITY:**

The defendant is not eligible for assessment by the Intensive Probation Supervision Program.

Respectfully submitted,

George Hughson
Probation Officer
508-1642

Approved by: _____
Supervisory Probation Officer
508-1619

GH/aw

# SELLMON

# EXHIBIT    E4



# D.C. INITIAL HEARING SUMMARY
## Initial Hearings After 1/2/01 And Cases Eligible For
## Retroactive Conversion To Presumptive Date Procedures
## (INI-S-B)

**Original Offense of Conviction** - Murder While Armed and Possession of Firearm During a Crime of Violence.

| | |
|---|---|
| **Name**.........................:Sellmon, Tony | **Institution**.................:Lee County USP |
| **Reg No** .......................:11630-007 | **Reviewer**...................:Rob Haworth |
| **Hearing Date**............:8/7/02 | |

**Prisoner's Statement:** Subject admitted that he committed that he committed this offense. He stated that he picked up a prostitute on the street and took her to a residence as she directed. He said that once in the residence, she left and went upstairs into another room. When he went up there to join her, he was approached by two men who announced they intended to rob him. A fight ensued and the female was involved in the fight. Subject admits striking a woman several times with a handgun. He states that he was able to get out of the window. He admits that he confronted the two male individuals again at the front of the house and he was overpowered and the gun was taken from him. He left the scene and called police.

Subject made it clear he is not trying to make any excuses for his involvement in the crime. He stated he accepts full responsibility for the woman's death and he is extremely remorseful for that occurrence. Subject indicated that he has no documentation to back up his claim of an attempted robbery but he hopes it will be considered because he has no prior history of violence and this is certainly an aberration of his normal behavior. He would never have committed an offense like this on his own initiative.

## Institutional Factors

**Discipline:** Subject has kept clear conduct; he receives excellent work reports and gets along very well with staff and other prisoners.

**Program Achievement:** Subject has accumulated an impressive list of program accomplishments. His most significant accomplishment was completion of a college degree on 4/11/97 after 2 years of work at the University of the District of Columbia. He also received a certificate for vocational training in Photography and another degree for Electronics VT in June 2000. He completed Life Skills in 1998 and a Computer Class in 1998. He completed a Street Law project in 1994.

Subject has also completed courses in Self-Esteem, Parenting, Stress Management, Commitment to Change and he has participated in Pre-Release Programs. While at the Lorton Facility, he served as an emergency plumber for 3 years. There are letters of commendation in his file to show that.

This prisoner has performed in a superior manner. He qualifies for Superior Program Achievement. The record shows that he has been involved in programs during his entire period of incarceration. 1/3 of 127 months is approximately 43 months, for Superior Program Achievement.

**Release Plans:** Subject plans to live at the home of his father in Landover, MD. He will be a[...] employment.

GOVERNMENT EXHIBIT
D



**Representative and Representative's Statement:** None, waived.

**Guideline Parameters**

**SFS: 9**

**Base Point Score: 5**

| | |
|---|---|
| 18-24 | Base Guideline Range |
| 136 | Months Required to Serve to PE Date |
| 0 | Disciplinary Guideline Range |
| 43 | Superior Program Achievement Award |
| 111-117 | Total Guideline Range |

**Modifications From Prehearing:** The pre-hearing assessor suggested an award for Superior Program Achievement but limited that award to 8 months. There was no basis given for the 8-month recommendation. The prisoner has been in custody 127 months and clearly has been involved in programs at a Superior level for the entire time. He would qualify for the full 1/3 or 43 months.

**Overall Evaluation and Recommendation**

**Evaluation:** This prisoner committed an extremely serious crime. He has no documentation to prove he was attacked as he attempted to have a sexual encounter with a prostitute. He claims he was set up for a robbery. While this is entirely possible, there is no proof of that and only this subject's statements. It is important to note that he has no prior record of violence and this is clearly an aberration of his behavior. This crime is not something he would have likely initiated on his own. Perhaps there is some truth to his story about the attempted robbery.

This prisoner has a good work record in the community having been employed by the Giant Food Company for many years. He has programmed in a superior manner and has been an excellent prisoner. He is not viewed as a risk to the community. He is serving on a violent crime but he has no history of that and it is likely this crime was entirely situational in nature.

The prisoner has been in custody 127 months and has guidelines at 111-117. He will have served 136 by the time he reaches eligibility. It is recommended he be paroled at eligibility.

**Recommendation:** Parole effective 5/13/03 after 136 months.

**Conditions:** None. There does not appear to be any reason to add special conditions to this case.

**Reason for Departure from Guidelines:** You will have been in custody for 136 months when you reach your eligibility date.

**Reasons for Granting SPA:** You have completed your College AA Degree, you completed Vocational Training in Photography and Electronics, you completed courses in Life Skills, Computers, Self-Esteem, Parenting, Stress Management, Commitment to Change and you completed the Street Law project. Additionally, you have consistently received excellent work reports particularly on your assignment as an emergency plumber at the Lorton Facility. You have regularly set a good example of the constructive use of prison time.

# SELLMON

# EXHIBIT    E5

**Addendum:**

MXG/DLG
August 16, 2002

Addendum to Hearing Summary for a Split Vote by Chait 8/22/02

SELLMON, Tony 11630-007

I am recommending a 3 year set-off in this case rather than a parole date at
136 months.

I find no evidence corroborating his claim that he was the victim of being
knocked on the head and robbed of his gun and money.

The PSI clearly states in the Evaluation section at page 7: But, according to
the AUSA, the video recorded examination of the defendant, at that time,
showed no evidence of a blemish or injury to his neck or head.

The female victim was brutally beaten with the gun and died of massive
head trauma.

He has served 127 months and the base guideline range is 154-160 months
without SPA recommended due to the nature of the offense.

He has programmed extremely well but the brutal offense warrants a
minimum of 15-20 years or more. Until he reaches the minimum
accountability I would not see SPA as appropriate.

RECOMMENDATION: Continue for a reconsideration hearing in 8/05 after
the service of 36 months from your hearing date of 8/7/02.

REASONS: see the worksheet and add:

A decision above the total guideline range is warranted because your
behavior involved the brutal beating of the female victim with a gun causing
massive head trauma and death

While you have programmed well your continued claim of being the vict
of a robbery or attempted robbery is not supported by the evidence.

GOVERNMENT
EXHIBIT

# SELLMON

# EXHIBIT    E6

.

 

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: SELLMON, Tony | Institution: Lee County USP |
| Register Number: 11630-007 | |
| DCDC No: 250-180 | Date: August 27, 2002 |

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue to a Three-Year Reconsideration Hearing in August 2005, after the service of 36 months from the hearing date of August 7, 2002.

## REASONS:

Your Total Guideline Range is 154-160 months(s). See the attached sheet for the components that make up your Total Guideline Range. These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 127 months as of August 9, 2002.

After consideration of all factors and information presented, a decision above the Total Guideline Range is warranted because your behavior involved the brutal beating of the female victim with a gun causing massive head trauma and death. While you have programmed well your continued claim of being the victim of a robbery or attempted robbery is not supported by the evidence.

## THE ABOVE DECISION IS NOT APPEALABLE

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2149
       Washington, D.C. 20001

GOVERNMENT EXHIBIT F

 

## SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
|---|---|
| 3 | **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0 |
| 2 | **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0 |
| 2 | **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation) |
| 1 | **D** - Recent commitment free period (three years) No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0 |
| 1 | **E** - Probation/parole/confinement/escape status violator this time Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0 |
| 0 | **F** - Older offenders If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0 |
| 9 | **Salient Factor Score (SFS-98)** (sum of points for A-F above) |

## BASE POINT SCORE

| Your Pts | Base Point Score Category Explanations |
|---|---|
| 0 | **I** - Contribution from Salient Factor Score 10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3 |
| 2 | **II** - Current or Prior Violence Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1 |
| 3 | **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II) Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1 |
| 5 | **Base Point Score** (sum I-III above) |

 

## DISCIPLINARY GUIDELINES

Not Applicable

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

Not Applicable

## TOTAL GUIDELINE RANGE

| | |
|---|---|
| 18 — 24 | Base Point Score Guideline Range |
| 136 – 136 | Months Required to Serve to Parole Eligibility Date |
| 0 — 0 | Disciplinary Guideline Range |
| less 0 — 0 | Superior Program Achievement Award (if applicable) |
| 154 – 160 | Total Guideline Range |

| Base Point Score Guideline Range | | Points For SFS Item C | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0–3 | 4 | 5+ |
| 3 or less | 0 months | 26 & Up | 3 | | 1 |
| 4 | 12–18 months | | | | |
| 5 | 18–24 months | 22–25 | 2 | 1 | 0 |
| 6 | 36–48 months | | | | |
| 7 | 54–72 months | 20–21 | 1 | 0 | 0 |
| 8 | 72–96 months | | | | |
| 9 | 110–140 months | 0–19 | 0 | 0 | 0 |
| 10 | 136–172 months | | | | |

# SELLMON

# EXHIBIT    E7

MEMORANDUM                                    March 31, 2004

TO:  The Commission

FROM: Michael A. Stover,
      Deputy General Counsel

SUBJECT:  SELLMON, Tony,
          Reg. No. 11630-117

    In this memorandum I recommend that the Commission reopen this D. C. Code prisoner's case to correct an error by the hearing examiner panel regarding the deduction of credit for "superior program achievement" under 28 C.F.R. §2.80 (k). The Commission has received an order from the U. S. District Court for the Western District of Virginia in a habeas corpus case brought by this prisoner, which makes such a reopening advisable.

Facts

    Tony Sellmon is a prisoner at U.S.P. Lee County serving a life sentence for a brutal murder he committed in 1991. (He murdered a woman, who was apparently a prostitute he was visiting, by beating her in the head with his pistol.) At Sellmon's initial parole hearing on August 7, 2002, the hearing examiner found that Sellmon had accumulated "an impressive list of program accomplishments," and "qualifies for Superior Program Achievement." The examiner recommended a deduction of 43 months from the total guideline range, which is one-third of the 127 months Sellmon had by then spent in prison. (The examiner found that Sellmon had been doing well in programs from the start of his incarceration.) The examiner's deduction of 43 months produced a recommended total guideline range of 111 to 117 months. The examiner recommended parole at eligibility (May 13, 2003, after 136 months).

    On review, the EHE was persuaded by the brutal nature of Sellmon's crime to recommend denial of any award for superior program achievement. This left the total guideline range at 154 to 160 months. The EHE said: "Until he reaches the minimum accountability I would not see SPA as appropriate." The EHE recommended a three-year continuance. This became the panel recommendation.

    On August 27, 2002, the Commission issued a Notice of Action continuing Sellmon to a three-year reconsideration hearing in August 2005, at which point Selmon will have served 163 months in prison.  A decision outside the total guideline range of 154 tro 160 months was found warranted because of the brutality of the murder. The Commission told Sellmon: "While you have programmed well your continued claim of being the victim of a robbery or attempted robbery is not supported by the evidence."

The District Court Order

    Sellmon filed a petition for writ of habeas corpus in the U. S. District Court for t


GOVERNMENT EXHIBIT

Western District of Virginia, and we defended the Commission's decision as a lawful exercise of discretion to depart from its guidelines. However, in an order entered March 15, 2004, the Honorable James C. Turk, Senior U. S. District Judge, has called for further briefing with respect to the following issue: whether the Commission has complied with its own guideline instructions for recognizing Superior Program Achievement.

Judge Turk's points out that 28 C.F.R. §2.80 (k) does not leave the Commission with any discretion to deny a deduction for superior program achievement once it has found that superior program achievement has been demonstrated by the prisoner. The rule states that, if superior program achievement is found, "the award for superior program achievement shall be one-third of the number of months during which the prisoner demonstrated superior program achievement." The word "shall" is what makes the deduction mandatory, not discretionary. The judge concludes that "...it is not clear that the USPC can simply refuse to calculate the appropriate range." Judge Turk also points out that all parties (which includes all examiners who have considered this case) have agreed that Sellmon has, in fact, demonstrated "superior program achievement." (Memorandum Opinion at page 4.)

The judge recognizes that the Commission *could* have deducted the credit for superior program achievement, and *then* departed upwards from the resulting total guideline range based on the brutality of Sellmon's crime, but that is not what the Commission did. The judge observes, *inter alia*, that the Commission has not explained "why they do not wish to encourage inmates who have committed brutal crimes to try to improve themselves..."

<u>Discussion</u>

In my view, Judge Turk's observations are well taken, and the Commission could not successfully argue, if we offered further briefing, that it has complied with its guidelines in this case. Whether it intended to restrict its discretion in this manner or not, the Commission in 2000 approved a guideline instruction in 28 C.F.R. §2.80 (k) that literally requires the one-third deduction to be taken automatically from the prisoner's total guideline range if superior program achievement, over a definite period of time, has been found. Although the previous method employed by the Commission left it to the Commission's discretion as to whether or not to deduct one or two points from the Total Point Score based on the prisoner having shown superior program achievement, that is now beside the point. (See 28 C.F.R. §2.80 Appendix.)

Accordingly, the EHE introduced an error into the Commission's handling of this case by agreeing with the hearing examiner that superior program achievement has been shown, but recommending that no deduction be granted until some later, unspecified time.

This is not to say, however, that the EHE was wrong in perceiving that the brutality of the murder committed by Sellmon warrants an upward departure from the guidelines. The reasons given for such a departure are valid, and were upheld by Judge Turk against Sellmon's "double-counting" challenge. The only trouble is that the Commission departed from a guideline range that should have been significantly reduced, in the first instance, by the appropriate reward for superior program achievement, as required by §2.80 (k).

<u>Recommendation</u>

I recommend that the Commission vacate its previous decision, and reopen Sellmon's case for a new initial hearing to reassess his program achievement. This should include program achievement *up to date that hearing is held*. The Notice of Action should state that an appropriate deduction from the total guideline range for superior program achievement will be included in the examiner panel's final recommendation to the Commission, in compliance with 28 C.F.R. §2.80, although the Commission reserves discretion to enter any decision it finds appropriate, within or outside that total guideline range, based on the facts of the case. Moreover, if the Commission does not grant parole, it should limit any continuance to the present three-year reconsideration date, <u>i.e.</u>, August of 2005. I recommend this self-imposed restriction in order to avoid creating the appearance of Judge Turk's order ultimately placing Sellmon in a worse position than he was in before he filed his habeas petition, if the Commission again sees fit to deny parole.

A proposed Commission order is attached.

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 1 5 2004

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| TONY R. SELLMON,<br>Petitioner, | ) <br> ) <br> ) | Civil Action No. 7:03-CV-00169 |
| v. | ) <br> ) | **FINAL ORDER** |
| B.G. COMPTON,<br>Respondent. | ) <br> ) <br> ) | By: Hon. James C. Turk<br>Senior United States District Judge |

In accordance with the accompanying memorandum opinion, it is hereby

### ADJUDGED AND ORDERED

that respondent's motion to dismiss petitioner's claims 1 and 2 shall be and is hereby

**GRANTED**; the motion to dismiss as to claim 3 shall be and here by is **DENIED** and

respondent is **DIRECTED** to submit any additional response to claim 3 within thirty (30) days

from entry of this order.

The Clerk is directed to send certified copies of this order and the accompanying

memorandum opinion to petitioner and to counsel of record for the respondent.

ENTER: This 15th day of March, 2004.

SENIOR UNITED STATES DISTRICT JUDGE

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 1 5 2004

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| TONY R. SELLMON, | ) | |
| Petitioner, | ) | Civil Action No. 7:03-CV-00169 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| B.G. COMPTON, | ) | By: Hon. James C. Turk |
| Respondent. | ) | Senior United States District Judge |

Petitioner Tony R. Sellmon, a Federal inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. In his petition, Sellmon challenges the parole-review process. Sellmon alleges that:

1.    United States Parole Commission's denial of parole was abuse of discretion,

2.    deviation from guidelines constitutes impermissible "double-counting," and

3.    failure to award superior achievement credits was abuse of discretion.

The respondent has filed a motion to dismiss to which the petitioner has responded, making the matter ripe for the court's consideration. Upon review of the record, this court concludes that the motion to dismiss must be granted with respect to claims 1 and 2.

### I. Procedural History

On February 26, 1992, the Superior Court of the District of Columbia sentenced Sellmon to fifteen years to life for Second Degree Murder, and five to fifteen years for Possession of a Firearm during a Crime of Violence. The sentences were to run concurrently.

On May 13, 2003, Sellmon became eligible for discretionary parole. On August 7, 2002, Sellmon was given his Initial Hearing. The hearing examiner recommended a forty-six month deduction for superior programming achievement, which produced a guideline range of 111-117

months. At the time of the hearing petitioner had served 127 months. The examiner recommended parole on May 13, 2003 after petitioner served 136 months.

The reviewing examiner disagreed. The reviewing examiner dismissed petitioner's explanation of the crime and recommended that no program achievement be applied and that Sellmon serve a minimum of fifteen to twenty years due to the brutality of the crime. Without the program-achievement deduction, Sellmon's guideline range is 154-160 months. The reviewing examiner recommended a three year set-off until the next hearing, in August 2005, after Sellmon serves 163 months.

The United States Parole Commission (USPC) agreed with the reviewing examiner. On August 27, 2002, the USPC issued a Notice of Action denying parole, setting off the next hearing until August 2005, denying a deduction for superior programming achievement, and departing from the guideline range of 154-160 months due to the brutality of the crime. On December 11, 2002, Sellmon petitioned the USPC to rescind the August 27, 2002 Notice of Action. Sellmon filed a petition for a writ of habeas corpus in this court on February 26, 2003.

## II. Analysis

Sellmon's petition conforms to 28 U.S.C. § 2242, which outlines the requirements for a petition for a writ of habeas corpus. In addition, Sellmon meets the requirements of 28 U.S.C. § 2241(a) because he was in federal custody in the Western District of Virginia court at the time of the petition, and remains in custody to this day. Finally, Sellmon has exhausted all of his administrative remedies.

2

## A. Abuse of Discretion

In claim 1, Sellmon alleges that it was an abuse of discretion for the USPC to deny Sellmon's parole, when the guidelines indicated that parole was appropriate. In claim 3, Sellmon alleges that it was an abuse of discretion for the USPC to deny Sellmon credit for superior programming achievement. An agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute. See Chevron v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984). The USPC has sole discretion in determining when to grant parole under the Parole Act. See 18 U.S.C. § 4218(d).

Sellmon's claim that he was improperly denied parole is not sufficient to support a claim of arbitrary and capricious action. Under § 4218(d), the USPC has discretion to deny parole even if a petitioner has served the time recommended by the guidelines. Moreover, the USPC gave reasons for denying parole. Therefore, although this court may not agree with the USPC's decision or reasoning, the decision is not arbitrary, capricious, or manifestly contrary to the statute. Therefore, this court grants the respondent's motion to dismiss Sellmon's claim 1.

In regards to claim 2, however, neither the USPC nor the respondent has provided any rational basis for denying Sellmon credit for consistent superior program achievement for over ten years. Neither the USPC nor the respondent has provided any citation to the District of Columbia Parole Guidelines (Parole Guidelines) that would suggest that programming achievement deductions are inappropriate in cases in which the petitioner committed a brutal crime. The court's own review of the Parole Guidelines has not revealed any such provision. While it is within the USPC's authority to depart from the recommendation of the

3

guidelines--assuming a proper explanation is forwarded for the departure--it is not clear that the USPC can simply refuse to calculate the appropriate range. If there were some disagreement over the amount of programming, it would be appropriate for the USPC to determine the appropriate level. However, in this case there is no disagreement. All parties agree that Sellmon has superior program achievement, including receiving a degree, taking numerous courses, working as an emergency plumber, and receiving numerous commendations. Likewise, the USPC would be within its authority to grant the superior programming deduction but depart from the guidelines anyway. However, this is not what the USPC did in this case.

The USPC denied Sellmon his superior program achievement without any reasonable explanation or citation to an applicable provision within the Parole Guidelines. Neither the USPC nor the respondent has provided any explanation for why they do not wish to encourage inmates who have committed brutal crimes to try to improve themselves, or why they provided no advance notice to such prisoners that program achievement would not be considered in their parole determination. Because the petitioner has presented evidence to suggest that the USPC acted contrary to the statute and that their actions may affect Sellmon's eventual release date, this court denies the respondent's motion to dismiss Sellmon's claim 3.

### B. Double Counting of Factors

In claim 2, Sellmon alleges that the USPC double counted the nature of petitioner's crimes against him by using them as the basis for Sellmon's Salient Factor Score (SFS) and also as the sole reason for departing from the guidelines in denying him parole. However, this is not entirely accurate. While the SFS does include both the crimes and their relative severity, it only

4

consists of broad categories. The SFS does not adequately capture some specific aspects of a crime, like brutality. Because the SFS and the departure from the guidelines are examining different things, this court grants the respondent's motion to dismiss Sellmon's claim 2.

### III. Conclusion

Sellmon's claims 1 and 2 lack sufficient merit to warrant the requested relief. Therefore, this court grants the respondent's motion to dismiss petitioner's claims 1 and 2. However, Sellmon has presented sufficient evidence to support claim 3. Therefore, this court denies the respondent's motion to dismiss claim 3 and grants the respondent thirty (30) days in which to file a supplemental response as to this claim. An appropriate order will be entered this day.

ENTER: This _15th_ day of March, 2004

_____

SENIOR UNITED STATES DISTRICT JUDGE

5

# SELLMON

# EXHIBIT    E8

 

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

Name: SELLMON, Tony
Register Number: 11630-007
DCDC No: 250-180

Institution: Lee County USP

Date:     April 2, 2004

In the case of the above-named, the following parole action was ordered:

Reopen and vacate Notice of Action dated August 27, 2002. Schedule a new initial hearing, which shall include an appropriate deduction from your total guideline range in compliance with 28 CFR §2.80(k). If parole is not granted the maximum set-off shall not exceed August 2005.

**REASONS:**

The Commission failed to comply with 28 CFR §2.80(k). The Commission will therefore render a de novo parole decision, which may include a decision within or above the applicable guideline range.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     Sharon Barnes-Durbin SCSA
        CSS Data Management Group
        D.C. Court Services & Offender Supervision Agency
        300 Indiana Avenue, N.W., Suite 2149
        Washington, D.C. 20001

GOVERNMENT EXHIBIT

# SELLMON

# EXHIBIT    E9

# HEARING SUMMARY

**Name: Sellmon, Tony**                                          **Reg No: 11630-007**

## Hearing Parameters

    Hearing Type ...............................: **Initial**

    Hearing Date ................................: 6/22/04

    Examiner......................................: Rob Haworth

    Institution....................................: Lee County USP

## Sentence Parameters

    Sentence Type..............................: **DC Parole Eligible**

    MR/Statutory Release..................: None

    Full Term Date.............................: Life

    Months in Custody.......................: 149 as of 6/8/04

    Fines/Restitution/Assessment ......: $500 Paid

    Detainer.......................................: None

**Additional text regarding the above parameters:** This is an Initial Hearing. However, it is a new Initial Hearing and there are records in the USPC file that of the first Initial Hearing conducted 8/7/02.

---

## Prior Action & Institutional Factors

**Prior Action:** The Prehearing Review dated 5/23/04 shows that this new Initial Hearing is the result of a court order. Based on that court order the USPC issued a NOA dated 4/2/04 and reopened the case and vacated the NOA dated 8/27/02. This new Initial Hearing was ordered specifically for the purpose of complying with the court order and to consider awarding superior program achievement and the appropriate reduction to the guidelines.

**Codefendants:** None.

**Representative & Representative's Statement:** None. However, CODE Treatment Francine Helaire attended the hearing and presented comments concerning subject's participation in the CODE Program. More specific information on that will be given below in the Program Achievement Section.

**Prisoner's Statement:** The subject admitted to the offense. He accepted full responsibility for the crime and stated that there is no excuse for what happened. He stated that his memory is somewhat confused about the events of that evening. He said he that he feels very remorseful for the offense and especially for the death of the victim and the pain suffered by the victim's family and his own family. Subject did state that he perceived during the incident that he was being set up for a robbery. He made no excuses for the actions he took on that night of 3/23/91. He stated that he had picked up the female victim for the purpose of sex. She was apparently a prostitute. He stated there was no good reason for her losing her life by his hands.

**Discipline:** None.

GOVERNMENT EXHIBIT

**Program Achievement:** The subject has accumulated an impressive list of program accomplishments during his incarceration. His most significant accomplishment was receiving an Associates Arts Degree in 1997. He received that degree after receiving 60 hours of college credit. The record shows he maintained a 3.0 average on a 4 point system.

In addition to his college work the subject has also completed Vocational Training as a Plumber while serving at Lorton and he received a degree in Electronics and Electrical work at the Youngstown Facility in May of 2000. He also received certificates for completing a Computer Lab.

Subject has additional certificates showing he completed a 40-hour Drug Program 11/4/03, Black History 2/21/04 and Black History II 2/25/04. Anger Management was completed 9/8/03 and a Real Estate Course was completed 5/13/03. Subject has a certificate showing that he participated in the Jay C Program and was part of a leadership group during April of 2000. He completed Life Skills, two courses of Non-Violent Behavior, Commitment to Change, Street Law and Photography.

Recently, the subject has completed the CODE Program. His certificate of completion is dated February 2004. He is in the Relapse Prevention Phase at this time. During the hearing CODE Treatment Specialist Helaire describes subject's participation in the program as excellent. He has completed all program requirements, which include Breaking Barriers, Criminal Lifestyle, Drug Education, Rationale Emotive Behavior, Victim Impact, Relapse Prevention and the Seven Habits of Affective People. Subject completed a total of 348 hours of program credit before graduating from CODE. Ms. Helaire pointed out that subject also participated in programs outside of CODE, which included Anger Management, Real Estate and Self-Help Psychology Group. The subject currently works as a Mentor in the CODE Program and assist staff with the program.

The subject qualifies for a superior program achievement award. He has served approximately 149 months, which would allow 50 months reward to be taken off the guidelines. This examiner recommends that he received that award.

**Superior Program Achievement Award Recommendation:** This recommendation includes a 50 month credit for Superior Program Achievement; specifically, in addition to his college work the subject has also completed Vocational Training as a Plumber while serving at Lorton and he received a degree in Electronics and Electrical work at the Youngstown Facility in May of 2000. He also received certificates for completing a Computer Lab.

Subject has additional certificates showing he completed a 40-hour Drug Program 11/4/03, Black History 2/21/04 and Black History II 2/25/04. Anger Management was completed 9/8/03 and a Real Estate Course was completed 5/13/03. Subject has a certificate showing that he participated in the Jay C Program and was part of a leadership group during April of 2000. He completed Life Skills, two courses of Non-Violent Behavior, Commitment to Change, Street Law and Photography. Recently, the subject has completed the CODE Program. His certificate of completion is dated February 2004. He is in the Relapse Prevention Phase at this time. During the hearing CODE Treatment Specialist Helaire describes subject's participation in the program as excellent. He has completed all program requirements, which include Breaking Barriers, Criminal Lifestyle, Drug Education, Rationale Emotive Behavior, Victim Impact, Relapse Prevention and the Seven Habits of Affective People. Subject completed a total of 348 hours of program credit before graduating from CODE. Ms. Helaire pointed out that subject also participated in programs outside of CODE, which included Anger Management, Real

Estate and Self-Help Psychology Group. The subject currently works as a Mentor in the CODE Program and assist staff with the program.

**Release Plans:** The subject plans to live at the home of his father in Landover, MD. He does not expect to have any difficulty finding employment.

## Guideline Parameters, Evaluation & Recommendation

**Salient Factor Score:**  9.
**Base Point Score:**      5.

Base Point Score Guideline Range: ................................18-24
Months to Parole Eligibility Date: ............................136-136
Disciplinary Guideline SINCE Last Hearing:.....................0-0
Superior Program Achievement SINCE Last Hearing: ..50-50
Total Guideline Range: ...............................................104-110

**Evaluation:** This prisoner has served approximately 149 months.  He has guidelines of 104-110 months. His minimum was satisfied 5/13/03 after 136 months.

The violence in the current offense as well as the death of the victim have been factored into the DC Point Score and the DC guidelines. Subject is a first offender. He has no history of violence and no record of violent behavior in the institution. The current offense truly appears to be an aberration of his normal behavior. There are no indicators that show he would be a more serious risk. There's no reason to go further above the guidelines than necessary to process release and allow sometime for halfway house placement. This prisoner does not require a lengthy halfway house placement. A date is being recommended that will allow 1 to 2 months halfway house placement.

There does not appear to be any need for special conditions in this case. Subject has no history of drug use.

**Recommendation:** Parole effective 11/8/04 after the service of 154 months.

**Conditions:** None.

**Statutory Interim Hearing:** None.

**Guideline Use:** A decision above the guidelines is warranted because you have been in custody for approximately  months at the time of your hearing.  Additional time is needed for release planning purposes.

**Additional Text:** The hearing examiner packet did not include copies of the first Initial Hearing. Also, there were no copies of the court orders in this case. The subject had copies of the court orders and this examiner was able to review his copies.

**Executive Reviewer's Comments: Denton 7/8/04**

I disagree with the examiner's recommendation for a parole effective date in this case. The examiner has recommended a 50-month reward for SPA, which results in guidelines of 104-110 months. Subject had been in



custody 149 months at the time of the hearing and is recommending a parole date after service of 154 months. That recommendation is outside the guideline range and the reasons provided by the examiner are the amount of time in custody at the time of the hearing. I recommend a reconsideration hearing in 36 months. Subject committed a brutal murder by beating the victim to death with a gun. The victim was a prostitute and subject told the examiner that he thought he was being set up to be robbed. After severely beating the victim, he left the room by going out the window and later tried to return through the front door. At the time the PSI was completed, subject denied he committed the offense. During the hearing, subject admitted his culpability in the offense. Although the murder was considered in the computation of the base point score, the brutality was not and should be considered an aggravating factor in this case.

### REASONS:

*A decision outside the guideline range is warranted because you brutally beat the female victim with a gun causing massive head trauma. The victim died as result of the injuries you inflicted. While you have programmed well, you continue to claim that you were the victim of a robbery or an attempted robbery is not supported by the evidence.*

JRH/PAH
June 26, 2004

See page 5

*(signature)*

Sellmon, Tony, Reg. No. 11630-007                              Page 4 of 5

**Second Addendum (by S. Husk on 7/12/04):** 

I agree with Ms. Denton's recommendation to deny parole at the initial consideration. However, I believe the primary reason for the departure is the extreme brutality that Sellmon demonstrated. The base point score already captures the fact that the victim died.

Also, in its Notice of Action dated 4/2/2004, the Commission specifically stated that, if parole were not granted at the new initial hearing, the maximum "set-off" should not exceed 8/2005. Thus, I am recommending a reconsideration hearing in 8/2005.

**Recommendation:** Continue for a reconsideration hearing in August 2005 after the service of 36 months from your originally scheduled initial hearing date of 8/7/2002.

**Reasons:** A decision above the guidelines is warranted because the murder that you committed while armed was extremely brutal as evidenced by the massive head trauma you inflicted upon the victim.

STEVE HUSK

# SELLMON

# EXHIBIT   E10

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: SELLMON, Tony | Institution: Lee County USP |
| Register Number: 11630-007 | |
| DCDC No: 250-180 | Date:    July 24, 2004 |

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue for a reconsideration hearing in August 2005 after the service of 36 months from your original initial hearing date of August 7, 2002.

**REASONS:**

Your Total Guideline Range is 104-110 month(s). See the attached sheet for the components that make up your Total Guideline Range. These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 149 months as of June 8, 2004.

After consideration of all factors and information presented, a decision above the Total Guideline Range is warranted because the following circumstances are present. You were in custody 149 months at the time of your hearing and additional time is necessary for release planning purposes.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2149
       Washington, D.C. 20001

GOVERNMENT
EXHIBIT

## SALIENT FACTOR SCORE (SFS-98)

**Your Pts**    **Salient Factor Score (SFS-98) Item Explanations**

3    **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

2    **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

2    **C** - Age at commencement of the current offense/prior commitments of more than thirty **days** (adult or juvenile) (see table below for an explanation)

1    **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

1    **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

0    **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

9    **Salient Factor Score (SFS-98)** (sum of points for A-F above)

### BASE POINT SCORE

**Your Pts**    **Base Point Score Category Explanations**

0    **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

2    **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

3    **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

5    **Base Point Score** (sum I-III above)

## DISCIPLINARY GUIDELINES

**Not Applicable**

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 50 month(s) from your Total Guideline Range for superior program achievement. This was granted because in addition to your college work you have also completed Vocational Training as a Plumber while serving at Lorton and received a degree in Electronics and Electrical work at the Youngstown Facility in May of 2000. You also received certificates for completing a Computer Lab. You have received several certificates showing you completed a 40-hour Drug Program 11/4/03, Black History 2/21/04 and Black History II 2/25/04. Anger Management was completed 9/8/03 and a Real Estate Course was completed 5/13/03. You have a certificate showing that you participated in the Jay C Program and was part of a leadership group during April of 2000. You completed Life Skills, two courses of Non- Violent Behavior, Commitment to Change, Street Law and Photography. Recently, you have completed the CODE Program 02/2004. You have completed all program requirements, which include Breaking Barriers, Criminal Lifestyle, Drug Education, Rationale Emotive Behavior, Victim Impact, Relapse Prevention and the Seven Habits of Affective People. You completed a total of 348 hours of program credit before graduating from CODE Program. You are currently working as a Mentor in the CODE Program and assist staff with the program.

## TOTAL GUIDELINE RANGE

| | | |
|---|---|---|
| 18 — 24 | Base Point Score Guideline Range |
| 136 - 136 | Months Required to Serve to Parole Eligibility Date |
| 154 - 160 | Disciplinary Guideline Range |
| less 50 — 50 | Superior Program Achievement Award (if applicable) |
| 104 - 110 | Total Guideline Range |



| Base Point Score Guideline Range | | Points For SFS Item C | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0-3 | 4 | 5+ |
| 3 or less | 0 months | 26 & Up | 3 | 2 | 1 |
| 4 | 12-18 months | | | | |
| 5 | 18-24 months | 22-25 | 2 | 1 | 0 |
| 6 | 36-48 months | | | | |
| 7 | 54-72 months | 20-21 | 1 | 0 | 0 |
| 8 | 72-96 months | | | | |
| 9 | 110-140 months | | | | |
| 10 | 136-172 months | 0-19 | 0 | 0 | 0 |

# SELLMON

# EXHIBIT    E11

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: SELLMON, Tony | Institution: Lee County USP |
| Register Number: 11630-007 | |
| DCDC No: 250-180 | Date:    April 11, 2005 |

As a result of the hearing conducted on June 22, 2004, the following action was ordered:

### Correct Notice of Action Dated July 24, 2004 to Read:

Deny parole. Continue for a reconsideration hearing in August 2005 after the service of 36 months from your original initial hearing date of August 7, 2002.

### REASONS:

Your Current Total Guideline Range is 104-110 months. See the attached sheet for the components that make up your Current Total Guideline Range. These components are your Base Point Score, Base Point Score Guideline Range, Months Required to Serve to Parole Eligibility Date, Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 149 months as of June 8, 2004.

**After consideration of all factors and information presented, a decision above the Current Total Guideline Range is warranted because you brutally beat the female victim with a gun causing massive head trauma. The victim died as result of the injuries you inflicted. While you have programmed well, you continue to claim that you were the victim of a robbery or an attempted robbery is not supported by the evidence.**

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2070
       Washington, D.C. 20001

GOVERNMENT
EXHIBIT

## SALIENT FACTOR SCORE (SFS-98)

**Your Pts**    **Salient Factor Score (SFS-98) Item Explanations**

3        **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

2        **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

2        **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

1        **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

1        **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

0        **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from items A-E above is 9 or less) = 1; Otherwise = 0

9        **Salient Factor Score (SFS-98)** (sum of points for A-F above)

## BASE POINT SCORE

**Your Pts**    **Base Point Score Category Explanations**

0        **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = 0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

2        **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

3        **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

5        **Base Point Score** (sum I-III above)

---

## DISCIPLINARY GUIDELINES

**Not Applicable**

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 50 month(s) from your Total Guideline Range for superior program achievement. This was granted because in addition to your college work you have also completed Vocational Training as a Plumber while serving at Lorton and received a degree in Electronics and Electrical work at the Youngstown Facility in May of 2000. You also received certificates for completing a Computer Lab. You have received several certificates showing you completed a 40-hour Drug Program 11/4/03, Black History 2/21/04 and Black History II 2/25/04. Anger Management was completed 9/8/03 and a Real Estate Course was completed 5/13/03. You have a certificate showing that you participated in the Jay C Program and was part of a leadership group during April of 2000. You completed Life Skills, two courses of Non-Violent Behavior, Commitment to Change, Street Law and Photography. Recently you have completed the CODE Program 02/2004. You have completed all program requirements, which include Breaking Barriers, Criminal Lifestyle, Drug Education, Rationale Emotive Behavior, Victim Impact, Relapse Prevention and the Seven Habits of Affective People. You completed a total of 348 hours of program credit before graduating from CODE Program. You are currently working as a Mentor in the CODE Program and assist staff with the program.

### TOTAL GUIDELINE RANGE

|  |  |  |
|---|---|---|
| 18 — 24 | Base Point Score Guideline Range |
| 136 — 136 | Months Required to Serve to Parole Eligibility Date |
| 154 — 160 | Disciplinary Guideline Range |
| less 50 — 50 | Superior Program Achievement Award (if applicable) |
| 104 — 110 | Total Guideline Range |



| Base Point Score Guideline Range | | Points For SFS Item C | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0-3 | 4 | 5+ |
| 3 or less | 0 months | 26 & Up | 3 | 2 | 1 |
| 4 | 12-18 months | | | | |
| 5 | 18-24 months | 22-25 | 2 | 1 | 0 |
| 6 | 36-48 months | | | | |
| 7 | 54-72 months | 20-21 | 1 | 0 | 0 |
| 8 | 72-96 months | | | | |
| 9 | 110-140 months | 0-19 | 0 | 0 | 0 |
| 10 | 136-172 months | | | | |

# SELLMON

# EXHIBIT    E12

# HEARING SUMMARY

**Name: Sellmon, Tony**                                      **Reg No: 11630-007**

## Hearing Parameters

Hearing Format ............................: **In Person**
Hearing Type................................: **Reconsideration (3-5 Year Rehearing)**
Hearing Date ...............................: 8/2/05
Examiner......................................: Jeffrey S. Kostbar
Institution ....................................: Lee County USP

## Sentence Parameters

Sentence Type..............................: **DC Parole Eligible**
MR/Statutory Release ..................: Life
Full Term Date.............................: Life
Months in Custody.......................: as of
Fines/Restitution/Assessment ......: $500
Detainer.......................................: None

**Additional text regarding the above parameters:** None

---

## Prior Action & Institutional Factors

**Prior Action:** The subject was originally heard for an Initial Hearing in 2002. Per Court Order, the subject had to be reheard for the purpose of consideration of Superior Program Achievement. As a result of his 2004 Initial Hearing, his guidelines were established at 104 months to 110 months after having been given a 50-month Superior Program Achievement Award.

Examiner Haworth recommended a parole date of November 8, 2004 after service of 154 months. Administrative Reviewer Denton disagreed with the recommendation in the case and recommended a 36-month rehearing due to the brutality of the murder where the victim died by being beaten in the head with a gun. She suggested a set of reasons to exceed the guidelines. Executive Reviewer Husk agreed that the case should be denied parole and set up the case for a rehearing after 36 months from the originally scheduled Initial Hearing date of August 7, 2002 (August 2005).

Examiner Husk provided a different set of reasons for exceeding the guidelines. Those reasons were signed and accepted by the Commission, but they erroneously, did not appear on the Notice of Action. Rather, the reason supplied by the "minority" Examiner Denton, appeared on the Notice of Action.

The correct reasons for previous exceeding the guidelines should read, "A decision above the guidelines is warranted because the murder that you committed while armed was extremely brutal, as evidenced by the massive head trauma you inflicted upon the victim".

**Sellmon, Tony, Reg. No. 11630-007**                 **Page 1 of 4**

GOVERNMENT EXHIBIT



**Codefendants:** None

**Representative & Representative's Statement:** The subject was represented at today's hearing by Case Manager Petitt. He indicated that he has known the subject 6 or 7 months and that the subject is working hard toward his release. He is going to be a journeyman apprentice plumber once he is released and he will live with his father in Maryland. He states that he is impressed by the subject's institutional adjustment. The subject was also represented by Counselor Peltier. He states he has interacted with the subject since the subject arrived at this institution and that this individual is a model inmate. He states that even if this inmate was his neighbor, once he is released, that would be fine with him.

It should be noted that the subject was going to be represented at today's hearing by an attorney and his brother. However, neither of those individuals appeared for today's hearing and the subject waived representation by them, as indicated on the I-24 Form.

**Prisoner's Statement:** The prisoner explained that he was 25 years old at the time of the murder. He states that the victim was a prostitute. He indicates that he went into a room where the victim was present and two men came in after him. He felt that he was going to robbed. He now notes that this was a mistake on his part and he believes that he was not going to be robbed. However, he indicates that he did kill the woman by beating her in the head with the gun and that he was knocked out from behind by another individual and woke up having been robbed. He is remorseful for his conduct and states that this has affected not only the victim's family, but his family as well.

The subject indicates that he has done all he can to better himself. The subject questioned what guidelines he was being heard under today and I explained to him that they were the 2.80 guidelines. He wanted to know why he had not been heard under the 1987 guidelines and I explained to him that his Initial Hearing was held after August 5, 1998 and, therefore, the 2.80 guidelines do apply. I also made it clear to him that no matter what system a person is being seen under, if a person has met the guideline criteria for parole, the Parole Commission can take aggravating or risk circumstance into effect in denying parole and rendering a decision above the guidelines. I pointed out to him that in his case, the prior reason used for the above the guideline decision was the extreme brutality of the crime, as evidenced by massive head trauma, which he inflicted upon the victim.

**Discipline:** None

**Program Achievement:** The subject continues to do very well while incarcerated. He was last seen in 2004 and states that he has continued to rehabilitate himself. He continues to be employed by UNICOR.

**Release Plans:** The subject plans to release to Maryland, where he will live with his father. He states that he will enter an apprenticeship program for plumbing.

## Guideline Parameters, Evaluation & Recommendation

**Salient Factor Score:**   9
**Base Point Score:**       5

Base Point Score Guideline Range: ...............................18-24
Months to Parole Eligibility Date: .............................136-136



Superior Program Achievement BEFORE Last Hearing:50-50
Converted Guideline Range:.......................................104-110
Disciplinary Guideline SINCE Last Hearing:.....................0-0
Superior Program Achievement SINCE Last Hearing: ......0-0
Total Guideline Range:..............................................104-110

**Evaluation:** This Examiner has given this case considerable consideration during the time I recessed the offender from the hearing room. The subject is 5 months shy of serving 14 years for the murder of a female victim. As stated previously, the nature of the murder itself was extremely brutal, given that the victim was beaten in the head with a gun and died of massive head trauma.

However, the subject is a first time offender and has done extremely well while incarcerated. This Examiner is fully aware that the guidelines for this individual suggests that he be paroled, and in fact, that he should have been paroled after the service of 110 months, and he has now served 163 months.

This Examiner believes that accountability for the offense behavior not only is a consideration of the factors that go into the guideline calculation, but also factors that are outside of that calculation. That would include the brutality exhibited by an offender in committing a murder. In this case, our subject chose to beat a female victim to death by beating her in the head with a gun, thereby, causing massive head trauma and her ultimate death. This methodology is extremely brutal. I do not believe that it is captured by guidelines, which would suggest that the subject be paroled at a maximum guideline range of 110 months (9 years and 2 months). Further, I do not believe that the extreme brutality of the offense is captured by his current service of nearly 14 years, or even by the next Reconsideration Hearing date, which would be scheduled after service of approximately 17 years, August 2005.

Consequently, this Examiner is recommending the maximum set off of 36 months for a Rehearing in August 2008.

**Recommendation:** Continue for a Reconsideration Hearing in August 2008, after service of 36 months from your Rehearing date of August 2, 2005.

**Conditions:** Not Applicable

**Statutory Interim Hearing:** None

**Guideline Use:** A decision above the guidelines is warranted because the following circumstances are present: The murder you committed while armed was extremely brutal, as evidenced by the massive head trauma you inflicted upon the victim.

**Additional Text:** None

[Signature]


**Executive Reviewer's Comments:**



**Sellmon, Tony, Reg. No. 11630-007**          **Page 3 of 4**

JSK/SDS
August 4, 2005

# SELLMON

# EXHIBIT    E13

 

U.S. Department of Justice                                    **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

Name: SELLMON, Tony                          Institution: Lee County USP
Register Number: 11630-007
DCDC No: 250-180                             Date: August 11, 2005

---

As a result of the hearing conducted on August 2, 2005, the following action was ordered:

Deny parole. Continue to a Three-Year Rehearing in August 2008.

<u>REASONS</u>:

You have been in confinement as a result of your current offense behavior for a total of 163 months as of August 5, 2005. Your prior total guideline range is 104-110 months.

Your new total guideline range is 104-110 months.

After consideration of all factors and information presented, a decision above the new total guideline range is warranted because the murder that you committed while armed was extremely brutal, as evidenced by the massive head trauma you inflicted upon the victim.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2070
       Washington, D.C. 20001

GOVERNMENT
EXHIBIT
_M_