# MARTIN

# EXHIBIT   F1

```
5H     PAR3D  540*23 *              SENTENCE MONITORING          *      02-16-2006
   PAGE 001            *           COMPUTATION DATA             *      14:58:31
                                   AS OF 02-16-2006
```

REGNO..: 11400-007 NAME: MARTIN, CARLTON JR

```
FBI NO...........: 692507WB9          DATE OF BIRTH:      -1974
ARS1.............: LEE/A-DES
UNIT.............: H                   QUARTERS.....: Z03-118U
DETAINERS........: NO                  NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F-13712-90
JUDGE...........................: TIGNOR
DATE SENTENCED/PROBATION IMPOSED: 02-19-1992
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 05-21-2002
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:
```

```
RESTITUTION...:  PROPERTY: NO  SERVICES: NO      AMOUNT: $00.00
```

-------------------------CURRENT OBLIGATION NO: 010 -------------------------
```
OFFENSE CODE....:  620
OFF/CHG: 33-541(A)(1), 22-3204 POSSESSION W/INTENT TO DISTRIBUTE
         COCAINE CT. D
```

```
SENTENCE PROCEDURE.............: DC GTCA ADULT SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:    12 YEARS
MINIMUM TERM...................:     4 YEARS
RELATIONSHIP OF THIS OBLIGATION
 TO OTHERS FOR THE OFFENDER....: CC
DATE OF OFFENSE................: 12-12-1990
```

```
REMARKS.......: CT. D - 4 TO 12 YRS.; CT. E - 5 TO 15 YRS. W/MAND. MIN. 5 YRS
                TO RUN CC W/EACH OTHER.
```

G0002      MORE PAGES TO FOLLOW . . .


GOVERNMENT EXHIBIT 4

```
5H      PAR3D  540*23 *           SENTENCE MONITORING       *    02-16-2006
PAGE 002          *              COMPUTATION DATA           *    14:58:31
                                 AS OF 02-16-2006


REGNO..: 11400-007 NAME: MARTIN, CARLTON JR


------------------------CURRENT OBLIGATION NO: 020 -------------------------
OFFENSE CODE....:  606
OFF/CHG: 22-3204(B) POSSESSION OF A FIREARM DURING CRIM VIOLENCE
         CT. E

 SENTENCE PROCEDURE.............: DC GTCA ADULT SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    15 YEARS
 MINIMUM TERM...................:     5 YEARS
 DC MANDATORY MINIMUM TERM......:     5 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CC 010
 DATE OF OFFENSE................: 12-12-1990

---------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------

 COURT OF JURISDICTION..........: DIST OF COLUMBIA, SUPERIOR CRT
 DOCKET NUMBER..................: F-4670-90
 JUDGE..........................: TIGNOR
 DATE SENTENCED/PROBATION IMPOSED: 02-19-1992
 DATE WARRANT ISSUED............: N/A
 DATE WARRANT EXECUTED..........: N/A
 DATE COMMITTED.................: 05-21-2002
 HOW COMMITTED..................: DC SUPERIOR COURT COMT
 PROBATION IMPOSED..............: NO
 SPECIAL PAROLE TERM............:


 RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  622
OFF/CHG: 22-2405, 3202 MANSLAUGHTER WHILE ARMED CT. F

 SENTENCE PROCEDURE.............: DC GTCA ADULT SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.: LIFE
 MINIMUM TERM...................:    15 YEARS
 DC MANDATORY MINIMUM TERM......:     5 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CC
 DATE OF OFFENSE................: 04-20-1990




5H
G0002       MORE PAGES TO FOLLOW . . .
```

 

```
5H     PAR3D  540*23 *           SENTENCE MONITORING        *    02-16-2006
PAGE 003          *              COMPUTATION DATA        *    14:58:31
                                 AS OF 02-16-2006


REGNO..: 11400-007 NAME: MARTIN, CARLTON JR



-----------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 08-10-2005 AT LEE AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020, 020 010

DATE COMPUTATION BEGAN..........: 02-19-1992
AGGREGATED SENTENCE PROCEDURE...: DC GTC ACT ADULT AGGREGATE SENTENCE
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
AGGREGATED MINIMUM TERM.........:    15 YEARS
COMBINED MANDATORY MINIMUM......:     5 YEARS
EARLIEST DATE OF OFFENSE........: 04-20-1990

JAIL CREDIT.....................:   FROM DATE    THRU DATE
                                    12-12-1990   12-17-1990
                                    12-16-1991   02-18-1992

TOTAL JAIL CREDIT TIME..........: 71
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 0
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 06-14-2003
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE
```

.

```
G0002       MORE PAGES TO FOLLOW . . .
```

# MARTIN

# EXHIBIT    F2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

#87

vs.

*Carlton Martin, Jr.*

Case No. _F-13742-90_

PDID No. _402-631_

## JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☒ Guilty to the Charge(s) of _____
"D" *Possession with Intent to Distribute Cocaine*
"E" *Possession of a Firearm During Crime Violence*
and having been found guilty by ☐ Jury ☒ Court, it is hereby ORDERED that the defendant has been
convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to _____
*On Count D   4 to 12 yrs.*
*On Count E   5 to 15 yrs.*
*Sentences to run concurrent with each
other and concurrently with any other sentences. RST-*

☒ MANDATORY MINIMUM term of _five years_ applies to the sentence imposed.

☐ MANDATORY MINIMUM term does not apply.

☒ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for
the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and super-
vision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code
[Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division,
and it is further ORDERED that while on probation the defendant observe the following marked conditions
of probation:

☐ Observe the general conditions of probation listed on the back of this order.

☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with
written notice from your Probation Officer.

☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows:

_____

☐ Restitution of $_____ in monthly installments of $_____ Beginning
_____ (see reverse side for payment instructions). The Court
will distribute monies to _____

☐ _____

Costs in the aggregate amount of $_____ have been assessed under the Victims of Violent Crime
Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the
copy shall serve as the commitment/order for the defendant.

_2/19/92_
Date

_Judge_

Certification by Clerk pursuant to Criminal Rule 32(d).

_2/19/92_
Date

_Deputy Clerk_

GOVERNMENT
EXHIBIT
B

Form CD(15)-1040 Aug. 87

# MARTIN

# EXHIBIT   F3

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

#87

vs.

*Carlton Martin, Jr.*

Case No. F-___-90
PDID No. 402-631

## JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☒ Guilty to the Charge(s) of _____

*Count "F" Manslaughter While Armed*

and having been found guilty by ☐ Jury ☒ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to _____

*On Count F 15 to Life*

*Sentence to run concurrent with*

*F-13712-90*

☒ MANDATORY MINIMUM term of *five years* applies to the sentence imposed.
☐ MANDATORY MINIMUM term does not apply.

☒ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

☐ Observe the general conditions of probation listed on the back of this order.

☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows:

_____

☐ Restitution of $_____ in monthly installments of $_____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____

☐ _____

Costs in the aggregate amount of $_____ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment/order for the defendant.

2/19/92
Date

_____ Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

2/19/92
Date

Kelly _____ Deputy Clerk

Form CDUS-1040 Aug. 87

GOVERNMENT EXHIBIT

# MARTIN

# EXHIBIT   F4



SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION – ADULT BRANCH

### PRESENTENCE REPORT

PDID No.: 402-631
Docket No.: <u>F-13712</u>-90D,E
F-4670-90F

Re: Carlton R. Martin, Jr.

Date Referred: 12-16-91

To: The Honorable Robert S. Tignor

Date Due: 2-14-92

From: Probation Officer Robert Blunt

Sentencing Date: 2-19-92

---

Defendant Information:
True Name: Carlton Ronald Martin, Jr.

Address: 1477 Newton St., N.W.
#1, Washington, D.C. 20010

Tel. #: 462-7225

       Aliases: Mann

Age/Birthdate:  -74  Sex: Male

Birthplace: Washington, D.C.

Time in D.C. Area: Life

Citizenship: U.S.
Alien No.: N/A

Marital Status: Single Dependents: 2 Education: 9th Grade

Social Security No.:

Permit No.: 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

DCDC No.: 248-984

FBI No.: Pend. Return

---

Offense, Code and Penalty: See Page 2

Plea: Guilty  Judgment: Guilty

Bond Status: Held Without
Bond

Detainers or Pending Charges: None known

Co-defendants:
None        (Dkt No.):

(Status):

AUSA: Clendon Lee

Telephone: 514-7394

Defense Counsel: Leroy Nesbitt

Telephone: 466-6325

"In accordance with the U.S. Parole Commission and Reorganization Act,
Public Law 94-233, dated March 15, 1976 this report is disclosable to
inmates in federal institutions for purposes of parole consideration."



GOVERNMENT
EXHIBIT
D

2

Offense Code and Penalty: Manslaughter While Armed; 22-2405 -3202; up
to life.  UCSA, Possession with Intent to Distribute Cocaine While
Armed; 33-541(a)(1); 22-3204; up to life.  Possession of Firearm
During a Crime of Violence; 22-3204(b); Mandatory minimum five years.

3

**CONTACTS:**

2-5-92    Clendon Lee, AUSA, consultation held; however, will call back

Carlton R. Martin, Jr., defendant, interviewed at the Youth Center 1, Lorton, Virginia

2-6-92    Juvenile Record check

Clendon Lee, AUSA, consultation held

2-10-92                  , mother,            , not in, left message with sister

Francis Appiah, Probation Officer, 673-2250, not in left message

2-12-92                  , mother, not in left a message with a male who answered the telphone.

**OFFICIAL VERSION:**

F-4670-90

According to the Statement of Facts:  On April 20, 1990 at about 1:13 a.m., while in front of 1421 12th Street, N.W., Rhosu, male, black, 24 years of age, was shot multiple times with a handgun.  Mr. Griner was transported from the scene to the DC Medical Examiner's Office where he was pronounced dead by Dr. Pierre-Louis at 3:00 a.m. On April 20, 1990 an autopsy was performed at the DC Medical Examiner's Office by Dr. Vincent Hill who ruled the cause of death to be multiple gunshot wounds to the head and the manner of death homicide.

A witness was interviewed who stated it was inside 1421 12th Street, N.W., after midnight on April 20, 1990 when it heard several gunshots coming from out front.  When the witness went to investigate, it saw the respondent, who it knows from the neighborhood as Carlton, running into his house at 1420 12th Street, N.W.  A short time later, the witness had a conversation with the respondent, asking the respondent if that was him shooting a gun and the respondent said yes. The witness then heard the decedent ask the respondent about firing the gun.  The witness described the respondent as a black male wearing a dark blue or black shirt.  A short time later, the witness heard more shots and shortly thereafter saw the decedent lying on the porch of 1421 12th Street, N.W., apparently shot.

Another witness was interviewed who stated it observed the decedent standing in front of 1421 12th Street, N.W., arguing with an individual it knows as Carlton, the respondent.  The witness went into the building and a short time later heard at least two shots.  The witness went to the door and looked out and saw the decedent lying on the front porch suffering from apparent gunshot wounds to the head.

4

**OFFICIAL VERSION:** continued

The police arrived on the scene. The witness stated when it came in and saw the decedent arguing with the respondent there was no one else around. It was the same when the witness came out to find the decedent. The witness described the respondent as a black male, 17 to 18 years, 5 feet 6 inches, 160 pounds, jeans and black shirt or jacket.

Officer Everette Williams, 30, was pulling into the 1400 block of 12th Street when he heard shots and seconds later as he pulled toward 1421 12th Street, N.W. he saw a black young male wearing a black shirt running from the direction of 1421 12th Street across the street to 1420 12th Street, N.W., and disappeared inside.

Three witnesses who were inside 1420 12th Street, N.W., at the time of the shooting, states they heard shots and seconds later the respondent entered and hurriedly went through the house and out the back door. One of these witnesses is the cousin of the respondent.

The respondent resides with his mother and cousin at 1420 12th Street, N.W. At the scene, the police found in the roadway between the front of 1421 12th Street, and 1420 12th Street a handgun with expended rounds.

At about 11:15 a.m., April 20, 1990, the respondent turned himself into Officer Seidl at the Third District Station. He refused to make a statement.

F-13712-90

According to the Metropolitan Police Report: on October 26, at or about 0315 hours, witness one reported to the DC Metropolitan Police Third District that defendant one had attempted to rape her in the hallway of 1421 12th Street, N.W. Washington, D.C.

On October 26, 1990 at or about 0145 hours, witness four escorted her friend out of the building. Witness one states that defendant one let her into the building (opened the security door). Once inside, defendant one put his hands and arms on witness one against her will. Defendant one told witness four "we're going to rape you!" Witness four then turned to run to her apartment and defendant one grabbed witness four's blouse by the collar and tore it open to the midsection. Witness four then kicked defendant one in the genital area and fled to her apartment. Defendant one was then chased by witness four's mother who saw him flee in a silver BMW.

On September 7, 1990 after completing the investigation, Detective Soares (witness one) obtained a warrant for defendant's one's arrest, charging him with assault with Intent to Rape on U.S. Warrant 3248-90.

5

**OFFICIAL VERSION:   continued**

F-13712-90

    On December 12, 1990 members of the Special Operations Division (SOD) Warrant Squad conducted a turn up at 1420 12th Street, N.W., defendant one's residence. While in the rear of the defendant's home, Officer J.W. Walsh, badge #3714, observed the defendant open a rear second floor bedroom window and place a yellow bag on the roof. The defendant was then placed under arrest and the bag was recovered. This bag contained one 32 caliber pistol loaded with five rounds in the magazine and one in the chamber. Nineteen additional rounds were in a clear plastic ziplock bag. Twenty-four white rock substances were also recovered, individually packaged in small plastic ziplock bags. This substance was tested positive for cocaine. The defendant was then transported to the Third District.

**DEFENDANT'S VERSION:**

F-4670-90F

    "April 20, me and Mr. Rhosu Griner was having arguments all the week. We dislike each other. He is the big strong type. He was in the hallway selling drugs. Me and this little boy was in the hallway playing. We had a cap gun and I shot the cap gun twice in the hallway. In a building, it sounds like a real gun so Mr. Griner said why don't I go somewhere with that noise because if the police came and locked him up he's going to do something to me. I said I wasn't going nowhere. About ten minutes, we exchanged words. I left and went in the house and came back later that night. Mr. Griner was out front standing in front of the building, 1421 12th Street. So I went inside the building. My friend was standing inside the building. I came back out front to get some air. Mr. Griner was saying why am I out front. I said I could stand out front if I want to then he started saying what he would do to me so I started saying you ain't gonna do nothing to me. He had a cane in his hand. He faked like he was going to hit me and I jumped. He was saying what if I shoot up in this window and shoot your mother and little sister. I said you ain't gonna do nothing. That's when he pulled the gun out and we were tussling. I fell on the ground with the gun in my hand. He was coming after me and I got up and shot him twice. I dropped the gun and ran. The next day, I turned myself in and he dropped the charges. Seven months later, when I got a rape charge, that's when they bought the murder back up in case."

F-13912-90D,E

    "December 12, me and my friend were playing in a hallway with a girl and I accidentally ripped her blouse. Her mother called the police. The police came and knocked on my door and I wasn't home. A month and a half later they raided my house, saying they had a warrant. My mother asked to see the warrant and they told her to shut up and sit down. Then they locked me up. I had thrown the drugs and gun out the window. They took me to the police station. I saw him

6

**DEFENDANT'S VERSION:  continued**

sit there and type up the warrant that he was supposed to have when he
came to my house and didn't.  I went to court and they dropped the
coke and gun charge.  They tried to pursue the rape charge.  She
dropped the rape charge and they brung back the gun and coke charge."

**PRIOR CRIMINAL RECORD:**

**Juvenile:**

7

**PRIOR CRIMINAL RECORD:  continued**

**Adult:**

Washington, D.C.

| | | | |
|---|---|---|---|
| 4-20-90 | Murder II<br>F-4670-90A | Indicted 8-8-90 | DCSC |
| | Murder II<br>Count B | PLIO 12-16-91 | DCSC |
| | CDW Felony<br>Count C | To be dismissed 2-19-92 | DCSC |
| | Any Other<br>Felony<br>Count D | To be dismissed 2-19-92 | DCSC |
| | Any Other<br>Felony<br>Count E | To be dismissed 2-19-92 | DCSC |
| | Voluntary<br>Manslaughter<br>While Armed<br>Count F | Instant Offense | DCSC |
| 10-26-90 | UCSA, Poss.<br>with Intent<br>to Dist.<br>Cocaine<br>F-13712-90A | No papered 12-12-90 | DCSC |
| | Assault on<br>a Police<br>Officer<br>Count B | 12-12-90 | DCSC |
| 12-12-90 | Assault with<br>Intent to<br>Rape<br>F-13712-90C | Indicted 1-16-91 | DCSC |
| | Any Other<br>Felony (UCSA,<br>Poss. with<br>Intent to<br>Dist. Cocaine<br>While Armed)<br>Count D | Instant Offense | DCSC |

8

**PRIOR CRIMINAL RECORD:  continued**

| | | |
|---|---|---|
| Poss. of a Firearm During a Crime of Violence or Dangerous Offense Count E | ✓  Instant Offense | DCSC |
| CDW Felony Count F | To be dismissed 2-19-92 | DCSC |
| Unregistered Firearm Count G | "          "          " | DCSC |
| Unlawful Poss, of Ammunition Count H | To be dismissed 2-19-92 | DCSC |

**PAROLE/PROBATION/PRE-DISPOSITION ADJUSTMENT:**

The defendant was last on probation in the Family Branch of this court to probation officer Francis Appiah, 673-2250, for the offense of cocaine sale.  He was sentenced on June 16, 1990 to one year probation.  His probation was revoked on March 21, 1991 and he was committed to the Department of Human Services for one year.  Mr. Appiah was on leave at the time of this worker's attempt to contact him, consequently, additional information in regards to his adjustment is lacking at this time.

The defendant was cooperative when interviewed at the Youth Center 1 in Lorton, Virginia.

**EMPLOYMENT HISTORY:**

From: 1990 to approx. 7 mos.
Name of Employer: McDonald's
Address: 18th & K Street, N.W.
Telephone Number:  Unknown
Position/Salary: Cook/$4.25 per hour
Reason for Leaving: Tired of working
Verification: Unverified

9

**EMPLOYMENT HISTORY:**   continued

From: Summer of 1989 to November 1989
Name of Employer: McDonald's
Address: 14th & K
Telephone Number:  Unknown
Position/Salary: Cook/$4.25 per hour
Reason for Leaving: Tired of working
Verification: Unverified

Comments: According to the defendant, he had a summer job under the Mayor's Youth Work Program at Shiloh Baptist Church, 10th & P Streets, N.W., for approximately three months in 1988.

**SOCIAL HISTORY:**

Sources of Verification:  Defendant

   Family History:

   Mr. Ronald Martin, Jr. is a native Washingtonian.  He was born on January 28, 1974.  He is the oldest of two children born to Ms. .  His biological father's name is Mr.
     .   Both of the defendant's parents are also native Washingtonians.  His 38 year old mother is employed by the Madison Hotel in the housekeeping section.  His father is incarcerated in a Federal Institution in Manson, Tennessee.  The defendant does not have a current visual perception of his biological father.  He indicated that he can only recall seeing his father a total of one week during his entire life.  The defendant went further to state that his father has been incarcerated for a large segment of his life.  The defendant's mother met and married Mr.                    when the defendant was about five or six years old.         is also a 38 year old native Washingtonian.  He is employed as a messenger for an unknown company.             is the defendant's three year old sister.  The defendant also indicated that he has a half sibling, with          age 16.  He related that he has maintained contact throughout the years.

   The defendant reportedly had an unsettling childhood.  He developed a deep resentment for his surrogate father who reportedly inflicted unnecessary pain on him.  He stated that his stepfather would often accuse his mother of infidelity and he would receive the residual affect in the form of extensive beatings often with extension cords.  The defendant further indicated that his stepfather was heavily addicted to cocaine and would often deceive the defendant's mother by taking money without her knowledge or consent.  The defendant was allegedly accused of these improprieties.  The defendant's communication with his stepfather is nil.  His mother and stepfather have been separated off and on since the defendant was about eight or nine years old.  They are currently separated, according to the defendant.

10

**SOCIAL HISTORY:  continued**

### Family History:

According to the defendant, he and his biological father are the only immediate family members known to the courts.

### Education/Training:

The defendant is a product of the public school system here in the District of Columbia.  After graduating from the ninth grade at Shaw Junior High School, he related that he entered the tenth grade at Cardoza Senior High School.  However, he was arrested as a juvenile and having missed over thirty days, he was dropped from the rolls. Upon his release from Oak Hill Children's Center, he stated that he consulted his probation officer and the pair agreed that a setting such as City Lights may offer a good alternative school setting considering his plight.  He enrolled but had not accomplished his goals prior to the current period of incarceration.

### Military:

The defendant has not served in the armed forces.  He further stated that as of yet, he has not registered for the draft.

### Marital Status and Living Arrangements:

The defendant is a single male who reports that he has fathered two children;                          age  2  and                    ,  age  1. Chapale mother's name is                  ,  age 19 and          mother is Ms.          also age 19.  The defendant indicted that both of his children's mothers recently moved and he does not know their current address.  He did state that when he was in the community, he supported the children on an as needed basis, as opposed to any existing court order.

At the time of arrest, he reported that he was residing at 1420 12th Street, N.W., with his mother and sister.  There are no problems reported in the relationships.  His mother moved to                     in January 1992.

### Financial Status:

According to the defendant, he does not have any assets.  He did state that he once owned a 1987 Toyota Cressida that he has since turned over to his mother.  He continued to state that he does not have any liabilities.

### Health:

The defendant reports being in good physical health with no reports of any recent hospitalization or treatment or evaluations.

11

**SOCIAL HISTORY:  continued**

Except for institutional evaluations, the defendant indicated that he has not had any other psychological or psychiatric treatment.

Substance Use/Abuse:

The defendant denies the use of any illegal drugs or the consumption of any alcoholic beverages.

Other Significant Information:

In a consultation with the assigned AUSA, it was learned that 24 bags of cocaine base were recovered.  The DEA report suggest that the weight was 3.089 grams with a purity rating of 68% of a cocaine base.

**EVALUATION AND DIAGNOSIS:**

The defendant, Carlton R. Martin, Jr., an 18 year old male is before the court for sentencing after having entered a guilty plea to Manslaughter While Armed; Possession of a Firearm During a Crime of Violence and Possession with Intent to Distribute Cocaine, While Armed, in violation of the Uniformed Controlled Substance Act.  It appears that the defendant was a juvenile at the time of arrest who was waived as an adult under Title 16.  He has a significant juvenile record as it reflects at least two prior juvenile drug convictions.

The defendant reportedly had a dismal childhood.  He cited a stepfather who usually lacked parental warmth and or was either neglectful in exercising parental control or highly inconsistent and quixotic in the use of discipline.  Being subjective to covertly hostile, restrictive parental motives, he had to internalize his angry feelings.  Since a favorable self-concept is essential to personal happiness and effective functioning, counseling may help to displace certain feelings of inadequacy and unworthiness which were promoted by his stepfather.

A preoccupation with personal problems caused the defendant to withdraw from public school prematurely.  He had enrolled in a GED Program at City Lights.  He was rather straightforward in acknowledging the fact that education is generally the key to success. He should be encouraged to continue his pursuit of a GED.

Although the defendant spoke of previously owning a vehicle, he has had limited experiences in the work force.  He needs to choose a vocation and receive the training that is necessary to enhance the goal of getting adequate employment in the future.

12

**EVALUATION AND DIAGNOSIS: continued**

The court has before it, a relatively youthful offender who is trying to adjust to adulthood with its diversity of conflicting possibilities and choices. He has to contend with opposing motivations and external pressures for independence which has a tendency to produce conflict and vacillating behavior. With the rash of criminal behavior exemplified by the defendant, one has to wonder whether or not the defendant has entered adulthood prepared to lead a reasonably happy, self-sustaining and productive life. Psychotherapeutic counseling may give the defendant a clearer and perhaps realistic picture of his assets and liabilities. In the meantime, the defendant's offenses are offensive to the community and should met out some form of punitive sanction for his inexcusable criminal responsibility.

The defendant appears age appropriate for sentencing under the Youth Rehabilitation Act. The court has ordered that a study and evaluation be conducted by the Department of Corrections prior to sentencing. This worker is not privy to its findings at this time. One would surmise that the heinousness of the defendant's offense should exact some form of punitive sanctions. However, this worker will acquiesce as to Youth Rehabilitation Act Study (YRA, 24-803e), considering the vast experts used to balance the defendant's needs against the community's safety.

**TREATMENT PLAN:**

1. Counseling on an as needed basis

2. Vocational assessment and or training

3. Employment assistance

13

**RECOMMENDATION:**

Acquiesce to YRA 24-803e.

Respectfully submitted,

*Robert Blunt*
Robert Blunt
Probation Officer
508-1852

Approved by: _____
Supervisory Probation Officer
508-1929

RB/aw

# MARTIN

# EXHIBIT    F5

U.S. Department of Justice
United States Parole Commission

Notice of Hearing-Parole Application
Representative and Disclosure Request

Date  October 16, 2002

Name: ___ Carlton Martin _____

Register No: __ 11400-007 _____ Institution United States Penitentiary, Lee County VA

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

1.  NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for ___ December _____
    to _____, XX 2002

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

_____            I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days
(Initials)             advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2.  APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled:

    Carlton Martin                                        10/16/02
         (Signature)                                          (Date)

3.  WAIVER OF PAROLE/PAROLE HEARING:

_____  A. I wish to waive parole consideration at this time.
(Initials)

_____  B. I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary
(Initials)      Committee infractions since my last hearing.

_____  C. I wish to waive the parole effective date or presumptive parole date previously determined by the Commission. (NOTE:
(Initials)      *A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists
                in your case.*)

_____  D. I wish to waive mandatory parole.
(Initials)

NOTE:   1) If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days
           prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

        2) Revocation hearings cannot be waived. Hearings under 28 CFR 2.28 (b-f) and rescission hearings can only be waived
           by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

4.  REPRESENTATIVE: At your hearing you may have a representative of your choice (*e.g. family member, friend, staff member,
    or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative
    willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through
    your case manager.   Marquisha Wilson (Fiancee)   C. M.   1/21/0
Name of Representative: _____

            IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING WAIVER

C. M.
_____ I do not wish a representative at my hearing.
(Initials)

GOVERNMENT EXHIBIT E

# MARTIN

# EXHIBIT   F6

(INI-S-B)

< SUMCODE-DCINIADN_SUM >
## D.C. ADULT INITIAL HEARING SUMMARY
(INITIAL HEARINGS AFTER 1/2/01 AND CASES ELIGIBLE FOR
(RETROACTIVE CONVERSION TO PRESUMPTIVE DATE PROCEDURES)

**Offense of Conviction - Manslaughter While Armed, Possessing a Firearm during a Crime of Violence and Possessing with Intent to Distribute Cocaine**

Name            :MARTIN, Carlton
Reg. No         :11400-007
Hearing Date    :1/21/2003
Institution     :Lee County USP
Hearing Examiner :Kenneth Walker

---

**Prisoner's Statement:**

In discussing the Manslaughter While Armed conviction, the inmate admitted that this did occur and that he was the one who had shot the victim. The inmate indicated that he and the victim were involved in an argument over a cap pistol and he was approached by the victim (age 24) about the noise at which time he indicated the victim attempted to hit him with a walking cane at which time they became involved in a scuffle. He indicated that at this time the victim then reached behind his back for a gun and he was able to get the gun away from the victim at which time he indicated that he closed his eyes and shot the weapon several times striking him subsequently killing the victim. He indicates that he fled the area but subsequently turned himself into the police. In regard to the possession with Intent to Distribute Cocaine and Possession of a Firearm During a Crime of Violence he admitted that he was involved in this as reported. In discussing the inmate's SFS, Base Point Score and the guidelines with the inmate, he did not contest either one of these factors.

---

**Institutional Factors**

---

**Discipline:**

Recently, on 12/29/02 the subject was charged with Engaging in a Sexual Act. The Incident Report No. 1061013. On 1/2/03 he was found guilty by the DHO and sanctioned to 30 days of disciplinary segregation and loss of visiting privileges for 180 days. At that the time the subject appeared for the hearing he still was in the Segregation Unit.

This incident involved the subject's conversation that occurred via telephone on 1/1/03, and 12/30/02 concerning him touching the body of a female visitor by the name of Maquisha Wilson. It is indicated that the records reveal that Ms. Wilson visited the subject on 12/27, 12/28 and 12/29/02 and that during the course of the conversation there was some discussion that he had physically touched her body (breast and buttocks). During the visit it appears that there were several children with Ms. Wilson who were used to cover the visitor and inmate's activities.

MARTIN.114

GOVERNMENT EXHIBIT

(INI-S-B)

The inmate admitted that this did occur and as a result was found guilty by the DHO. A disciplinary hearing report is attached for review.

**Program Achievement:**

On 2/18/2000, the subject received a certificate for completing his GED. On 11/17/99 he received a certificate for being the Student of the Month for September of 99. On 2/4/2002 the subject received a certificate for completing a Dry Wall and Painting Program. In addition, the inmate was involved in a Commercial Cleaning Program at which he received a certificate on 2/9/2001. Also, the subject participated in the 6 month Electrical Program which he was given a certificate for having 6 months of perfect attendance (9/20/2000). Also in November of 2002, the subject completed a 2 hour and a 4 hour Anger Management Course.

**Release Plans:**

The subject reported that upon his release he plans to reside with his mother Sheila McClary, 1150 51st Street NE, Apt. 301, Washington, DC 20019, telephone (202) 398-1150. He's hopeful to establish employment with a cell phone company located at 1101 14th Street NW, Washington, DC.

**Representative and Representative's Statement:**    None.

---

**Guideline Parameters**

---

**SFS:** 5

**Base Point Score:**       7

54-72   Base Guideline Range
138     Months Required to Serve to PE Date
0-2     Disciplinary Guideline Range
10-10   Superior Program Achievement Award
182-202     Total Guideline Range

**Modifications to Prehearing:**

The pre-assessor indicated that the months to serve parole eligibility were 180, however, in reviewing the BP-5 dated 1/21/2003, the inmate was in continuous custody as of 12/16/91 until the date of sentencing and his parole eligibility date is projected to be on 6/14/2003. In addition, the pre-assessor was unaware of a recent institutional infraction which requires 0-2 months to be added to the guidelines giving him a sub total of 192-212 months. The examiner believes that the subject based on his adjustment should receive 10 months for programming noting that the subject did complete his GED in February, 2000, in addition he had received certificates for completing a Commercial Cleaning Program that was for 6 months, in addition completed a Dry Wall and Painting Program that appears to be for 6 months. It appears that

MARTIN.114



(INI-S-B)

the subject was involved in the GED Program for approximately 2 years.

## Overall Evaluation and Recommendation

**Evaluation:**

As of today's hearing, the subject has been in custody for approximately 133 months as of 1/10/2003. The total guideline ranges is 182-202 months. Based on the guidelines the examiner perhaps should have made a recommendation for a presumptive parole date either near the top of the guidelines or beyond but based on the fact that the examiner does not believe that a release date should be established at this time to review further programming and his overall adjustment after 3 years from today's hearing. If this is the case than the subject will have served 169 months at a rehearing in 3 years which still will be 13 months below the bottom of his guidelines, at the time. It appears that the subject has been making a good attempt to be involved in programs but the examiner is concerned about the instant offense particular the manslaughter while armed conviction. Mr. Martin reported that he was being attacked by the older person (victim). After this occurred it appeared the subject was out on some type of bond and on bond was charged with assault with intent to rape, however, it appears that this charge was subsequently dismissed. Speaking with the inmate about this incident he indicated that he and another guy who were both about 16 or 17, noting that the girl involved was approximately the same age were playing around and it was her mother who filed the complaint. The subject became involved in the incident on 12/12/90 for the drug charge for which he was also in possession of a gun. He is currently 28 years of age and although he accepts responsibility for the shooting, it is not quite clear as to his details about the murder conviction. The subject reported that he had closed his eyes at the time that he fired weapon but it appears that the victim was shot multiple times in the head which one could conceive that the subject clearly pointed and shot the weapon with the intent to murder. Should a decision be rendered to grant the subject a presumptive parole date surely a decision at the top of the guidelines would be warranted. In this case, the subject would serve approximately 16 years and 10 months. Based on whether the victim was shot would not have made the recommendation for parole within the guidelines then if this was granted then this still would have required a rehearing in 5 years.

**Recommendation:**

1. Deny parole.

2. Continue for a Rehearing in January, 2006.

PAH
January 24, 2003

MARTIN.114

# MARTIN

# EXHIBIT    F7

 

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | |
|---|---|
| Name: MARTIN, Carlton | Institution: Lee County USP |
| Register Number: 11400-007 | |
| DCDC No: 248-984 | Date: February 13, 2003 |

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue to a Three-Year Reconsideration Hearing in January 2006, after the service of 36 from your hearing date of January 21, 2003.

<u>REASONS:</u>

Your Total Guideline Range is 192-212 months). See the attached sheet for the components that make up your Total Guideline Range. These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 133 months as of January 10, 2003.

After consideration of all factors and information presented, a decision outside the Total Guideline Range at this consideration is not found warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2109
       Washington, D.C. 20001

GOVERNMENT
EXHIBIT
6



## SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
| --- | --- |

**2**    **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

**2**    **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

**0**    **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

**1**    **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

**0**    **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

**0**    **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from items A-E above is 9 or less) = 1; Otherwise = 0

**5**    **Salient Factor Score (SFS-98)** (sum of points for A-F above)

### BASE POINT SCORE

| Your Pts | Base Point Score Category Explanations |
| --- | --- |

**2**    **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

**2**    **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

**3**    **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

**7**    **Base Point Score** (sum I-III above)

---

 

## DISCIPLINARY GUIDELINES

You have 1 non-drug related infraction(s) [0-2 months each], which requires 0-2 months to be added to your base point score guideline range.

You have an aggregate disciplinary guideline range of 0-2 months, which is to be added to your base point score guideline range.

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

**Not Applicable**

## TOTAL GUIDELINE RANGE

| | | |
|---|---|---|
| 54 — 72 | Base Point Score Guideline Range | |
| 138 - 138 | Months Required to Serve to Parole Eligibility Date | |
| 0 — 2 | Disciplinary Guideline Range | |
| less 0 — 0 | Superior Program Achievement Award (if applicable) | |
| 192 - 212 | Total Guideline Range | |

| Base Point Score Guideline Range | | Points For BPS Item C | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0-3 | 4 | 5 + |
| 3 or less | 0 months | 26 & Up | 3 | 2 | |
| 4 | 12-18 months | | | | |
| 5 | 18-24 months | 22-25 | 1 | 0 | |
| 6 | 36-48 months | | | | |
| 7 | 54-72 months | 20-21 | 0 | 0 | |
| 8 | 72-96 months | | | | |
| 9 | 110-140 months | | | | |
| 10 | 136-172 months | 0-19 | 0 | 0 | 0 |

# MARTIN

# EXHIBIT    F8

# HEARING SUMMARY

**Name: Martin, Carlton**                                    **Reg No: 11400-007**

## Hearing Parameters

Hearing Format .............................: **In Person**

Hearing Type ...............................: **Reconsideration**

Hearing Date ...............................: March 22, 2006

Examiner.....................................: Rob Haworth

Institution....................................: Lee County USP

## Sentence Parameters

Sentence Type...............................: **DC Parole Eligible**

MR/Statutory Release..................: None

Full Term Date..............................: Life

Months in Custody........................: 171 as of 3/10/2006

Fines/Restitution/Assessment ......: None

Detainer.........................................: None

**Additional text regarding the above parameters:** None

## Prior Action & Institutional Factors

**Prior Action:** There is no current Prehearing Assessment in this case.

This prisoner is serving 4-12 years for Possession with Intent to Distribute Cocaine, 5-15 years for Possession of a Firearm during a Crime of Violence and 15 years to life for Manslaughter while Armed. The subject had an Initial Hearing 1/21/2003. During that hearing he admitted that he shot another man following an argument. He claimed the other man assaulted him first.

The subject was sent a NOA dated 2/13/2003 that denied parole and ordered a 3-Year Rehearing in January of 2006. The subject's total guideline range was computed to be 192-212 months. He had been in custody approximately 133 months at the time of his Initial Hearing.

**Codefendants:** None.

**Representative & Representative's Statement:** The subject was represented by Attorney Jason Wallach, 2101 L Street NW, Washington, DC 20037.

Mr. Wallach emphasized the prisoner's program accomplishments since the last hearing and suggested that he feels subject qualifies for Superior Program Achievement.
Mr. Wallach stated that he is familiar with a recent court decision from January, 2006. Fletcher v. US Parole Commission was decided by the court and shows that there is an expo facto issue in applying federal guidelines

**Martin, Carlton, Reg. No. 11400-007**                    **Page 1 of 4**

GOVERNMENT EXHIBIT



to DC Cases. Attorney Wallach stated that this particular case dealt with applying the federal reparole guidelines to a parole violator but he believes that the implications will carry over into other cases. He feels that if this subject had been considered under the DC Board of Parole guidelines he would have had a Point Score of 2 at his Initial Hearing and a Point Score of 1 at his Rehearing. Attorney Wallach believes that applying the federal DC guidelines to this subject does create a situation that is detrimental to the prisoner.

Attorney Wallach stated that DC Parole Law is setup so that the minimum term ordered by the court is considered to be appropriate accountability for the offense. Attorney Wallach stated that he realizes that the Parole Commission can consider other factors and go beyond the minimum term but he feels it is double counting to take the same factors that were considered by judge, put those factors into a Base Point Score and SFS come up with guidelines that are greater than the minimum term. Attorney Wallach believes that all of these things are unfairly detrimental to this subject.

Attorney Wallach emphasized subject's hard work in prison and believes that he has proven he is worthy of release. Parole was recommended by Attorney Wallach.

**Prisoner's Statement:** The subject expressed remorse for his mistakes in the past and indicated that he has tried to show what kind of person he is by his performance in prison. The subject feels ready for release and is very hopeful that he will be paroled.

**Discipline:** None.

**Program Achievement:** It was noted from the summary of the last hearing that this subject has been very active in programs almost his entire incarceration. That has continued in a significant way since his last hearing that was held on 1/21/2003. Since that hearing the subject has completed the following:

The subject completed the CODE Program 2/12/04. The CODE Program involves numerous Sub Programs and lasted for approximately 2 years.

The subject also completed Typing 4/2/04, Principles of Marketing and Economics 9/21/04, Introduction to Photography 9/22/04, Introduction to Spanish 6/29/04, Computer Technology 6/17/04, Seven Habits of Highly Affective People 2/4/04, Relapse Prevention 2/4/04, Principles of Real Estate 10/28/03, Corporate Law 10/27/03, Anger Management 10/6/03, Victim Impact 11/6/03, Criminal Lifestyles 11/1/03, Rationale Emotive Behavior 11/10/03, 40-Hour Drug Program 11/4/03, Breaking Barriers 5/15/03 and Psychology Group 12/16/03, 8/4/03 and 10/15/03.

In addition to the programs above this subject has consistently received excellent work reports from his job assignment in UNICOR. During the hearing he showed this examiner three letters signed by Warden Johnson commending him for his work in UNICOR and granting him a cash award. Those letters are dated 3/15/04, 11/23/05 and 12/8/05.

During the hearing Case Manager Osteen stated that this subject is a model prisoner. He is never a management problem and is an outstanding performer. Case Manager Osteen recommends parole.

This examiner is recommending Superior Program Achievement. It has been 38 months since the last hearing and this qualifies subject for 13 months of Superior Program Achievement. It is recommended that he receive that award.

**Martin, Carlton, Reg. No. 11400-007**                    **Page 2 of 4**



**Release Plans:** The subject plans to live at the home of his mother in Washington, DC. He can find employment.

**Guideline Parameters, Evaluation & Recommendation**

**Salient Factor Score:**
**Base Point Score:**

Guidelines in Effect: ....................................................192-212
Disciplinary Guideline SINCE Last Hearing:......................0-0
Superior Program Achievement SINCE Last Hearing: ..13-13
Total Guideline Range: ...............................................179-199

**Evaluation:** This prisoner has maintained an outstanding prison record during his entire incarceration. He has a list of program accomplishments that goes back many years before his Initial Hearing. His performance in prison is likely to be a good indicator that he is now a reduced risk to the community. His accomplishments are worthy of serious consideration.

The subject has served approximately 171 months. This examiner is recommending parole after 189 months, the middle of the guidelines. That should be sufficient accountability and punishment for the offenses and it carries with it recognition of this prisoner's accomplishments in custody.

**Recommendation:** Continue to a presumptive parole on 9/10/2007 after the service of 189 months.

**Conditions:** Special Drug Aftercare.

**Statutory Interim Hearing:** None.

**Guideline Use:** A departure from the guidelines at this consideration is not warranted.

**Additional Text:** There is no information in the Parole Examiner Packet or the Bureau of Prisons file that shows any contact on behalf of the victim.

[Signature]


JRH/PAH
March 26, 2006


**Executive Reviewer's Comments:** Denton 4/3/06

I disagree with setting a release date in this case. Subject was allowed to plead guilty to manslaughter while armed. Subject shot the victim in the head multiple times. There is no indication that they were arguing prior to the shooting. There is no reason given for the shooting in the official version and there is no witness information about what happened prior to the shooting. At the time of the PSI, subject stated that he and the

**Martin, Carlton, Reg. No. 11400-007**                    **Page 3 of 4**

victim had "words" all week and more words prior to the shooting. He stated that it was the *victim's* gun and that the victim pulled it out after the victim faked an attempt to hit subject with a cane. They began to "tussle" over the gun and the victim was shot. As indicated in previous summaries, since the victim was shot multiple times in the head, it is unlikely that the victim's death was unintentional. In a separate offense/conviction that is being considered at this hearing, subject was found in possession of drugs and a firearm. The examiner is recommending release after approximately 15.5 years. This is not sufficient accountability for the death of the victim in addition to possession of a firearm during a drug offense. It is recommended that subject have a rehearing in 36 months.

*REASONS:*

*A decision outside the guidelines is warranted because you are a more serious risk than indicated by the guidelines. You were involved in a shooting that resulted in the death of the victim. Although you stated that death was not the intended result, this is unlikely since the victim was shot multiple times in the head. In addition, while involved in a drug offense, you were in possession of a firearm. The guidelines do not take into consideration your possession of a second weapon. Your propensity to possess and use weapons makes you a serious threat to the community if released.*

# MARTIN

# EXHIBIT    F9

 

U.S. Department of Justice                          **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

Name: MARTIN, Carlton                    Institution: Lee County USP
Register Number: 11400-007
DCDC No: 248-984                         Date: April 12, 2006

---

As a result of the hearing conducted on March 22, 2006, the following action was ordered:

Deny parole. Continue to a Three-Year Rehearing in March 2009.


**REASONS**:

You have been in confinement as a result of your current offense behavior for a total of 171 months as of March 10, 2006. Your prior total guideline range is 192-212 months.

You have been granted a reduction of 13 months from your prior total guideline range for superior program achievement. This was granted because you have completed the following: CODE Program 02-12-2004, Typing 04-02-2004, Principles of Marketing and Economics 09-24-2004, Introduction to Photography 09-27-2004, Introduction to Spanish 09-29-2004, Computer Technology 06-17-2004, Seven Habits of Highly Affective People 02-04-2004, Relapse Prevention 02-04-2004, Principles of Real Estate 10-28-2003, Corporate Law 10-22-2003, Anger Management 10-06-2003, Victim Impact 11-06-2003, Criminal Lifestyles 11-01-2003, Rationale Emotive Behavior 11-10-2003, 40-Hour Drug Program 11-04-2003, Breaking Barriers 01-15-2003 and Psychology Group 12-16-2003, 08-04-2003 and 10-15-2003. In addition to the programs above you have consistently received excellent work reports from your job assignment in UNICOR.

Your new total guideline range is 179-199 months.

After consideration of all factors and information presented, a decision above the new total guideline range is warranted because you are a more serious risk than indicated by the guidelines. You were involved in a shooting that resulted in the death of the victim. Although you stated that death was not the intended result, this is unlikely since the victim was shot multiple times in the head. In addition, while involved in a drug offense, you were in possession of a firearm. The guidelines do not take into consideration your possession of a second weapon. Your propensity to possess and use weapons makes you a serious threat to the community if released.


THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2070
       Washington, D.C. 20001

---

Martin 11400-007                          -1-                     Clerk: AD(
Queued: 04-12-2006 11:23:23 BOP-Lee County USP |

