# SWINTON

# EXHIBIT   G1



```
5H     PAR5C  540*23 *         SENTENCE MONITORING        *    10-19-2006
  PAGE 001          *          COMPUTATION DATA           *    14:52:18
                               AS OF 10-19-2006


REGNO..: 48752-053 NAME: SWINTON, DARU


FBI NO...........: 240002FB5          DATE OF BIRTH:        1978
ARS1.............: LEW/A-DES
UNIT.............: UNIT 3             QUARTERS.....: H01-111L
DETAINERS........: NO                 NOTIFICATIONS: NO

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

REMARKS........: NONE

--------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION..........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER..................: F9125-97
JUDGE..........................: MILLIKEN
DATE SENTENCED/PROBATION IMPOSED: 05-08-1998
DATE WARRANT ISSUED............: N/A
DATE WARRANT EXECUTED..........: N/A
DATE COMMITTED.................: 05-30-2002
HOW COMMITTED..................: DC SUPERIOR COURT COMT
PROBATION IMPOSED..............: NO
SPECIAL PAROLE TERM............:

                FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.: $00.00         $00.00          $00.00        $200.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO     AMOUNT:  $00.00

--------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....:  644
OFF/CHG: DC CODE:  T 22-2901,3202; ARMED ROBBERY & T 22-103, ATTEMPTED
         KIDNAPPING.

SENTENCE PROCEDURE.............: DC OMNIBUS ADULT SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: LIFE
MINIMUM TERM...................:     5 YEARS      20 MONTHS
DC MANDATORY MINIMUM TERM......:     2 YEARS
DATE OF OFFENSE................: 06-19-1996


5H
G0002        MORE PAGES TO FOLLOW . . .
```


GOVERNMENT EXHIBIT 4

```
5H     PAR5C  540*23 *          SENTENCE MONITORING        *    *    10-19-2006
PAGE 002 OF 002 *              COMPUTATION DATA        *      14:52:18
                               AS OF 10-19-2006
```

REGNO..: 48752-053 NAME: SWINTON, DARU


------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 07-16-2002 AT LEW AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 05-08-1998
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
EARLIEST DATE OF OFFENSE........: 06-19-1996

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     11-20-1997     05-07-1998

TOTAL JAIL CREDIT TIME..........: 169
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 0
TOTAL SGT POSSIBLE..............: 0
PAROLE ELIGIBILITY..............: 07-22-2004
STATUTORY RELEASE DATE..........: N/A
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: N/A
EXPIRATION FULL TERM DATE.......: LIFE

NEXT PAROLE HEARING DATE........: 12-00-2006
TYPE OF HEARING.................: DC CODE OFFENDER REHEARING

PROJECTED SATISFACTION DATE.....: N/A
PROJECTED SATISFACTION METHOD...: LIFE
```

S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

# SWINTON

# EXHIBIT   G2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA  *275-593*

United States of America
District of Columbia

DARY vs. SWINTON

*13* **RETURN TO JAIL**
DATE *5-8-98*

Case No. *F9125-97*
No. *499-14*

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☒ Guilty to the Charge(s) of
*C+F' Armed Robbery*
*C+S' Attempted Kidnapping*
and having been found guilty by ☐ Jury ☒ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to *Count F*
*Count F' 5 years to Life; As to C+S' 20 (twenty)*
*month to 5 years the Cts to run consecutively*

☒ MANDATORY MINIMUM term of *C+F' 2 yrs* _____ applies to the sentence imposed.
☒ MANDATORY MINIMUM term does not apply.

☒ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

  ☐ Observe the general conditions of probation listed on the back of this order.

  ☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

  ☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows:

  ☐ Restitution of $_____ in monthly installments of $_____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____

  ☐ _____

Costs in the aggregate amount of $ *100.00* have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☒ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment order for the defendant.

*5-8-98*
Date

*The Hon.* Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

*5-8-97*
Date

Deputy Clerk

GOVERNMENT EXHIBIT

# SWINTON

# EXHIBIT   G3

● ●

**RECEIVED**

MAY 4 1998

Chambers of
Judge Stephen G. Milliken

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION - ADULT BRANCH

**PRESENTENCE REPORT**

|  |  |
|---|---|
| | PDID No.: 499-141 |
| | Docket No.: F9125-97F,S |
| Re: Daru Swinton | Date Referred: 3/17/98 |
| To: The Honorable Stephen G. Milliken | Date Due: 5/4/98 |
| From: Probation Officer James Frank | Sentencing Date: 5/8/98 |

---

**Defendant Information:**
**True Name:** Daru Jarard Swinton

**Address:** 209-45 110th Avenue, Queens Village, New York City, New York 11249
**Tel. #:** (718) 776-3643

Aliases: N/A

| | | |
|---|---|---|
| Age/Birthdate: '78 | Sex: Male | Birthplace: Queens, NY |
| Time in D.C. Area: 8 Months | | Citizenship: U.S.  Alien No.: N/A |
| Marital Status: Single   Dependents: 0 | | Education: 10th Grade |
| Social Security No.: | | Permit No.: N/A |
| DCDC No.: 275-293 | | FBI No.: 240  002  FB5 |

---

**Offense, Code and Penalty:** Armed Robbery; 22-2901, 3202; Two Years to Life.  Attempted Kidnapping; 22-103; Up to Five Years and/or $5,000.

**Plea:** Guilty   **Judgment:** Guilty       **Bond Status:** No Bond.

**Detainers or Pending Charges:** See Criminal Arrest Record.

**Co-defendants:**
| | | |
|---|---|---|
| None | (Dkt No.): N/A | (Status): N/A |
| | (Dkt No.): | (Status): |

**AUSA:** Latrell Osborne       **Telephone:** (202) 514-7437

**Defense Counsel:** Tanya Chupkan       **Telephone:** (202) 882-6940

"In accordance with the U.S. Parole Commission and Reorga
Public Law 94-233, dated March 15, 1976 this report is d
inmates in federal institutions for purposes of parole co



2

**CONTACTS:**

| | | |
|---|---|---|
| 4/21/98 | Set appointment with defendant at CTF. |
| 4/22/98 | Jail visit to CTF, defendant moved to D.C. Jail. |
| 4/27/98 | Jail visit at D.C. Jail. |
| 4/28/98 | Telephone contact with defendant's mother. |
| | Telephone contact with New York Probation. |
| | Telephone contact with AUSA Osborne. |
| 4-28-98 | Telephone contact with Queen's County, N.Y. Probation. |
| 4-29-98 | Telephone contact with Queen's County Supreme Court. |
| 4-30-98 | Telephone contact with Queen's County Probation. |
| 5-1-98 | Telephone contact with Queen's County, N.Y. Court. |

**OFFICIAL VERSION:**

The Affidavit in Support of an Arrest Warrant states that the complainant reported that on 9/19/96, she and her two children went to the PTA Meeting at Leckie Elementary School. They parked their sports utility truck in the area of 2nd Street and Martin Luther King Avenue, SE. At approximately 8:00 p.m., they returned to their vehicle. Both children observed the defendant in the rear cargo area of the vehicle displaying a handgun. The complainant noticed the defendant in the rearview mirror. The defendant stated, "Don't say anything. I need help. I need $2,000.00 to get my father out of jail." The defendant asked the complainant for her ATM Card. The complainant was ordered to drive to Riggs Bank at South Capitol and Chesapeake Street, SE. The ATM at this location was broken. The complainant was then ordered to drive to Nations Bank located at South Capitol Street, SE. At this location, the complainant was ordered to withdraw funds totalling $251.22 from the ATM. The suspect waited in the vehicle. The complainant tried to summon help from other customers, but was unsuccessful. The complainant returned to the vehicle and gave the suspect the money. The defendant replied, "This is not enough." The complainant replied that she could have another $500.00 after midnight due to direct deposit. The defendant stated that he would wait. At approximately 10:00 p.m., the defendant ordered the complainant to drive to a isolated area in Prince George's County, Maryland.

3

At 12 midnight, the defendant ordered the complainant to drive to Rivertowne Shopping Center in Prince George's County, Maryland. The complainant was only able to withdraw $61.00 from Chevy Chase Bank and gave the funds to the defendant. In the same shopping center, at First Union Bank, the complainant was ordered to withdraw $500.00 from the ATM. The funds were obtained and given to the defendant. The complainant was then ordered to drive back into Washington, DC in the area of 2nd Street and Martin Luther King Avenue. At this location, the defendant exited the vehicle and fled with the complainant's funds and cellular phone. The complainant drove to 7-Eleven and contacted the Prince George's County Police.

An investigation revealed that the defendant used the complainant's cellular phone and made calls to New York City. It was learned that the person at one of the numbers knew the defendant and remembered the defendant called the night of the offense. This individual also stated that the defendant had a relative stationed at Bolling Air Force Base. The source of contact verified that the defendant was staying on base and the defendant returned to New York City on 9/21/96. The defendant was detained at the New York City Police Department.

On 12/12/96, the complainant viewed a photo array containing the suspect. The complainant stated, "If I had to choose one, it would be number 5." Viewing separately, the complainant's five year old child stated, "This one, real sure", as she picked number five.

## DEFENDANT'S VERSION:

"I was walking up from Bolling Air Force Base and saw this lady get out of her car by a school and leave her two kids in the car. She went into the school. I got into the car. When she came back, I told her to take me to the ATM to get some money. I had a BB gun. I guess she thought it was a real gun. She got me about $250 or so and said she could get some more money later. We waited 'til after midnight and got 500 or so dollars. I got her to drop me off near the Base."

## PRIOR CRIMINAL RECORD:

Adult:
Brooklyn, New York:

| 5-30-96 | Burglary 2 96Q022700 | Dismissed | NYPro |
|---|---|---|---|
| | Criminal Trespass 2 | " | " |
| | Petit Larceny | " | " |

4

| | | | |
|---|---|---|---|
| | Criminal Poss. of Stolen Property | Dismissed | NYPro |
| | Criminal Trespass | 3 yrs Probation Youthful Offender | " |
| 9-26-96 | Criminal Possession of of a Weapon 3450-96 | Unable to ascertain sentence. | FBI & NY HCB |
| | Resisting Arrest | Dismissed | " |

**Washington, DC:**

| | | | |
|---|---|---|---|
| 9/19/96 | Armed Robbery **F9125-97A** | Indicted / Closed 12/3/97. | DCSC |
| | Armed Kidnapping **Ct. B** | PLIO | " |
| | Armed Kidnapping **Cts. C,D** | To be dismissed at sentencing. | " |
| | Possession of a Firearm during a Crime of Violence **Cts. E,G,N,Q** | To be dismissed at sentencing. | DCSC |
| | Armed Robbery **Cts. F** | **INSTANT OFFENSE** | " |
| | Threats to Injure a Person **Cts. H,I,J** | To be dismissed at sentencing. | " |
| | ADW - Gun **Cts. K,L,M** | "   "   " | " |
| | Carrying a Dangerous Weapon **Ct. O,R** | "   "   " | " |
| | Attempt Kidnapping **Ct. S** | **INSTANT OFFENSE** | " |

**PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:**

The defendant was incarcerated at the D.C. Jail during the predisposition phase. He was interviewed on 4-27-98.

5

N.Y. Probation records reflect that the defendant has two prior arrests. He was first arrested on 5-30-96 for Criminal Trespass. A presentence report by N.Y. Probation reflect that this case involved the defendant breaking into his mother's home. He was placed on three years of probation as a Youthful Offender. He was subsequently arrested on 9-26-96 for Criminal Possession of a Weapon and Resisting Arrest. Despite numerous attempts to obtain the sentence in this case, this writer was not able to secure the sentence. This despite the fact that a copy of the presentence investigation in second arrest was obtained. It appears that the defendant was serving a sentence at Rykers Island, N.Y. before being picked up and brought to D.C. to face charges in the Instant Offense. The defendant reports that he was sentenced to nine months in the gun charge.

**EMPLOYMENT HISTORY:**

The defendant reports that he was working for RGIS Inventory at 71st Avenue & Continental Avenue in Queens, New York, prior to his incarceration on 2/13/97. The defendant reports he was employed for approximately two months before his incarceration. In a conversation with the defendant's mother, she reported that she would fax verification of his employment with RGIS and also with Toys 'R Us. The defendant indicated he worked from December, 1996 until January, 1997 at Toys 'R Us located on Jamaica Avenue in Queens, New York.

The defendant reports his longest period of employment in the past five years was two weeks worth of work in 1996 at Bolling Air Force Base in Washington, DC. The defendant reports that he worked as an office mover and car "detailer" for Chief Petty Officer Charles. The defendant's mother reports that Chief Charles is believed to be in the New York City area and attempts to locate him for verification of the defendant's employment are being attempted by the family.

**SOCIAL HISTORY:**
**Source(s) of Verification:** Defendant; Defendant's Mother; Pre-Trial Services Administration Records, Prior PSI.

**FAMILY HISTORY:**

The defendant is the younger of two children born to and The defendant was raised by his parents until their separation when he was approximately eight years old. The defendant resided exclusively with his mother after the separation. His father provided little financial support for the family. The defendant's mother worked for the New York Housing Authority and was contacted at . The defendant's father, is a truck driver.

6

The defendant reports that his childhood was a pleasant experience until the time that his parents separated. His older brother,                 served in the Navy until February, 1998. The defendant was visiting his brother at Bolling Air Force Base at the time of the Instant Offense.

The defendant reported that his mother kicked him out of the house at age 17 for misbehaving and allowed him to return, only to kick him out of the house again at age 18. The defendant's mother reports that she had helped the defendant secure his own residence around the corner from the family home. She also reported that she had the defendant stay with a cousin in North Carolina and also with her twin sister,              for approximately three weeks before his incarceration. She subsequently reports the defendant had a number of difficulties with his stepfather and believed that much of the tension resulted from his biological father trying to "drive a wedge" between the defendant and his stepfather.

## EDUCATION/TRAINING:

The defendant reports he completed the 10th grade in Jamaica High School in Queens, New York. He reports that he dropped out of school because he was told that he would not have enough credits to graduate until he was approximately 21 years of age. The defendant subsequently entered a GED Program and reports that he was involved in this at the time of the Instant Offense. The defendant's mother indicated she would attempt to provide verification of the defendant's GED Program.

The defendant reports that he has employment skills dealing with inventory and also has learned car detailing skills.

The defendant's mother reports the defendant had entered the Job Corps, but that he only stayed a short period of time. The presentence report completed in N.Y. indicates that the defendant had a number of discipline problems when in the Job Corps. The defendant failed to mention any aspect of his experience in the Job Corps to this writer.

## MILITARY:

The defendant has not registered for the military, but was advised of the law.

7

## MARITAL STATUS AND LIVING ARRANGEMENTS:

The defendant reports that he was last living with his aunt, , in Queens N.Y. prior to his incarceration. He listed his aunt's phone number as                        He reported that he had not resided in his mother's home for approximately two years due to difficulties. The defendant's mother indicated that the defendant had not been out of her house for any extended period of time. She reported that she had secured an apartment in the city of her home and had placed the defendant with various relatives during his difficult time but she maintained that the defendant had stayed mostly with her. Her statements are somewhat contradicted by the defendant's own statements and the fact that the defendant was arrested in May of 1996 for breaking into his mother's house.

## FINANCIAL STATUS:

The defendant reports he has no outstanding assets or debts.

## HEALTH:

The defendant reports that his physical health is satisfactory.

The defendant reports that he has no history of mental health intervention. However, the defendant's mother reports that she had the defendant diagnosed on three or four occasions. She indicates that the defendant had been traumatized by the separation from his biological father and attributes many of his difficulties on this separation. The defendant's mother indicated that several of these diagnoses reported the defendant to be "fine." However, she indicated the defendant was last seen by a Dr. Jones. The defendant reported that although a diagnosis has not yet been given for the defendant's situation, Dr. Jones had recommended that the defendant be seen twice a week. The defendant's mother also reports that the defendant had been receiving counseling when he was in school.

## SUBSTANCE USE/ABUSE:

The defendant reports that he was drinking alcohol approximately once per month prior to his incarceration. He reports he first drank alcohol at the age of 17. The defendant also reports he was using marijuana approximately three times a month since the age of 15. The defendant denied the use of all other drugs. When asked about her son's use of drugs and alcohol, his mother reported, "Never."

8

There are no Pretrial Services drug test results for this defendant.

**EVALUATION AND DIAGNOSIS:**

Daru Swinton is before the Court having pled guilty to **Armed Robbery** and **Attempted Kidnapping** in F9125-97F,S. The Instant Offenses represent the defendant's second conviction as an adult. Apparently, the defendant was serving a nine month sentence in Rykers Island, New York for **Criminal Possession of a Weapon** at the time that he was arrested in the Instant Offense. He was previously placed on probation in N.Y. for Criminal Trespass in an incident which was described as a break-in at his mother's home. The defendant admits his participation in the Instant Offense. However, the defendant did not express any remorse towards the victims in the Instant Offense and his only mention of them was in his version of the Instant Offense.

Daru Swinton is a 20 year old resident of Queens, New York, who has been incarcerated during the predisposition phase. The defendant appears to come from a home in which his mother tried to instill strong work values and religious resolve. It appears that the defendant had some difficulty in adjusting in that home environment. The defendant is a high school drop-out with limited skills, who, according to the defendant and his mother, was attempting to secure a GED and was working at the time prior to his incarceration. The defendant's mother expressed the belief that the defendant's problems are based on his separation from his biological father. Drugs and alcohol do not appear to be a significant factor in the defendant's lifestyle nor in the Instant Offense.

Based on the heinous nature of the Instant Offense, this defendant has clearly proven to be a serious threat to the community. While no Victim Impact Statement has been requested in this case, the suffering and trauma associated with this crime must be considered. It is believed that retribution is required in a case like this.

The defendant is not eligible for the Urban Services Boot Camp based on the nature of the Instant Offense. Sentencing under the Youth Act is not seen as appropriate based on the fact that the defendant was previously sentenced as a Youthful Offender in New York and subsequently had a gun offense in that jurisdiction in addition to the Instant Offense.

9

**TREATMENT PLAN:**

     1.    Continued education.

     2.    Vocational training.

     3.    Drug education.

10

**RECOMMENDATION:**

Incarceration.

Respectfully submitted,

James Frank
Probation Officer
508-1907

Approved by: _____
Curtis Sessoms
Supervisory Probation Officer
508-1772

JF

# SWINTON

# EXHIBIT   G4



# HEARING SUMMARY

**Name: Swinton, Daru**                                    **Reg No: 48752-053**

**Hearing Parameters**

    Hearing Type ................................: **Initial**

    Hearing Date ................................: 12/2/03

    Examiner.......................................: Jacqueline R.D. Wynn

    Institution ......................................: Lewisburg USP

**Sentence Parameters**

    Sentence Type...............................: **DC Parole Eligible**

    MR/Statutory Release ...................: Life

    Full Term Date..............................: Life

    Months in Custody.......................:  as of

    Fines/Restitution/Assessment ......: $200, the subject has paid $75 towards his court financial obligation.

    Detainer.......................................: None

**Additional text regarding the above parameters:** None.

---

**Prior Action & Institutional Factors**

**Prior Action:** See Prehearing Assessment dated 11/19/03.

**Codefendants:** None.

**Representative & Representative's Statement:** The subject's mother appeared as his representative her name is Debra Swinton Pullium at 209-45 110th Avenue, Queens Village, NY 11429. Phone number (718) 776-3643. Ms. Pullium indicated that she sent the subject to DC to live with her son. The subject had been expelled from her home because of the conflicts that he was having with her new husband. She feels that the subject was feeling misplaced and alone and may have been the result of his involving himself in criminal activity. Additionally, the subject had been placed on probation for breaking back into his mother's home having been put out.

She indicated that since his involvement in the current offense and prior to that he has made amends with his stepfather and he is welcome in the home.

The mother indicated that when subject was arrested in New York she had established housing for him by arranging for a room in a boarding house. She stated that her son was employed holding two jobs and also involved in GED Classes. She stated that he appeared to have gotten his life in order and was moving in the right direction when taken into custody on the Bench Warrant for the base offense.
Subject's mother indicated that when he came into custody he was an angry young man but that ███ and matured significantly since coming into custody in 1997. The mother also provided this exa███ several letters from family members and also from a community person who is prepared to offe███

GOVERNMENT
EXHIBIT



job with the Osborne Association, this Brian McKinsey who is also a cousin by marriage. He looks for job Readiness Customer Service Program. The mission of the program is to assist ex-offenders make a successful transition from prison back into society. He can arrange for Mr. Swinton's participation in this program at such time that he's considered for release.

**Prisoner's Statement:** The subject admits to committing the current offenses. At the time the Presentence Report was done he indicated that he committed the offenses because his father was in jail and needed a certain amount of money in order to post bond.

At today's hearing the subject indicated that he was in DC living with his brother. He was having some problems with the brother's girlfriend and felt unwanted. He stated that he had no place to go. He stated that before leaving New York had burned the bridges with his family members in New York. He stated that he had been put out of the home by his mother and was on probation for trespassing. He forcibly entered his mother's home.

The subject indicated that he was in DC without a place to stay in his mind and no money. He had two summer jobs that had expired. This offense occurred in September. With the monies that he took during the robbery carjacking he returned to New York. He stated that he was in a boarding house. According to his mother the monies that he took in the robbery in DC was taken from him at a boarding house in New York.

The subject indicated that he was arrested standing at a bus stop by police officers who stated that he fit the description of someone that had committed an offense. At the time of his arrest he had a gun in his possession and was so charged with that offense. According to the Presentence and confirmed by the subject after he made this above statement, he was using the cell phone taken in the DC robbery and was identified and arrested had been traced via the telephone. The subject acknowledges that he was using the phone taken in the carjacking robbery in DC.

The subject entered a plea of guilty and was sentenced to 6 years 8 months. The subject according to the Judgment and Commitment Order was sentenced to 5 years to life for armed robbery and 20 months to 5 years consecutive for attempted kidnapping. The counts were ordered to run consecutively which results in an aggregate 80 months to life sentence.

## Disciplinary Infractions

**No. 1 - BOP Incident Report No. 1064714.**
    **Description of Behavior:** Possession of a Weapon.
    **Prisoner's Response:** The subject indicated that on 1/13/03 he was found in possession of a tube of toothpaste, a box containing a tube of toothpaste. Inside the toothpaste was a sharp instrument 5 ½ inches long. The subject stated that he three days prior to the incident found a tube of toothpaste in the shower room. He took the toothpaste with him to his housing unit and asked if anyone had left the toothpaste in the shower. No one took responsibility for the toothpaste and he kept it in his room. During a routine shake-down this tube of toothpaste was found in his possession. He was so charged with the infraction.
    **Findings of Fact:** This examiner finds that the subject violated the rules of the institution as indicated in the above violation.
    **Basis:** The subject's admission and the DHO finding on 1/22/03.
    **Severity:** Category Three because it involved Possession of a Weapon in a Prison Facility.



**Rescission Guideline:  12-16 months.**

**Program Achievement:**  Since subject's been in custody he has done outstandingly well from an institutional achievement standpoint. He earned his GED in 1999 while housed at Sussex. The subject also completed an Intensive Counseling Program of 12 months called Life Skills while housed at the Sussex Facility. Since being transferred to this institution he has continued to participate in programs. He's currently involved in the CODE Program and maintains a work assignment.

**Release Plans:**  Upon release the subject plans to return to New York and live with his mother in her home.

**Guideline Parameters, Evaluation & Recommendation**

**Salient Factor Score:**  5.
**Base Point Score:**     5.

Base Point Score Guideline Range: .......................................-
Months to Parole Eligibility Date: ...................................80-80
Disciplinary Guideline SINCE Last Hearing:..................12-16
Superior Program Achievement SINCE Last Hearing: ......8-8
Total Guideline Range: ...............................................102-112

**Evaluation:**  The subject has appeared for an Initial Hearing on this 80 month to life term for the offense of armed robbery and attempt kidnapping. This is a charge originally an armed carjacking offense. He was allowed to plead guilty to lesser offenses of armed robbery and attempted kidnapping. The subject has been in continuous custody for the offense behavior since August 1997. According to the subject he was arrested in the State of New York sentenced to 9 months for possession of a gun. He served the mandatory portion of that sentence which was 6 months. After serving the 6 months he was held custody in New York pending his extradition back to Washington, DC to respond to the base offense. Accordingly, this examiner gives subject credit for being in custody from 8/27/97 to today's date. This represents 84 months in custody as of 12/2/03. The subject has a total guideline range of 102 months to 112 months. He's been in continuous custody 84 months as of today's hearing. This examiner will recommend an above the guideline decision of rehearing in 36 months. An above the guideline decision is recommended because of subject's ongoing possession of weapons as demonstrated by the infraction that he suffered in January of 2003. He had a sharpened object hidden in a tube of toothpaste in his possession and was sanctioned for that by the Bureau of Prisons. Additionally, he used a gun, which he describes as a B-B gun when he committed the current offense. After committing the current offense he went to the State of New York where he was arrested with the gun in his possession and convicted of the same. These charges are not captured in the offense behavior but would suggest that the subject is a more serious risk than his score would indicate by virtue of his ongoing involvement in possession of prohibited weapons. Accordingly, this examiner would recommend an above the guideline decision of a rehearing in 36 months. This is 8 months above the top of the guidelines. If it is that subject is able to remain free of disciplinary infractions and continue to involve himself in institutional programs it is recommended that he be considered favorably for release to a New York plan.
**Recommendation:**  Continue to a 3-Year Reconsideration Hearing in December 2003.

**Conditions:**

**Statutory Interim Hearing:**



**Guideline Use:** A decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that you continue to possess dangerous weapons. This is your third conviction for possession of prohibited weapon. The current offense involved you using a gun during the commission of a hijacking of a carjacking. You traveled into New York where you were arrested with a gun in your possession and so charged in the State of New York and sentenced to 9 months. In January of 2003 you were charged with possession of a weapon (shank) while housed here at Lewisburg. This represents your third conviction for possession of a weapon making you a more serious risk than indicated by your score.

**Additional Text:**

**Executive Reviewer's Comments:** Pinner: 12/12/03: Prior to making a recommendation in this case, I believe the Commission should obtain additional information on the offense behavior and the victim impact. The Presentence Report states that the S. was in the car when the victim and her two children entered the car. There is no information as to whether the children remained in the car during the 4-hour ordeal of kidnapping and robbery. I note that S's eligiblity date is not until 07-22-04.

I also note that S's conviction in NY State is countable; however, the commitment would not be, since it was for an offense that occurred after the instant offense.

REASON: To obtain additional information concerning your offense of conviction.

PLEASE SEND THE FOLLOWING LETTER TO THE U.S. ATTORNEY, DISTRICT OF COLUMBIA, SUPERIOR COURT;

The above-referenced inmate was sentenced on 05/08/98 to a Life term for the offense of Armed Robbery and Attempted Kidnapping. He has applied for parole consideration and prior to rendering a decision; the U.S. Parole Commission is requesting additional information regarding the details of the offense behavior. Specifically, were the two children in the car throughout this 4-hour kidnapping and armed robbery? Also, was a victim impact statement prepared in this case? If it was, please forward a copy along with your response.

Your prompt response is greatly appreciated.

Sincerely

JRW/PAH
December 7, 2003

# SWINTON

# EXHIBIT   G5

U.S. Department of Justice
Federal Bureau of Prisons

Incident Report    154714    130

## 1. NAME OF INSTITUTION

U.S.P. Lewisburg

## PART I – INCIDENT REPORT

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| Swinton, Daru | 48752-053 | 1-13-03 | 8:30am |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT | |
|---|---|---|---|
| Cell 314 on E-Block | Auto Heat | Unit 3 | |

| 9. INCIDENT | 10. CODE |
|---|---|
| Possession of a sharpened instrument | 104 |

11. DESCRIPTION OF INCIDENT (Date: 1/13/03 Time: 8:30AM if became aware of incident)

On the above date, while conducting a shakedown of cell 314 on E-block, this officer found a sharpened instrument. The "shank" was located inside a tube of toothpaste, which was inside a locked locker belonging to inmate Swinton, Daru #48752-053. The "shank" was approximately 5½" inches in length and rod-shaped. The "shank" appeared to be from a Food Service food storage rack.

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|
| M Eding— | 1/13/03   12:30pm | Matthew Edinger, Intel. Ofc. |

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|
| P. Vall | 1-13-03 | 6:00pm |

## PART II – COMMITTEE ACTION

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT

After advising inmate Swinton of his rights he made the following statement.
    "No comment"

18. A. ☐ IT IS THE FINDING OF THE COMMITTEE THAT YOU:
    ☐ COMMITTED THE FOLLOWING PROHIBITED ACT.

    ☐ DID NOT COMMIT A PROHIBITED ACT.

B. ✓ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.
C. ☐ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDER DAYS.

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION

The UDC find enough evidence to refer this report to the DHO for greater sanction are available at the UDC level.

20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON FINDING INMATE COMMITTED PROHIBITED ACT)

The UDC recommend the maximun sanction by the DHO we believe this will deter and or control environment.

GOVERNMENT EXHIBIT E

PART II – INVESTIGATION 

| 22. DATE AND TIME INVESTI-GATION BEGAN |
| --- |
| 01/13/03 6:00PM |

23. INMATE ADVISED OF RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE INSTITUTIONAL DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

THE INMATE WAS ADVISED OF THE ABOVE RIGHT BY  P.KAHLER ACT.LT.         AT (DATE/TIME)  01/13/03 6:00PM

24. INMATE STATEMENT AND ATTITUDE

INMATE SWINTON #48752-053 WAS ADVISED OF HIS RIGHTS AND GIVEN COPY OF THE REPORT.

INMATE SWINTON REFUSED TO MAKE A STATEMENT ON THIS REPORT.

POOR ATTITUDE.

25. OTHER FACTS ABOUT THE INCIDENT, STATEMENTS OF THOSE PERSONS PRESENT AT SCENE, DISPOSITION OF EVIDENCE, ETC.)

SEE ATTACHED PHOTOS BY M.EDINGER.

26. INVESTIGATOR'S COMMENTS AND CONCLUSIONS

BASED ON THE INFORMATION IN SECTION 11 BY THE REPORTING OFFICER ALONG WITH THE

ATTACHED PHOTOS I FIND THIS REPORT JUSTIFIED AND WARRENTED.

27. ACTION TAKEN

REFERRED TO U.D.C.

DATE AND TIME INVESTIGATION COMPLETED: 01/13/03 6:05PM

PRINTED NAME/SIGNATURE OF INVESTIGATOR:                    P.KAHLER
                                                                         PRINTED NAME

                                                            ACT.LT.



The tube of toothpaste that contained the 5 ½" inch sharpened instrument that belonged to inmate Swinton, Daru #48752-053, in cell 314 on E-block.

Photo by M. Edinger     *Edinger*           Date: 1/13/03



The 5 ½" inch sharpened instrument found inside a tube of toothpaste, which was in a locked locker belonging to inmate Swinton, Daru #48752-053, in cell 314 on E-block.

Photo by M. Edinger          Date: 1/13/03



A 5 ½" inch sharpened instrument found inside a tube of toothpaste, which was in a locked locker belonging to inmate Swinton, Daru #48752-053, in cell 314 on E-block.

Photo by M. Edinger    *[signature]*        Date: 1/13/03

# SWINTON

# EXHIBIT    G6

# U.S. DEPARTMENT OF JUSTICE
## United States Parole Commission

### D.C. ORDER
### HEARING/RECONSIDERATION HEARING
2, 2001

SWINTON, DARU

N: 48752-053      PR002400      : _____

R: DC INITIAL    LEWLEW 12/1/2003

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action with regard to parole, parole status, or mandatory release status is hereby ordered:

Parole effective _____ OR Continue to a presumptive parole_____ after the service of _____ months (with the special condition for): _____ Drug Aftercare _____ Alcohol Aftercare    (Other - specify)_____.

Continue to expiration (with the special condition for): _____ Drug Aftercare _____ Alcohol Aftercare (Other - specify)_____.

Continue for a reconsideration hearing in **12/06** after service of **36** months from your hearing date of **12/2/03**.                                        12/2/03

_DEFER DECISION UP TO 90 DAYS IN ORDER TO OBTAIN ADDITIONAL INFORMATION._

REASONS: SEE "COMMENTS" OF
          EAP.
                                        _____ 12/15/03
                                        Joseph M Pachilhi 12/18/03
                                        John R. Simpson 12/19/003
                                        Vincent J Michell 12-19-03

District of Release: _____ DC _____ MD _____ VAE _____ Other (specify)_____
Revised: May 1, 2001

GOVERNMENT EXHIBIT

# SWINTON

# EXHIBIT   G7



U.S. Department of Justice                              **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

Name:  SWINTON, Daru                        Institution:  Lewisburg USP
Register Number:  48752-053
DCDC No:  275-293                           Date:      December 23, 2003

In the case of the above-named, the following parole action was ordered:

Defer decision for up to 90 days in order for the U.S. Parole Commission to obtain additional information.

**REASONS:**

To obtain additional information concerning your offense of conviction.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2109
       Washington, D.C.  20001

# SWINTON

# EXHIBIT    G8

# Memorandum

 

| Subject | Date |
|---|---|
| Swinton, Daru 48752-053 | February 24, 2004 |

| To | |
|---|---|
| File | Stephen J. Husk<br>Case Operations Administrator<br>U.S. Parole Commission |

Note that, per Notice of Action dated 1/22/2004, the Commission denied parole and ordered a reconsideration hearing in December 2006. This was the most adverse action allowable under 28 C.F.R §2.75.

Notwithstanding this decision, the Commission advised the subject in its Notice of Action that it was seeking additional information about the specific details of the offense. On 2/4/2004, a letter was sent under my signature to the U.S. Attorney's Office re: specific details of the offense behavior as well as a victim impact statement.

Effective this date (2/24/04), we have received two additional pieces of information. One is the Superior Court Judge's findings of fact and conclusions of law for purposes of ordering detention pending trial. In this, the judge clearly outlines the circumstances of the offense (See especially paragraphs 3 and 4). In addition, the Commission has received the Statement of Victim as given to the PG County Police Department on 9/20/96. This also provides a clear statement of what happened and its impact on she and her children.

This information has been placed in Section II of the file before the Presentence Report. It does not impact the guidelines for this offender. However, it may contain information that could be used as aggravating factors at the reconsideration hearing in 2006. If, in his parole application, Swinton requests that file information be disclosed to him in advance of his reconsideration hearing, this new information should be disclosed to him. However, any information relative to the victim's address and phone number should be redacted before being disclosed to him.



02/24/04

  

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

_5550 Friendship Boulevard_
_Chevy Chase, Maryland 20815-7201_

_Telephone: (301) 492-5990_
_Facsimile: (301) 492-5307_

February 4, 2004

Mr. Roscoe C. Howard, Jr.
U.S. Attorney
District of Columbia
Superior Court

Re:     Daru Swinton
        Reg.# 48752-053

        The above-referenced inmate was sentenced on 05/08/98 to a Life term for the offense of Armed Robbery and Attempted Kidnapping. He has applied for parole consideration and prior to rendering a decision; the U.S. Parole Commission is requesting additional information regarding the details of the offense behavior. Specifically, were the two children in the car throughout this 4-hour Kidnapping and armed robbery? Also, was a victim impact statement prepared in this case? If it was, please forward a copy along with your response.

        Your prompt response is greatly appreciated.

                                        Sincerely,

                                        Stephen J. Husk
                                        Case Operations Administrator
                                        U.S. Parole Commission

SJH/kap/kdd

# SWINTON

# EXHIBIT   G9

 

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

Name: SWINTON, Daru
Register Number: 48752-053
DCDC No: 275-293

Institution: Lewisburg FPC

Date:    January 22, 2004

In the case of the above-named, the following parole action was ordered:

Deny parole. Continue to a Three-Year Reconsideration Hearing in December 2006.

(NOTE: The U.S. Parole Commission is seeking additional information about the specific details of your offense behavior from the U.S. Attorney's Office. If additional information is received it will be disclosed to you prior to your next hearing.)

**REASONS:**

Your Total Guideline Range is 102-112 month(s). See the attached sheet for the components that make up your Total Guideline Range. These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 73 months as of 12-20-2003.

After consideration of all factors and information presented, a decision outside the Total Guideline Range at this consideration is not found warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Sharon Barnes-Durbin, SCSA
       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2149
       Washington, D.C. 20001

GOVERNMENT EXHIBIT 7



## SALIENT FACTOR SCORE (SFS-98)

**Your Pts**    **Salient Factor Score (SFS-98) Item Explanations**

2    **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0

2    **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0

0    **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation)

1    **D** - Recent commitment free period (three years)
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

0    **E** - Probation/parole/confinement/escape status violator this time
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

0    **F** - Older offenders
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0

5    **Salient Factor Score (SFS-98)** (sum of points for A-F above)

### BASE POINT SCORE

**Your Pts**    **Base Point Score Category Explanations**

2    **I** - Contribution from Salient Factor Score
10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3

2    **II** - Current or Prior Violence
Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1

1    **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)
Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1

5    **Base Point Score** (sum I-III above)



## DISCIPLINARY GUIDELINES

You have behavior that constitutes new criminal conduct in a prison facility or community corrections center which is rated as Category Three severity because it involved possession of a weapon. This requires 12-16 months to be added to your base point score guideline range.

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 8 month(s) from your Total Guideline Range for superior program achievement. This was granted because you earned your GED in 1999, completed an Intensive Counseling Program in 12 months called Life Skills is currently involved in the Code Program and maintains a work assignment.

### TOTAL GUIDELINE RANGE

|  |  |
|---|---|
| 18 — 24 | Base Point Score Guideline Range |
| 80 — 80 | Months Required to Serve to Parole Eligibility Date |
| 12 — 16 | Disciplinary Guideline Range |
| less 8 — 8 | Superior Program Achievement Award (if applicable) |
| 102- 112 | Total Guideline Range |

| Base Point Score Guideline Range | | Points For SFS Item C | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
|  |  |  | 0-1 | 2-3 | 5+ |
| 3 or less | 0 months | 26 & Up | 3 | 2 | 1 |
| 4 | 12-18 months |  |  |  |  |
| 5 | 18-24 months | 22-25 | 2 | 1 | 0 |
| 6 | 36-48 months |  |  |  |  |
| 7 | 54-72 months | 20-21 | 1 | 0 | 0 |
| 8 | 72-96 months |  |  |  |  |
| 9 | 110-140 months | 0-19 | 0 | 0 | 0 |
| 10 | 136-172 months |  |  |  |  |

# SWINTON

# EXHIBIT   G10

## HEARING SUMMARY

**Name: Swinton, Daru**                                          **Reg No: 48752-053**

### Hearing Parameters

    Hearing Format ............................: **In Person**

    Hearing Type ...............................: **Reconsideration**

    Hearing Date ...............................: October 23, 2006

    Examiner......................................: Rob Haworth

    Institution ....................................: Lewisburg USP

### Sentence Parameters

    Sentence Type...............................: **DC Parole Eligible**

    MR/Statutory Release ..................: N/A

    Full Term Date.............................: Life

    Months in Custody.......................: 107 as of 10/19/2006

    Fines/Restitution/Assessment ......: $200 (Paid)

    Detainer........................................: None

**Additional text regarding the above parameters:** None

### Prior Action & Institutional Factors

**Prior Action:** See the Prehearing Review dated October 18, 2006. This subject had his Initial Hearing 12/2/2002. The NOA dated 1/22/2005 orders that parole be denied and the subject be continued for a 3-Year Reconsideration Hearing in December of 2006.

---

**Codefendants:** None.

**Representative & Representative's Statement:** Deborah Swinton-Pulliman, the subject's mother from the State of New York, attended the hearing and made a statement. Ms. Swinton-Pulliman stated that subject has a large family and that many of the family members are very interested in his welfare. He has good family support and that will continue after his release. The family is anxious and ready for him to be released and will assist him in any way necessary.

**Prisoner's Statement:** The subject expressed remorse for his involvement in the crime and his mistakes in the past. He stated that he has tried to maintain a prison conduct record that shows he is determined to live his life in a different way after release. He feels ready for release and is hopeful he will be approved for parole.

### Disciplinary Infractions





**No. 1 - BOP Incident Report No. N/A**

> **Description of Behavior:** Interfering with Staff: On 4/21/04 the subject was reluctant to remove his shoes during a pat down search. He questioned the officer about why he had to remove his shoes. The incident got a little out of hand and the subject was reported for interfering with the staff.
>
> **Prisoner's Response:** The subject admitted the incident occurred but denied that he intended to interfere with staff or cause problems. He was very concerned about having to remove his shoes in the crowded hallway and he asked if they could move to a more private area. The correctional officer became offender believing that subject was questioning his authority. The subject stated he regrets this happened.
>
> **Findings of Fact:** This examiner finds that the subject violated the rules of the institution as indicated in the above violation.
>
> **Basis:** DHO finding of 5/7/04.
>
> **Rescission Guideline: 0-2 months.**

**Program Achievement:** The subject completed the CODE Program and all of the Sub Courses included in that program. It took him approximately 1 year to finish CODE. He was a good student and performed well in all assignments. The subject is now enrolled in a Computer Program and he is studying a Vocational Training Program in Recycling Apprenticeship.

The subject gets good work reports from his job assignment as an Orderly in his Unit. He is not a management problem.

This examiner is recommending 4 months of Superior Program Achievement. That is somewhat unusual on a 3-Year Rehearing. Generally the prisoner is given one third of the full 3 years for Superior Program Achievement. However, in this case, subject has made some significant accomplishments but it does not appear that he performed in a superior level for the entire 3 years. It took him approximately a year to complete the programs listed above. This examiner is recommending only 4 months of Superior Program Achievement.

**Superior Program Achievement Award Recommendation:** This recommendation includes a 4 month credit for Superior Program Achievement; specifically, you completed the CODE Program and you have performed well in the Computer and the Recycling Vocational Training Program.

**Release Plans:** The subject plans to live at the home of his mother in the State of New York. He will not have any trouble finding employment.

<u>**Guideline Parameters, Evaluation & Recommendation**</u>

**Salient Factor Score:**
**Base Point Score:**


Base Point Score Guideline Range: ........................................-
Months to Parole Eligibility Date: ........................................-
Guidelines in Effect: ................................................102-112
Disciplinary Guideline SINCE Last Hearing:....................0-2



Superior Program Achievement SINCE Last Hearing: ......4-4
Total Guideline Range: .................................................98-110

**Evaluation:** This examiner noted a Memorandum dated 2/24/2004 from Administrator Husk that is in the packet. That memorandum shows that some additional information was received on this case that provided more of the description of the offense behavior. This examiner is unable to determine if Examiner Hylton reviewed that information before completing the Prehearing Assessment dated 10/18/2006. Apparently, the new information confirms that the victim's children did remain in the vehicle during the kidnapping ordeal. That seems to be evident in the Prehearing Assessment so it is likely that Examiner Hylton reviewed that information. This examiner did determine that no new information was disclosed to this subject.

There did not seem to be anything lacking that was sufficient enough to delay this hearing. The prisoner admits the offense behavior and accepts responsibility for it. He did not deny the serious level of stress he placed on his victim and her children by kidnapping them and holding them for a period of time until the robbery was completed. He expressed remorse for that.

This examiner is recommending the top of the guidelines. The top of the guidelines should be sufficient accountability and punishment for the offense. This examiner is taking into consideration the prisoner's excellent prison conduct report, which includes a good attitude towards staff and other prisoners.

**Recommendation:** Parole effective 1/19/2007, after the service of 110 months.

**Conditions:** Special Drug Aftercare.

**Statutory Interim Hearing:** None.

**Guideline Use:** A departure from the guidelines at this consideration is not warranted.

**Additional Text:** None.

[Signature]

JRH/PAH
October 25, 2006

**Executive Reviewer's Comments:** Pinner: October 26, 2006: I disagree with the recommendation for parole in this case, and recommend a reconsideration hearing in 36 months.

The examiner indicates that subject has an excellent prison conduct report. I disagree. He received an incident report in January 2003 for possession of a weapon which involved a 5 ½ metal blade found in a tube of toothpaste. Subject's explanation, that he found the tube and was not aware it contained a weapon was not found credible by the DHO and is not found credible by this examiner. He also incurred one DHO-sanctioned incident report that was considered at this hearing. As a result, I do not believe he has excellent prison conduct.



Subject is a more serious risk than indicated by his Base Point Score. The Score reflects 1 point in Category III for high level violence. The Score does not reflect that there were 3 victims in this case, a mother and her two young sons, who were held at gunpoint for over 3 hours while the mother was forced to drive to various ATMs and remove cash from her account while subject held a gun on her sons. I believe he is a more serious risk, noting that he was arrested in NY for possession of a weapon after he committed this offense and continued his propensity for weapons by having a sharpened metal blade in his possession while incarcerated.

REASONS: You are a more serious risk than indicated by your Base Point Score of 5. In Category III of the Score, you receive 1 point for a crime involving high level violence, kidnapping. However, in your offense, three individuals were kidnapped and held at gunpoint for over 3 hours while you forced the adult victim to withdraw all of her available cash out of various ATMS during the ordeal. The victims were a mother and her two young sons. Your callous disregard for the victims, to include two young boys, coupled with your propensity to carry weapons as reflected in your prior record and your possession of a weapon (sharpened metal blade) create a risk to the safety of the community

# SWINTON

# EXHIBIT    G11

 

U.S. Department of Justice                                    **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

Name: SWINTON, Daru                          Institution:  Lewisburg USP
Register Number: 48752-053
DCDC No: 275-293                             Date:  November 7, 2006

---

As a result of the hearing conducted on October 23, 2006, the following action was ordered:

Deny parole.  Continue to a Three-Year Reconsideration Hearing in October 2009.

### REASONS:

Your Current Total Guideline Range is 98-110 month(s).  See the attached sheet for the components that make up your Current Total Guideline Range.  These components are your Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 107 months as of October 19, 2006.

After consideration of all factors and information presented, a decision above the Current Total Guideline Range is warranted because you are a more serious risk than indicated by your Base Point Score of 5.  In Category III of the Score, you received 1 point for a crime involving high-level violence, kidnapping.  However, in your offense, three individuals were kidnapped and held at gunpoint for over 3 hours while you forced the adult victim to withdraw all of her available cash out of various ATMS during the ordeal.  The victims were a mother and her two young sons.  Your callous disregard for the victims, to include two young boys, coupled with your propensity to carry weapons as reflected in your prior record and your possession of a weapon (sharpened metal blade) create a risk to the safety of the community

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.


cc:     CSS Data Management Group
        D.C. Court Services & Offender Supervision Agency
        300 Indiana Avenue, N.W., Suite 2070
        Washington, D.C.  20001

GOVERNMENT
EXHIBIT

A.

---



## DISCIPLINARY GUIDELINES

You have 1 non-drug related infraction(s) [0-2 months each], which requires 0-2 months to be added to your base point score guideline range.

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 4 month(s) from your Total Guideline Range for superior program achievement. This was granted because you completed the CODE Program and you have performed well in the Computer and the Recycling Vocational Training Program.

### CURRENT TOTAL GUIDELINE RANGE

| | |
|---|---|
| **5 —— Base Point Score** | |
| 18—24 | Base Point Score Guideline Range |
| 80—80 | Months Required to Serve to Parole Eligibility Date |
| 12—16 | Disciplinary Guideline Range (before last hearing) |
| **less 8—8** | Superior Program Achievement Award (before last hearing) |
| 102 - 112 | Previous Guideline Range Conversion |
| 0—2 | Disciplinary Guideline Range |
| **less 4—4** | Superior Program Achievement Award (if applicable) |
| **98-110** | **Current Total Guideline Range** |

| Base Point Score Guideline Range | |
|---|---|
| Score | Guideline Range |
| 3 or less | 0 months |
| 4 | 12-18 months |
| 5 | 18-24 months |
| 6 | 36-48 months |
| 7 | 54-72 months |
| 8 | 72-96 months |
| 9 | 110-140 months |
| 10 | 156-172 months |