<u>INDEX OF EXHIBITS TO</u>
<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND OR IN THE ALTERNATIVE
TO TRANSFER AND REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT</u>

| **EXHIBIT** | **DESCRIPTION** |
|---|---|
| Exhibit A | Parole-Eligible D.C. Prisoners Released in 1992: A Study of the Proposed U.S. Parole Commission Guidelines for D.C. Code Offenders (June 28, 1998) |
| Exhibit B | James Austin, Ph.D & Roger Ocker, Evaluation and Re-Validation of the U.S. Parole Guidelines Risk Instrument |
| Exhibit C | Declaration of Jason. D. Wallach (and attached exhibits) |
| Exhibit D | *Williams-El v. U.S. Parole Comm'n*, No. 3:CV-90-0649 (July 24, 1990) |
| Exhibit E | Policy Guideline, D.C. Parole Board (May 8, 1995) |
| Exhibit F | Declaration of Gladys Mack |

# Exhibit A

TO: MARIE RAGGHIANTI
FROM: PETER HOFFMAN
SUBJECT: D.C. REPORT
DATE: 6/29/98

(1)    Attached is my report and recommendations on the violence prediction effort with the D.C.
       cases.  If you wish to discuss it with me today, give me a call and we can set up a time - I
       am pretty flexible.

(2)    We discovered last week that there were significant problems with the coding of the dates
       necessary to do the "time served" policy analysis.  Either through coding or data entry
       errors, there are a significant number of cases with rather odd time served, including minus
       numbers.  With all of the other work assigned to Sheldon Adelberg, he was unable to clean
       the data sufficiently in the time allowed for us to have confidence in it.  Ronnie Scotkin
       will assist in this effort.  Michael Stover has therefore notified the Commission that the
       vote on the one aspect of the proposal involving the "continuance ranges" must be
       considered tentative until these analyses are completed.  Sheldon knows the programming
       that needs to be done and I have discussed the methodology with both Michael Stover and
       Ronnie Scotkin and gave them some practice with it.  The problem is simply that of
       cleaning the data - for example, it appears that one of the data entry clerks typed 1905, for
       example, for 2005, in cases with expiration dates in the year 2000 or more, leading to some
       rather strange results.  These problems did not affect the violence prediction phase of the
       project.

(3)    I thank you for the extra 2 days on the contract; I only used one of them.  The remaining
       day should be sufficient for the remaining work once Sheldon and Ronnie fix the data.

(4)    I strongly recommend that you ask the Chairman to send letters of thanks to (1) Michael L.
       Mullen, Chairman, Connecticut Board of Parole, for the excellent assistance provided to
       the Commission on this project by his Research Director, James P. Harris; and (2) Kathy
       Hawk for the excellent assistance provided to the Commission on this project by Miles
       Harer.  Both Jim Harris and Miles Harer were very gracious in taking time out from their
       own busy schedules to assist with this project by applying the proposed scores to their own
       data bases..

Policy
1, 3, 5, -
4

PAROLE-ELIGIBLE D.C. PRISONERS RELEASED IN 1992:
A STUDY OF THE PROPOSED U.S. PAROLE COMMISSION
GUIDELINES FOR D.C. CODE OFFENDERS

Peter B. Hoffman
6/28/98

Introduction

The District of Columbia Revitalization Act of 1997 provides, in part, that the U.S. Parole
Commission assume responsibility for parole release decisions for felony D.C. Code offenders,
wherever confined, effective August 8, 1998. The Act gives the Parole Commission authority to
establish rules and regulations for its execution of these functions by supplementing and amending
the rules of the D.C. Board of Parole. On April 10, 1998, the Parole Commission published for
public comment in the Federal Register proposed interim rules for the assumption of these
functions. Proposed section 2.80 sets forth guidelines for the parole release function that appear
different in some respects from the current D.C. parole guidelines. In the accompanying
explanation, the U.S. Parole Commission stated that it was aware that the D.C. Board of Parole
departed frequently from its published guidelines, that it believed the proposed guidelines
incorporated the factors that the D.C. Board of Parole frequently used to depart from its
guidelines, that it believed that the proposed guidelines would better reflect the actual practice of
the D.C. Board of Parole, and that it believed that the proposed guidelines would better take into
account the probability that an offender would recidivate by the commission of a violent offense.

The Parole Commission undertook the current study to determine (1) whether the proposed parole
release base point score is more predictive of violent recidivism than the published D.C. Board of
Parole base point score; (2) whether the proposed parole release base point score might be
modified to increase its ability to predict violent recidivism; and (3) whether the proposed parole
release base point score is more highly correlated with actual D.C. parole decisions than the
published proposed point score (or any modification of the published proposal developed in (2)
above).

Research Questions

This report addresses the first two research questions:

(1)     Does the proposed base point score show more predictive power in predicting violent
        recidivism than the base point score used in the current D.C. Parole Board guidelines?

(2)     Can the proposed base point score be amended to increase its power in predicting violent
        recidivism?

Research question 3 (pertaining to the correlation between actual practice and the current and
proposed guidelines) will be addressed in a separate report.

1

Background

As a general rule, the rarer the event, the harder it is to predict the occurrence of that event. In keeping with this general rule, violent recidivism - which is rarer than ordinary recidivism - is more difficult to predict with accuracy. This makes the use of larger samples necessary. In the current study, a sample of 1000 DC prisoners released from prison in 1992 was drawn. This was the largest sample that was feasible with the short time frame mandated for this project. A five-year follow-up period was available for each case. Cooperation from the D.C. Board of Parole was secured to permit access to the offender files.

Given the need for a large sample, and as it was suspected by Commission staff (based on previous experience with D.C. Parole Board files) that there might be a high attrition rate from the sample due to missing files or files containing missing information, it was deemed important to search for other data that might provide information on the issue of violence prediction. A report of a study by the Michigan Department of Corrections that used a large sample of prisoners released from Michigan prisons in 1971 (n=2200) in an effort to predict violent recidivism was located. In addition, data collected during a Federal Bureau Prisons study of federal prisoners released in 1987 (n=1205), a Federal Bureau of Prisons/U.S. Parole Commission study of federal offenders released in 1978 (n=2186), and a Connecticut Board of Parole study of offenders released from Connecticut prisons in 1991 (n=2019) were available for analysis.

Michigan Prisoners Released in 1971.

Monahan (1981) reports the results of an effort by the Michigan Department of Corrections to develop a prediction instrument to predict violent recidivism. Data on 350 variables were collected for 2,200 male inmates released from Michigan prisons on parole in 1971. A variable follow-up period was used with a mean of 14 months. One half of the sample was used as a construction sample; the other half was used as a validation sample. The outcome measure was a new arrest for a violent offense during the follow-up period (the specific definition of a violent offense is not given by Monahan).

The following variables were found associated with violent recidivism using a technique called "configural analysis": (1) crime description fits robbery, sex assault, or murder; (2) reported juvenile felony; (3) crime description fits any assaultive felony; (4) never married (ever married is positive); (5) serious institutional misconduct; and (6) first arrest before 15th birthday. The rates of violent recidivism reported for the Michigan sample are shown in Table 1.

Table 1:  Violent Recidivism by Assaultive Risk Categories (Michigan 1971 Prison Releasees)

| Risk Category | Violence Recidivism Rate | Percent of Sample |
|---|---|---|
| Very high risk | 40.0% | 4.7% |
| High risk | 20.7% | 6.6% |
| Middle risk | 11.8% | 45.5% |

| Low risk | 6.3% | 23.5% |
|---|---|---|
| Very low risk | 2.0% | 19.7% |
| All cases | 10.5% | 100% |

## Federal Prisoners Released in 1987.

Data on a random sample of 1205 federal prisoners released in 1987 were analyzed for this project by Miles Harer of the Federal Bureau of Prisons Research Division at the request of the U.S. Parole Commission. A three-year follow-up period was available for each case from date of release. Use of FBI "rap" sheet records enabled follow-up regardless of whether the prisoner was released by parole, mandatory release, or expiration of sentence.

Violence recidivism was defined as a new arrest for murder, manslaughter, kidnapping, rape or other felony sex offenses, robbery, residential burglary, felony assault, or felony weapons possession.

Of the 1205 cases, 11% were serving a sentence for a violent offense (conviction offense) and 25% had either a current or prior conviction of a violent offense. During the three-year follow-up period, 9% sustained a new arrest for a violent offense.

The factors examined as possible predictors were Salient Factor Score (95), whether the current offense was a violent offense, whether the current offense was a drug offense, and the number of prior violent offenses.

Table 2 shows violent recidivism by SFS (95).

### Table 2: SFS (95) Category by Violent Recidivism (1987 Federal Sample)

| SFS(95) Category | 10-8 | 7-6 | 5-4 | 3-0 | all cases |
|---|---|---|---|---|---|
| Percent with no violent recidivism | 97% | 94% | 87% | 82% | 91% |
| Percent with violent recidivism | 3% | 6% | 13% | 18% | 9% |
| Number of cases | 476 | 166 | 232 | 331 | 1205 (100%) |

MCR (four categories) = .408

Table 3 shows violent recidivism by any present or prior conviction for a violent offense.

3

### Table 3: Violent Recidivism by Any Present or Prior Conviction For Violent Offense (1987 Federal Sample)

|                                    | No Record of Conviction for Violence | Present or Prior Conviction for Violence |
|------------------------------------|:---:|:---:|
| Percent with no violent recidivism | 94% | 80% |
| Percent with violent recidivism    | 6%  | 20% |
| Number of cases                    | 903 | 302 |

MCR = .305

Table 4 shows violent recidivism by various combinations of present and prior convictions for violent recidivism.

### Table 4: Violent Recidivism By Present and Prior Convictions For Violent Offenses (1987 Federal Sample)

|  | Number of Cases | Percent Violent Recidivism |
|---|:---:|:---:|
| (A) No current violence/no prior violence | 849 | 6% |
| (B) No current violence/one prior violence | 129 | 16% |
| (C) No current violence/two or more prior violence | 103 | 22% |
| (D) Current violence/no prior violence | 50 | 20% |
| (E) Current violence/one prior violence | 9 | 22% |
| (F) Current violence/two or more prior violence | 11 | 36% |
| (G) Current drug distribution/no record of violence | 303 | 4% |

Table 5 shows violent recidivism by number of current and prior violent convictions.

### Table 5: Violent Recidivism By Number of Present and Prior Convictions For Violent Offenses (1987 Federal Sample)

| Total Present & Prior Convictions For Violent Offenses | 0 | 1 | 2 | 3+ | all cases |
|---|:---:|:---:|:---:|:---:|:---:|
| Percent with no violent recidivism | 94% | 83% | 78% | 75% | 91% |
| Percent with violent recidivism | 6% | 17% | 22% | 25% | 9% |
| Number of cases | 903 | 179 | 64 | 59 | 1205 (100%) |

4

MCR = .317

In summary, the salient factor score, current violent offense, and prior violent offenses show positive associations with violent recidivism. Federal offenders serving sentences for drug distribution offenses with no history of violence show low rates of violent recidivism.

Individually, the salient factor score showed the most predictive power (i.e., the highest MCR when entered into a logistic regression equation). When the SFS was combined with the number of present or prior convictions for violence, the predictive power of the score in the logistic regression equation increased over the power of these items individually (MCR .462). However, even more predictive power was shown when the SFS was combined with the dichotomous item relating to any present or prior violence conviction (MCR .486). That is, the salient factor score combined with the dichotomous item (ever convicted of a violent offense) showed more predictive power than (1) the salient factor score combined with a weighted measure of current and prior violence (various measures were tried, including one point for each current or prior violence, and 2 points for any current violence and 1 point for any prior violence), or (2) the salient factor score alone.

## Federal Prisoners Released in 1978

Five-year follow-up was examined for a random sample of 2186 federal offenders released from prison in 1978. FBI "rap sheet" records were used to provide a five year follow-up period for each case regardless of whether the offender was released by parole, mandatory release, or expiration of sentence. For follow-up purposes, violence was defined as any arrest for murder, voluntary manslaughter, a forcible sex offense, kidnapping, or robbery.

Table 6 shows violent recidivism for this sample by SFS95 score and score category used in the federal parole guidelines.

### Table 6: Violent Recidivism by SFS95 (1978 Federal Sample)

| SFS Score | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Percent With Violent Recidivism | 3% | 6% | 9% | 16% | 10% | 22% | 21% | 26% | 20% | 20% | 32% |

Percent With Violent Recidivism -All Cases (N=2186) 14%     MCR = .331.

In summary, the salient factor score (SFS95) shows significant predictive power (MCR = .331) when used to predict violent recidivism with this sample.

Connecticut Prisoners Released in 1991 (Preliminary Analysis)

Data for a random sample of Connecticut (state) prisoners released in 1991 with a three-year follow-up from date of release for each case (n=2019) were examined for this project at the request of the U.S. Parole Commission by James P. Harris, Research Director of the Connecticut Board of Parole.

Of this sample, 22% were released from a sentence for a violent offense; 34% had no current violent offense but at least one prior violent offense, and 44% had neither a current nor prior violent offense. Thus, 56% had a record of at least one current or prior violent offense. A substantial majority of the prisoners were minority group members from urban areas of Connecticut.

The definition of violence used for this sample was: murder, manslaughter, kidnapping forcible sex offenses, felony assault, and residential burglary. The follow-up data contains only convictions for violent offenses (arrests for violent offenses that do not result in conviction or result in convictions for non-violent offenses are not counted). In contrast, Federal and Michigan data used the charge at arrest when measuring recidivism.

Table 7 shows violent recidivism for Connecticut offenders using a proxy for the federal salient factor score. As Connecticut data does not contain a heroin dependence item, the item commitment free one year or more was substituted for the heroin dependence item. Previous research with federal offenders showed this proxy to be highly correlated with the salient factor score.

### Table 7: Violent Recidivism by SFS 95 Proxy
### (1991 Connecticut Sample)

| SFS(Conn. Proxy) | N | Percent Violent Recidivism |
|---|---|---|
| 10 | 79 | 6% |
| 9 | 114 | 8% |
| 8 | 144 | 5% |
| 7 | 79 | 15% |
| 6 | 84 | 18% |
| 5 | 114 | 11% |
| 4 | 199 | 17% |
| 3 | 328 | 16% |
| 2 | 322 | 30% |
| 1 | 196 | 31% |
| 0 | 360 | 35% |
| All cases | 2019 | 22% |

MCR = .298

6

| SFS Category | N | Percent Violent Recidivism |
|---|---|---|
| 10-8 | 337 | 10% |
| 7-6 | 313 | 15% |
| 5-4 | 163 | 17% |
| 3-0 | 1206 | 29% |

MCR = .214

Table 8 shows violent recidivism by current and prior convictions for violent offenses.

| Table 8: Violent Recidivism by Current and Prior Convictions for Violent Offenses (1991 Connecticut Sample) | | |
|---|---|---|
| | N | Percent Violent Recidivism |
| No prior or current violence | 892 | 11% |
| Current violence - no prior violence | 235 | 21% |
| Current violence - one prior violence | 81 | 21% |
| Current violence - two or more prior violence | 131 | 49% |
| No current violence- one prior violence | 313 | 28% |
| No current violence - two or more prior violence | 367 | 35% |
| Current drug distribution - no prior violence | 315 | 7% |
| All cases | 2019 | 22%. |

In general, the Connecticut data show that both current and prior violence are associated with future violence, a not surprising result. Consistent with the 1987 federal data, the Connecticut data show that offenders with current drug distribution offense and no prior violence have lower than average violent recidivism. Also, consistent with the 1987 federal data, the Connecticut data show that offenders with no current violent offense and one prior violent offense had higher than average rates of violent recidivism.

It also was possible to separate the Connecticut cases into high level and other violence. This allowed replication of the proposed base point score published in the Federal Register. The results of this analysis are discussed later in this report.

D.C. Sample Selection and Data Collection

A random sample of 1000 D.C. Code offenders released in 1992 was drawn from the D.C. Department of Correction's computerized system. First, a program was run to identify all cases serving sentences of one year or more released to the community in 1992. A SAS program was then run to provide a random sample of exactly 1000 cases.

The case files and were then obtained to record the background information necessary for the study. There was considerable case attrition. Only 556 cases were suitable for the followup study.

7

Two hundred and eighty-two cases were deleted from the sample because the case file could not be found, or because a substantial part of the case file was missing (*e.g.*, when the material in the case file exceeds the amount that can be contained in one folder, a second folder is established. It was not uncommon to be able to locate only one of these folders). The remaining 162 cases were deleted because the subject (A) was not a 1992 releasee or was rereleased from a technical parole violation and thus not part of this study, (B) had insufficient follow-up exposure (a period of less than three years was selected for this purpose) because of death, release to a detainer, or some other reason.

The case attrition because of missing files and missing file information is a serious limitation, because it is impossible to whether the missing cases were different from those cases included in the study in some material respect.

In addition, the quality of the data recorded in the case files is also suspect in certain respects. Not infrequently, the presentence report, a primary source of data, was noted as missing or limited in detail regarding the current offense. If information on the current offense is not recorded with any detail, one may wonder how thorough is the reporting of prior convictions and commitments (the key elements in the salient factor score). In particular, there is a question as to how completely the records of juvenile offenses are reported, a key consideration for younger offenders who may be serving their first adult sentence. Unfortunately, there was no simple way to address these issues for the study cases given the limited time frame mandated for this study. Consideration of additional data from other jurisdictions may partially ameliorate this problem.

Another issue is what seems to be a substantially higher than typical proportion of arrests that are nolle processed or otherwise dismissed for the D.C. sample. For legal/ethical reasons, the salient factor score relies on prior convictions/commitments (rather than on arrests not leading to conviction). If, however, the conviction rate for prior offenses in a particular jurisdiction is substantially less than typical, the salient factor scores for offenders in that jurisdiction are likely to be inflated, thus reducing the association between salient factor score and recidivism.

Two coding sheets were used for data collection. A background coding sheet was used to collect information on the offender's background characteristics and the D.C. Parole Board's decision. A follow-up code sheet was used to collect information on new arrests (from federal and state "rap sheet" records) and administrative violations (from the case file). A five-year follow-up period was used for each case. Background data were coded by D.C. Board of Parole and U.S. Parole Commission staff. Follow-up data were coded by the author of this report. The administratively-imposed decision that required most of the Background Coding Forms to be completed by D.C. Board of Parole staff (rather than USPC staff) proved in some respects a handicap. Although some of the D.C. coders did an excellent job, others did not. When this was detected by quality control, steps were taken to have most of the background coding forms reviewed by an more experienced coder. This alleviated the problem noted, but it is unlikely to have completely cured it.

8

Analysis of D.C. Data

Table 8 shows violent recidivism by the base point score of the current D.C. parole guidelines.

### Table 8: Violent Recidivism by Current D.C. Base Point Score (VS 13) (D.C. Cases)

| Base Score | N | Percent Violent Recidivism |
|---|---|---|
| 0 | 17 | 23.5% |
| 1 | 148 | 26.6% |
| 2 | 147 | 25.8% |
| 3 | 156 | 34.0% |
| 4 | 88 | 30.7% |
| All cases | 556 | 28.6% |

MCR = .087

As readily may be seen, the association between the current DC base point score and violent recidivism is extremely weak.

Table 9 shows violent recidivism by the base point score published for comment in the federal register.

### Table 9: Violent Recidivism by Proposed Point Score Published in the Federal Register (VS 16) (D.C. Cases)

| Base Score | N | Percent Violent Recidivism |
|---|---|---|
| 0 | 17 | 23.5% |
| 1 | 102 | 23.5% |
| 2 | 132 | 26.5% |
| 3 | 140 | 34.3% |
| 4 | 95 | 28.4% |
| 5 | 18 | 50.0% |
| 6 | 26 | 26.9% |
| 7 | 15 | 26.7% |
| 8 | 5 | 0.0% |
| 9 | 3 | 33.3% |
| 10 | 3 | 0.0% |
| All cases | 556 | 28.6% |

MCR = .062

As readily may be seen, the association between the Federal Register proposal and violent recidivism is even weaker than that of the current DC parole guidelines. Given the extremely low predictive power shown by both the current D.C. base point score and the proposed base point score, the primary task became to attempt to modify the proposed base point score in a way that improved its predictive power with respect to violent recidivism.

First, it was determined that greater predictive power could be obtained by modifying SFS 95 by substituting a revised Item C (to increase the weight given to age at current offense and add consideration of four prior commitments) and by deleting Item F (heroin or opiate dependence). The revised salient factor score (SFS 98) continues to have a maximum of 10 points, and the four score categories used in the guidelines are unchanged.

The revised Item C has the following subdivisions:

> 3 points if the offender was age 26 or older at the commencement of the current offense and has 3 or fewer prior commitments;

> 2 points if the offender (A) was age 26 or older at the commencement of the current offense and has 4 prior commitments; or (B) was age 22-25 at the commencement of the current offense and has 3 or fewer prior commitments;

> 1 point if the offender (A) was age 26 or older at the commencement of the current offense and has 5 or more prior commitments; (B) was age 22-25 at the commencement of the current offense and has 4 prior commitments; or (C) was age 20-21 at the commencement of the current offense and has 3 or fewer commitments;

> 0 points if the offender (A) was age 20-21 at the time of the current offense and has 4 or more prior commitments; or (B) was age 19 or less at the commencement of the current offense..

The revised salient factor score (SFS 98), when divided into four score categories, has a MCR of .291 (compared to a MCR of .264 for SFS 95) on the D.C. sample with an outcome measure of any arrest during the five-year followup period, and a MCR of .132 (compared to a MCR of .083 for SFS 95) using an outcome measure of any arrest for a violent felony offense during the five year follow-up period.

An analysis of the 1978 federal sample (N=2186) using a five-year follow-up period and an outcome measure of any arrest for a violent felony shows a MCR of .340 for SFS 98 (compared to .331 for SFS 95). The increased weight given to age in Item C is also consistent with the finding of Hoffman and Beck (1984), who reported that younger federal offenders showed higher rates of recidivism than would be expected from the SFS.

Second, examination of the individual items in the D.C. sample found that cases with a current drug distribution offense (not involving violence or a firearm) had lower than average rates of

10

violent recidivism. This was also found in the Connecticut sample and the 1987 federal sample. Elimination of the base point for current drug offense not involving violence or firearm improved the predictive power of the instrument. Examination of the D.C. sample, the Connecticut sample, and 1987 federal sample also indicated that one prior violent offense was predictive of violent recidivism. Adding this item improved the power of the score.

Various modifications of the proposed base score were tested (VS1-VS33). Three versions of the score (VS23, VS27, and VS33) show considerably higher association with violent recidivism than the current DC Parole Board's base point score (VS13) or the proposed base point score published in the Federal Register (VS16).

Table 10 shows the composition of VS23, which has a maximum of 7 points.

### Table 10: VS23

SFS(98):   10-8   0 points
           7-6    1 point
           5-4    2 points
           3-0    3 points
                  +

Current Felony Violence  and 2+ Prior Felony Violence = 4 points
Current Felony Violence and 1 Prior Felony Violence = 3 points
Current Felony Violence = 2 points
Firearm in Current Offense = 2 points
2+ Prior Felony Violence = 2 points
1 Prior Felony Violence = 1 point.

Table 11 shows violent recidivism by VS23:

### Table 11: Violent Recidivism by VS23 (D.C. Cases)

| Base Score | N | Percent Violent Recidivism |
|:---:|:---:|:---:|
| 0 | 84 | 17.9% |
| 1 | 100 | 25.0% |
| 2 | 137 | 27.7% |
| 3 | 107 | 30.8% |
| 4 | 67 | 34.3% |
| 5 | 31 | 32.3% |
| 6 | 21 | 47.6% |
| 7 | 9 | 55.6% |
| All cases | 556 | 28.6% |

MCR = .177

11

Table 12 shows the composition of VS27, which has a maximum of 8 points:

### Table 12: VS 27

SFS(98):     10-8     0 points
             7-6      1 point
             5-4      2 points
             3-0      3 points
                      +

Current High Level Felony Violence  and 2+ Prior Felony Violence = 5 points
Current High Level Felony Violence and 1 Prior Felony Violence = 4 points
Current  Felony Violence and 2+ Prior Felony Violence= 4 points
Current High Level Felony Violence = 3 points
Current  Felony Violence and 1 Prior Felony Violence = 3 points
Current Felony Violence = 2 points
Firearm in Current Offense = 2 points
2+ Prior Felony Violence = 2 points
1 Prior Felony Violence = 1 point.

Table 13 shows violent recidivism by VS27:

### Table 13: Violent Recidivism by VS27 (D.C. Cases)

| Base Score | N | Percent Violent Recidivism |
|---|---|---|
| 0 | 84 | 17.9% |
| 1 | 100 | 25.0% |
| 2 | 114 | 29.8% |
| 3 | 112 | 26.8% |
| 4 | 70 | 38.6% |
| 5 | 37 | 32.4% |
| 6 | 24 | 41.7% |
| 7 | 13 | 38.5% |
| 8 | 2 | 50.0% |
| All cases | 556 | 28.6% |

MCR = .164

Table 14 shows the construction of VS33, which has a maximum of 10 points:

### Table 14: VS33

SFS(98):     10-8     0 points
             7-6      1 point

12

5-4   2 points
3-0   3 points
+

Current High Level Felony Violence  and 2+ Prior Felony Violence = 5 points
Current High Level Felony Violence and 1 Prior Felony Violence = 4 points
Current  Felony Violence and 2+ Prior Felony Violence= 4 points
Current High Level Felony Violence = 3 points
Current  Felony Violence and 1 Prior Felony Violence = 3 points
Current Felony Violence = 2 points
Firearm in Current Offense = 2 points
2+ Prior Felony Violence = 2 points
1 Prior Felony Violence = 1 point.
+

Death of victim in current offense = +2 points

Table 15 shows violent recidivism by VS33:

### Table 15: Violent Recidivism by VS33 (D.C. Cases)

| Base Score | N | Percent Violent Recidivism |
|---|---|---|
| 0 | 84 | 17.9% |
| 1 | 100 | 25.0% |
| 2 | 114 | 29.8% |
| 3 | 105 | 27.6% |
| 4 | 64 | 37.5% |
| 5 | 40 | 30.0% |
| 6 | 27 | 48.1% |
| 7 | 15 | 40.0% |
| 8 | 5 | 20.0% |
| 9 | 2 | 0.0% |
| All cases | 556 | 28.6% |

MCR = .158

Each of the above violence scores (VS23, VS27, VS33) shows considerable improvement over both the current DC base score (VS 13) and the proposed base violence score published in the Federal Register (VS16).  VS23 shows the strongest association with violent recidivism of the three scores, but the difference in power among VS23, VS27, and VS33 are relatively small.

For comparative purposes, VS13, VS16, VS23, VS27, and VS33 were run using SFS95.  Table 16 enables comparison of the predictive power of these scores.  As may readily be seen, the predictive power was higher for each of the five scores when SFS98 was used.

13

### Table 16: Mean Cost Ratings of Violence Scores
### When Used With SFS95 and SFS98 (D.C. Cases)

|  | Used With SFS 95 | Used With SFS 98 |
|---|---|---|
| VS13 | MCR= .087 | MCR= .132 |
| VS16 | MCR= .062 | MCR= .092 |
| VS23 | MCR= .151 | MCR= .177 |
| VS27 | MCR= .141 | MCR= .164 |
| VS33 | MCR= .136 | MCR= .158 |

<u>Connecticut Data Applied to VS13, VS16, and VS27</u>

It was possible for VS 13 and VS27 to be examined using the Connecticut data base with both SFS 95 and SFS 98, but with the limited time available and because this analysis was being done as a courtesy by Connecticut Board of Parole staff, it was not possible to have all possible scores run against the Connecticut data. VS23 had been run earlier on Connecticut data with SFS 95. Table 17 shows the MCR's with respect to violent recidivism for these scores.

### Table 17: Mean Cost Ratings of Violence Scores
### When Used With SFS95 and SFS98 (Connecticut Data)

|  | Used With SFS 95 | Used With SFS 98 |
|---|---|---|
| VS13 | MCR= .253 | MCR= .285 |
| VS23 | MCR= .376 | no information |
| VS27 | MCR= .330 | MCR= .351 |

Consistent with the results from the D.C. sample, VS23 shows the highest association with violent recidivism, VS27 shows the second highest association with violent recidivism, and VS13 shows the lowest association with violent recidivism. Also consistent with the results from the D.C. sample, VS13 and VS23 show a stronger association with violent recidivism when used in conjunction with SFS 98, rather than SFS 95. It is noted that the MCR for VS23 is shown only using SFS 95. As SFS 98 consistently shows higher predictive power with VS13 and VS27 on the Connecticut sample, and with all scores on the D.C. sample, it is expected that VS23 using SFS 98 would show even higher predictive power on the Connecticut sample.

What differs significantly between the Connecticut and D.C. samples is the strength of the association between the Violence Scores and violent recidivism. For example, the highest MCR for the D.C. sample was .177. In contrast, the highest MCR for the Connecticut sample was .376. Given that the Connecticut sample had a lower base rate of violent recidivism (22%) than the D.C. sample (28%) (Connecticut uses an outcome measure than requires a conviction for a violent felony; in contrast, the D.C. sample uses an outcome measure that requires an arrest for a violent felony), it would normally be expected that the Connecticut sample would show lower MCRs. Whether this difference is due to differences in the types of cases in the sample, whether it is

14

because the Connecticut data is of better quality, or whether it is due to some other factor is not known.

Tables 18-20 show violent recidivism for VS13, VS23, and VS27 for the Connecticut sample. VS13 and VS27 are shown using SFS 98. VS23 is shown using SFS 95 (as explained above, VS 23 was not run with SFS 98).

### Table 18: Violent Recidivism By VS13/SFS 98
### (1991 Connecticut Sample)

| Score | N | Percent Violent Recidivism |
|---|---|---|
| 0 | 114 | 10% |
| 1 | 303 | 12% |
| 2 | 257 | 14% |
| 3 | 666 | 22% |
| 4 | 679 | 32% |
| All cases | 2019 | 22% |

MCR = .253.

### Table 19: Violent Recidivism By VS23/SFS 95
### (1991 Connecticut Sample)

| Score | N | Percent Violent Recidivism |
|---|---|---|
| 0 | 214 | 6% |
| 1 | 100 | 17% |
| 2 | 313 | 12% |
| 3 | 499 | 14% |
| 4 | 288 | 31% |
| 5 | 217 | 30% |
| 6 | 143 | 29% |
| 7 | 245 | 46% |
| All cases | 2019 | 22% |

MCR = .376.

### Table 20: Violent Recidivism By VS27/SFS 98
### (1991 Connecticut Sample)

| Score | N | Percent Violent Recidivism |
|---|---|---|
| 0 | 182 | 11% |

15

| | | |
|---|---|---|
| 1 | 182 | 10% |
| 2 | 389 | 21% |
| 3 | 602 | 22% |
| 4 | 106 | 19% |
| 5 | 403 | 35% |
| 6 | 48 | 35% |
| 7 | 93 | 48% |
| 8 | 14 | 36% |
| All cases | 2019 | 22% |

MCR = .351

<u>Summary of Findings</u>

1.   The Current D.C. Base Point Score (VS13) shows an extremely weak association with violent recidivism. The proposed Base Point Score published in the Federal Register (VS16) shows an even weaker association with violent recidivism. This was found for both the D.C. sample and the Connecticut sample.

2.   The proposed Base Point Score published in the Federal Register (VS16) can be modified to increase its predictive power with respect to violent recidivism by several changes, including (1) substituting a revised SFS 98 for SFS 95 (this was found to improve predictive power on both the D.C. sample and the Connecticut sample); (2) adding a point for one prior violent offense (this was found to improve predictive power on the D.C. sample, the 1987 federal sample, and the Connecticut sample); and (3) dropping the point for a current drug offense without violence (this was found to improve predictive power on the D.C. sample, the 1987 federal sample, and the Connecticut sample). With respect to federal offenders, SFS 98 also showed a slightly higher MCR on the 1978 sample with a five year follow-up period and an outcome of new arrest for a violent felony.

3.   The revised scores that show the strongest (although still very modest) association with violent recidivism are VS23, VS27, and VS33. Of the three scores, VS23 (which does not distinguish between high level and other violence) shows the strongest association with violent recidivism on both the D.C. and Connecticut samples. VS27 (which adds 1 point to VS23 if the current offense involved high level violence) shows slightly less predictive power. VS33 (which is VS27 plus 2 points if the offense involved the death of the victim - in effect, a 3-point increase to VS23 for the death of a victim, and a 1-point increase for other "high level violence") also shows slightly less predictive power on the D.C. sample.

4.   The measure of predictive power used (MCR) was substantially higher for all scores on the Connecticut sample, despite the fact that the Connecticut sample had a lower base rate of violent recidivism (a factor that tends to make prediction more difficult). It is not known whether this is due to difference in the sample or differences in the quality of the data.

16

The weaknesses of the D.C. data base reasonably could be expected to reduce the strength of any associations found.

.Recommendations

1.     From the above analysis of the D.C. and Connecticut samples, it appears that VS23 has the strongest association with recidivism.  Therefore, it is recommended that the Parole Commission adopt VS23 using SFS 98.

2.     To the extent that the Commission wishes to add an enhancement for current high level violence and/or death of a victim (as contained in the proposed rule), it would seem useful to make this a separate enhancement (i.e., designating SFS 98 as Part 1, designating current and previous violence from VS23 as Part 2, and designating any high level/death enhancement as Part 3).  In this way, the Commission's rationale for the high level violence/death enhancement could be set forth separately as a predictive rationale, a just deserts rationale, a rationale of attuning to D.C. Parole Board departures, or any combination thereof.   One possible formulation of such an enhancement is shown in Appendix 1.

       It is to be noted that the current study focused on any felony violence as the outcome measure.  The rate of high level violent recidivism was only 6%. When high level violence was tested as the outcome measure, there was an indication that current high level violence might assist in the prediction of future high level violence, but the number of cases was too few to consider this as more than hypothesis formulation.  Moreover, cases with current high level violence (especially resulting in the death of the victim) serve substantially longer periods in prison and thus are generally older than other offenders at release.  This, combined with the low base rate, makes empirical analysis of the predictive power of high level violence even more difficult.

3.     Given the difficulties experienced in the data collection phase of this project, it might be useful for the Commission, after it obtains custody of the pertinent case files, to replicate these analyses on an additional sample, especially if steps can be taken to reduce the missing cases and case file information.

Reference

Hoffman, Peter B. and James L. Beck (1984). Burnout-Age at release from prison and recidivism. 12 Journal of Criminal Justice: 617-625.

Monahan, John (1981). The clinical prediction of violent behavior.  Rockville, MD: National Institutes of Mental Health. DHHS Publication No. (ADM) 81-921.

Appendix 1: Suggestion for Modified VS 23

I.      SFS 98:
        10-8    0 points
        7-6     1 point
        5-4     2 points
        3-0     3 points

II.     CURRENT AND PRIOR VIOLENCE:
        Current Felony Violence  and 2+ Prior Felony Violence = 4 points
        Current Felony Violence and 1 Prior Felony Violence = 3 points
        Current Felony Violence = 2 points
        2+ Prior Felony Violence = 2 points
        1 Prior Felony Violence = 1 point.

III     HIGH LEVEL VIOLENCE IN CURRENT OFFENSE:
        +3 if the current offense involved murder or voluntary manslaughter; or
        +1 if the current offense involved:
                (1)     Any felony involving serious bodily injury;
                (2)     Any felony involving the discharge of a firearm with intent to injure
                        or intimidate;
                (3)     Arson of a building in which a person (other than an offender) was
                        present or likely to be present;
                (4)     Kidnapping or hostage taking;
                (5)     Forcible rape or forcible sodomy;
                (6)     Any felony involving sexual abuse of a person less than sixteen
                        years of age;
                (7)     Burglary of a residence while armed if a victim was in the residence
                        at the time of the offense;
                (8)     Obstruction of justice by violence or threat of violence.

18