# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY WILLIAMS-EL,                      :

                Petitioner              :

    vs.                                 :    CIVIL NO.  90-0649
                                        :         (Judge Kosik)
UNITED STATES PAROLE                    :
COMMISSION,                             :

                Respondent              :

FILED
SCRANTON

SEP 2 5 1990

DONALD R. BERRY
PER _____
DEPUTY CLERK

MEMORANDUM

The petitioner, an inmate at the United States Penitentiary
at Lewisburg, Pennsylvania, filed the instant petition for writ
of habeas corpus pursuant to 28 U.S.C. §2241 on March 27, 1990.
On July 24, 1990, United States Magistrate J. Andrew Smyser
issued a report in which he recommended that this case be
remanded to the United States Parole Commission for
reconsideration of the Commission's March 26, 1990 decision to
depart from the District of Columbia guidelines and to deny the
petitioner parole.

The time period in which the parties are permitted to file
objections to the report has lapsed, and no objections have been
filed.  Nor has either party requested an extension of time in
which to file objections.  When a Magistrate makes a finding or
ruling on a motion or issue, his determination should become that
of the court unless objections are filed.  Thomas v. Arn, 474
U.S. 140, 150-53 (1985).  Moreover, when no objections are filed,
the district court need only review the record for plain error or
manifest injustice.  Cf: Bell v. Warner, M.D.Pa. Civil Number 85-

0732 (Order, Muir, J., September 25, 1985), at slip op. p.2,
citing Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982); on
remand, 677 F.2d 410 (5th Cir. 1982); Sullivan v. Cuyler, 723
F.2d 1077, 1085 (3d Cir. 1983).

We have reviewed the report of the Magistrate, and we find no
error with it.  Accordingly, we shall adopt the Report and
Recommendation of the Magistrate as our own.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY WILLIAMS-EL,              :
                                :
        Petitioner              :
                                :
    vs.                         :    CIVIL NO.  90-0649
                                :        (Judge Kosik)
UNITED STATES PAROLE            :
COMMISSION,                     :
                                :
        Respondent              :

ORDER

AND NOW, this 25 day of September, 1990, IT IS

HEREBY ORDERED THAT:

[1] the Magistrate's July 24, 1990 report is adopted;

[2] the Clerk of Court is directed to remand this

case to the United States Parole Commission for reconsideration

of the Commission's March 26, 1990 decision to depart from the

District of Columbia guidelines and to deny the petitioner

parole; and

[3] the Clerk of Court is directed to forward a copy

of this Memorandum and Order to United States Magistrate J.

Andrew Smyser.

Edwin M. Kosik
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

Re:  3:90-cv-00649    Williams-EL v. United States Parole

True and correct copies of the attached were mailed by the clerk
to the following:

Larry Williams-EL
USP-LEW
U.S. Penitentiary at Lewisburg
#36370-118
P.O. Box 1000
Lewisburg, PA  17837

Bruce Brandler, Esq.
Us Attorneys Office
309 Federal Bldg.
Scranton,, PA  18501

*Mag. Smyser*
*+ US Parole*
*Commission*

DONALD R. BERRY, Clerk

DATE: _9-25-90_          BY: _____
                              Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY WILLIAMS-EL,               :        CIVIL NO. 3:CV-90-0649
                                 :
            Petitioner           :
                                 :
                                 :
        v.                       :        (Judge Kosik)
                                 :
UNITED STATES PAROLE             :
COMMISSION,                      :
                                 :
            Respondent           :

## REPORT OF MAGISTRATE

BACKGROUND

The petitioner, who is a prisoner at the United States Penitentiary at Lewisburg, filed this 28 U.S.C. §2241 habeas corpus petition on March 27, 1990.  The petitioner filed an amended petition on April 19, 1990.  After being granted an extension of time, the respondent filed a response on June 13, 1990.  On June 26, 1990, the petitioner filed a traverse.

The petitioner is currently serving an aggregate sentence of a minimum of five years and eight months and a maximum of twenty years and two months.  His aggregate sentence consists of a three year federal sentence for assault, a consecutive District of Columbia eight month sentence for attempted prison breach, a consecutive District of Columbia sentence to a minimum of five and one-half years and to a maximum of sixteen and one-half years for

AO 72A
(Rev. 8/82)

armed robbery, and a District of Columbia concurrent sentence to a minimum of twenty months and to a maximum of five years for possession with intent to deliver heroin.  The petitioner began serving his aggregate sentence on February 24, 1981.

The petitioner was first considered for parole under the federal parole guidelines at an initial parole hearing in October 1986.  The Parole Commission granted the petitioner a presumptive parole date after the service of ninety-four months or as of June 25, 1989.

The petitioner received a statutory interim parole hearing in October of 1988.  Based on the federal guidelines, the petitioner was continued to his presumptive parole date of June 25, 1989.

In March of 1989, the Parole Commission vacated its previous rulings in the petitioner's case based on the December 30, 1988 decision in <u>Cosgrove v. Thornburgh</u>, 703 F.Supp. 995 (D.D.C. 1988), which required the Parole Commission to apply the District of Columbia parole statutes and guidelines to all District of Columbia Code offenders who were currently or would become eligible for parole on or before August 31, 1989.

2

The petitioner's reconstruction hearing was held on June 23, 1989.

At the June 23, 1989 reconstruction hearing, the hearing panel began its reconstruction of petitioner's history with February 24, 1981, the date the petitioner began serving his aggregate sentence. The panel calculated that based on the severity rating for assault, the petitioner would have served the entire federal sentence for assault, resulting in a projected expiration date of May 24, 1983. On May 24, 1983, the petitioner would have begun serving his minimum sentence of five years and six months for armed robbery. The petitioner would have completed his minimum term on November 24, 1988.

The petitioner would thus have been scheduled for an initial parole hearing in July 1988, four months prior to the completion of his minimum term. The hearing panel calculated that at the July 1988 hearing, the petitioner's salient factor score category would have been a three, placing the petitioner in the high risk category. The panel then calculated that a point would have been added to that score based on the violent nature of the petitioner's crimes, and that a point would have been added because the petitioner received several institutional misconducts prior to July of 1988. The panel also concluded that a point would have been subtracted from the petitioner's score based on his

3

institutional work adjustment.  The petitioner's total point score would have been a four and parole would have been denied and a rehearing scheduled.

The panel concluded that the rehearing would have been scheduled for June of 1989, and the panel then considered the June 23, 1989 reconsideration hearing to also be the petitioner's first rehearing under the District of Columbia guidelines.  The petitioner began the June 23, 1989 hearing with a total point score of four.  The panel then added one point based on two prison misconducts incurred by the petitioner since June of 1988.

The misconducts were imposed for the introduction, possession and use of cocaine, and for the possession of property other than authorized property.  The panel also recommended subtracting one point from the total point score based on the petitioner's program achievement.  Based on the petitioner's total point score of four, the panel recommended that the petitioner be continued for a parole review hearing in December of 1989.  The panel's recommendation was adopted by the National Parole Commissioners, and the petitioner was notified by a Notice of Action dated July 26, 1989.

The petitioner's second rehearing under the District of Columbia guidelines was held on December 11, 1989.  The petitioner

4

began the hearing with a total point score of four.  The panel recommended that one point be subtracted from the petitioner's score based on the petitioner's program achievement since June of 1989.  The petitioner's total point score of three entitled the petitioner to be paroled at the highest level of supervision under the District of Columbia guidelines.

The panel recommended that the petitioner be paroled on May 25, 1990 with the special drug aftercare condition.  The panel noted that since the petitioner's case involved District of Columbia offenses, it would take at least two months to receive a decision from the Parole Commission on the panel's recommendation. The panel also noted that it hoped the petitioner would be placed in a halfway house prior to his release on parole.

By Notice of Action dated March 26, 1990, the National Parole Commissioners rejected the hearing panel's recommendation in the petitioner's case.  The Commissioners found that a departure from the District of Columbia guidelines was warranted because "you incurred a serious misconduct for introduction, possession and use of narcotics.  Release at this time would depreciate the seriousness of this new offense behavior and promote disrespect for the law."  Exhibit 9, Doc. 14.  The Commissioners continued the petitioner for a rehearing in December of 1990.

AO 72A
(Rev. 8/82)

DISCUSSION

     A request for judicial review of a decision of the Parole Commission is properly presented under 28 U.S.C. §2241 in the district of confinement. <u>Marrerro v. Warden, Lewisburg Penitentiary</u>, 483 F.2d 656 (3d Cir. 1973), <u>rev'd on other grounds</u>, 417 U.S. 653. A decision of the Commission to deny parole is reviewable on a rational basis standard. <u>Zannino v. Arnold</u>, 531 F.2d 687 (3d Cir. 1976).

     A petitioner may not have judicial review of a denial of parole in federal court until the petitioner has exhausted all available administrative remedies, such as an appeal to the National Appeals Board. <u>Talerico v. Warden, U.S. Penitentiary</u>, 391 F.Supp 193 (M.D.Pa. 1975). The respondent has not asserted that the petitioner has failed to exhaust his administrative remedies. The July 26, 1989 and the March 26, 1990 decisions of the National Commissioners in the petitioner's case were final decisions, not appealable to the National Appeals Board. For these reasons, we conclude that the petitioner has exhausted his administrative remedies.

     In his petition, the petitioner claims that the hearing panel's recommendation on December 11, 1989 to continue the petitioner for five additional months before granting the petitioner parole lacked a rational basis, that the March 26, 1990

6

AO 72A
(Rev. 8/82)

Notice of Action did not contain the reasoning of the National
Commissioners and that it was not received within the twenty-one
day period required by the District of Columbia guidelines and that
on March 26, 1990, the National Commissioners improperly considered
the petitioner's drug misconduct for a second time as a basis on
which to deny the petitioner parole.

The respondent contends that the petitioner's
institutional misconduct was not improperly considered by the
National Commissioner's on March 26, 1990.  The respondent has not
addressed the remainder of the petitioner's claims.

With regard to the petitioner's first claim, the rational
basis standard is applicable on review of the decisions of the
United States Parole Commission.  Zannino v. Arnold, supra.  See
also Campbell v. United States Parole Commission, 704 F.2d 106, 110
(3d Cir. 1983).  The petitioner's claim requests a review of the
December 11, 1989 hearing panel recommendation in order to
determine if a rational basis exists to support the panel's
decision to continue the petitioner's custody for five additional
months before granting the petitioner parole.  That recommendation
was rejected by the United States Parole Commission's subsequent
decision on March 26, 1990.  Thus, whether or not the hearing panel
had a rational basis for its recommendation is immaterial since
that recommendation was not adopted or implemented in the

7

petitioner's case by the Parole Commission.  The petitioner is not entitled to habeas corpus relief as to his first claim.

The remainder of the petitioner's claims focus on the March 26, 1990 decision of the National Parole Commissioners to continue the petitioner to a rehearing in December of 1990.  The petitioner first claims that the March 26, 1990 Notice of Action fails to meet due process requirements in that it does not state the Commissioners' reasons for departing from the District of Columbia parole guidelines.

The District of Columbia Parole guidelines provide that "any parole release decision falling outside of the numerically determined guideline shall be explained by reference to the specific aggravating or mitigating factors as stated in Appendices 2-1 and 2-2."  28 D.C.M.R. §204.1 (May 1987).  Appendix 2-2 applies to parole rehearings whereas Appendix 2-1 applies to initial parole hearings.  The factors listed as reasons to depart from the guidelines include a change in the availability of community resources leading to better parole prognosis, poor medical prognosis, and other change(s) in circumstances.

The District of Columbia guidelines also provide that "in unusual circumstances" where the Commission "waives the salient factor score and pre and post incarceration factors ... to deny

8

parole to a parole candidate," the Commission "shall specify in writing those factors which it used to depart from the strict application of the [District of Columbia] provisions." 28 D.C.M.R. §204.22 (May 1987).

In the March 26, 1990 Notice of Action, the National Commissioners noted that their decision to depart from the District of Columbia guidelines was based on their finding that the release of the petitioner would "depreciate the seriousness of this new offense behavior and promote disrespect for the law." These factors are provided for by federal statute,[1] and are not listed in Appendix 2-2 unless construed as a "change in circumstance."

No reference is made in the March 26, 1990 decision to the specific aggravating factors provided for in the District of Columbia guidelines Appendix 2-2. No explanation is contained in the summary of the March 26, 1990 decision which would indicate whether the National Commissioners concluded that a change in circumstance had occurred in the petitioner's case. The National Commissioners apparently based their March 26, 1990 decision on the provisions of 18 U.S.C. §4206 instead of the District of Columbia parole guidelines as required by Cosgrove, supra. For these

---

1.  18 U.S.C. §4206(a) provides that ... if the Commission ...determines (1) that release [of an eligible prisoner] would not depreciate the seriousness of his offense or promote disrespect for the law ... such prisoner shall be released."

9

reasons, it will be recommended that this case be remanded to the Parole Commission for reconsideration of the Commission's March 26, 1990 decision to depart from the District of Columbia guidelines and to deny the petitioner parole. Marshall v. Lansing, 839 F.2d 933 (3d Cir. 1988) (Remand to the Parole Commission requiring the Commission to explain its reasonings for determining a prisoner's parole eligibility is within the court's authority in a habeas proceeding.).

The petitioner claims that he has a right to receive a Parole Commission decision within twenty-one days of the hearing panel's recommendation. The petitioner asserts that this right is provided for by 28 D.C.M.R. §219.12 and 18 U.S.C. §4206(b). The petitioner asserts that this procedural right was violated when the March 26, 1990 Notice of Action was not issued within twenty-one days of the December 11, 1989 hearing panel recommendation.

28 D.C.M.R. §219.12 provides for written notice in parole revocation cases, and does not apply to the denial of parole. Thus, it is inapplicable in the petitioner's case.

18 U.S.C. §4206(b) provides that "the Commission shall furnish the eligible prisoner with written notice of its determination not later than twenty-one days, excluding holidays, after the date of the parole determination proceeding." The

10

petitioner was entitled to receive notice of the Commission's decision within twenty-one days of the December 11, 1989 hearing. The petitioner did not receive the notice until March 26, 1990.

Even though the petitioner was entitled to notice within twenty-one days of December 11, 1989 pursuant to 18 U.S.C. §4206, he must establish that he was prejudiced by the respondent's failure to comply with this procedural requirement before he is entitled to habeas corpus relief.  Butler v. U.S. Parole Comm'n, 570 F.Supp 67, 73 (M.D.Pa. 1983);  Ready v. U.S. Parole Comm'n, 483 F.Supp 1273, 1276 (M.D.Pa. 1980);  Fitzpatrick v. U.S. Parole Comm'n, 444 F.Supp 1302 (M.D.Pa. 1978).

The petitioner received notice of the Parole Commission's final decision two and one-half months after the date provided for in 18 U.S.C. §4206(b).  If the Commission's final decision had been to reject the December 11, 1989 recommendation to confine the petitioner for five additional months prior to granting the petitioner parole, and if the Commission had ordered that the petitioner be released on parole immediately, then the petitioner might have a basis on which to assert prejudice.

However, in the present circumstances, the Commission rejected the December 11, 1989 recommendation and continued the petitioner for a rehearing in December of 1990.  Even if the

11

Commission had rendered this decision within twenty-one days of the December 11, 1989 recommendation, the petitioner would still have been confined during the two and one-half month period in question. No prejudice to the petitioner resulted from the Commission's failure to comply with 28 U.S.C. §4206(b).  The petitioner is not entitled to habeas corpus relief as to this claim.

The petitioner finally claims that the National Commissioners improperly denied the petitioner parole based on his prison misconduct involving drugs for which the petitioner had already been sanctioned through the calculation of his total point score.  The petitioner also claims that the Commissioners had no rational basis on which to depart from the District of Columbia guidelines.

The petitioner's drug misconduct was considered at the April 12, 1989 hearing, and the petitioner's total point score was increased by one point based on the petitioner's institutional misconduct.  The petitioner's drug misconduct was also considered by the National Commissioners in their March 26, 1990 decision to depart from the District of Columbia guidelines.

The respondent asserts that the difference in these two instances is that for purposes of the petitioner's total point score, the Commission only considered "whether the parole candidate

12

has committed serious disciplinary infractions (adjudicated under
the Department of Corrections' due process procedures) while under
confinement for the current offense."  28 D.C.M.R. §204.19.  But,
for purposes of their decision to depart from the District of
Columbia guidelines, the Commission considered the degree of
seriousness of the petitioner's prison misconduct.

The first inquiry is whether an inmate committed a
disciplinary infraction adjudicated under the Department of
Corrections' due process procedures.  If the inquiry is answered
affirmatively, then one point is added to the inmate's total point
score.

The second inquiry is whether the disciplinary infraction
is serious enough to be a factor in a decision to depart from the
District of Columbia parole guidelines.  The outcome of this
inquiry does not affect an inmate's total point score.  The
petitioner has not alleged that the Commission twice added a point
to his total point score for the same disciplinary infraction.  For
these reasons, we conclude that the Commission did not improperly
consider the petitioner's drug misconduct twice.

Since we will recommend that this case be remanded to the
Parole Commission for reconsideration of the March 26, 1990
decision, we will not presently address whether the Commissioners

13

had a rational basis on which to depart from the guidelines in the
petitioner's case.

Based on the foregoing, it is recommended that this case
be remanded to the Parole Commission for reconsideration of the
Commission's March 26, 1990 decision.

J. Andrew Smyser
United States Magistrate

Dated:   July    , 1990.

Certified from the record
Date____7/24/90.
Donald R. Berry, Clerk

Per_____
Deputy Clerk

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY WILLIAMS-EL,                  :      CIVIL NO.  3:CV-90-0649
                                    :
                Petitioner          :
                                    :      (Judge Kosik)
        v.                          :
                                    :      FILED
UNITED STATES PAROLE                :      HAR~~~~~~
COMMISSION,                         :
                                    :      JUL 2 4 1990
                Respondent          :
                                           DONAL~ ~~~~~, CLERK
                                    **NOTICE**      PER ~~~~~~

        **NOTICE IS HEREBY GIVEN** that the undersigned has entered

the foregoing **Report** dated July     , 1990.

        Any party may obtain a review of the magistrate's above

proposed determination pursuant to Rule 904.2 which provides:

> Any party may object to a magistrate's proposed findings,
> recommendations or report under subsections 901.4, 901.5,
> and 901.6 of these rules, _supra_, **within ten (10) days** after
> being served with a copy thereof.  Such party shall file
> with the Clerk of Court, and serve on the magistrate and all
> parties, written objections which shall specifically
> identify the portions of the porposed findings,
> recommendations or report to which objection is made and the
> basis for such objections.  The briefing requirements set
> forth in Rule 904.1 shall apply.  A judge shall make a _de
> novo_ determination of those portions of the report or
> specified proposed findings or recommendations to which
> objection is made and may accept, reject, or modify, in
> whole or in part, the findings or recommendations made by
> the magistrate.  The judge, however, need conduct a new
> hearing only in his discretion or where required by law, and
> may consider the record developed before the magistrate,
> making his own determination on the basis of that record.
> The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate with
> instructions.

                                    J. Andrew Smyser
                                    United States Magistrate

Dated:    July     , 1990.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

Re:  3:90-cv-00649    Williams-EL v. United States Parole

True and correct copies of the attached were mailed by the clerk
to the following:    Kosik, Smyser, Security, Pamelia

        Larry Williams-EL
        USP-LEW
        U.S. Penitentiary at Lewisburg
        #36370-118
        P.O. Box 1000
        Lewisburg, PA  17837

        Bruce Brandler, Esq.
        Us Attorneys Office
        309 Federal Bldg.
        Scranton,, PA  18501


                                        DONALD R. BERRY, Clerk


DATE: _____7/24/90_____          BY: _____ASm_____
                                        Deputy Clerk

# Exhibit E



GOVERNMENT OF THE DISTRICT OF COLUMBIA
**B O A R D   O F   P A R O L E**
717-14TH STREET, N.W., SUITE 300
WASHINGTON, D.C. 20005

## POLICY GUIDELINE

**SUBJECT:**  Rehablitation and Treatment of Offenders

**I.**  **AUTHORITY:** D.C. Code Title 24, Sections 201.2(a) and (d), and 24-204(a), (1989 Repl. Vol.)

**II.**  **PURPOSE:** To clarify the rehabilitative and treatment goals of the Board in both parole decisionmaking and supervision of parolees in the community.

**III.**  **APPLICABILITY:** All District of Columbia inmates and parolees under the jurisdiction of the D.C. Board of Parole.

**IV.**  **REFERENCES:** DCMR Title 28, Chapters 1, 2 and 3 (May 1987 ed., as amended)

**V.**  **RATIONALE:** The D.C. Board of Parole has a statutory mandate to make parole release and revocation decisions, and to provide parole supervision services in the community, that are consistent with the best interests of both the community and the offender. The Board believes that these interests are best served by incorporating the goals of rehabilitation and treatment of offenders in its decisionmaking and community supervision programs.

Relatively few offenders remain incarcerated for the rest of their lives. Therefore, one of the primary goals of parole in the District of Columbia is to enable offenders to return to and remain in the community crime-free. Rehabilitation and treatment-oriented programs and services, both in prison and the community, are key stepping stones toward achieving this goal.

**VI.**  **DEFINITIONS:** None.

**VII.**  **POLICY:** Consistent with the Board's mission to protect the public interest, promote rehabilitation of offenders and protect individual rights, the rehabilitation and/or treatment needs of offenders shall be considered in both the parole decisionmaking and supervision programs.

Adopted by the D.C. Board of Parole on  *May 8, 1945*

Polly J. Nelson, Board Member
for Margaret Quick, Chairperson

# Exhibit F

# DECLARATION OF GLADYS MACK

Pursuant to 28 U.S.C. § 1746(1), I, Gladys Mack, do declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.    I am currently the Chief Operating Officer of the United Planning Organization in Washington, D.C.

2.    I served as Chair of the D.C. Board of Parole ("the Board") from 1986 until 1991.

3.    I am coming forward voluntarily to tell the Court about the practices of the Board based on my five years of experience as Chair. I volunteered to be a witness in this case. I was not pressured in any way to provide this declaration to the Court or to speak to plaintiff's counsel.

## MY EXPERIENCE AS CHAIR OF THE BOARD

### My Responsibilities as Chair of the Board

4.    I was appointed as Chair of the Board in 1986 by then Mayor Marion Barry. I left the Board in 1991 and am currently working for the United Planning Organization.

5.    As Chair of the Board, I was responsible for managing the "reorganization" of the oversight of parole that took place in 1987 through 1988. The reorganization was prompted by Mayor Barry's decision to transfer the responsibility for supervising D.C. parolees from the Department of Corrections to the Board. Prior to the reorganization, the Board had decision-making authority but no supervisory authority for parole supervision. As a result of this broadening of responsibilities, the Board expanded from three to five Board members.

6.    During my tenure as Chair, one of my most significant contributions was clarifying the Board's policies and procedures. I worked with the Board's Program Analysis Officer to develop some of the language used in the guidelines codified at Title 28 of the D.C. Municipal Regulations ("the Regulations"). We also worked together to draft policy guidelines by which the Board executed the rules and duties in the Regulations. The main purpose of the Regulations and the related policy guidelines was to ensure consistency and equity in the parole decision-making process.

7.    In addition to clarifying the Board's policies and procedures, I also led the initiative to automate the Board's parole system. The result was an electronic case management system called PARIS.

8.    During the first two years of my tenure with the Board, I conducted hearings on a regular basis. After the reorganization, my responsibilities were primarily administrative, as the entire staff, which had grown to 60 people, began reporting to

me. While I no longer conducted hearings, I continued reviewing initial parole, revocation, and reparole decisions made by the other Board members. I reviewed these decisions about three days per week. Each decision had to be reviewed and approved by three Board members before it could be finalized. I reviewed and signed approximately 20-25% of all parole, revocation, and reparole decisions that were made during my tenure as Chair of the Board.

### *The Board's Reparole Practice*

9.    If an offender was alleged to have violated his/her parole, the Board would conduct a revocation hearing. At the revocation hearing, the Board determined whether or not a violation had occurred. If it was determined that an offender had violated his/her parole, the Board decided whether or not to revoke the offender's parole. If an offender's parole was revoked, the Board then determined if the offender should be reparoled immediately or re-incarcerated.

10.   If the Board ordered an offender's re-incarceration, the Board would impose a "set-off" period, during which the offender would remain incarcerated. The Board used guidelines to determine the length of the set-off period.

11.   I believe that the guidelines used during my tenure at the Board to establish the set-off period are the guidelines that are codified in the Regulations. The Board used the salient factor score only at initial parole hearings, not at the revocation or reparole stages.

12.   The Board could depart from the guidelines in determining the length of an offender's set-off period if the Board identified specific reasons for the departure. However, the Board typically gave a set-off period within the guidelines' standard of up to two years. When an offender's parole was revoked based a new conviction for a major offense, the Board occasionally imposed a set-off of up to three years.

13.   The Board typically reparoled offenders at the end of their set-off periods. The most important factor in determining whether or not an offender would be reparoled was the offender's institutional conduct during the set-off period. The imposition of a set-off period was the punishment for violating the parole conditions. Therefore, if an offender served the set-off period without disciplinary infractions, he/she was reparoled.

14.   Evidence of rehabilitation was important to the Board and influenced the Board's parole and reparole decisions. It was part of the Board's practice to give an offender special instructions at his/her revocation hearing and the special instructions often suggested programs that would promote the offender's rehabilitation. However, the Board typically reparoled all offenders who served their set-off periods without major disciplinary infractions regardless of their rehabilitation efforts.

15.  Few inmates were denied reparole after serving their set-off period, so it was unusual for the Board to order a second set-off period after the re-hearing date.  It was contrary to the Board's practice to deny reparole to an offender who had maintained good institutional conduct during his/her set-off period.

Dated: ___1/31/07___


_____
Gladys Mack