UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONY R. SELLMON, *et al.*,          )<br>                                                       )<br>            Plaintiffs,                      )<br>                                                       )<br>    v.                                              )<br>                                                       )<br>EDWARD F. REILLY, Jr.,             )<br>Chairman of the United              )<br>States Parole Commission,        )<br>*et al.*,                                        )<br>                                                       )<br>            Defendants.                   )<br>                                                       ) | Civil Action No. 06-1650(ESH) |

### REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE TO TRANSFER

Edward F. Reilly, Jr., Chairman, United States Parole Commission ("USPC"), Cranston J. Mitchell, Deborah Spagnoli, Patricia Cushwa and Isaac Fulwood, Jr., Commissioners, USPC, in their official capacities (collectively "Defendants"), by and through the undersigned hereby submit this memorandum of law in reply to Plaintiffs' opposition to and in further support of Defendants' Motion for Judgment on the Pleadings or, in the alternative, to Transfer.

In their Opposition to Defendants' Motion for Judgment on the Pleadings and in further support of their Motion for Summary Judgment, Plaintiffs essentially argue that Defendants are "persons" under 1983 and that Plaintiffs' claims are proper under 42 U.S.C. 1983. *Pls'. Opp*. at pp 13-20. Substantively, Plaintiffs argue, despite undisputed legal precedent to the contrary, that facial differences between the defunct District of Columbia Parole Board's ("Board") and the United States Parole Commission's ("USPC") parole guidelines created a *significant* risk of increasing their incarceration in contravention of the *ex post facto* clause. *Garner v. Jones*, 529

U.S. 244, 251 (2000) [emphasis added]. Furthermore, Plaintiffs argue that the practical implementation of Defendants' parole guidelines had the same prohibited effect. Defendants contest each and every argument Plaintiffs posit.

Notwithstanding the above, it appears that the parties agree that regardless of the presumptions, assumptions and suppositions of suitability for parole, the Board or the USPS may deny parole, under the residual clause, if "the candidate would not 'live and remain at liberty without violating the law' and the candidate's 'release was [is] incompatible with the welfare of society.'" *Pls'. Opp*. at 2 (quoting D.C. Code §24-204). Therefore, the question presented is whether, in light of this framework-*i.e.* the Board's and the USPC's conceded ability to depart from numerical guidelines where circumstances permit-the USPC's actions increased significantly the risk of increased incarceration for these violent D.C. Code offenders. But, with regard to these Plaintiffs, who are all violent D.C. Code offenders, it is virtually impossible to demonstrate an *ex post facto* violation.

The parties also agree that the standard of review for Defendants' Motion for Judgment on the Pleadings is identical to that under Fed. R. Civ. P. 12(b)(6). *Pls'. Opp*. at 12-13; *Defs. Br*. at 36. Defendants are entitled to judgment under Fed. R. Civ. P. 12(c) because Plaintiffs have failed to plead facts beyond mere speculation, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1967 (2007), and in light of the fact that only clear legal issues are before the Court, further discovery would be futile. In *Twombly*, *supra*, Plaintiffs alleged that certain telecommunication companies' "compelling common motivation" was to "engage[] in parallel conduct in their respective service areas to inhibit the growth of upstart[s] " in violation of the Antitrust Act. *Id*. at 1962. The Supreme Court held that plaintiffs failed to state an Antitrust claim because a

complaint stating such a claim requires enough factual matter to suggest a contract, combination or conspiracy not just a statement of parallel conduct. *Id*. at 1965-66. The Court noted that legal precedent and intellectual commentary suggested that the alleged parallel conduct could just as well be lawful independent action absent an antecedent agreement to do so in restraint of trade. *Id*. Allegations must be enough to raise a right to relief beyond the speculative level. *Id*.

Here, Defendants are entitled to judgment on the pleadings because Plaintiffs' facts, even if taken as true, fail to state a claim that the Board would not have departed from the numerical guidelines to deny Plaintiffs parole especially in light of their pasts as violent D.C. Code offenders. As in *Twombly*, this Circuit's law is replete with precedent that sets forth unequivocally that the Board was bestowed with broad discretion, including the discretion to not follow its numerical guidelines especially in cases such as Plaintiffs'. *Ellis v. Dist. of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996).

**PLAINTIFFS MAY NOT BRING THIS ACTION UNDER 42 U.S.C. 1983 AND THEIR EXCLUSIVE REMEDY IS *HABEAS***

At the outset, Defendants incorporate by reference the argument set forth in their memorandum in support of Motion for Judgment on the Pleadings. In response to Defendants' argument that a 1983 action is barred and *habeas* is their exclusive relief, Plaintiffs argue that in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court upheld challenges to parole eligibility and suitability under Section 1983. Plaintiffs' argument fails because *Wilkinson* is inapplicable on the facts of this case.

In *Wilkinson*, *supra*, two state prisoners brought a Section 1983 action challenging the constitutionality of Ohio's parole procedures. 544 U.S. at 76. The issue was whether the

prisoners could maintain the action under Section 1983 or were required to bring the action under *habeas*. *Id*. In discussing the evolution of *habeas* and Section 1983 jurisprudence, the Court noted that a determination of which action applies is governed by the relief sought. 544 U.S. at 81. Specifically, *habeas* applies when an inmate seeks to invalidate the duration of confinement either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of custody. *Id*. In other words, *habeas* applies when an inmate requests present or future release. Conversely, Section 1983 actions pertain to procedural challenges where success does not necessarily spell an immediate or speedier release. *Id*. Applying these principles, the Court noted that neither inmate sought an injunction ordering immediate release because one only sought an eligibility determination and the other sought a suitability determination, which the Ohio Board could deny in its discretion. *Id*. at 82.

None of the principles that informed the decision in *Wilkerson* is present in this case. Here, Plaintiffs seek relief in the form of a declaration that Defendants' application of USPC guidelines to them is unconstitutional and order directing Defendants to rehear Plaintiffs' parole applications under the Board's guidelines. Pls'. Opp. at 2. Based on Plaintiffs' well-stated position that they have been disadvantaged by having their parole determinations evaluated under Defendants' guidelines, it is indisputable that Plaintiffs believe that evaluation under the Board's guidelines would presumably be more favorable and lead to a speedier release. Moreover, it has been Plaintiffs' contention all along that Defendants' discretion under the Board's guidelines is so circumscribed that they would have little choice but to order Plaintiffs paroled. Notable also is that, unlike the *Wilkinson* inmates who did not seek an injunction, Plaintiffs are seeking an

4

order compelling Defendants to utilize the Board's guidelines, which, according to them, is certain to result in a speedier release.

In further support of their argument that a Section 1983 action is proper, Plaintiffs misleadingly argue that their position is supported in this Circuit. *Fletcher v. Dist. of Columbia*, 370 F.3d 1223 (D.C. Cir. 2004)(*Fletcher I*)(No. 01-601). In *Fletcher I*, plaintiff brought a Section 1983 action challenging the constitutionality of the United States Parole Commission's application of reparole guidelines adopted after plaintiff's crimes to his reparole hearing. *Id*. at 1225.[1] Fletcher alleged that he would have been eligible for reparole sooner under the Board guidelines in effect when he was convicted in 1978. *Id*. at 1225-26. The District Court dismissed Fletcher's Section 1983 claim because it necessarily implied that his incarceration was unlawful. *Id*. at 1227. On appeal, Fletcher argued that he was not "challenging the validity of...the [USPC's] denial of reparole... [but] only the 'procedures used...in determining whether or not he is eligible for [re]parole.'". *Id*. at 1226. The Court held that a prisoner was required to bring a *habeas* only "when if successful [] would necessarily imply, or automatically result in a speedier release from prison." *Id*. at 1227 (quoting *Anyawutaku v. Moore*, 153 F.3d 1053, 1056 (D.C. Cir. 1998).

Notably, while litigating his Section 1983 action, Fletcher also maintained a *habeas* action, No. 01-2058, alleging the same claims as the above action. *Fletcher v. District of*

---

[1] Plaintiffs attempt to make more of the *Fletcher* cases than is apropos. This case is about changes, if any, to rules governing parole. The *Fletcher* cases, on the other hand, deal with differences between the Board's and USPC's regulations governing reparole. The USPC "did not adopt the Board's regulations covering decisions to grant reparole to DC. Code offenders." *Fletcher v. Dist. of Columbia*, 433 F.3d 867, 869 (D.C. Cir. 2004).

*Columbia*, 433 F.3d 867, 869 (D.C. Cir. 2004) (*Fletcher III*).² Although not clear as to what relief Fletcher sought in the *habeas* petition, on appeal, he argued that the Board's and USPC's reparole regulations differed in that the former focused on rehabilitation while the latter focused on punishment and recidivism leading to "a significant risk that he will linger in prison longer than he reasonably assumed when his parole was revoked." *Fletcher III*, 433 F.3d at 870. The *Fletcher III* Court remanded the matter to the District Court because there was no dispute that the Board's and USPC's reparole guidelines were distinguishable on their face. *Id*. at 878. On remand, after discovery, the District Court granted the USPC's and its commissioners in their official capacities' motion to dismiss Fletcher's Section 1983 claims on sovereign immunity grounds but left standing Fletcher's 1983 challenge to the reparole procedures against the commissioners in their official capacities. *Fletcher v. District of Columbia*, 481 F.Supp.2d 156 (D.D.C. 2007).³

Based on the *Dotson* and *Fletcher* rulings, it is clear that Plaintiffs' *ex post facto* claims--that Defendants' use of USPC guidelines instead of the Board's disadvantaged them by

---

      ²       In *Fletcher v. Dist. of Columbia*, 391 F.3d 250, 250 (D.C. Cir. 2004)("*Fletcher II*"), the Circuit vacated *Fletcher I's* ruling on the merits that "a parole guideline is not 'law' within the proscription of the *ex post facto* clause.

      ³       Ultimately, the *Fletcher* matters were mooted when he was eventually paroled. At the time of the ruling on the Motion to Dismiss, Fletcher's Section 1983 and *habeas* actions were still pending. Apparently, Fletcher contended that "it ha[d] always been his intention to pursue his *ex post facto* claim in one proceeding." *Fletcher*, 481 F.Supp.2d 156, 158 n1. The District Court also noted that the practical effect of an action for declaratory and injunctive relief against USPC commissioners is "not different than an action against the [USPC]." *Id*. at 162 n8. Therefore, since actions against the USPC under Section 1983 are barred, actions against the commissioners in their official capacities for declaratory and injunctive relief should be barred also since such actions are only disguised actions against the USPC. Actions for relief from USPC decisions should be limited to *habeas* petitions.

lengthening their sentences and seeking declaratory and injunctive relief to remedy this constitutional violation--must be brought as a *habeas* petition.  Plaintiffs cannot have it both ways.  Either Defendants' use of USPC guidelines rather than the Board's did not disadvantage Plaintiffs or, if it did, it did so significantly and their sole remedy, especially where the challenge is to more than just the procedure, must be via *habeas* petition.  As Defendants argued in the memorandum in support of their Motion for Judgment on the Pleadings, many, if not most of the challenges by D.C. Code Offenders to the USPC's parole decisions are brought as *habeas* petitions.  *Defs' Br*. at 31-35.  Plaintiffs failed to respond meaningfully to this fact except to say that those plaintiffs never raised the arguments being made here.  Plaintiffs' argument clearly does not refute the fact that challenges to parole determinations inherently invoke core *habeas* issues.  *See Garner v. Jones*, 529 U.S. 244 (2000); *California Dep't of Corrections v. Morales*, 514 U.S. 499 (1995).

In a desperate effort to fit within the *Fletcher* rulings, Plaintiffs argue that they only challenge Defendants' procedure not the validity of its rulings.  This meritless argument falls on its face as a futile attempt by Plaintiffs to distance themselves from the fact that by challenging Defendants' decision on the grounds that the allegedly wrong guidelines were used and more favorable ones should have been used, they, in essence, challenge Defendants' decision.  It is also noteworthy that Plaintiffs seek an order requiring Defendants to use, according to them, the more favorable guidelines.  Clearly, Plaintiffs cannot argue, credibly, that the ultimate goal of requiring Defendants' to apply the Board's guidelines is not to obtain a speedier release for the Plaintiffs.[4]

---

[4]     Plaintiff Sellmon previously filed a *habeas* petition that was ultimately dismissed as moot.  *Sellmon v. Compton*, 03-0169(JCT) (W.D. Va).  Plaintiff Swinton also filed a *habeas* petition, *Swinton v. Smith*, 04-1220(YK-EC)(M.D. Pa); also Plaintiff Martin, *Martin v. Compton*,

*Forrester v. United States Parole Comm'n*, 310 F.Supp.2d 162, 170 (D.D.C. 2004)(dismissing a 1983 claim identical to Plaintiffs' on the grounds that any challenges to the defendant's denial of parole had to be by *habeas* petition).

Despite Plaintiffs' protestations, it is indisputable that the prevailing case law in this Circuit makes clear that the question of whether Defendants are "persons" under 42 U.S.C. 1983 remains outstanding. *Settles v. United States Parole Comm'n*, 429 F.3d 1098 (D.C. Cir. 2005). Specifically, the Court rejected the USPC's argument that it was not a person under Section 1983 not on the merits, but because it did not raise the argument in a timely manner and thereby waived it. 429 F.3d 1098, 1104 (noting that the USPC presented "no compelling reason why the court should depart from its general practice of refusing to consider arguments raised for the first time on appeal"). Nevertheless, Plaintiffs are correct that whether the USPC is a person is not a jurisdictional but statutory question that could lead to a dismissal for failure to state a claim. *Id*. Defendants' reiterate that the USPC is not a person under Section 1983. *Defs' Br*. at pp 37-39.

## PLAINTIFFS' ARGUMENTS THAT THERE ARE FACIAL AND PRACTICAL DIFFERENCES BETWEEN BOARD AND USPC GUIDELINES IS OF NO MOMENT

The fundamental premise of Plaintiffs' case is that, with regard to these violent D.C. Code offenders, the Board, on one hand, would have followed the numerical guidelines to the letter, without any departures, and the USPC applied its allegedly revised guidelines to Plaintiffs' disadvantage. The fallacy in Plaintiffs' case is that is presumes that the Board would have followed the numerical guidelines strictly. The Circuit's case law proves Plaintiffs' premise patently false. In *Ellis, supra*, 84 F.3d 1413, the issue was whether the due process clause of the

---

04-387(SGW)(W.D. Va).

Fifth Amendment required the Board to hold parole hearings far enough in advance to enable prisoners to be released by their parole eligibility dates. *Id*. at 1415. In reviewing the Board's statutory mandate, the same one at issue here, D.C. Code § 24-204(a), the court noted that the statute created "'no expectation of release'" and that "even if a prisoner established everything the statute required, the Board [] still had discretion to deny parole." *Id*. (quoting *Price v. Barry*, 53 F.3d 369, 371 (D.C. Cir. 1995). Still, the *Ellis* Court looked at whether the language of the statute "contain[ed] substantive limitations on official discretion embodied in mandatory statutory or regulatory language." *Id*. The Court found the statutory language lacking in specificity and looked at the regulatory language also at issue here. *Id*. In doing so, the Court noted that even the regulatory language recognized the "Board's authority 'to release a prisoner on parole *in its discretion*.'" *Id*. at 1418 (quoting 28 D.C. Mun. Regs. §200.1).

"The calculations done under the regulations are intended to 'enable the Board to exercise its discretion when, and only when, release is not incompatible with the safety of the community.'" *Id*. (quoting 28 D.C. Mun. Regs. §200.4). According to the Court, the statute and regulation promulgated thereunder "suggests...a prisoner with a low total point score shall be granted parole unless the Board, in the exercise of its discretion, believes there is some other reasons for not granting parole." *Id*. at 1419. The Court then proceeded to review the parole case of the lead plaintiff, Michael Ellis, who, despite his extremely violent past towards women was able to manipulate the system enough to be numerically eligible for parole. *Id*. The Board denied parole relying on its residuary discretionary authority. *Id*. Interestingly, the Court noted that in response to the ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), the D.C. City Council substituted the "shall be granted" parole language of 204.19 with "may." *Id*. at 1418 n4.

In reaching its decision about the extent of the Board's discretion, the *Ellis* Court relied on a string of D.C. Court of Appeals cases. *Id*. at 1419 (citing *McRae v. Hyman*, 667 A.2d 1356 (D.C. App. 1995)(noting that the numerical guidelines were not a "rigid formula" and not a constraint on discretion conferred upon the Board by the parole statute)); see also *Davis v. Henderson*, 652 A.2d 634 (D.C. App. 1995)(holding that because the exercise of discretion was available under the old and new guidelines there could not be an *ex post facto* violation). Defendants are not oblivious of *Garner's* admonition that the presence of discretion does not preclude an *ex post facto* violation. 529 U.S. 244, 253. However, Defendants maintain that, in an action such as this, involving violent D.C. Code offenders, the likelihood of demonstrating an *ex post facto* violation in the midst of the broad discretion conferred on the Board and USPC is insignificant.[5] It certainly does not rise to the level envisioned in *Garner*.

**WHETHER FACIALLY OR IN PRACTICE PLAINTIFFS CANNOT DEMONSTRATE A SIGNIFICANT RISK OF INCREASED INCARCERATION AS REQUIRED BY *GARNER***

Typically, parole boards are bound by statute to consider sentencing information relevant to the setting of parole release dates with an eye towards establishing uniform terms for offenses of similar gravity and magnitude. *Morales*, *supra*, 514 U.S. 499 at 512. However, as Defendants noted initially, the Supreme Court has said that the *ex post facto* clause should not be employed for "the micromanagment of an endless array of legislative judgments to parole...." *Garner*, 529 U.S. at 252 (quoting *Morales*, 514 U.S. at 508)). The *ex post facto* clause does not

---

[5] In *Blair-Bey v. Quick*, 151 F.3d 1036 (D.C. Cir. 1998), a particularly violent prisoner received a less favorable treatment from the Board than he did from the USPC, including a setoff of five years, which was not provided for in either the statute or regulation. *See also Blair-Bey v. Quick*, 159 F.3d 591, 592 (D.C. Cir. 1998)(noting that the prisoner's attempt to prove an *ex post facto* violation is "heavy, if not a near-impossible."

extend to every change in law that may work to disadvantage a prisoner but only to secure substantial personal rights. *Portley v. Grossman*, 444 U.S. 1311, 1312 (1980)(noting that parole guidelines operate only to provide a framework for the exercise of statutory discretion). Nor does it limit legislative control over remedies and modes of procedure. *Id*. The 1987 guidelines merely formalized the method by which the board exercised discretion to grant parole. *Barnard v. Poteat*, 271 F.Supp.2d 49, 50 (D.D.C. 2002). The Board exercised the same level of discretion before the 1987 guidelines that the USPC has since the Board dissolved. *Id*.

Plaintiffs dedicate an inordinate amount of needless ink to suggest that the Board and the USPC apply different standards to determine parole eligibility. They suggest that the USPC improperly takes into consideration a so-called offense accountability. This argument is lacks merit. It is indisputable that parole eligibility is determined by the minimum sentence imposed by the court. So eligibility is not affected by the paroling policies of either the Board or the USPC. The USPC only has the authority to parole a D.C. offender (*i.e.*, the prisoner achieves parole eligibility) after he completes service of the minimum term imposed by the Superior Court judge. 28 CFR §2.73(a).

Equally without merit is Plaintiffs' complete and total reliance on a numerical system that is characterized, by their own admission, by inordinate assumptions, presumptions and suppositions. Plaintiffs' entire effort to draw a phantom distinction between the Board's and the USPC's exercise of discretion is based on these tenuous conclusions. Defendants posit that even if these presumptions and suppositions bore a modicum of reliability, the Board and retained discretion to depart from them and could legitimately have done so in the case of these violent D.C. Code offenders.

Specifically, Plaintiffs fail to demonstrate what the practice of the Board was under the 1987 guidelines and their self-serving analysis of the basis for the USPC's rule-making is not proper in this action. In support of their contention that the Commission's promulgation of revised D.C. guidelines has resulted in a significant risk of increased punishment, Plaintiffs allege that the USPC relied upon flawed methodology, erroneous information, and faulty reasoning in finding that the Board frequently departed from the 1987 guidelines and incorporating those changes into the revised guidelines. Plaintiffs' allegations in this regard further illustrate that the issue before the Court is a purely legal issue and that Plaintiffs seek to micromanage the affairs of a quasi-judicial parole authority.

In their opposition, Plaintiffs attempt to parse the manner in which the USPC came to the conclusion that the Board had regularly departed from the 1987 guidelines. At length, Plaintiffs seek to "independently" analyze the USPC's basis for modifying the 1987 guidelines. After undergoing this "independent" analysis, Plaintiffs' counsel opines that the USPC's reasons for modifying the D.C. guidelines were flawed and are unreliable. Even if these claims were factually correct, they have no place in this litigation, as Plaintiffs' counsel apparently seeks to challenge the manner in which the USPC informs its discretion in this regard, not demonstrate that the USPC has violated the *ex post facto* prohibition by allegedly increasing Plaintiffs' punishment. Plaintiffs' self serving so-called analysis of this information demonstrates Plaintiffs' desire to micromanage the internal administrative and policy making affairs of the USPC. Defendants aver that Plaintiffs' counsel's own analysis of this information, which is without regard to the numerous personal factors of each particular case, is simply immaterial to the issue before the Court.

The complexity of the information compiled and numerous factors involved in the parole decision-making process presented in the several studies undertaken by the USPC show that the issues of predictive judgment and recidivism demand significantly individualized analysis by parole authorities. *See, e.g. Morrissey v. Brewer*, 408 U.S. 471, 477-80 (1972). Thus, to the extent that Plaintiffs seek to challenge the validity of the Commission's conclusions drawn from its various studies, unless there is evidence of irregularity, such challenge must be disregarded. *See, e.g. Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 103 (3d Cir. 1992)(because of the presumption of administrative regularity, USPC presumed to act in good faith). Plaintiffs' repeated references to the manner in which the USPC came to its conclusions implicates the very micromanagement of the parole process that the U.S. Supreme Court cautioned against in *Garner*. Defendants additionally note that such claims are not properly brought in this action because Plaintiffs are again not making an *ex post facto* argument here, but they are essentially challenging the Commission's ability to independently assess information and make policy decisions drawn from those analysis.

In effect, Plaintiffs are substituting their judgment for that of the Commission, independently determining that the Commission's reliance on certain information was "flawed," and then asking this Court to accept Plaintiffs' counsel's assessment of the information as an imposition on the administrative parole process protected under *Garner*. Plaintiffs' own "independent" analysis illustrates that these issues are best left to the administrative agency and underscores the purpose of Agency expertise, discretion and judicial deference thereto. The minutia of Plaintiffs' "independent" analysis further demonstrates that the manner in which the Board informs its discretion – or actually exercises its discretion – cannot be easily quantified,

especially in a judicial proceeding. Thus, these issues again wind up being legal issues committed to the parole authority's discretion, as the D.C. parole statute dictates.

Since the inception of this litigation, Defendants have argued that the issues currently before the Court are wholly legal in nature and are capable of being resolved as a matter of law. Despite this position, Defendants have not opposed discovery and have provided Plaintiffs with all available information, to the best of their ability. Because of this posture, Plaintiffs have obtained information regarding the USPC internal administrative and deliberative process regarding the development of the USPC's 1998 guidelines for D.C. Code offenders and the Commission's subsequent 2000 guidelines. Defendants aver that further discovery will be futile because Plaintiffs will be unable to demonstrate that, as to them, an *ex post facto* violation has occurred. Plaintiffs are simply victims of their own past violent criminal conduct.[6]

Finally, it is important at this juncture to revisit the fact that the *Morales* and *Garner* habeas petitioners were unable to demonstrate a conclusive *ex post facto* violation despite the fact that the setoff periods for their parole rehearings had been changed, in the case of *Garner*, from three years to seven years. The Supreme Court noted that the changes enabled a more careful and accurate exercise of discretion according to the likelihood that a review will result in meaningful consideration. 529 U.S. at 254. The Court also noted in both cases that despite what appeared to be lengthy setoffs, the inmates retained the right to petition for earlier hearings based on changed circumstances. *Id*. Here, Plaintiffs are provided that right pursuant to 28 C.F.R. §2.28. Most significantly, the Court observed that "discretion, by its very definition, is subject to

---

[6] In *Garner*, the Court noted that given petitioner's criminal history, including his escape from prison and the commission of a second murder, it is difficult to see how the board increased the risk of incarceration.

changes in the manner in which it is exercised.  The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience.  New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions." 529 U.S. at 253.  Given this rationale and the use of language of discretion and deference, Defendants contend that a similarly restrained approach is warranted here also.

## CONCLUSION

Based on the foregoing, it is apparent that the Plaintiffs have failed and are unable to plead sufficient facts to traverse the *Twombly* threshold and establish an *ex post facto* violation.  Accordingly, Defendants are entitled to judgment on the pleadings and Plaintiffs' complaint should be dismissed with prejudice.

Dated: April 9, 2008　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　 /s/ _____
　　　　　　　　　　　　　　　　　　　　JEFFREY A. TAYLOR, D.C. BAR # 498610
　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　 /s/ _____
　　　　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS, D.C. BAR #434122
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

　　　　　　　　　　　　　　　　　　　　　 /s/ _____
　　　　　　　　　　　　　　　　　　　　KENNETH ADEBONOJO
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　555 Fourth Street, N.W.
　　　　　　　　　　　　　　　　　　　　Washington, D.C.  20530
　　　　　　　　　　　　　　　　　　　　(202) 514-7157
　　　　　　　　　　　　　　　　　　　　kenneth.adebonojo@usdoj.gov

**CERTIFICATE OF SERVICE**

      I certify that on this 7th day of April, 2008, I caused the foregoing Defendants' Motion to Enlarge Time to file a Reply to Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment to be served on Plaintiffs' attorney, Jason D. Wallach, Esq., via the Court's Electronic Case Filing system.

                                      /s/_____
                                      KENNETH ADEBONOJO
                                      Assistant United States Attorney
                                      Judiciary Center Building
                                      555 4th Street, N.W. – Civil Division
                                      Washington, D.C.  20530
                                      (202) 514-7157
                                      (202) 514-8780 (facsimile)