UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TONY R. SELLMON, et al., | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 06-1650 (ESH) |
| EDWARD F. REILLY, JR., et al., | : |
| Defendants. | : |

**REPLY MEMORANDUM OF PLAINTIFFS CHARLES PHILLIPS,
TONY SELLMON, AND DARU SWINTON IN SUPPORT OF THEIR
MOTION TO RECONSIDER THE COURT'S GRANTS OF
JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT**

Plaintiffs Charles Phillips, Tony Sellmon, and Daru Swinton (the "Plaintiffs") submit this memorandum in further support of their motion for reconsideration ("Plaintiffs' Motion") and in response to Defendants' opposition to that motion ("Defendants' Opposition"). Plaintiffs' Motion demonstrated why the Court should reconsider its grant of judgment on the pleadings against Mr. Phillips and its *sua sponte* grant of summary judgment against Messrs. Sellmon and Swinton. Defendants' Opposition not only fails to refute Plaintiffs' arguments in support of their motion for reconsideration, but, in fact, concedes that Mr. Phillips's complaint pleaded an *ex post facto* violation and that Defendants' stated bases for denying the parole requests of Messrs. Sellmon and Swinton are not the equivalent of a finding that these plaintiffs were unusually cruel to their victims. The Court, therefore, should grant Plaintiffs' Motion, allow Mr. Phillips to take additional discovery regarding the D.C. Board of Parole's pre-1987 parole policies and practices, and remand the cases of Messrs. Sellmon and Swinton to the United States Parole Commission (the "Commission") for clarification as to Defendants' bases for denying these plaintiffs' requests for parole.

**I.      DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD HAVE BEEN DENIED BECAUSE, AS DEFENDANTS' OPPOSITION CONCEDES, MR. PHILLIPS'S *PRO SE* COMPLAINT PLEADED AN *EX POST FACTO* CLAUSE VIOLATION**

In its memorandum opinion, the Court recognized that "a motion for judgment on the pleadings may be granted if the moving party demonstrates that 'no material fact is in dispute and that it is entitled to judgment as a matter of law.'" Mem. Op. at 27 (citation omitted). "To defeat a motion to dismiss for failure to state a claim, plaintiffs' complaint must contain '"a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Id.* at 27-28 (citation omitted). Thus, the only issue on Defendants' motion for judgment on the pleadings with respect to Mr. Phillips's *pro se* complaint was whether the complaint *pleaded* an *Ex Post Facto* Clause violation and gave Defendants notice of Plaintiff Phillip's claim and the basis for it.[1] As Plaintiffs' Motion demonstrated, Mr. Phillips's *pro se* complaint adequately pleaded a claim under 42 U.S.C. § 1983 for Defendants' violation of the *Ex Post Facto* Clause and, therefore, the Court should not have granted Defendants' motion for judgment on the pleadings.

Defendants' Opposition, in fact, concedes that Mr. Phillips, "[i]n his complaint," alleged that the D.C. Board of Parole (the "Board") "utilized practices [in its pre-1987 parole decisions] that were identical to those utilized by the Board after it instituted the 1987

---

[1] Defendants' Opposition also argues that Plaintiffs cannot use a motion for reconsideration to seek leave to take discovery in opposition to a motion for summary judgment. *See* Defs. Opp. at 2. As Defendants well know, they never moved for summary judgment, and Plaintiffs have not sought leave of Court to take discovery in response to a motion for summary judgment. Indeed, on November 16, 2007, Plaintiffs moved the Court to extend discovery for the specific purpose of developing additional evidence regarding the D.C. Board's parole practices. The Court denied that motion without prejudice in light of the pendency of the dispositive motions in this case. These are the precise circumstances in which the Court should grant leave to renew the motion to extend discovery. The Court should allow Mr. Phillips to develop evidence concerning the D.C. Board's *actual practices* before 1987 to allow the Court to make an informed decision regarding whether the Defendants violated the *Ex Post Facto* Clause in his case.

guidelines." Defs. Opp. at 2-3. Plaintiffs' Motion demonstrated that this allegation combined with the other allegations of Mr. Phillips's *pro se* complaint stated a *prima facie* claim for an *ex post facto* violation, i.e., Defendants applied new parole criteria and practices that significantly increased the risk that Mr. Phillips would serve a longer period of incarceration than he would have if Defendants applied the criteria and practices in effect when Mr. Phillips committed his crime. *See* Plaintiffs' Mot. at 4-5.

Defendants cannot seriously contest that Mr. Phillips's complaint did not provide them with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Nor have they demonstrated, given the allegations of Mr. Phillips's complaint, which must be accepted as true for purposes of a motion for judgment on the pleadings, *see Robinson-Reeder v. Am. Council on Ed.*, 2008 U.S. Dist. Lexis. 5979 (D.D.C. 2008), that Mr. Phillips's complaint does not contain "'a short and plain statement of the claim showing that [Mr. Phillips] is entitled to relief.'" Instead, Defendants simply argue in opposition to Plaintiffs' Motion that the Court can ignore these allegations because the Board's written pre-1987 guidelines allegedly granted the Board unbridled discretion to grant or deny parole and, therefore, Mr. Phillips presumably cannot state a claim for relief. *See* Defs. Opp. at 3-4.[2]

Whether the Board exercised "unbridled discretion" is a disputed issue of material fact. Mr. Phillips alleges that although the pre-1987 written regulations of the Board may have, on their face, permitted the Board to exercise "unbridled discretion" to grant parole when a candidate satisfied the statutory criteria for parole, the Board did not, in fact, exercise such

---

[2] Defendants' Opposition also makes nonsensical arguments that Mr. Phillips's arguments are circular and inconsistent with the arguments of the other plaintiffs. Mr. Phillips's argument that the Board's 1987 guidelines simply codified the Board's pre-1987 policies and practices is wholly consistent with the arguments of the other plaintiffs – both contend that it was the D.C. Board's parole policy and practice to treat a parole candidate's minimum sentence as satisfying offense accountability and, consistent with the D.C. parole statute, to grant parole at parole eligibility, absent unusual circumstances, to an inmate who had a limited criminal history, abided by the rules of the penal institution, and rehabilitated him or herself.

unbridled discretion. Rather, Mr. Phillips alleges that the Board, in its practical implementation of the pre-1987 regulations, exercised discretion in the same or a similar manner as it did under the 1987 Guidelines, particularly with respect to the Board's policy to consider a parole candidate's minimum sentence as satisfying offense accountability.

Defendants, on the other hand, contend that "there were no guidelines – almost limitless factors – in effect when Phillips committed his crime," and, therefore, the Board exercised unbridled discretion under the pre-1987 regulations. Defs. Opp. at 3. Defendants, however, have not presented any evidence to support their contention.[3] On Defendants' motion for judgment on the pleadings, Mr. Phillips's allegations that the Board in practice limited its discretion are accepted as true.[4] As a result, the Court should have denied Defendants' motion for judgment on the pleadings with respect to Mr. Phillips's *pro se* complaint and it should grant Mr. Phillips's motion for reconsideration.[5]

---

[3] In support of their opposition, Defendants cite the Court's finding that the Board had almost unbridled discretion under the pre-1987 regulations to grant parole when its statutory criteria were met. As the Court recognized in its Memorandum Opinion, Defendants' reliance on the Board's discretion under the written regulations as evidence of the Board's practice is misplaced. *See* Mem. Op. at 33-34 n.15 ("The pre-1987 Regulations are thus of minimal help in demonstrating how the Board exercised its discretion in practice prior to 1987.").

[4] Notably, Defendants never moved for summary judgment, which might have placed the burden on Mr. Phillips to come forward with evidence in support of the allegations of his complaint, i.e., that the 1987 guidelines reflect the Board's pre-1987 policies and practices. Instead, Defendants simply argued that the allegations of Mr. Phillips's *pro se* complaint failed to state a claim.

[5] Defendants appear to argue that there never can be an *Ex Post Facto* Clause violation when a paroling authority first implements formal guidelines. *See* Defs. Opp. at 3. The very case that Defendants cite in support of this argument, however, demonstrates otherwise. In *Blair-Bey v. Quick*, 151 F.3d 1036 (D.C. Cir. 1998), the D.C. Circuit recognized that a plaintiff could establish an *ex post facto* violation where the Board's pre-1987 policies and practices are changed to formal guidelines. This is exactly what Mr. Phillips has asked the Court to allow him to do through discovery. Furthermore, Defendants' argument completely ignores the holdings of *Garner v. Jones*, 529 U.S. 244, 253 (2000), and *Fletcher v. District of Columbia*, 391 F.3d 250, 251 (D.C. Cir. 2004), which, for purposes of the *Ex Post Facto* Clause, look to the paroling authority's *practical implementation* of its parole criteria. *See* 529 U.S. at 255.

**II.     THE COURT SHOULD REMAND THE CASES OF MESSRS. SELLMON AND SWINTON TO THE COMMISSION BECAUSE, UNTIL THE BRIEFING IN THIS CASE, DEFENDANTS NEVER IDENTIFIED UNUSUAL CRUELTY TO THE VICTIMS AS A BASIS FOR DENYING THESE PLAINTIFFS' REQUESTS FOR PAROLE**

In Plaintiffs' Motion, Messrs. Sellmon and Swinton proved that, in Defendants' multiple decisions regarding these plaintiffs, Defendants never once identified "unusual cruelty to victims" or any other reason under the D.C. Board of Parole's 1987 Guidelines as a basis to deny these plaintiffs' requests for parole. *See* Plaintiffs' Motion at 7. Instead, Defendants denied Mr. Sellmon's parole request because of the alleged extreme brutality of his crime and Mr. Swinton's parole request because of Mr. Swinton's alleged "callous disregard" for his victims. *See* Plaintiffs' Motion at 7.[6]

In opposition to Plaintiffs' Motion, Defendants argue that Plaintiffs merely "parse the words of the Board and ask this Court to permit no leeway whatsoever in the language used with regard to their particular cases." Defs. Opp. at 7. Plaintiffs, however, did not ask the Court to require Defendants to use the exact words of the Board. Instead, Plaintiffs' Motion argues, based on long-standing precedent, that Defendants were obligated to use language that made it unambiguously clear that they denied the parole requests of Messrs. Sellmon and Swinton on bases recognized by the D.C. Board. *See* Plaintiffs' Motion at 6.[7] As Plaintiffs' Motion

---

[6] At the initial parole hearings for both Mr. Sellmon and Mr. Swinton, the Defendants applied the 2000 Guidelines and denied parole based solely on the fact that, under the 2000 Guidelines, these plaintiffs were presumed unsuitable for parole. Under the 1987 Guidelines, it is undisputed that Messrs. Sellmon and Swinton would have been presumed suitable for parole at their initial hearings. Thus, as the Court found in Plaintiff Darius Smith's case, Defendants violated the *Ex Post Facto* Clause when they applied the 2000 Guidelines at the initial parole hearings of Messrs. Sellmon and Swinton. Although Messrs. Sellmon and Swinton had subsequent parole rehearings under the 2000 Guidelines at which the Defendants noted certain aspects of these plaintiffs' crimes, Defendants have never once mention the word cruelty in determining whether to grant these plaintiffs' parole requests.

[7] *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) ("a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. . . . If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to

5

demonstrated, a finding by Defendants that a parole candidate committed an extremely brutal crime or a crime with callous disregard for his victims is not the equivalent of a finding that the candidate was unusually cruel to his victims. *See id.* at 7-8. Thus, unless no reasonable person could have concluded that Mr. Swinton's callous disregard for his victims and Mr. Sellmon's extreme brutality constituted unusual cruelty to their victims, it was improper for the Court to equate the Defendants' findings of "callous disregard" and "extreme brutality" with a finding of "unusual cruelty" under either the Board's 1987 Regulations or the Defendants' 2000 Guidelines, *see* 28 C.F.R. § 2.80(n)(ii)(C).[8]

Defendants' Opposition further argues that "the Commission has used particularized language in describing how each plaintiff's case exhibits unusual cruelty." Defs. Opp. at 7. Yet, nowhere in their opposition do Defendants identify a single instance in the parole consideration record in which Defendants or their hearing examiners described the crimes of Messrs. Sellmon

---

guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive."); *Point Park Univ. v. NLRB*, 457 F.3d 42, 50 (D.C. Cir. 2006) ("Without a clear presentation of the Board's reasoning, it is not possible for us to perform our assigned reviewing function and to discern the path taken by the Board in reaching its decision. . . . Nor can our Court fill in critical gaps in the Board's reasoning. We can only look to the Board's *stated rationale. We cannot sustain its action on some other basis the Board did not mention.*" (emphasis added)); *Furnari v. Warden, Allenwood Fed. Corr. Instit.*, 218 F.3d 250, 257 (3d Cir. 2000) ("In reviewing an administrative agency's decision, we do not seek out some hypothetical rational support for the agency's action. 'A court must review the agency's actual on-the-record reasoning process. Only a formal statement of reasons from the agency can provide this explanation, not a *post hoc* rationalization, or agency counsel's in-court reasoning.'" (citation omitted)).

[8] Had Defendants moved for summary judgment, the Court would have been obligated to accept the "evidence of the non-movant" and to draw "all justifiable inferences . . . in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Messrs. Sellmon and Swinton posit that the same standard should apply where the Court considers entering summary judgment *sua sponte*, i.e., the Court should have drawn all justifiable inferences from the facts concerning their parole hearings in Plaintiffs' favor. Had the Court applied such a standard, Messrs. Sellmon and Swinton believe that it is a justifiable inference that Defendants did not deny their requests for parole based on these plaintiffs' alleged unusual cruelty to their victims. Instead, Defendants' counsel have put forth the "unusual cruelty" argument as their own, improper "*post hoc* rationalization" of Defendants' actions. *Furnari*, 218 F.3d at 257.

6

and Swinton as unusually cruel.[9] Defendants' Opposition does not identify such an instance because one does not exist. In fact, throughout the record, Defendants repeatedly have relied on their identification of the allegedly "extreme brutality" and "callous disregard" of Messrs. Sellmon and Swinton as a factor not considered already in the parole guidelines, which is the Defendants' definition of "unusual circumstances" justifying a denial of parole under the D.C. parole statute – not once in the entire record of these plaintiffs' parole records did Defendants cite to the 2000 Guidelines' "unusual circumstance" of "unusual cruelty to victims." As a result, the Court improperly entered summary judgment against Messrs. Sellmon and Swinton and, instead, should have remanded their cases to the Commission.

---

[9] In fact, Defendants' Opposition concedes that brutality is not the same as cruelty. *See* Defs. Opp. at 7 ("The Commission found that the manner in which Sellmon committed his crime . . . was *extremely brutal and cruel* . . . ." (emphasis added)). The Commission clearly uses the two words to describe different circumstances.

7

### III. CONCLUSION

Because the motion for reconsideration demonstrates that the Court committed clear error in granting judgment on the pleadings against Mr. Phillips where his *pro se* complaint adequately alleged a claim under 42 U.S.C. § 1983 for a violation of the *Ex Post Facto* Clause and in *sua sponte* entering summary judgment against Messrs. Sellmon and Swinton where the basis for Defendants' decisions was insufficiently clear from the record, the Court should deny Defendants' motion for judgment on the pleadings with respect to Mr. Phillips and remand the cases of Messrs. Sellmon and Swinton to the Commission for clarification as to the bases for Defendants' parole determinations.

Dated: June 17, 2008                                Respectfully Submitted,

By:     */s/ Jason D. Wallach*
        Jason D. Wallach (Bar No. #456154)
        Avner E. Mizrahi (Bar No. #500772)
        DICKSTEIN SHAPIRO, LLP
        1825 Eye Street, NW
        Washington, D.C. 20006
        (202) 420-2268
        (202) 420-2201 facsimile

        Attorneys for Plaintiffs