UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
**TONY R. SELLMON**, *et al.*,         )
                                       )
        **Plaintiff,**   )
                                       )
        v.               )    Civil Action No. 06-01650 (ESH)
                                       )
**EDWARD F. REILLY, JR.**, Chairman of )
the United States Parole Commission, *et al.*, )
                                       )
        **Defendants.**  )
_____)

## MEMORANDUM OPINION

Plaintiffs, eight inmates serving prison sentences for committing criminal offenses under the District of Columbia Code, filed suit alleging that the United States Parole Commission ("USPC" or "the Commission") retroactively applied its own parole guidelines and practices thereby significantly increasing the risk that they would serve longer terms of incarceration in violation of the *Ex Post Facto* Clause. After considering the plaintiffs' motion for summary judgment and the defendants' motion for judgment on the pleadings, the Court issued a Memorandum Opinion on May 5, 2008. *See Sellmon v. Reilly*, -- F.Supp.2d -- , 2008 WL 1933759 (D.D.C. May 5, 2008). Plaintiffs Phillips, Sellmon, and Swinton have now moved, pursuant to Fed. R. Civ. P. 59(e), to alter or amend the Court's judgment. Defendants have also moved for reconsideration. For the reasons stated herein, both motions will be denied.

## ANALYSIS

"A motion for reconsideration . . . will not be lightly granted." *Mobley v. Cont'l Cas. Co.*, 405 F.Supp.2d 42, 45 (D.D.C. 2005). Reconsideration is only appropriate when "the moving

party shows new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Sci. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000). *See also Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Such motions "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F.Supp.2d 23, 28 (D.D.C. 2001). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). *See also Katten v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).

## I.     PLAINTIFFS' MOTION FOR RECONSIDERATION

### A.     Phillips

Phillips moves for reconsideration arguing that the Court erred in granting defendant's motion for judgment on the pleadings with respect to his case. (*See* Pls.' Mot. 5.) Phillips, like the remaining seven plaintiffs, alleged that defendants violated the *Ex Post Facto* Clause by applying the 2000 Guidelines, rather than the 1987 Regulations, to his case, and thereby substantially increased his risk of increased incarceration. *Sellmon*, 2008 WL 1933759, at *1. The Court held, however, that because Phillips committed his offense prior to 1987, he was not entitled to rely on the 1987 Regulations to demonstrate an *ex post facto* violation, since those regulations did not apply when he committed his offense. *Id.* at *16-17.

In moving for reconsideration, Phillips argues that the Court erred by failing to credit as true the allegation in his *pro se* complaint that at the time he committed his offense, "the D.C. Parole Board's policy and practice was to consider offense accountability as satisfied by an

inmate's service of his or her minimum sentence and not as a proper consideration in determining the inmate's suitability for parole." (Pls.' Mot. 4.) This was the case under the Board's 1987 Regulations, but as Phillips appears to concede, this was not the Board's policy at the time of his offense.[1] Nonetheless, Phillips requests discovery in order to prove his assertion that the Parole Board's practice was not to use offense accountability to determine an inmate's suitability for parole prior to 1987. (*Id.* 6.)[2]

Phillips has failed to offer *any* basis to support this contention. The Board's stated policy contradicts his position and Phillips has not provided any facts which would justify further discovery. It is true that in considering a motion to dismiss, the Court must consider the facts presented as true and construe them in the light most favorable to plaintiff. *Williams v. Johnson*, 537 F.Supp.2d 141, 148 (D.D.C. 2008). However, the facts alleged "must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007), and the Court need not consider inferences that are unsupported by facts or legal conclusions framed as facts. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). That is all that Phillips has offered here.

---

[1] As the Court explained in its Memorandum Opinion, under the regulations that were in place at the time Phillips committed his offense, "the Board had almost unbridled discretion to grant parole '[w]henever . . . [it appeared] that there [was] a reasonable probability that a prisoner [would] live and remain at liberty without violating the law, that his release [was] not incompatible with the welfare of society, and that he [had] served the minimum sentence imposed . . . .'" *Sellmon*, 2008 WL 1933759, at * 17 (quoting 9 D.C.R.R. § 105 (1972)). These regulations specified a list of factors that the Board was to consider in making this determination, but offered no guidance as to how these factors should be weighted in making the decision. *Id.* (citing 9 D.C.R.R. § 105.1).

[2] Notably, Phillips has already received significant discovery in this case, and any outstanding requests (*see* Dkt. 40, 43, 44), which were held in abeyance pending the outcome of the motions, do not appear to have any relationship to the issue he now wishes to explore.

3

Morever, Phillips's unsupported characterization of the Parole Board's practice prior to 1987 is insufficient under the D.C. Circuit's precedent in *Fletcher v. Reilly*, 433 F.3d 867 (D.C. 2006), to warrant discovery. In that case, the Court concluded based upon facial differences between the new and old reparole guidelines, and Fletcher's credible allegation that these changes had personally affected his parole consideration, that Fletcher had "made out a *prima facie* case that his rights under the *Ex Post Facto* Clause had been violated," and thus he was entitled to "factual development on his habeas petition." *Id.* at 878-79. *Fletcher* does not, as Phillips contends, permit a prisoner to engage in a fishing expedition about the Board's actual practices over twenty years ago based solely on the prisoner's contention that those practices were different than those currently in effect, particularly when that assertion has no relationship to any written policy, regulation, or guideline. Rather, *Fletcher* requires a "searching comparison" of the parole regimes only after plaintiff has made out his *prima facie* case, which Phillips has failed to do.

Finally, even if the Court credited Phillips's allegation that the Board's informal practice was to not to consider offense accountability in determining the inmate's suitability for parole, Phillips still could not show that the outcome in his case would have been any different under the pre-1987 regime, given the totally unstructured character of the Board's parole decisions prior to 1987. Unlike the 1987 Regulations, which based the presumption of parole eligibility on a numerical calculation and limited the grounds on which the Board could depart to an enumerated list, under the pre-1987 regime, the Board's discretion to grant or deny parole was totally unfettered. It could grant parole only if, after weighing a variety of factors, it "appeared . . . that there [was] a reasonable probability that a prisoner will live and remain at liberty without

violating the law, that his release [was] not incompatible with the welfare of society, and that he [had] served the minimum sentence imposed . . . ."  9 D.C.R.R. § 105 (1972).  In Phillips's case, parole was denied on the grounds that he hadn't yet sufficiently accounted for his offense and that he presented a more serious risk than his point score indicated.  (*See* Phillips Ex. 3 [Initial Hearing Summary] at 4; Phillips Ex. 4 [Notice of Action, Dec. 13, 2002] at 1; Phillips Ex. 5 [Hearing Summary] at 2-3; Phillips Ex. 6 [Notice of Action, Nov. 18, 2005] at 1.)   Therefore, even if Phillips could make a factual showing that the Board would not have considered offense accountability in making its parole determination in his case, he still would have to demonstrate that the Board would not have exercised its unlimited discretion to deny parole for other reasons. Given that the risk posed by an offender was the central question in the the Board's considerations pre-1987, Phillips would likely "have been denied parole under either set of guidelines." *Glascoe v. Bezy*, 421 F.3d 543, 549 (7th Cir. 2005).   Thus, discovery on the issue of offense accountability would make no difference to the resolution of Phillips's *ex post facto* claim because even if his factual allegations are accepted as true and considered to be sufficient, he could not, as a matter of law, show that the consideration of offense accountability substantially increased his risk of lengthier incarceration, as required under *Fletcher*.

       The motion for reconsideration will therefore be denied with respect to Phillips.

       **B.**    **Sellmon and Swinton**

Plaintiffs Sellmon and Swinton move for reconsideration on the basis that the record in their cases was insufficiently clear to support the Court's holding.  (Pls.' Mot. 6.)  With respect to Sellmon and Swinton, the Court held that based on the facial differences between the Parole Board's 1987 Regulations and the Commission's 2000 Guidelines, plaintiffs could make a *prima*

*facie* case that the application of the 2000 Guidelines substantially increased their risk of increased incarceration. *Sellmon*, 2008 WL 1933759, at * 19. The Court determined, however, that Sellmon and Swinton failed to demonstrate that the application of the 2000 Guidelines significantly increased their risk of lengthier incarceration because the reason given by defendants for denying parole under the 2000 Guidelines -- the "unusual cruelty" of plaintiffs' crime" -- would have been a permissible reason for denying parole under the 1987 Regulations. *Id.* at *22-24. Thus, the Court concluded that plaintiffs failed to show that the application of the 2000 Guidelines to their cases had any practical effect on the length of their incarceration. *Id.* In their motion for reconsideration, plaintiffs argue that the Court erred in its determination that defendants' stated reasons for the parole denials were equivalent to a finding of "unusual cruelty" and request that the Court remand to the USPC for clarification of the record. (*See* Pls.' Mot. 7-8.)

     Plaintiffs' argument, in essence, is that remand is required because the Commission did not use the exact words of the 1987 Regulations in denying them parole. The Court disagrees with plaintiffs' contention that such technical parsing of the language is required. The burden is on plaintiffs, even after a *prima facie* case is made, to demonstrate that the practical effect of the application of the new parole guidelines to their individual cases was to substantially increase the risk of lengthier incarceration. Given that the Commission's stated reasons for denying parole in each case would have supported a finding of "unusual cruelty" under the 1987 Regulations, plaintiffs have not met *their* burden.[3] *See Glascoe*, 433 F.3d at 545-49. Plaintiffs'

---

[3] Under the 1987 Regulations, a departure from the recommended parole action could be justified by the "unusual cruelty" of the crime. *See* D.C. MUN. REGS. tit. 28, app. 2-1. The 1991 Policy Guideline, which was in effect at the time Swinton committed his offense, clarified that a departure for "unusual cruelty" might be warranted where the offense involved "[e]specially

motion for reconsideration will therefore be denied.

## II.    DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants challenge the Court's holding that in determining whether to depart from the parole action indicated by the1987 Regulations, the Board limited itself to the permissible grounds for departure enumerated in the Regulations and in the 1991 Policy Guideline. (Defs.' Mot. 1.)   They request that the Court amend its judgment to permit the Commission to depart on any basis when considering whether to grant parole to the four plaintiffs for whom the Court ordered new hearings.  (*Id.* 2-3.)  In support of this position, defendants point, for the first time in this litigation, to a policy guideline, entitled "Reconsideration Hearings – Establishing Dates" that was issued by the Board on April 27, 1992 . (*Id.* 2.)  In Section VI, paragraph A.2., the Board states that: "The Board, in its discretion, may schedule a reconsideration date later than the prescribed set-off if one or more aggravating factors are present.  The aggravating factors considered by the Board include, but are not limited to the following, . . . ." (*Id.*)  Defendants argue that this is "persuasive evidence" that the Board's discretion to depart from the recommended parole action was unlimited. (*Id.*)

As a preliminary matter, defendants' argument fails to satisfy Rule 59.  A reconsideration motion "is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F.Supp. 37, 38 (D.D.C. 1995).  Nor is it "a vehicle for presenting theories or arguments that could have been advanced earlier." *Fox v.*

---

vulnerable victims, *e.g.*, children . . . ." (Pls.' Mot. for Summary Judgment, Joint Ex. 8 [1991 Policy Guideline] at 7.)   The USPC denied Sellmon parole on the grounds that killing his victim by battering her head with a gun was "extremely brutal" and denied Swinton parole on the grounds that his crime showed "callous disregard" for his victims, including two young children. *Sellmon*, 2008 WL 1933759, at * 22-24.

*American Airlines, Inc.*, 295 F.Supp.2d 56 (D.D.C. 2003).  The 1992 Policy Guideline was part of the record before this Court on the motion for summary judgment, and defendants have offered no reason for their failure to make this argument prior to the Court's ruling.

Morever, even were the Court to consider their claim on the merits, defendants' argument would fail.  As defendants recognize, this guideline governs how the Board determined the set-off time between reconsideration hearings.  (*Id.*)   On its face, it has *no* relevance to the actual parole decisions, the criteria for which are described in detail in the 1987 Regulations and the 1991 Guidelines.  The government offers no persuasive reason why the Court should extrapolate from the policy guideline on setting rehearing dates that the Board did not follow its written policy on parole determinations.[4]

In their reply, defendants *again* raise a new argument.   They claim, based on the D.C. Circuit's opinion *Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996),  that the Board's discretion to depart from its regulations was unlimited.  (*See* Defs.' Mot. 2.)  It is well-established, however, that this Court may not address arguments raised for the first time on reply.  *EchoStar Commc'ns Corp. v. FCC*, 292 F.3d 749, 754 (D.C. Cir. 2002).  *See also Medina v. Dist. of Columbia*, 517 F.Supp.2d 272, 294 n. 18 (D.D.C. 2007).  This is particularly true in this case, as defendant offers no reason for its failure to raise this argument *either* in its briefing on the motion for summary judgment or in its motion for reconsideration.

---

[4] Defendants argue that the Board would not have given itself more flexibility in setting rehearing dates than it did in determining whether to grant or deny parole.  In fact, however, it appears that the Board did just that and the Court need not speculate as to its reasons given the Supreme Court's directive that "[a]bsent evidence to the contrary, the Court presume[s] the Board follows its statutory commands and internal policies in fulfilling its obligations." *Garner v. Jones*, 529 U.S. 244, 256 (2000).

Again, however, *Ellis* fails to support defendants' position. Although defendants are correct that the *Ellis* Court noted that "Other" and "Other Change in Circumstances" are categories justifying departure from the action indicated by the prisoner's total point score under the 1987 Regulations, defendants fail to recognize that these options are applicable *only* when determining that an offender is a "better risk" than indicated by his score.  Therefore "other" considerations may be taken account only when determining that a prisoner should be released *before* his total point score indicates.  See D.C. MUN. REGS. tit. 28, app. 2.1, at 2-35.

Moreover, the facts of Ellis's case do not support defendants' position that in practice, the Board declined to follow its own guidelines in deciding whether to grant or deny parole.  The Board denied Ellis parole because of the "unusual cruelty" of his crime (a specified factor) and because of the results of his psychological evaluation (an unspecified factor). *Ellis*, 84 F.3d at 1419.  Thus, *Ellis* provides further evidence that the Board in fact followed its written policy and justified its decisions with reference to the listed "unusual circumstances."[5]   Defendants' motion for reconsideration is therefore denied.

## CONCLUSION

For the reasons stated herein, plaintiffs' motion for reconsideration [Dkt. 70] is **DENIED** and defendants' motion for reconsideration [Dkt. 71] is **DENIED**.

/s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date:   June 20, 2008

---

[5] The Court declines to posit, as defendants do, what the Board would have done in Ellis's case had his offense not been unusually cruel.  (*See* Defs.' Reply 3.)